## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DAVID L. FUHRIMAN,** | ) | |
| | ) | |
| **Plaintiff-Petitioner** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Case No. 07cv0672 (RJL)** |
| | ) | |
| | ) | |
| **PETE GEREN,** | ) | |
| **ACTING SECRETARY OF THE ARMY** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |

## <u>RESPONDENT'S OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS</u>

### INTRODUCTION

Chief Warrant Officer 2 David L. Fuhriman ("Petitioner" or "CW2 Fuhriman"), a commissioned warrant officer in the United States Army ("Army"), challenges the Army's recision of his orders that would have separated him from military service on March 30, 2007, and requests to be discharged from the Army.[1]  On April 13, 2007, Mr. Fuhriman filed a petition for a writ of habeas corpus seeking an order from this Court directing the Acting Secretary of the Army to show cause why this Court should not issue a Writ of Habeas Corpus.[2]  Pet. for a Writ of Habeas Corpus by a Person in Military Custody, Dkt. # 1, (hereinafter "petition").  This Court should dismiss CW2 Fuhriman's petition for lack of jurisdiction, because his custodian is located

---

[1] As is explained more fully, *infra*, Petitioner is not in physical custody, but seeks habeas relief from his continued service in the armed forces.

[2] Pursuant to Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules), the Court may apply any of the Section 2254 Rules to habeas petitions, even if not brought under 28 U.S.C. § 2254.

outside the District of Columbia.  Even assuming, *arguendo*, that this Court has subject matter jurisdiction over the instant petition, CW2 Fuhriman has failed to establish that he is being held in military custody in violation of law or regulation.  Accordingly, his petition for writ of habeas corpus should be denied.

## STATEMENT OF FACTS

**A.     CW2 Fuhriman's Discharge and Counterintelligence Investigation**

CW2 Fuhriman is currently assigned to Headquarters and Headquarters Company, U. S. Army Garrison ("HHC, USAG"), which is commanded by Captain ("CPT") Nancy Gines and is located at Fort Myer, Virginia.  Declaration of CPT Nancy Gines, at 1 (hereinafter "Exhib. A").  HHC, USAG is a subordinate command of the Military District of Washington ("MDW").  *Id.* The commanding general of MDW exercises control over units located in Virginia, Maryland, New York, and Washington, D.C.  *Id.*

On April 13, 2005, CW2 Fuhriman's term of obligated service was changed to March 30, 2007, pursuant to his request to leave the active duty military.[3]  Memorandum from U.S. Army Human Resources Command (hereinafter "Exhib. B".)  CW2 Fuhriman was informed that his release from active duty would be in accordance with Army Regulation ("Army Reg.") 600-8-24, Chapter 2, Section III.  *Id.*  On January 10, 2007, CW2 Fuhriman received orders reassigning him to Fort Myer, Virginia, in order to be processed for release from active duty on March 30, 2007, "unless changed/rescinded."  Reassignment Orders 010-0001 (hereinafter "Exhib. C".)

---

[3]  Petitioner requested to withdraw from "voluntary indefinite status," which, as it would apply in this circumstance, is a request to be released from active duty in the armed forces.

On or about January 31, 2007, the Defense Intelligence Agency informed CW2 Fuhriman that he was the subject of an ongoing counterintelligence ("CI") investigation by the Army's Foreign Counterintelligence Activity.  Petition, at 2.  CW2 Fuhriman's terminal leave was cancelled and he was transferred to HHC, USAG, pending the outcome of the CI investigation. Petition, at 2.  CPT Gines advised CW2 Fuhriman of his rights under Article 31 of the Uniform Code of Military Justice (10 U.S.C. § 831) and also informed CW2 Fuhriman that he was flagged[4] and his leave prior to his separation from active duty was cancelled.  Exhib A, at 2. CPT Gines took these actions based on information contained in a classified Army Foreign Counterintelligence Agency memorandum.  *Id.*

On March 21, 2007, Major General Guy Swann, III, the Commanding General for the MDW, determined CW2 Fuhriman to be the subject of a pending CI investigation and requested that his January 10, 2007, separation orders be rescinded.  Swann memorandum (hereinafter "Exhib. D".)  The Army thereby rescinded CW2 Fuhriman's orders on March 23, 2007, citing Army Reg. 600-8-24, paragraph 1-17 as the revocation authority.  Petition, at 2; Recision Orders 082-0001 (hereinafter "Exhib. E").

**B.     The Army Regulation Governing Eligibility For Voluntary Separation**

Army Regulation 600-8-24 establishes procedures for officer transfers and discharges. Army Reg. 600-8-24 (hereinafter "Exhib. F").  This regulation provides that an officer may request voluntary separation.  *Id*. ¶ 1-12 (a).  The approval authority may disapprove such a request for voluntary separation in the following circumstances: when the officer is under

---

[4]  A suspension of favorable actions (flag) prevents a Soldier from receiving any favorable action such as promotion, transfer, and awards while the flag is pending.

investigation or charges; awaiting result of trial; being considered for involuntary separation; absent without leave; under control of civilian authorities; mentally incompetent; or in default with respect to pubic property or funds. *Id.*, ¶ 1-12 (b).  The approval authority may also disapprove such a request for voluntary separation when the officer has not fulfilled an active duty service obligation or has not completed an initial U. S. Army Reserve Active Guard/Reserve ("USAR AGR") tour or when voluntary separation is not in the best interests of the USAR AGR program. *Id.*  Finally, the approval authority may disapprove the request for separation when the Secretary of the Army determines that existing needs of the Service require delay of favorable separation action, or when the President or Congress has declared a period of national emergency or war is imminent or in progress. *Id.*  Additionally, Paragraph 1-17 of Army Reg. 600-8-24 provides that an officer pending court-martial charges or investigation with a view toward court-martial will not be separated without approval from Headquarters, Department of the Army. *Id.*, ¶ 1-17.

## ARGUMENT

### A.    Standard of Review.

In analyzing a response to an order to show cause why the writ should not issue, it is appropriate to apply the standards of review applicable to motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See Isenbarger v. Farmer*, 463 F. Supp 2d 13, 17-18 (D.D.C 2006) (*citing Khalid v. Bush*, 355 F. Supp. 2d 311, 317 n.6 (D.D.C. 2005)).  "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.* (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

A petitioner's factual allegations must be presumed true, and petitioner also must be given every favorable inference that may be drawn from the allegation of fact. *Id*. (*citing Scheuer,* 416 U.S. at 236; *Sparrow v. United Air Lines*, *Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). Nevertheless, the court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. *Id*. (*citing Trudeau v. Federal Trade Comm'n,* 456 F.3d 178, 193 (D.C. Cir. 2006)) (internal quotation omitted).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court - the petitioner here - bears the burden of establishing that the court has jurisdiction. A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, so long as it still accepts the factual allegations in the complaint as true. *Id*. (*citing Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005)).

Under Federal Rule of Civil Procedure 12(b)(6), a case must be dismissed when a complaint fails to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, No. 05-1126, 550 U.S. ___, 127 S. Ct. 1955, 1964-65, slip op. at 8-9 (U.S. May 21, 2007) (Citations omitted). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Id*.

5

**B.    This Court Lacks Jurisdiction Over CW2 Fuhriman's Habeas Petition Because His Custodian Is Located Outside The District Of Columbia.**

This Court lacks jurisdiction over Mr. Fuhriman's habeas petition because his custodian is located at Fort Myer, Virginia, which is outside this Court's geographic jurisdiction. *See* Exhib. A. "A district court has jurisdiction over a habeas petition 'only if it has jurisdiction over' the petitioner's custodian." *Rooney v. Sec'y of the Army*, 405 F.3d 1029, 1032 (D.C. Cir. 2005) (*quoting Rumsfeld v. Padilla*, 542 U.S. 426 (2004)). Federal district courts are limited by 28 U.S.C. § 2241(a) to granting habeas relief within their respective jurisdictions. *Id.* As noted in *Rooney*, "[w]hile the United States District Court for the District of Columbia may have jurisdiction over the Secretary of the Army, that fact does not help Rooney because the petitioner's 'immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.'" *Id.* (*quoting Padilla*, 542 U.S. at 439); *see also Blackmon v. England*, 323 F. Supp. 2d 1 (D.D.C. 2004) (holding a Navy officer's petition for writ of habeas against the Secretary of the Navy was not properly filed in this Court). "For purposes of the federal habeas corpus statute, jurisdiction is proper only in the district in which the immediate, not the ultimate, custodian is located." *Id.* (*quoting Monk v. Sec'y of the Navy*, , 793 F.2d 364, 369 (D.C. Cir. 1986)).

CW2 Fuhriman acknowledges that he is assigned to Fort Myer, Virginia. Petition at ¶¶ 4, 7. His current custodian is the company commander of HHC, USAG, Fort Myer, Virginia. Exhib. A; *see also* Petition, at ¶ 7. CW2 Fuhriman apparently justifies his decision to file in this district by asserting he is currently stationed within the MDW. Petition, at ¶ 1. Plaintiff's reasoning is flawed, because the MDW encompasses installations in Washington, D.C., Virginia, Maryland, and New York. *See* Exhib. A. Because CW2 Fuhriman's commander is located at

6

Fort Myer in the Eastern District of Virginia, jurisdiction is proper only in that district.  *See Rooney*, 405 F.3d at 1032.  As petitioner has filed in the wrong district, the Court must dismiss the petition for lack of subject-matter jurisdiction.

**C.    The Army's Decision To Conduct A Counterintelligence Investigation Is Nonjusticiable**

Even if this Court were to determine it has jurisdiction over CW2 Fuhriman's petition, the issue of whether a CI investigation is appropriate is nonjusticiable.  The Army's interpretation and implementation of its own regulation is entitled to judicial deference.  *United States v. Clark*, 454 U.S. 555, 565, (1982).  That deference is especially appropriate where the Army is making personnel decisions regarding the conduct of commissioned officers.  *See Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1984) (fitness for duty determination).  Thus, in assessing CW2 Fuhriman's petition this Court should bear in mind the "fundamental and highly salutary principle that 'Judges are not given the task of running the Army . . . [, because t]he military constitutes a specialized community governed by a separate discipline from that of the civilian.'" *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)(*quoting Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)).  The Supreme Court has rejected analysis that "would call into question military discipline and decision-making" and "would itself require judicial inquiry into, and hence intrusion upon, military matters."  *United States v. Stanley*, 483 U.S. 669, 682 (1987); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983)("Courts are ill equipped to determine the impact upon discipline that any particular intrusion upon military authority might have."); *Brown v. Glines*, 444 U.S. 348, 360 (1980)("The special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale.").

7

Decisions regarding whether or not it is appropriate to investigate an officer's conduct are not appropriate for judicial review. *See Kreis*, 866 F.2d at 1511 (holding that discretionary military personnel decisions are nonjusticiable). "The Constitution vests 'the complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Id*. (*citing Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)); *see also Goldman v. Weinberger*, 475 U.S. 503, 508 (1986)("military authorities have been charged by the Executive and Legislative Branch with carrying out our Nation's military policy."); *Rostker v. Goldberg*, 453 U.S. 57, 64- 65 (1981), ("perhaps in no other area [than national defense and military affairs] has the Court accorded Congress greater deference."). Accordingly, CW2 Fuhriman's petition should be dismissed because his challenge to the propriety of conducting the CI investigation is nonjusticiable.

**D.      CW2 Fuhriman's Habeas Petition Fails To Identify A Violation Of Law Or Regulation**

CW2 Fuhriman avers the Army has "no grounds for rescinding [his] orders," claiming the memorandum informing him of the CI investigation "did not inform Mr. Fuhriman about the substance of the investigation." Petition, at 1-2. This allegation alone is insufficient to plead and prove a violation of law or regulation. "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (2005). CW2 Fuhriman has failed to allege how the Army has violated "the Constitution or laws or treaties of the United States."

As described above, Army Regulation 600-8-24 allows the Army to deny an officer's request for separation when the officer is under investigation or charges. Army Reg. 600-8-24, ¶ 1-12(b)(1). CW2 Fuhriman is currently the subject of an ongoing CI investigation by the Army's

Foreign Counterintelligence Activity.  Petition, at 2; Exhib. A, D.  Accordingly, it was within the

Army's discretion to deny CW2 Fuhriman's voluntary separation pending the outcome of the

investigation.  CW2 Fuhriman fails to provide legal support for his claim that the Army's failure

to provide him with the grounds for the CI investigation is a violation of the Constitution, laws or

treaties of the United States.[5]  The Army acted within its authority in denying CW2 Fuhriman's

voluntary separation while he is the subject of an investigation (*see* Army Reg. 600-8-24, ¶¶ 1-

12, 1-17, *supra*) and, therefore, his Petition should be denied [6]

## CONCLUSION

Wherefore, Respondent respectfully requests that this Honorable Court deny the

Petitioner's Writ of Habeas Corpus.

Respectfully submitted,

_____/s_____

JEFFREY A. TAYLOR, D.C. Bar # 498610

United States Attorney

---

[5]   The fact that CW2 Fuhriman has not been informed about the substance of the CI investigation does not indicate that there is no basis in fact or law regarding the initiation of the investigation.  CPT Gines indicates that her acts were based on information contained in a classified memorandum.  Exhib A at 2.  Furthermore, as the investigation has not been completed, CW2 Fuhriman has not identified a requirement for the Army to inform him of the classified information.

[6]   Army policy and practice in this area is not a recent development.  "Historically, it has been universally accepted than an officer of the armed forces cannot leave the service until his resignation is accepted by the President."  *Baldauf v. Nitze*, 261 F. Supp. 167, 169 (S.D. Cal. 1961); *see also*, *Nicholson v. Brown*, 599 F.2d 639, 644 n.4 (5th Cir. 1979).  Moreover, the courts continue to recognize the Army's ability to retain Soldiers beyond their period of obligation in other circumstances.  For example, Soldiers can be subject to the stop loss policy.  "Stop Loss" refers to the current policy that servicemembers in a unit that is alerted to deploy cannot leave the unit until after the unit returns from deployment.  *See*, *Santiago v. Rumsfeld*, 407 F. 3d 1018, 1024 (9th Cir. 2005); *Quals v. Rumsfeld*, 357 F. Supp. 2d 274 (D.D.C. 2005).

                                        _____/s_____
                                        RUDOLPH CONTRERAS D.C. Bar # 434122
                                        Assistant United States Attorney


                                        _____/s_____
                                        STEVEN M. RANIERI
                                        Special Assistant U.S.  Attorney
                                        555 Fourth Street, N.W.,
                                        Washington, D.C.  20530
                                        (202) 353-9895
                                        Attorneys for Defendant

Of Counsel:
MAJOR JERRETT W. DUNLAP, JR.
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

10

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                              |   |                              |
|----------------------------------------------|---|------------------------------|
| DAVID L. FUHRIMAN,                           | ) |                              |
|                                              | ) |                              |
|     Plaintiff-Petitioner, | ) |                              |
|                                              | ) |                              |
|     v.                    | ) |                              |
|                                              | ) | Civil Case No. 07cv672 (RJL) |
| PETE GEREN,                                  | ) |                              |
| ACTING SECRETARY OF THE ARMY,                | ) |                              |
|                                              | ) |                              |
|     Defendant-Respondent. | ) |                              |
|                                              | ) |                              |

## DECLARATION OF CAPTAIN NANCY GINES

I, Captain Nancy Gines, declare and state the following:

1. I am over 18 years of age and I am a Commissioned Officer in the U.S. Army. This declaration is made on personal knowledge of factual matters known to me.

2. I am the commander of the Headquarters and Headquarters Company, U.S. Army Garrison, which is located at Fort Myer, Virginia. Headquarters and Headquarters Company, U.S. Army Garrison, is a subordinate command of the Military District of Washington, which had administrative control over units in Virginia, Maryland, New York, and Washington, D.C.

3. Chief Warrant Officer 2 (CW2) David L. Fuhriman is currently assigned as a member of Headquarters and Headquarters Company, U.S. Army Garrison, Fort Myer, Virginia.

4. On or about January 30, 2007, I received a telephone call from Major Michael Davis, the Officer-in-Charge of the U.S. Army Element, Defense Intelligence Agency (DIA). Major Davis indicated that the Department of the Army, Foreign Counterintelligence Activity, had requested that CW2 Fuhriman's terminal leave prior to his separation from active duty be cancelled. This request was based on an investigation being conducted by the Department of the Army, Foreign Counterintelligence Activity into CW2 Fuhriman.

5. Based on the information contained in a memorandum *(classified)* from Department of the Army, Foreign Counterintelligence Activity and the ongoing investigation, I revoked CW2 Fuhriman's terminal leave, informed him of his rights, ordered him to cancel his flight to Latvia and Russia, and flagged him from favorable personnel actions pending the investigation.

6. I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed on this 17th day of May 2007.

Nancy Gines
Captain, U.S. Army
Commanding

2



DEPARTMENT OF THE ARMY
U.S. ARMY HUMAN RESOURCES COMMAND
200 STOVALL STREET
ALEXANDRIA VA 22332-0620

AHRC-OPW-L

13 April 2005

MEMORANDUM THRU

Commander, United States Army Intelligence & Security Command,
U.S. Army Field Support Center, ATTN: IAFS-P-P, Fort Meade, MD
20755-5904
Commander, DIALO Kuwait, U.S. Embassy, Kuwait City, Kuwait 09128

FOR CW2 David L. Fuhriman,  DIALO Kuwait, U.S. Embassy,
Kuwait City, Kuwait 09128

SUBJECT:  Request for Withdrawal of Voluntary Indefinite Status

1.  Your request for withdrawal of your Voluntary Indefinite (VI)
status was approved.

2.  As a result of your withdrawal of VI status, the expiration
of your current term of obligated service is reestablished as
30 March 2007.  Unless you have incurred an additional active
service obligation (ADSO), on this date you will be released from
active duty as prescribed in AR 600-8-24, Chapter 2, Section III.

3.  This new expiration of service date allows for completion of
your active duty service obligation incurred as a result of your
completion of the Phase 2 Warrant Officer Basic Course.

4.  This memorandum is the authority to amend your official
records to reflect your status as an obligated officer with an
expiration date of 30 March 2007.  A copy of this memorandum will
be placed in your Official Military Personnel File.

5.  POC this action is Ms Lyons at DSN 221-5287.

FOR THE COMMANDER:

A. L. TAYLOR
CW5, USA
Chief, Warrant Officer
Division

Printed on Recycled Paper

DEPARTMENT OF THE ARMY
HEADQUARTERS FORT MYER MILITARY COMMUNITY
ARLINGTON, VIRGINIA 22211-5050

ORDERS 010-0001

10 January 2007

FUHRIMAN, DAVID LEROY ██████ CW2 USA ELE DEF SPT ACT, (WOFBAA), PENTAGON,
VA 203017400

You are reassigned to the U.S. Army transition point shown for transition
processing. After processing, you are released from active duty not by reason
of physical disability and assigned as indicated on the date immediately
following release from active duty. Any temporary appointments held are
terminated on your effective date of release from active duty. If you are
delayed in reporting to the transition point, you still must report to the
transition point as soon as possible or as authorized to receive a new effective
date of release from active duty.

Assigned to: US ARMY TRANSITION CENTER (WOUCO5) FORT MYER VA 22211-5050
Reporting date to transition point: 30 March 2007
Date of release from active duty unless changed/rescinded: 30 March 2007
Attached to: NA
Assigned to: USAR CON GP (REINF) 1 RESERVE WAY ST LOUIS MO 63132
Terminal date of Reserve obligation: Not applicable
Additional instructions: a. (A) REPORT TO THE FORT MYER COMMUNITY CENTER FOR
PRE-TRANSITION COUNSELING IAW AR 635-10, PARA 2-2C, HELD THE SECOND TUESDAY
OF EACH MONTH 0900-1600. (B) CONTACT THE TRANSPORTATION OFFICE WITHIN 10
DUTY DAYS OF RECEIPT OF THESE ORDERS IF YOU PLAN TO SHIP PERSONAL PROPERTY AT
GOVERNMENT EXPENSE. (C) YOU ARE AUTHORIZED MOVEMENT OF YOUR DEPENDENTS AND
HOUSEHOLD GOODS AT GOVERNMENT EXPENSE UP TO 6 MONTHS SUBSEQUENT TO YOUR
ETS/ESA DATE. (D) UPON RECEIPT OF THIS ORDER, CONTACT THE RCT NCO AT (703)
696-3001 TO SCHEDULE YOUR RESERVE COMPONENT BRIEFING. (E) CONTACT YOUR
S-1/AGENCY POC 45 DAYS PRIOR TO YOUR SEPARATION DATE, START OF TRANSITION
LEAVE, OR PTDY, WHICHEVER COMES FIRST, TO SCHEDULE YOUR FINAL OUTPROCESSING
APPOINTMENTS. (F) CALL THE FORT MYER ACAP OFFICE AT (703) 696-2635 FOR AN
APPOINTMENT UP TO 180 DAYS BUT NLT 90 DAYS PRIOR TO YOUR SEPARATION. (G) 45%
OF YOUR FINAL PAY MAY BE WITHHELD IF YOU DO NOT COMPLETELY CLEAR.

FOR ARMY USE
Auth: AR 600-8-24
HOR: MOSES LAKE WA US
Place EAD or OAD: FORT RUCKER AL US
Comp: RESERVE
ETS 30 March 2007
MDC: 7BO7
PEBD: Not applicable
Format: 526

FOR THE COMMANDER:

```
*********************
*  ADJUTANT GENERAL  *
*      OFFICIAL      *
* FORT MYER VIRGINIA *
*********************
```
RICHARD M. BREWER
CHIEF, TRANSITION CENTER

DISTRIBUTION:

ORDERS 010-0001               DEPARTMENT OF THE ARMY, FORT MYER

                                                                10 January 2007

CW2 FUHRIMAN (15)
Cdr USA ELE DEF SPT ACT, (WOFBAA) (3)
ANFA-FO-MP (1)
SIDPERS (FORT MYER)

2



**DEPARTMENT OF THE ARMY**
U.S. ARMY MILITARY DISTRICT OF WASHINGTON
210 A STREET, SUITE 300
FORT LESLEY J. McNAIR, DC 20319-5013

REPLY TO
ATTENTION OF

ANCG                                                         2 1 MAR 2007

MEMORANDUM FOR Chief, Officer Separations and Retirements, Human Resources
Command, Alexandria, Virginia

SUBJECT: Rescission of Separation Orders – CW2 David L. Fuhriman, 

Request that separation orders 010-0001, Headquarters, Fort Myer Military Community, dated 10
January 2007, separating CW2 Fuhriman on 30 March 2007, be rescinded. CW2 Fuhriman is
currently the subject of a pending counter-intelligence investigation.

GUY C. SWAN III
Major General, US Army
Commanding

DEPARTMENT OF THE ARMY
HEADQUARTERS FORT MYER MILITARY COMMUNITY
ARLINGTON, VIRGINIA 22211-5050

ORDERS 082-0001                                            23 March 2007

FUHRIMAN, DAVID LEROY ████████ CW2 USA ELE DEF SPT ACT, (W0F8AA), PENTAGON,
VA 203017400

The following order is revoked or rescinded as shown.

Action:  RESCIND

So much of:  Orders 010-0001, HEADQUARTERS FORT MYER MILITARY COMMUNITY, 10
January 2007
Pertaining to:  REFRAD OF FUHRIMAN, DAVID LEROY ████████ CW2, USA ELE DEF SPT
ACT, (W0F8AA), PENTAGON, VA 203017400.
Auth:  AR 600-8-24 PARA 1-17
PCN is:  NA
Format:  705

FOR THE COMMANDER:

```
***********************
*  ADJUTANT GENERAL  *
*       OFFICIAL       *
* FORT MYER VIRGINIA *
***********************
```
RICHARD M. BREWER
CHIEF, TRANSITION CENTER

DISTRIBUTION:
CW2 FUHRIMAN (15)
Cdr USA ELE DEF SPT ACT, (W0F8AA) (3)
ANFA-FO-MP (1)
SIDPERS (FORT MYER)

Army Regulation 600–8–24

**Personnel–General**

# Officer Transfers and Discharges

**Headquarters**
**Department of the Army**
**Washington, DC**
**12 April 2006**

# UNCLASSIFIED

# *SUMMARY of CHANGE*

AR 600-8-24
Officer Transfers and Discharges

This rapid action revision, dated 12 April 2006--

o Notes the responsibilities of The Deputy Assistant Secretary of the Army - Review Boards (DASA-RB) as the Secretary of the Army's designee in probationary officer eliminations, resignations, and discharges (para 1-4).

o Changes the separation, elimination, and retirement approval authority for Colonels and promotable Lieutenant Colonels from CDR, AHRC to HQDA, (DACS-GOM) (paras 1-8 and 6-14).

o Provides that an officer placed on the Temporary Disability Retirement List (TDRL) during separation or retirement processing, and later removed from the TDRL because of a fit finding, may be separated from the service, effective on the date of the officer's removal from the TDRL with a specified characterization of discharge. The Secretary of the Army or their designee may direct that either the separation or retirement action or the disability action take precedence (para 1-23c).

o Clarifies that an officer must serve in the Armed Forces until completion of a statutory and regulatory military service obligation (MSO) of eight years, and that REFRAD does not terminate the MSO. An officer who requests REFRAD before completing the 8-year MSO must complete the MSO in a Reserve Component, or submit a resignation with a request for waiver of the MSO by the ASA (M&RA). To waive an officer's MSO, the ASA (M&RA) must find that the officer has no potential for service under conditions of full mobilization (paras 2-3 and 3-5).

o Renumbers sections XI thru XX of chapter 2 as appropriate (chap 2).

o Eliminates the rules and steps for processing involuntary REFRAD due to non-selection of VI status (paras 2-27 and 2-28 which are now paras 2-25 and 2-26).

o Eliminates the rules and steps for processing involuntary REFRAD due to revocation of VI status (paras 2-29 and 2-30).

o Provides new rules and steps for processing an Involuntary REFRAD Due to Civilian Criminal Conviction (para 2-33 which is now para 2-29).

o In accordance with 10 USC 14503, establishes that a Reserve Officer is a probationary officer for the first five years of commissioned service, which begins from the date of commission and continues without regard to periods of active duty (para 2-37 which is now para 2-33).

o Reflects that the authority of the Secretary of the Army, or their designee, to accept an unqualified resignation is discretionary, and not required (para 3-1).

o Clarifies that a Resignation due to Pregnancy will result in an Honorable characterization of service. A pregnant officer whose service was not Honorable should be separated under another provision (para 2-11).

o Eliminates the rules and steps for Resignation for the Good of the Service Due to Homosexuality (paras 3-15 and 3-16).

o Adds Failure to Establish an Adequate Family Care Plan as a specific condition for elimination (para 4-2a).

o Re-establishes the provisions for eliminations based on inability to maintain security clearance (provisions were removed in error from AR 600-8-24 dated 24 February 2005) (paras 1-21, 4-1, 4-2, 4-6, and 5-9a).

o Implements provision for elimination when conviction by court martial did not impose a punitive discharge for sexually violent offenses listed in AR 27-10, Chapter 24 (para 4-2b).

o Requires a Board of Inquiry to consider the OMPF of an officer during show cause proceedings (para 4-6).

o Provides additional guidance for the preparation of the report of a Board of Inquiry (para 4-15 and fig 4-1).

o Clarifies the policy that allows an officer to submit a conditional waiver for resignation or discharge in lieu of elimination (para 4-24).

o Establishes that any officer who has been the subject of any substantiated adverse finding or conclusion from an officially documented investigation, proceeding or inquiry (except minor traffic infractions) since the officer's last promotion, will have his case forwarded to the Army Grade Determination Review Board for a grade determination under AR 15-80 to determine the highest grade the officer satisfactorily held while on AD, provided that such information is reflected, or should be reflected by regulation, in the officer's OMPF (para 6-1d).

o Clarifies the policy that allows for involuntary discharges of chaplains who do not respond to the notification due to loss of professional qualifications (table 5-2).

o Directs that, in accordance with 10 USC 632 (c) (1), health professions officers who are twice non-selected for promotion will still be retained on active duty until completion of their active duty service obligation prior to discharge, unless sooner retired or discharged under another provision of law (para 5-9).

o Substitutes MPF (Military Personnel File) for MPRJ (Military Personnel Records Jacket) where appropriate in accordance with AR 600-8-104 throughout the publication.

o Updates references and makes administrative changes throughout the publication.

This priority revision, dated 11 May 2005-

o Changes the language for minimum submission time for officers requesting release from active duty from 6 months prior to the desired release date to 6 months before the desired release date or beginning date of transition leave, whichever is the earliest (paras 2-5a and 2-7a).

o Eliminates all references to the elimination of officers for failure to have a security clearance (paras 4-1c, 4-2b(10) and c(3), 4-9e, and 4-10e).

o Changes the existing retirement authority for voluntary nonwaiver retirements from general court-martial convening authority to Commander, Human Resources Command-Alexandria for officers who have completed 20 but less than 30 years of active Federal service (para 6-14a).

o Changes the minimum time for officers to submit retirement applications from 6 to 9 months (paras 6-14b and 6-20b and c.)

o Clarifies the retirement policy for officers opting to retire in lieu of permanent change of station and the options available to the approval authority (para 6-18a).

o Updates references and makes administrative changes throughout.

This rapid action revision dated, 24 February 2005--

o Adds retention beyond 20 years of active service policy for Reserve Component (RC) Active Guard Reserve (AGR) officers (to include RC warrant officers) in accordance with AR 135-18 (para 2-25a).

o Updates retention policy for an RC officer holding a permanent grade of brigadier general, not recommended for promotion to major general; or major general, not recommended for promotion to lieutenant general (para 2-25b).

o Updates retention policy for an RC officer holding a permanent grade of colonel, or a lieutenant colonel selected for promotion to colonel but not yet promoted (para 2-25c).

o Updates retention policy for an RC lieutenant colonel, not recommended for promotion to colonel (para 2-25d). Updates retention policy for RC first lieutenants, captains, and majors, not recommended for promotion (para 2-25e).

o Clarifies policy to reflect that RC officers must be released from active duty at the end of the month in which they become eligible for retirement (para 2-25g).

o Omits the Total Warrant Officer System career plan (para 2-25h).

o Changes the approval authority for USAR AGR officer voluntary retirements/ waivers form the office of the Chief, Army Reserve to Commanding General, Human Resources Command-St Louis (para 6-14a(6)).

o Clarifies the 12-month service obligation officers incur in an overseas command from date dependents arrive, that is if the dependents travel at the Government's expense (para 6-16).

This revision, dated 30 July 2004--

o Supersedes DA ALARACT MESSAGE 002/98, DTG 071314Z JAN 98, SUBJECT: COMPUTATION OF ACTIVE FEDERAL SERVICE FOR USAR ACTIVE GUARD (AGR) RESERVE WARRANT OFFICERS AND COMMISSIONED WARRANT OFFICERS AND ESTABLISHMENT OF MANDATORY REMOVAL DATE (MRD) FOR AGE FOR USAR WARRANT OFFICERS AND COMMISSIONED WARRANT OFFICERS, PART 1--USAR AGR WO PERSONNEL MANAGEMENT, paragraph 6, that pertains to the automatic extension to age 62 of warrant officers, by adding policy to grant creditable service to Reserve Component warrant officers who are retained on active duty after qualifying for retired pay in accordance with 10 USC 12308 (para 2-23a).

o Aligns the promotion policy as set forth in AR 135-155 by omitting the involuntary release from active duty for those USAR warrant officers who fail to be selected a second time to the permanent grade of CW5 by a Reserve promotion board (para 2-41a(2)).

o Updates administrative items.

This revision dated 3 February 2003--

o Adds new information on the rules for processing retirement in lieu of PCS (para 6-18b)

o Adds new definitions for the terms assignment alert and probationary officer (glossary)

This revision--

o Corrects the Summary of Change Public Law reference to 103-160 vice 103-60.

o Replaces all references to U.S. Army Reserve Personnel Center (ARPERCEN), 1 Reserve Way, St. Louis, MO 63132-5200 with U.S. Army Reserve Personnel Command (AR-HRC), 1 Reserve Way, St. Louis, MO 63132-5200.

o Adds a mobility statement to the end of the Applicability paragraph on the title page.

o Deletes all references to the Department of Defense Military Pay and Allowances.

o Changes dates established in paragraphs 2-5a, 2-7a, and 6-14b of this revision to be effective 1 January 2003 for application submission (paras 2-5a, 2-7a, and 6-14b).

o Adds guidance on application for REFRAD (paras 2-5a and 2-7a).

o Deletes references to the U.S. Department of Health, Education, and Welfare's Education Directory. (paras 2-15a; table 2-6, step 1b; and app A.)

o  Adds "Headquarters, Department of the Army (AHRC-OPD-A) is the final
   authority to approve or disapprove REFRAD or discharge for an officer or a
   warrant officer service school attendee who resigns from the course (para 2-
   37a)

o  Adds "Except when resignation is under section VI of this chapter,"
   (beginning of para 3-1b).

o  Adds a new paragraph on the submission of request for unqualified
   resignation, provided all Service Remaining Requirements (SRRs) have been
   met(para 3-1).

o  Replaces "rank of colonel" with "grade of lieutenant colonel" (para 4-7b).

**Headquarters**
**Department of the Army**
**Washington, DC**
**12 April 2006**

*****Army Regulation**
**600–8–24**

**Effective 12 May 2006**

**Personnel–General**

# Officer Transfers and Discharges

By Order of the Secretary of the Army:

PETER J. SCHOOMAKER
*General, United States Army*
*Chief of Staff*

Official:

JOYCE E. MORROW
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a rapid action revision. The portions affected by this rapid action revision are listed in the summary of change.

**Summary.** This regulation prescribes policies and procedures governing transfer and discharge of Army officer personnel. This regulation includes policy statements, operating tasks, rules in support of operating tasks, and sequential steps of each operating task.

**Applicability.** This regulation applies to all commissioned and warrant officers of the Active Army, the Army National Guard of the United States, and the United States Army Reserves when serving on active duty for a period of 30 or more consecutive days unless otherwise stated.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The Deputy Chief of Staff, G–1 has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The Deputy Chief of Staff, G–1 may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25-30 for specific guidance.

**Army management control process.** This regulation contains management control provisions in accordance with AR 11–2, but it does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command or local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1, through Commander, HRC–Alexandria (AHRC–PDO–IP), Alexandria, VA 22332–0478.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Commander, HRC–Alexandria (AHRC–PDO–IP), Alexandria, VA 22332–0478.

**Distribution.** This publication is available in electronic media only and is intended for command levels A, B, C, D, and E for the Active Army, the Army National Guard of the United States, and the United States Army Reserve.

## Contents (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*

*Section I*
*Overview, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Statutory authority • 1–4, *page 1*
Responsibilities • 1–5, *page 1*
Manpower requirements • 1–6, *page 1*
Levels of work • 1–7, *page 1*

**Contents—Continued**

The officer transfer/discharge process • 1–8, *page 2*
Headquarters, Department of the Army (HQDA), addresses for officers • 1–9, *page 2*

*Section II*
*Principles and Standards, page 2*
Principles of support • 1–10, *page 2*
Standards of service • 1–11, *page 2*

*Section III*
*Scope, page 3*
Eligibility for voluntary separation • 1–12, *page 3*
Counseling • 1–13, *page 3*
Separation pay • 1–14, *page 4*
Leave • 1–15, *page 4*
Recoupment • 1–16, *page 4*
An officer under investigation or pending court-martial • 1–17, *page 4*
An officer awaiting appellate review of adjudged dismissal or dishonorable discharge • 1–18, *page 4*
Action required prior to involuntary separation or under other than honorable discharge of personnel with access to sensitive programs • 1–19, *page 5*
Reassignment of an officer pending involuntary separation • 1–20, *page 5*
Termination of appointment (ADL officer only) • 1–21, *page 5*
Types of administrative discharge/character of service • 1–22, *page 5*
Medical examination/retention • 1–23, *page 6*
Referral for physical disability evaluation • 1–24, *page 7*
Indebtedness • 1–25, *page 7*
Return from overseas • 1–26, *page 7*
Assignment of personnel to a U.S. Army transition point/transition activity • 1–27, *page 7*
Separation requests/actions for Reserve Component • 1–28, *page 8*
Separating an officer in a foreign country • 1–29, *page 8*
An officer confined pursuant to the sentence in a foreign court • 1–30, *page 8*
Separation while under investigation or sentenced but not confined by a foreign court • 1–31, *page 8*
Discharge based on conscientious objection • 1–32, *page 9*
Interservice transfer of Army commissioned officers on the active duty list • 1–33, *page 9*

**Chapter 2**
**Release from Active Duty of Reserve Component Commissioned and Warrant Officers,** *page 9*

*Section I*
*Introduction, page 9*
Scope • 2–1, *page 9*
Separation approval authority • 2–2, *page 9*
Status upon separation • 2–3, *page 10*
Years of service • 2–4, *page 10*

*Section II*
*Task: Process Voluntary Release from Active Duty Due to Personal Reasons, page 10*
Rules for processing voluntary release from active duty due to personal reasons • 2–5, *page 10*
Steps for processing voluntary release from active duty due to personal reasons • 2–6, *page 11*

*Section III*
*Task: Process Voluntary Release from Active Duty Due to Expiration of AD Commitment, page 12*
Rules for processing voluntary release from active duty due to expiration of active duty commitment • 2–7, *page 12*
Steps for processing voluntary release from active duty due to expiration of active duty commitment • 2–8, *page 12*

*Section IV*
*Task: Process Voluntary Release from Active Duty Due to Hardship, page 12*

**Contents—Continued**

Rules for processing voluntary release from active duty due to hardship • 2–9, *page 12*
Steps for processing voluntary release from active duty due to hardship • 2–10, *page 13*

*Section V*
*Task: Process Voluntary Release from Active Duty Essential to National Interest, page 13*
Rules for processing voluntary release from active duty essential to national interest • 2–11, *page 13*
Steps for processing voluntary release from active duty essential to national interest • 2–12, *page 14*

*Section VI*
*Task: Process Voluntary Release from Active Duty Due to Pregnancy, page 14*
Rules for processing voluntary release from active duty due to pregnancy • 2–13, *page 14*
Steps for processing voluntary release from active duty due to pregnancy • 2–14, *page 16*

*Section VII*
*Task: Process Voluntary Release from Active Duty of an Obligated Officer to Attend School, page 16*
Rules for processing voluntary release from active duty of an obligated officer to attend school • 2–15, *page 16*
Steps for processing voluntary release from active duty of an obligated officer to attend school • 2–16, *page 17*

*Section VIII*
*Task: Process Voluntary Release from Active Duty of a United States Army Reserve Warrant Officer for Entry on AD as a USAR Commissioned Officer, page 18*
Rules for processing voluntary release from active duty of a United States Army warrant officer for entry on active duty as a United States Army Reserve commissioned officer • 2–17, *page 18*
Steps for processing voluntary release from active duty of a United States Army Reserve warrant officer for entry on active duty as a United States Army Reserve commissioned officer • 2–18, *page 18*

*Section IX*
*Task: Process Voluntary Release from Active Duty for an Officer of a Medical Holding Detachment, page 18*
Rules for processing voluntary release from active duty for an officer of a medical holding detachment • 2–19, *page 18*
Steps for processing voluntary release from active duty for an officer of a medical holding detachment • 2–20, *page 19*

*Section X*
*Task: Process Involuntary Release from Active Duty Due to Maximum Age, page 19*
Rules for processing involuntary release from active duty due to maximum service • 2–21, *page 19*
Steps for processing involuntary release from active duty due to maximum age • 2–22, *page 21*

*Section XI*
*Task: Process Involuntary Release from Active Duty Due to Maximum Service, page 21*
Rules for processing involuntary release from active duty due to maximum service • 2–23, *page 21*
Steps for processing involuntary release from active duty due to maximum service • 2–24, *page 23*

*Section XII*
*Task: Process Involuntary Release from Active Duty Due to Nonselection of Active Guard Reserve Continuation, page 24*
Rules for processing involuntary release from active duty due to nonselection of active guard reserve continuation • 2–25, *page 24*
Steps for processing involuntary release from active duty due to nonselection of active guard reserve continuation • 2–26, *page 24*

*Section XIII*
*Task: Process Involuntary Release from Active Duty by the Department of the Army Active Duty Board, page 24*
Rules for processing involuntary release from active duty by the Department of the Army Active Duty Board • 2–27, *page 24*

**Contents—Continued**

Steps for processing involuntary release from active duty by the Department of the Army Active Duty Board • 2–28, *page 27*

*Section XV*
*Task: Process Involuntary Release from Active Duty Due to Civilian Criminal Conviction, page 27*
Rules for processing involuntary release from active duty due to civilian criminal conviction • 2–29, *page 27*
Steps for processing involuntary release from active duty due to civilian criminal conviction • 2–30, *page 28*

*Section XVI*
*Task: Process Involuntary Release from Active Duty Pending Appellate Review, page 29*
Rules for processing involuntary release from active duty pending appellate review • 2–31, *page 29*
Steps for processing involuntary release from active duty pending appellate review • 2–32, *page 29*

*Section XVII*
*Task: Process Involuntary Release from Active Duty and Termination of Reserve Appointments of Student Officers and Warrant Officers Attending Branch Orientation, Familiarization Courses, or Warrant Officer Basic Course (WOBC), page 30*
Rules for processing involuntary release from active duty and termination of Reserve appointments of student officers and warrant officers attending branch orientation, familiarization courses, or Warrant Officer Basic Course • 2–33, *page 30*
Steps for processing involuntary release from active duty and termination of Reserve appointments of student officers and warrant officers attending branch orientation, familiarization courses, or Warrant Officer Basic Course • 2–34, *page 30*

*Section XVIII*
*Task: Process Involuntary Early Release of Army National Guard of the United States and United States Army Reserve Officers on Active duty for Training, Active Duty for Special Work, and Temporary Tours of Active Duty, page 31*
Rules for processing involuntary early release of Army National Guard of the United States and United States Army Reserve officers on active duty for training, active duty for special work, and temporary tours of active duty • 2–35, *page 31*
Steps for processing involuntary early release of Army National Guard of the United States or United States Army Reserve officers on active duty training, active duty for special work, and temporary tours of active duty • 2–36, *page 32*

*Section XIX*
*Task: Process Involuntary Release from Active Duty Due to Failure of Selection for Permanent Reserve Promotion, page 33*
Rules for processing involuntary release from active duty due to failure of selection for permanent Reserve promotion • 2–37, *page 33*
Steps for processing involuntary release from active duty due to failure of selection for permanent Reserve promotion • 2–38, *page 33*

**Chapter 3**
**Resignations,** *page 40*

*Section I*
*Scope, page 40*
Introduction • 3–1, *page 40*
Withdrawal of resignation • 3–2, *page 41*
Notification to finance and accounting officer • 3–3, *page 41*
Routing • 3–4, *page 41*

*Section II*
*Task: Process Unqualified Resignation, page 42*
Rules for processing unqualified resignation • 3–5, *page 42*

**Contents—Continued**

Steps for processing unqualified resignation • 3–6, *page 43*

*Section III*
*Task: Process Resignation for the Purpose of Enlistment/Reenlistment in the Active Army, page 43*
Rules for processing resignation for the purpose of enlistment/reenlistment in the Active Army • 3–7, *page 43*
Steps for processing resignation for the purpose of enlistment/reenlistment in the Active Army • 3–8, *page 44*

*Section IV*
*Task: Process Resignation of an Officer who did not meet Medical Fitness Standards when Appointed, page 44*
Rules for processing resignation of an officer who did not meet medical fitness standards when appointed • 3–9, *page 44*
Steps for processing resignation of an officer who did not meet medical fitness standards when appointed • 3–10, *page 45*

*Section V*
*Task: Process Resignation Due to Pregnancy, page 45*
Rules for processing resignation due to pregnancy • 3–11, *page 45*
Steps for processing resignation due to pregnancy • 3–12, *page 46*

*Section VI*
*Task: Process Resignation for the Good of the Service in Lieu of General Court-Martial, page 47*
Rules for processing resignation for the good of the Service in lieu of general court-martial • 3–13, *page 47*
Steps for processing redesignation for the good Service in lieu of general court-martial • 3–14, *page 47*

**Chapter 4**
**Eliminations,** *page 53*

*Section I*
*Scope, page 53*
Overview • 4–1, *page 53*
Reasons for elimination • 4–2, *page 53*
Medical condition • 4–3, *page 54*
Limitations • 4–4, *page 55*
Separation date • 4–5, *page 55*

*Section II*
*Boards, page 56*
Board of Inquiry • 4–6, *page 56*
Board membership • 4–7, *page 56*
President of the Board of Inquiry • 4–8, *page 57*
Recorder of the Board of Inquiry • 4–9, *page 57*
Legal advisor • 4–10, *page 58*
Respondent • 4–11, *page 58*
Respondent's counsel • 4–12, *page 59*
Witnesses • 4–13, *page 59*
Spectators • 4–14, *page 59*
Conclusion of hearing • 4–15, *page 59*
Actions concerning Board of Inquiry defects • 4–16, *page 61*
Board of review • 4–17, *page 61*

*Section III*
*Task: Process Elimination of a Nonprobationary Officer, page 62*
Rules for processing an elimination of a nonprobationary officer • 4–18, *page 62*
Steps for processing an elimination of a nonprobationary officer • 4–19, *page 62*

**Contents—Continued**

*Section IV*
*Task: Process Elimination of a Probationary Officer, page 65*
Rules for processing an elimination of a probationary officer • 4–20, *page 65*
Steps for processing an elimination of a probationary officer • 4–21, *page 66*

*Section V*
*Task: Process Elimination of an Officer for Homosexual Conduct, page 67*
Rules for processing an elimination of an officer for homosexual conduct • 4–22, *page 67*
Steps for processing an elimination of an officer for homosexual conduct • 4–23, *page 68*

*Section VI*
*Task: Process an Option that an Officer Elects while Elimination Action Is Pending, page 70*
Rules for processing an option that an officer elects while elimination action is pending • 4–24, *page 70*
Steps for processing an option that officer elects while elimination action is pending • 4–25, *page 70*

**Chapter 5**
**Miscellaneous Types of Separations,** *page 85*

*Section I*
*Scope, page 85*
Overview • 5–1, *page 85*
Authority • 5–2, *page 85*

*Section II*
*Task: Process Separation of an Officer due to Lack of Jurisdiction, page 85*
Rules for processing separation of an officer due to lack of jurisdiction • 5–3, *page 85*
Steps for processing separation of an officer due to lack of jurisdiction • 5–4, *page 85*

*Section III*
*Task: Process Discharge of Active Duty List Chaplain who Loses Professional Qualifications due to the Withdrawal of Ecclesiastical Endorsement, page 85*
Rules for processing discharge of an active duty list chaplain who loses professional qualifications due to a withdrawal of ecclesiastical endorsement • 5–5, *page 85*
Steps for processing discharge of an active duty list chaplain who loses professional qualifications due to a withdrawal of ecclesiastical endorsement • 5–6, *page 86*

*Section IV*
*Task: Process Separation of an Officer who does not Consent to Recall to Active Duty from Temporary Disability Retired List, page 86*
Rules for processing separation of an officer who does not consent to recall to active duty from the Temporary Disability Retired List • 5–7, *page 86*
Steps for processing separation of an officer who does not consent to recall to active duty from the Temporary Disability Retired List • 5–8, *page 86*

*Section V*
*Task: Process Separation of Commissioned Officers and Chief Warrant Officers who are Twice Nonselected for Active Duty List Promotion by an HQDA Centralized Board, page 87*
Rules for processing separation of commissioned officers and chief warrant officers who are twice nonselected for active duty list promotion by an HQDA centralized board • 5–9, *page 87*
Steps for processing separation of commissioned officers and chief warrant officers who are twice nonselected for active duty list promotion by an HQDA centralized board • 5–10, *page 87*

*Section VI*
*Task: Process Separation of an Officer due to Nonselection of a Field Promotion, page 88*
Rules for separation of an officer due to nonselection of a field promotion • 5–11, *page 88*
Steps for processing separation of an officer due to nonselection of a field promotion • 5–12, *page 88*

**Contents—Continued**

*Section VII*
*Task: Process Separation of an Officer due to Conviction by Foreign Tribunal, page 88*
Rules for processing separation of an officer due to conviction by foreign tribunal • 5–13, *page 88*
Steps for processing the separation of an officer due to conviction by foreign tribunal • 5–14, *page 89*

*Section VIII*
*Task: Process an Officer who is Dropped from the Army Rolls, page 89*
Rules for processing an officer who is dropped from the Army rolls • 5–15, *page 89*
Steps for processing an officer who is dropped from the Army rolls • 5–16, *page 89*

*Section IX*
*Task: Process Dismissal of an Officer due to General Courts-Martial Proceedings, page 90*
Rules for processing dismissal of an officer due to general courts-martial proceedings • 5–17, *page 90*
Steps for processing dismissal of an officer due to general courts-martial proceedings • 5–18, *page 90*

**Chapter 6**
**Retirements,** *page 92*

*Section I*
*Overview, page 92*
The officer retirement program • 6–1, *page 92*
Computation of service • 6–2, *page 93*
Retirement order • 6–3, *page 93*
Career recognition • 6–4, *page 94*
Retirement location • 6–5, *page 94*
Medical examination • 6–6, *page 94*
Hospitalization/Physical Evaluation Board • 6–7, *page 94*
Retirement status • 6–8, *page 94*
Residence and travel abroad • 6–9, *page 95*
Advancement of an Active Army warrant officer to a higher grade • 6–10, *page 95*
Restoration of an Active Army warrant officer to a former grade • 6–11, *page 95*
Permanent professors of the United States Military Academy • 6–12, *page 95*

*Section II*
*Voluntary Retirements, page 95*
Approval authority • 6–13, *page 95*
Service for determining retirement eligibility • 6–14, *page 96*
Service obligations • 6–15, *page 96*
Voluntary retirement in lieu of mandatory retirement or in conjunction with the scheduled release from active duty
  • 6–16, *page 97*

*Section III*
*Task: Process Retirement in Lieu of Permanent Change of Station, page 97*
Rules for processing retirement in lieu of permanent change of station • 6–17, *page 97*
Steps for processing retirement in lieu of permanent change of station • 6–18, *page 97*

*Section IV*
*Task: Process Voluntary Retirement Application, page 98*
Rules for processing a voluntary retirement application • 6–19, *page 98*
Steps for processing a voluntary retirement application • 6–20, *page 98*

*Section V*
*Task: Process a Retirement Withdrawal or a Change in the Retirement Date, page 100*
Rules for processing a retirement withdrawal or a change in the retirement date • 6–21, *page 100*
Steps for processing a retirement withdrawal or a change in the retirement date • 6–22, *page 100*

**Contents—Continued**

*Section VI*
*Mandatory Retirement, page 100*
Scope • 6–23, *page 100*
Service for mandatory retirement • 6–24, *page 101*

*Section VII*
*Task: Process Mandatory Retirement Due to Maximum Age, page 101*
Rules for processing mandatory retirement due to maximum age • 6–25, *page 101*
Steps for processing mandatory retirement due to maximum age • 6–26, *page 101*

*Section VIII*
*Task: Process Mandatory Retirement due to Maximum Service, page 102*
Rules for processing mandatory retirement due to maximum service • 6–27, *page 102*
Steps for processing mandatory retirement due to maximum service • 6–28, *page 102*

*Section IX*
*Task: Process Selective Early Retirement/Selective Retirement, page 103*
Rules for processing selective early retirement/selective retirement • 6–29, *page 103*
Steps for processing selective early retirement/selective retirement • 6–31, *page 104*

**Appendix A.**   References, *page 109*

**Table List**

Table 1–1: USAR addresses, *page 4*
Table 2–1: Processing voluntary REFRAD for personal reasons, *page 11*
Table 2–2: Processing voluntary REFRAD due to expiration of AD commitment, *page 12*
Table 2–3: Processing voluntary release from active duty due to hardship, *page 13*
Table 2–4: Processing voluntary REFRAD that is essential to national interest, *page 14*
Table 2–5: Voluntary release from active duty due to pregnancy, *page 15*
Table 2–6: Voluntary release from active duty of an obligated officer to attend school, *page 17*
Table 2–7: USAR warrant officer voluntary release from active duty for entry on active duty as United States Army
   Reserve commissioned officer, *page 18*
Table 2–8: Voluntary release from active duty for an officer of a medical holding detachment, *page 19*
Table 2–9: Involuntary release from active duty due to maximum age, *page 21*
Table 2–10: Involuntary release from active duty due to maximum service, *page 24*
Table 2–11: Involuntary release from active duty due to nonselection of active guard reserve continuation, *page 24*
Table 2–12: Involuntary release from active duty by the Department of the Army Active Duty Board, *page 27*
Table 2–13: Involuntary release from active duty due to civilian criminal conviction, *page 28*
Table 2–14: Release from active duty pending appellate review, *page 29*
Table 2–15: Involuntary release from active duty and termination of Reserve appointments of student officers and
   warrant officers attending branch, familiarization courses, or Warrant Officers Basic Course, *page 31*
Table 2–16: Involuntary early release of Army National Guard of the United States or United States Army Reserve
   officers on active duty training, active duty for special work, and temporary tours of duty, *page 32*
Table 2–17: Involuntary release from active duty due to failure of selection for permanent Reserve promotion,
   *page 33*
Table 3–1: Processing unqualified resignation, *page 43*
Table 3–2: Resignation for the purpose of enlistment/reenlistment in the Active Army, *page 44*
Table 3–3: Resignation for failure to meet medical standards at time of appointment, *page 45*
Table 3–4: Resignation due to pregnancy, *page 46*
Table 3–5: RFGOS in lieu of GCM, *page 47*
Table 4–1: Processing elimination of a nonprobationary officer, *page 63*
Table 4–2: Processing elimination of a probationary officer, *page 66*
Table 4–3: Processing elimination of an officer for homosexual conduct, *page 69*
Table 4–4: Processing an option that officer elects while elimination action is pending, *page 71*
Table 5–1: Separation of an officer due to lack of jurisdiction, *page 85*

**Contents—Continued**

Table 5–2: Discharge due to loss of professional qualifications due to withdrawal of ecclesiastical endorsement, *page 86*
Table 5–3: Separation for failure to consent to active duty recall from Temporary Disability Retired List, *page 87*
Table 5–4: Twice nonselected for promotion separation (HQDA Board), *page 88*
Table 5–5: Field promotion nonselection separation, *page 88*
Table 5–6: Processing separation due to conviction by foreign tribunal, *page 89*
Table 5–7: Dropped from the rolls, *page 90*
Table 5–8: Dismissal due to general courts-martial proceedings, *page 90*
Table 6–1: Processing retirement in lieu of permanent change of station, *page 98*
Table 6–2: Processing voluntary retirement application, *page 99*
Table 6–3: Processing retirement withdrawal or retirement date change, *page 100*
Table 6–4: Processing mandatory retirement due to maximum age, *page 101*
Table 6–5: Processing mandatory retirement due to maximum service, *page 103*
Table 6–6: Processing selective early retirement/selective retirement, *page 104*

**Figure List**

Figure 1–1: Sample format for retention affidavit, *page 9*
Figure 2–1: Sample format request for voluntary REFRAD or early release, *page 35*
Figure 2–2: Sample format for pregnancy statement of counseling, *page 36*
Figure 2–3: Sample format for DAADB recommendation, *page 37*
Figure 2–4: Sample format for officer's acknowledgment of notification, *page 38*
Figure 2–5: Sample format for involuntary release from active duty notification, *page 38*
Figure 2–6: Sample format for recommendation for involuntary release from active duty, *page 39*
Figure 2–7: Sample format for recommendation for involuntary early release from ADT, ADSW–AC, or ADSW–RC, *page 40*
Figure 3–1: Sample format for unqualified resignation, *page 49*
Figure 3–2: Sample format for resignation for failure to meet the medical standards at time of appointment, *page 50*
Figure 3–3: Sample format for pregnancy resignation, *page 51*
Figure 3–4: Sample format for the good of the service resignation, *page 52*
Figure 4–1: Format guidance for Board of Inquiry verbatim report, *page 72*
Figure 4–1: Format guidance for Board of Inquiry verbatim report—Continued, *page 73*
Figure 4–1: Format guidance for Board of Inquiry verbatim report—Continued, *page 74*
Figure 4–1: Format guidance for Board of Inquiry verbatim report—Continued, *page 75*
Figure 4–1: Format guidance for Board of Inquiry verbatim report—Continued, *page 76*
Figure 4–2: Board of Inquiry data sheet, *page 77*
Figure 4–2: Board of Inquiry data sheet—Continued, *page 78*
Figure 4–3: Sample format for initiation of elimination, *page 79*
Figure 4–3: Sample format for initiation of elimination—Continued, *page 80*
Figure 4–4: Sample format for resignation in lieu of elimination proceedings (substandard performance), *page 81*
Figure 4–5: Sample format for resignation in lieu of elimination proceedings (substandard performance of duty and/or misconduct, moral or professional dereliction, or in the interest of national security), *page 82*
Figure 4–6: Sample Format for Discharge in Lieu of Elimination Proceedings (For RA officers only - substandard proceedings), *page 83*
Figure 4–7: Sample format for discharge in lieu of elimination proceedings (Substandard performance of duty and/or misconduct, moral, or professional dereliction, or in the interest of national security), *page 84*
Figure 5–1: Sample format for resignation (nonselection for promotion), *page 91*
Figure 5–2: Sample format for request for discharge (nonselection for promotion), *page 92*
Figure 6–1: Format guidance for announcement of retirement, *page 105*
Figure 6–2: Format guidance for voluntary retirement application, *page 106*
Figure 6–2: Format guidance for voluntary retirement application—Continued, *page 107*
Figure 6–3: Format guidance for preretirement information, *page 108*

**Glossary**

## Chapter 1
## Introduction

### Section I
### Overview

### 1–1. Purpose
This regulation prescribes the officer transfers from active duty to the Reserve Component (RC) and discharge functions for all officers on active duty for 30 days or more. It provides principles of support, standards of service, policies, tasks, rules, and steps governing all work required to support officer transfers and discharges.

### 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

### 1–4. Statutory authority
Officer transfers and discharges are closely governed by statute and by Department of Defense directives and instructions. Personnel involved in officer transfers and discharges should remain alert to changes in the governing statutes and Department of Defense directives and instructions as those authorities take precedence over this regulation. Where governing statutes or Department of Defense Directives and Instructions supersede specific provisions of this regulation, the unaffected provisions of this regulation will remain in force.

### 1–5. Responsibilities
   *a.* The Deputy Assistant Secretary of the Army–Review Boards (DASA-RB) will act as the Secretary of the Army's designee in probationary officer eliminations, resignations, and discharges in lieu of elimination (RILE and DILE), resignations for the good of the service in lieu of court-martial (RFGOS), Boards of Review (BOR) in accordance with a delegation of authority by the Secretary of the Army. This regulation does not constitute a separate delegation of authority by the Secretary of the Army to the DASA-RB, but rather provides guidance in the administrative execution of that delegated authority by the Army Review Boards Agency (ARBA).
   *b.* The Deputy Chief of Staff, G–1 (DCS, G–1) will establish personnel policies relating to officer transfers and discharges.
   *c.* The Commanding General (CG), Human Resources Command, will establish standards and operating tasks for the officer transfer and discharge program.
   *d.* The Judge Advocate General (TJAG) will, upon request, review Department of the Army (DA) administrative changes to verify the legality of prescribed policies and changes.
   *e.* The Commandant, Adjutant General School, will ensure lesson programs of instruction incorporate the provisions of this regulation.
   *f.* Commanders of all major Army commands (MACOMs) will monitor the administration of the officer transfer and discharge program to ensure compliance with the policies and operating tasks established by this regulation.

### 1–6. Manpower requirements
Manpower requirements for the officer transfer and discharge functions will be as determined by the appropriate requirements procedures process. Requirements for table of distribution and allowances (TDA) organizations are determined by the Manpower Staffing Standard System and Manpower Surveys. Requirements for tables of organization and equipment (TOE) and modification tables of organizations and equipment (MTOEs) are determined by Manpower Requirements Criteria. The peacetime mission availability factor provides the link between TDA and TOE/MTOE organizations.

### 1–7. Levels of work
Most personnel work in the field is performed at three primary levels: the unit, battalion, and installation (or some equivalent of an installation). The focus of the guidance in this regulation is on those levels.
   *a.* Unit- and battalion-level work is performed at these respective levels.
   *b.* Installation-level work requires an understanding of the organizational structure. Work at the installation falls into two major categories.
   (1) *Command and staff* . Command and staff work includes that work required to manage the personnel strength of a command and to support the commander's decision process. The headquarters elements of all Army commands are responsible for command and staff work (brigades within Army divisions are notable exceptions.) Command and staff

work includes the release from active duty, discharge, retirements, eliminations, special correspondence, and personnel actions requiring a commander's decision.

(2) *Personnel support.* Personnel support (PS) work is that work performed by personnel support activities, either in the Personnel Service Company (PSC) or Military Personnel Division (MPD) or as a part of the base operations support structure. For United States Army Reserve (USAR) AGR Soldiers, PS work is performed by personnel services support teams (PSSTs).

*c.* The guidance in all chapters will address the following levels of work:

(1) *Soldier (SLDR).* Work beginning with input from a Soldier.

(2) *Unit.* Work executed at unit level.

(3) *Battalion.* Work executed at battalion level.

(4) *C&S.* Work executed within the chain of command and by staff elements (other than the battalion or brigade within a division).

(5) *Personnel support.* Work executed in a personnel support organization. The specific PS work centers required to perform the work for manpower purposes covered by this regulation are personnel plans and actions (PPAAs), transition center (TRCT), and Soldier actions (SACTs).

## 1–8. The officer transfer/discharge process

The officer transfer/discharge process has 43 tasks for separating or releasing an officer. These tasks are divided into the following six subfunctions:

*a.* Voluntary release from active duty (REFRAD).

*b.* Involuntary REFRAD.

*c.* Resignations.

*d.* Eliminations.

*e.* Miscellaneous types of separation.

*f.* Retirements.

## 1–9. Headquarters, Department of the Army (HQDA), addresses for officers

All officers separation requests and elimination actions (except retirement applications unless noted) will be forwarded to the appropriate addresses listed below or as required by this regulation.

*a.* General officers, Army Competitive Category (ACC) Colonels and promotable Lieutenant Colonels : HQDA (DACS–GOM), Office of the Chief of Staff, 200 Army Pentagon, Washington, DC 20310–0200 (also retirement applications).

*b.* Chaplains: HQDA (DACH–PER), Chief of Chaplains, 2700 Army Pentagon, Washington, DC 20310–2700.

*c.* Officers of The Judge Advocate General Corps: HQDA (DAJA–PT), The Judge Advocate General, 2200 Army Pentagon, Washington, DC 20310–2200.

*d.* Officers not assigned to a branch of service in *a* through *c* above: CDR, HRC-Alexandria (AHRC-OPD-A), 200 Stovall Street, Alexandria VA 22332-0478.

*e.* Retirement applications (except as noted in *a* and *f* will be forwarded through CDR, HRC–Alexandria (AHRC-(appropriate career management division)); HQDA (DAJA–PT); HQDA (DACH–PER), as applicable, to CDR HRC–Alexandria (AHRC–OPD–A), ALEX VA 22332–0478.

*f.* All USAR AGR officer separation and retirement applications: to CDR HRC–St. Louis (AHRC–AR), 1 Reserve Way, St. Louis, MO 63132–5200. Elimination actions will be processed by CDR, HRC–Alexandria.

## Section II
## Principles and Standards

## 1–10. Principles of support

The Military Personnel System will direct a function to—

*a.* Provide a mechanism to terminate the services of an officer prior to the terms of the original contract (both voluntarily and involuntarily).

*b.* Provide authority to transfer officers from one component to another.

*c.* Provide authority to discharge officers from all military obligations.

*d.* Support the Army's personnel life-cycle function of transition.

## 1–11. Standards of service

*a.* The officer transfer/discharge program is—

(1) A wartime military personnel function.

(2) Provided its function resources by the TOE PSC.

(3) The functional responsibility of the Personnel Operations Branch and PPAA work center (and their tactical counterpart).

*b.* Involuntary transfers and discharges will be processed to completion without delay upon initiation by the commander.

*c.* Wartime standards will be extended or curtailed as follows:

(1) Terms of service will be extended by the President and/or Congress through declaration of national emergency or war.

(2) Transfer and discharge authority (voluntary and involuntary) will be curtailed by the Secretary of the Army.

## Section III
## Scope

### 1–12. Eligibility for voluntary separation

*a.* An officer may request separation from the Army under the provisions of this regulation. The appropriate commander will ensure that the officer is separated on the date specified in the separation order and furnish the discharge certificate specified by CG, HRC (if appropriate).

*b.* A request for separation may be disapproved by the approval authority when the—

(1) Officer is under investigation or charges.

(2) Officer is awaiting result of trial.

(3) Officer is being considered for involuntary separation (Department of the Army Active Duty Board (DAADB) or elimination).

(4) Officer is absent without leave (AWOL).

(5) Officer is under control of civil authorities.

(6) Officer is mentally incompetent.

(7) Officer is in default with respect to public property or funds.

(8) Officer has not fulfilled an active duty service obligation (ADSO) specified in AR 350–100.

(9) Officer has not completed an initial USAR AGR tour or when voluntary separation is not in the best interests of the USAR AGR program.

(10) Secretary of the Army determines that existing needs of the Service require delay of favorable separation action. The retention period will be specified when the decision is made to delay the separation.

(11) President or Congress has declared a period of national emergency or war is imminent or in progress.

*c.* Voluntary requests for separation under this regulation may be accepted only from an officer who is mentally competent when the request is submitted. When an officer is medically incapacitated from further military service due to a physical or mental condition, the officer's case will be delayed until he or she recovers or the officer is processed through medical channels.

### 1–13. Counseling

*a.* When a commissioned officer (except for chaplains, judge advocates, and Army Medical Department (AMEDD) personnel) with less than 10 years active Federal commissioned service (AFCS) submits a request for a voluntary REFRAD under chapter 2 or an unqualified resignation under chapter 3, the first colonel in the officer's chain of command or supervision will counsel the officer (this is only required when listed in the appropriate table). The judge advocates, chaplains, and AMEDD officers will be counseled by a senior officer of their branch in the chain of technical supervision or as specifically designated by their branch. If the officer is an RC officer on the active-duty list (ADL) or an AGR officer, and the officer is one-time non-select for promotion, then the requirement for counseling is waived.

*b.* Counseling will include—

(1) Advice concerning the opportunities available in a military career.

(2) A discussion of the officer's previously achieved investment in the Army.

(3) A determination as to whether the officer has satisfied all applicable service obligations, as computed by HRC.

(4) A determination that the officer is not under investigation or charges, awaiting results of trial, or being considered for administrative elimination.

(5) A determination that the officer is not AWOL, in the confinement of civil authorities, suffering from a severe mental disease or defect, or in default in respect to public property or public funds.

(6) Advice encouraging a Regular Army (RA) officer to accept an appointment in the USAR. An RC officer will be encouraged to retain commissioned status in the USAR.

(7) Information concerning USAR career opportunities may be obtained from agencies listed in table 1–1.

**Table 1–1**
**USAR addresses**

| Officers assigned to | Send requests to |
|---|---|
| continental United States (CONUS) (and all other areas not specifically identified below) | COMMANDER<br>HRC–St. Louis<br>ATTN: AHRC–OP<br>1 Reserve Way<br>ST LOUIS MO 63132–5200<br>Telephone:<br>1–800–325–4898 |
| U.S. ARMY, EUROPE (USAREUR) | COMMANDER<br>1st HRC<br>ATTN: AEUPE–PSSD–TMD–AR<br>Unit 29058<br>APO AE 09081<br>Telephone:<br>COM 06202–80–9471<br>European telephone system 379–9471/6292 |
| Eighth U.S. Army (Korea) | COMMANDER<br>8th HRC<br>ATTN: EAPC–PM–R<br>APO AP 96301<br>Telephone:<br>Yongsan 724–8472/8491<br>Defense Switched Network (DSN) 315–724–8472/8491 |
| U.S. ARMY, PACIFIC<br>All Pacific areas except Korea | COMMANDER<br>U.S. ARMY PACIFIC<br>ATTN: APAG–R<br>FORT SHAFTER HI 96858<br>Telephone:<br>808–438–6135 |
| USAR AGR | COMMANDER<br>HRC–St. Louis<br>ATTN: AHRC–ARO<br>1 Reserve Way<br>ST LOUIS MO 63132–5200<br>Telephone:<br>1–800–325–5200 |

## 1–14. Separation pay

Eligibility for and payment of separation pay is governed by Department of Defense (DOD) Instruction 1332.29 and the Department of Defense Military Pay and Allowances Entitlements Manual (DODPM). See DODPM, part 4, chapter 4, section B, for determination of entitlements to nondisability separation pay.

## 1–15. Leave

Commanders may grant leave in accordance with AR 600–8–10 in conjunction with an officer's separation. However, this leave must be taken prior to the effective date of separation.

## 1–16. Recoupment

Individuals who participate in certain advanced education programs and fail to complete their educational requirements or military service obligations (Active Army and/or RC) are subject to the recoupment provisions of AR 37–104–4, chapter 31. This must be accomplished prior to separation of an individual who has not fulfilled the ADSO incurred as a result of participation in that advanced education program, in accordance with applicable law and regulations.

## 1–17. An officer under investigation or pending court-martial

An officer pending court-martial charges or investigation with a review toward court-martial will not be separated without HQDA approval.

## 1–18. An officer awaiting appellate review of adjudged dismissal or dishonorable discharge

An officer who has been convicted and sentenced to dismissal or dishonorable discharge will not be discharged prior to completion of appellate review without prior approval of CG, HRC. A Regular Army (RA) officer may be processed for excess leave under AR 600–8–10. An RC officer may be released from active duty (AD) per paragraphs 2–37 and 2–38 of this regulation.

**1–19. Action required prior to involuntary separation or under other than honorable discharge of personnel with access to sensitive programs**

*a.* Procedures described below apply to officers in the following categories:

(1) Knowledge of sensitive compartmented information.

(2) Nuclear Weapon Personnel Reliability Program assignment.

(3) Knowledge of Single Integrated Operational Plan—Extremely Sensitive Information.

(4) Special Access Program knowledge.

(5) Presidential Support assignment.

*b.* Prior to involuntary separation or other than honorable discharge of personnel in any of the above categories, the individual's commander/supervisor will coordinate with the supporting security official (Assistant Chief of Staff (Intelligence)/Intelligence Officer, U.S. Army/Security Manager). Special security policies apply that may impact the separation procedure. Separation/discharge will not be effected unless the security official concurs with the action.

**1–20. Reassignment of an officer pending involuntary separation**

Unless otherwise directed by CG, HRC, (or CDR, HRC–St. Louis for USAR AGR officers), an officer pending an involuntary separation action will not undego a PCS reassignment until the case is closed.

**1–21. Termination of appointment (ADL officer only)**

Acceptance of the resignation or the discharge of an officer in a Regular Army (RA) or Reserve status, unless otherwise specified in this regulation, will result in appropriate action being taken to terminate any warrant or temporary commission he or she may be holding simultaneously. However, when the best interests of the Government and the individual will be served, a warrant officer may, at the discretion of the accepting authority, be permitted to resign from a particular warrant or commissioned status.

**1–22. Types of administrative discharge/character of service**

When an officer's tour of AD is terminated due to discharge, retirement, or REFRAD, the period of service will be characterized as " Honorable," "General" ("Under Honorable Conditions"), "Under Other Than Honorable," or "Dishonorable" (warrant officers who do not hold a commission only), depending on the circumstances. The character of service will be predicated on the officer's behavior and performance while a member of the Army. Characterization normally will be based on a pattern of behavior and duty performance rather than an isolated incident. However, there are circumstances in which conduct reflected by a single incident may provide the basis of characterization of service.

*a. Honorable characterization of service (HD).* An officer will normally receive an Honorable characterization of service when the quality of the officer's service has met the standards of acceptable conduct and performance of duty, or the final revocation of a security clearance under DOD Directive (DODD) 5200.2-R and AR 380-67 for reasons that do not involve acts of misconduct, for an officer. Department of Defense (DD) Form 256A (Honorable Discharge Certificate) will be furnished to a discharged officer; however, a certificate is not issued when an officer is released from AD. When the separation is based solely on preservice activities, substandard performance of duty, or final revocation of a security clearance under DODD 5200.2–R and AR 380–67 for reasons that do not involve acts of misconduct, it will be Honorable.

*b. General Under Honorable Conditions characterization of service (GD).* An officer will normally receive an Under Honorable Conditions characterization of service when the officer's military record is satisfactory but not sufficiently meritorious to warrant an Honorable discharge. A separation under honorable conditions will normally be appropriate when an officer—

(1) Submits an unqualified resignation or a request for REFRAD under circumstances involving misconduct.

(2) Is separated based on misconduct, including misconduct for which punishment was imposed, which renders the officer unsuitable for further service, unless an Under Other Than Honorable Conditions separation is appropriate.

(3) Is discharged for physical disability resulting from intentional misconduct or willful neglect, or which was incurred during a period of unauthorized absence.

(4) Is discharged for the final revocation of a security clearance under DODD 5200.2-R and AR 380-67 as a result of an act or acts of misconduct, including misconduct for which punishment was imposed, unless a discharge Under Other Than Honorable Conditions is appropriate.

*c. Under Other Than Honorable Conditions characterization of service (OTH).* A discharge Under Other Than Honorable Conditions is an administrative separation from the service under conditions other than honorable. A discharge certificate will not be issued. An officer will normally receive an "Under Other Than Honorable Conditions" when they—

(1) Resign for the good of the service (chap 3).

(2) Are dropped from the rolls of the Army per paragraph 5–15.

(3) Are involuntarily separated due to misconduct, moral or professional dereliction, or for the final revocation of a security clearance under DODD 5200.2-R and AR 380-67 as a result of an act or acts of misconduct, including misconduct for which punishment was imposed.

(4) Are discharged following conviction by civilian authorities (see para 2–33).

*d. Dishonorable characterization of service.* A court-martial may sentence a warrant officer who is not commissioned to a Dishonorable Discharge. A discharge certificate will not be issued.

*e. Undetermined characterization of service.* An officer's service will be characterized as "to be determined" when released from AD duty when being processed for elimination action (chap 4).

*f. No formal discharge certificate.* No formal discharge certificate will be issued when the officer is—

(1) Dropped from the rolls of the Army (see paras 5–15 and 5–16).

(2) Dismissed as a result of sentence of court-martial.

(3) Removed under the criminal code of the United States.

(4) Discharged Under Other Than Honorable Conditions.

(5) Separated with a Dishonorable discharge (applies only to a warrant officer who does not hold a commission).

*g. Release or discharge from active duty.* A DD Form 214 (Certificate of Release or Discharge from Active Duty) will be furnished as prescribed in AR 635–5 to an officer who is separated from AD after completing 90 calendar days of continuous AD.

## 1–23. Medical examination/retention

*a.* The officer's immediate commander will ensure that medical examination procedures are followed as stated in AR 40–501.

*b.* An officer may only be retained past separation date for medical reasons when continued hospitalization and/or physical disability processing is required. An officer being retired (voluntary or involuntary) due to maximum age (see paras 6–26 and 6–27) or length of service (see para 6–28) will not be retained on AD unless the medical condition requires referral to a Physical Evaluation Board (PEB) (see para 6–7). An officer who is medically fit for retention will not be retained beyond the established separation date. An officer will not be retained without written consent (see *f* below).

*c.* The commander of the medical treatment facility (MTF) will forward requests for retention endorsed by the officer's unit commander, through the Office of the Surgeon General, HQDA (DASG–PSA), Falls Church, VA 22041–3258; to Commander, HRC–Alexandria (AHRC–OPD–A), 200 Stovall Street, Alexandria, VA 22332–0478; or for AGR personnel to Commander, HRC–St. Louis (AHRC–AR), 1 Reserve Way, St. Louis, MO 63132–5200, as appropriate or for Title 10 AGR (ARNGUS) Soldiers to Chief, National Guard Bureau, ATTN: NGB-ARZ-T, 1411 Jefferson Davis Highway, Arlington, VA 22202–3231, as appropriate, for approval. The requests will include the following information:

(1) Officer's name, rank, and social security number (SSN).

(2) Reason for release (for example, nonselection for promotion).

(3) Scheduled release date.

(4) Medical reasons for retention.

(5) Medical facility point of contact.

(6) A copy of the retention affidavit (see fig 1–1).

*d.* The officer will be advised of the following retention advantages:

(1) Medical care and/or hospitalization provided.

(2) Normal benefits such as pay and allowances, to include continued post exchange and commissary privileges.

(3) Dependent medical care when an officer is ordered to AD for more than 30 days.

(4) The additional active service is creditable for longevity and retirement. For Reserve officers ordered to AD for 30 days or less, any retention under *b*, above, past the termination date of the orders is not creditable as AD for retirement under section 12731, title 10, United States Code (10 USC 12731). (See *g*, below.)

(5) State income tax benefits where allowed by law.

*e.* Advise the officer that if he or she is eligible for disability separation, the advantages are as follows:

(1) If permanently retired, election of the most favorable retired pay allowed. If temporarily retired, the same selection of pay is authorized, but the minimum will not be less than 50 percent of the basic pay.

(2) If retired, the officer, along with dependents, will be eligible for certain medical care when facilities and staffing permit at uniformed services facilities and certain medical care in civilian facilities (see AR 40–3).

(3) The percentage of retired pay that is based on the disability will be exempt from taxation.

(4) If discharged for disability, the officer may be entitled to separation pay.

*f.* The retained officer will sign the retention affidavit (see fig 1–1). The next of kin or legal representative will sign for the retained officer when the retained officer is mentally incompetent or unable to sign. If the officer is unable to sign and the next of kin or legal representative cannot be located or will not indicate whether the officer will be retained, the officer will be retained until a retention decision is reached. The hospital commander will forward the details of the case as required by *c*, above. File a copy in the officer's Military Personnel File (MPF).

*g.* See AR 135–381 concerning procedures for RC officers on active duty for training (ADT), temporary tours of active duty (TTAD), or active duty for special work (ADSW) tours of 30 calendar days or less and are hospitalized.

## 1–24. Referral for physical disability evaluation

If a commissioned or warrant officer is being processed for REFRAD, separation, or retirement or has been referred for elimination action, when it is determined that the officer has a medical impairment that does not meet medical retention standards, the officer will be processed as set forth in paragraphs *a,* through *d,* below.

*a.* A commissioned or warrant officer under investigation for an offense chargeable under the Uniform Code of Military Justice (UCMJ) that could result in dismissal or punitive discharge may not be referred for or continue disability processing unless—

(1) The investigation ends without charges.

(2) The commander exercising proper court-martial jurisdiction dismisses the charges.

(3) The commander exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

*b.* When a commissioned or warrant officer, as applicable, is being processed for one of the actions listed in *(1)* through *(5),* below, the officer will be processed in accordance with the provisions of this regulation and through the MEB/PEB system. If the result of the physical disability evaluation is a finding of physical fitness, the Army Physical Disability Agency will approve the findings for the Secretary of the Army and forward the proceedings to CDR, HRC–Alexandria (AHRC–OPD–A), to be processed with the other action. If a physical disability evaluation results in a finding of physical unfitness, both actions will be forwarded to CG, HRC–Alexandria (AHRC–OPD–A), to the Secretary of the Army or his designee for determination of appropriate disposition.

(1) Referral to the DAADB except when the DAADB is convened as a result of an imposed reduction in force.

(2) Involuntary REFRAD due to civil conviction or moral turpitude.

(3) Resignation for the good of the service.

(4) Referral for elimination under chapter 4.

(5) Request for separation, resignation, or retirement in lieu of elimination.

*c.* When a physical disability evaluation of an officer processed for separation or retirement for the reasons indicated above results in a finding of unfitness and a recommendation that the officer be placed on the Temporary Disability Retirement List (TDRL), the Secretary of the Army or his designee may direct that the officer be placed on the TDRL with the provision that if the officer is later removed in due course from the TDRL for disability separation or retirement, the officer is to be retired, but if the officer is later removed in due course from the TDRL because he is found fit, the officer is to be separated from the service, effective on the date of the officer's removal from the TDRL with a specified characterization of discharge. As in the case of an officer processed for separation or retirement for the reasons indicated above whose physical disability evaluation results in a finding of unfitness and a recommendation that the officer be separated or permanently retired, the Secretary of the Army or his designee may direct that either the separation or retirement action under this regulation or the disability action take precedence.

*d.* When an officer is processed for separation or retirement for reasons other than those indicated above, physical disability takes precedence if the officer is retained with consent. The procedures in paragraph 1–22 will be followed.

*e.* Officers previously determined physically unfit and continued on active duty under AR 635–40 must be referred for disability evaluations at final retirement or separation.

## 1–25. Indebtedness

An officer will not be retained on AD to satisfy an indebtedness to the Government or for collection of forfeitures adjudged by court-martial. The officer's final separation order will indicate the total amount of unpaid indebtedness and forfeitures due the Government on the REFRAD date (see the DODPM).

## 1–26. Return from overseas

An officer stationed outside continental United States (OCONUS), who has a pending separation action will not be returned from the OCONUS command without HRC approval or in the case of officers in special branches, without notifying special branch personnel managers also.

## 1–27. Assignment of personnel to a U.S. Army transition point/transition activity

*a.* An officer stationed in CONUS who must be reassigned to a U.S. Army transition point/transition activity (TP/TA) will be processed according to AR 635–10.

*b.* The OCONUS commander will issue orders returning the officer to a CONUS (or other area of residence) U.S. Army TP/TA according to AR 635–10, unless otherwise directed by CG, HRC. Consistent with availability of transportation, an officer will be returned only early enough to permit transfer processing for separation and normal travel time.

*c.* HRC–Alexandria (AHRC–OPD–A) will issue separation instructions on all other officers not later than 30 calendar days before the scheduled release date.

## 1–28. Separation requests/actions for Reserve Component

Separation requests or actions not specifically covered in this regulation that pertain to an RC officer not on the ADL will be routed to CDR, HRC–St. Louis; for an Army National Guard (ARNGUS) officer, requests or actions will be routed to the appropriate State adjutant general for processing.

## 1–29. Separating an officer in a foreign country

*a.* Officers eligible for separation and serving in a foreign country may be separated in that country, provided the—

(1) Officer requests separation in that country.

(2) Officer's separation in that country is not precluded by any other provision.

(3) Foreign government concerned has either formally or informally—

*(a)* Consented to the officer's separation in its territory.

*(b)* Consented generally to the separation of an officer otherwise eligible for separation under (1) and (2) above.

*b.* An officer will obtain all necessary documents for lawful presence in the foreign country prior to separation in that country.

*c.* The MACOM may disapprove requests for separation in an OCONUS command when—

(1) Revocation action pursuant to AR 380–67, chapter 8, has been taken against the officer during current term of AD.

(2) The officer's access to defense information is suspended under AR 380–67, chapter 8.

(3) There is cogent reason that the officer's presence in the OCONUS area in a nonmilitary status would endanger U.S. national security.

(4) Other cogent reasons exist that the officer should not be separated in the OCONUS command.

## 1–30. An officer confined pursuant to the sentence in a foreign court

*a.* An officer confined in a foreign penal institution pursuant to the sentence of a foreign court may be separated from the Service during period of confinement only—

(1) With the approval of CG, HRC.

(2) After final action (including final appellate action, if any) by the foreign authority.

(3) With the specific consent of the country concerned to the officer's separation in its territory.

*b.* When the OCONUS commander considers separating an officer before completing sentence to confinement, the commander will forward the request for approval to CDR, HRC–Alexandria (AHRC–OPD–A), with the following documentation:

(1) Name, grade, SSN, and branch of service.

(2) Last organization and assignment.

(3) Offense(s) alleged to have been committed and the related facts and circumstances.

(4) Court that tried the officer.

(5) Date and place of trial.

(6) Offense(s) of which the officer was convicted.

(7) The officer's sentence.

(8) Matters in mitigation, extenuation, or aggravation.

(9) Appellate action, if any, and result.

(10) Whether the action of the foreign court is final or whether further appellate action is possible or contemplated.

(11) Place and condition of confinement.

(12) Possibility for parole and pertinent facts.

(13) Special facts and circumstances, including reasons supporting discharge during confinement.

(14) Whether consent for separation in the territory of the foreign country concerned has been obtained from that country.

*c.* While an officer is confined in a penal institution, commander may initiate action for the officer to be discharged upon release from confinement and returned to the United States or its Territorial possessions.

## 1–31. Separation while under investigation or sentenced but not confined by a foreign court

*a.* Only after final action by the foreign country can the following officers be considered for separation under paragraphs 1–29 and 1–30, whichever is appropriate.

(1) An officer whose sentence to confinement by a foreign court is not suspended and who is not confined pending appellate action.

(2) An officer who is not confined but is charged with or is under investigation for an offense that is subject to the jurisdiction of foreign authorities that could lead to confinement.

*b.* An officer who was accepted for separation in a foreign country but who is not stationed in that country may be returned to the place of acceptance and be separated from there if in compliance with paragraph 1–29.

## 1–32. Discharge based on conscientious objection
Process according to AR 600–43.

## 1–33. Interservice transfer of Army commissioned officers on the active duty list
Process according to AR 614–120.

---

THE ARMY OF THE UNITED STATES AFFIDAVIT

At *(location)*, personally appeared before me, the undersigned, authorized by law to administer oaths pursuant to the Uniform Code of Military Justice, article 136, one *(name)* who, after being advised by me of the rights and advantages of remaining in an active duty status in the Army beyond the scheduled date of separation for the purpose of completion of hospital care and/or physical disability evaluation under the provisions of title 10 U.S. Code, chapter 61, and after being duly sworn, deposes and says--

I, *(name)* have been fully advised by the undersigned officer of the rights and advantages that may accrue to me by voluntarily remaining on active duty in the Army beyond the scheduled date of my separation for the purpose of completing hospital care and/or physical disability evaluation under the provisions of title 10, U.S. Code, chapter 61, and have been further fully advised that if I elect to be separated from active duty as scheduled, I will not after such separation or retirement be eligible for separation or retirement for physical disability.

Wherefore, in consideration of the above, I *(do/do not)* desire retention on active duty in the Army beyond the scheduled date of expiration of my term of service.

*(Signature of officer)*                                    *(Grade and organization*
                                                            *of officer administering oath)*

**Figure 1–1. Sample format for retention affidavit**

---

# Chapter 2
# Release from Active Duty of Reserve Component Commissioned and Warrant Officers

## Section I
## Introduction

## 2–1. Scope
This chapter sets forth the tasks, rules, and steps for the release from active duty (REFRAD) of RC officers and officers of the Army of the United States without specification of component, including those assigned to other than Department of the Army agencies.

## 2–2. Separation approval authority
Commanders listed in *a* through *c*, below, are known as separation approval authorities (SAAs), and unless otherwise stated they are granted the authority to approve certain requests for REFRAD. The SAA cannot disapprove a request (with the exception of HRC–St. Louis for USAR AGR officers) but will make a recommendation and forward to CDR, HRC (AHRC–OPD–A); HQDA (DAJA–PT); or HQDA (DACH–PER), as applicable; or for USAR AGR officers, to

CDR, HRC–St. Louis (AHRC–AR)). This authority will not be further delegated without prior approval of the Secretary of the Army.

*a.* General officers in command of Army Medical Centers.

*b.* Commanders of units and installations having general court-martial (GCM) authority.

*c.* Commanders of—

(1) Personnel centers.

(2) Training centers.

(3) OCONUS replacement depots.

(4) All active Army installations authorized 4,000 or more AD military personnel.

(5) HRC–St. Louis.

*d.* Unless otherwise stated, the appropriate related paragraph will be cited as the separation authority.

*e.* The related separation program designator (SPD) codes are provided in AR 635–5–1.

## 2–3. Status upon separation

*a.* Unless discharged, officers holding a Reserve appointment will retain their current permanent grade in the RC.

*b.* Service academy graduates and Reserve Officers' Training Corps (ROTC) Distinguished Military Graduates (DMG) who are released/separated from active duty before completing their ADSO will complete the remainder of their ADSO in the Selected Reserve. This requirement may only be waived by the Assistant Secretary of the Army for Manpower and Reserve Affairs (ASA(M&RA)) or their delegate if he or she determines that no unit vacancy is available for the officer. The Selected Reserve includes troop units of the ARNGUS and Army Reserve, the AGR Program, and Individual Mobilization Augmentation Program.

*c.* AR 135–91 defines various statutory and contractual service obligations (to include methods of fulfillment) incurred by Reserve personnel on initial entry into military service. Officers not continued on AD in another status will be released from AD and returned to Army National Guard of the United States (ARNGUS) or USAR by separation orders.

*d.* An officer must serve in the Armed Forces until completion of the statutory military service obligation (MSO) (10 USC 651). In accordance with DOD Instruction (DODI) 1304.25, an officer has an 8–year MSO. REFRAD under provisions of chapter 2 of this regulation does not terminate the MSO. An officer who requests REFRAD before completing the 8–year MSO must complete the MSO in a Reserve Component, or submit a resignation under chapter 3 of this regulation with a request for waiver of the MSO by the ASA (M&RA). To waive an officer's MSO, the ASA (M&RA) must find that the officer has no potential for service under conditions of full mobilization.

## 2–4. Years of service

*a.* For the purpose of this chapter, years of service applies to all periods of service in which the officer held an appointment as a commissioned officer, other than constructive service and service as a warrant officer.

*b.* Travel time will be included in years of service computation for officers who are ordered to AD exceeding 30 calendar days (37 USC 204 (b)).

## Section II
## Task: Process Voluntary Release from Active Duty Due to Personal Reasons

## 2–5. Rules for processing voluntary release from active duty due to personal reasons

*a.* If eligible under the criteria prescribed below, an officer may request REFRAD (see fig 2–1) whenever such action is considered appropriate. Unless specified otherwise in this paragraph, application for REFRAD will be submitted not earlier than 12 months or no later than 6 months before the desired release date or beginning date of transition leave, whichever is the earliest. The officer's immediate (or higher) commander/supervisor may waive the 6–month requirement if the needs of the Army are met through a change in mission requirement or the assignment of a replacement officer.

*b.* To be eligible for REFRAD under this section, an officer must have—

(1) Completed the current period of service required by law or the minimum period required by the program that placed the officer on AD as a commissioned or warrant officer.

(2) Completed 1 year of current AD commitment, unless such commitment was submitted and approved with stipulations of AR 135–215 or AR 140–30 for AGR officers that authorize earlier REFRAD.

(3) Fulfilled the following additional service requirements, as applicable:

*(a)* Officers who have departed the CONUS normally will be required to complete the current prescribed tour for the areas of assignment as specified in AR 614–30, unless returned earlier under existing policies.

*(b)* Officers who have attended service schools or civilian educational institutions or participated in special training for which a utilization tour is required, or who have received continuation or accession pay, normally will complete the

period of service specified. The period of service will be as specified by AR 350–100 and other appropriate regulations under which officers applied for or received such schooling or benefits.

*(c)* Officers on orders for assignment to a military mission, a Military Assistance Advisory Group, or attache office must complete their training and the OCONUS tour of duty prescribed by AR 614–30.

*(d)* All other officers who receive a permanent change of station (PCS) will be required to serve 1 year at their new duty station.

*(e)* Service academy graduates and ROTC DMGs who are released/separated from active duty before completing their ADSO will complete the remainder of their ADSO in the selected Reserve. This requirement may only be waived by the ASA(M&RA) or their designee.

*c.* In all other cases, HQDA reserves the right to require compliance with orders to a course of instruction that will result in an ADSO or reassignment orders in continental United States (CONUS) or to any OCONUS assignment, if such orders are announced prior to submission of application for REFRAD. However, exceptions will be considered on an individual basis provided the application for REFRAD is received by commanders exercising general courts-martial convening authority (GCMCA) jurisdiction or commanders at a comparable level of command. The exception must be forwarded within 30 calendar days of receipt of the alert or reassignment order, whichever is earlier, and the requested effective date can not be more than 6 months subsequent to date of application. Officers who are service obligated beyond 6 months may submit their application for REFRAD, as an exception to policy, more than 6 months in advance of the requested effective date. The nonstatutory criteria in this paragraph may be waived only by HQDA on a case by case basis.

*d.* If the application is approved, HRC (AHRC–OPD–A) (or HRC–St. Louis (AHRC–AR) for USAR AGR officers) will forward separation instructions to the appropriate personnel service company/military personnel division (PSC/MPD).

*e.* If disapproved, HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), HQDA (DACH–PER), or HRC–St. Louis (AHRC–AR), as applicable, will return the application to the officer through channels.

## 2–6. Steps for processing voluntary release from active duty due to personal reasons
The steps required for processing voluntary REFRAD due to personal reasons are as shown in table 2–1.

**Table 2–1**
**Processing voluntary REFRAD for personal reasons**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Submits REFRAD request (fig 2–1) for personal reasons to commander within the time frame established in the above rules. |
| 2 | SACT BN S–1 | Processes the request. Ensures counseling is accomplished as stated in paragraph 1–12. The request will include— *a.* The officer's reason for requesting REFRAD. *b.* A brief synopsis of the counseling session (para 1–12). *c.* Then date the officer reported on the current tour of AD; type, effective date, and date of termination of current AD commitment. *d.* Whether officer is occupying a "key" position and a replacement is required. *e.* Whether services of the officer have been such as to entitle him or her to be released from AD under honorable conditions. *f.* Whether medical board or PEB proceedings are pending or appropriate. *g.* Whether the officer is currently undergoing a course of instruction that will result in an ADSO upon completion or termination. Specify course title, beginning and closing dates, and ADSO incurred. *h.* Whether responsible for public property or funds. *i.* Recommendation for approval or disapproval and character of service. Include complete justification when approval is recommended and the officer has not fulfilled an ADSO. Also include justification for disapproval. *j.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, or under the control of civil authorities. *k.* Date officer departed CONUS or other area of residence for OCONUS assignment. Date of arrival of dependents, whether at Government or personal expense, whether logistical support was furnished, and the rotation date, if applicable. |

**Table 2–1**
**Processing voluntary REFRAD for personal reasons—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 3 | BN S–1 C&S | *a.* Reviews and makes recommendation. Request will be forwarded by commanders exercising GCMCA jurisdiction and commanders at a comparable level of command to CDR, HRC–Alexandria (AHRC–OPD–A), for final action or to ATTN HQDA (DAJA–PT), THE JUDGE ADVOCATE GENERAL, 2200 ARMY PENTAGON, WASH DC 20310–2200; or ATTN HQDA (DACH–PER), CHIEF OF CHAPLAINS, 2700 ARMY PENTAGON, WASH DC 20310–2700; as applicable, for final action. Approved actions will be forwarded to CDR, HRC–Alexandria (AHRC–OPD–A), for separation message processing.<br>*b.* For USAR AGR officers, the commander exercising general court-martial (GCM) authority and commanders at a comparable level of command will send requests to CDR, HRC–St. Louis (AHRC–AR), for final action/separation processing. |
| 4 | SACT (TP/TA) | Receives separation instructions and separates the officer. Final release orders and separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section III
## Task: Process Voluntary Release from Active Duty Due to Expiration of AD Commitment

### 2–7. Rules for processing voluntary release from active duty due to expiration of active duty commitment

*a.* Applications for REFRAD will be submitted not earlier than 12 months or less than 6 months before the desired release date or beginning date of transition leave, whichever is the earliest. The officer's immediate (or higher) commander/supervisor may waive the 6–month requirement if the needs of the Army are met through a change in mission requirement or the assignment of a replacement officer.

*b.* The SAA will forward separation instructions to the appropriate PSC/MPD and ensure that an officer under jurisdiction is released as scheduled.

*c.* An officer not under the jurisdiction of a commander having SAA will be reported to HRC–Alexandria (AHRC–OPD–A) not later than 60 calendar days prior to scheduled date of REFRAD. USAR AGR officers will be reported to HRC–St. Louis (AHRC–AR) or HRC–Alexandria (AHRC–OPD–A) (or HRC–St. Louis (AHRC–AR) for USAR AGR officers) will forward separation instructions to the appropriate PSC/MPD.

### 2–8. Steps for processing voluntary release from active duty due to expiration of active duty commitment

The steps required for processing an officer's voluntary REFRAD on expiration of AD commitment are as shown in table 2–2.

**Table 2–2**
**Processing voluntary REFRAD due to expiration of AD commitment**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | C&S | Issue separation instructions, if applicable. |
| 2 | PPAA (TP/TA) | Receives separation instructions from the SAA or HRC and separates the officer in sufficient time in order to allow the officer to arrive at home not later than 2400 hours on the day of completion of tour. Final release orders and separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IV
## Task: Process Voluntary Release from Active Duty Due to Hardship

### 2–9. Rules for processing voluntary release from active duty due to hardship

*a.* An officer may be released from AD due to extreme personal or family hardship. Hardship exists when in circumstances involving death or disability of a member of the Soldier's (or spouse's) immediate family, separation from the Service will materially affect the care or support of the family by alleviating undue and genuine hardship. The officer must clearly establish that one of the following applies:

(1) The hardship is permanent and did not exist prior to entry on AD.

(2) If the hardship existed prior to entry on AD, the condition has since intensified and can only be alleviated by separating from AD.

(3) Upon REFRAD the officer will be able to eliminate or materially alleviate the condition.

*b.* If the application has been disapproved by CG, HRC; TJAG; the Department of Army Chief of Chaplains (DACH); or CDR, HRC–St. Louis (AHRC–AR), a new application will not be submitted under the same authority unless there is new material evidence to support reapplication.

*c.* If the application is approved, HRC–Alexandria (AHRC–OPD–A) or HRC–St. Louis (AHRC–AR), as applicable, will forward separation instructions to the appropriate PSC/MPD. If the officer was commissioned through a funded program (for example, Army Medical Department (AMEDD), Funded Legal Education Program (FLEP), United States Military Academy (USMA), Reserve Officers' Training Corps (ROTC), or a special procurement program) or is a training recipient, recoupment may be required on a prorated basis.

*d.* If the application is disapproved, HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), HQDA (DACH–PER), or HRC–St. Louis (AHRC–AR), as applicable, will return the application to the officer through channels.

## 2–10. Steps for processing voluntary release from active duty due to hardship

The steps required for processing voluntary REFRAD due to hardship are shown in table 2–3.

**Table 2–3**
**Processing voluntary release from active duty due to hardship**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Submits REFRAD request (fig 2–1) for hardship with supporting documents to commander 90 calendar days prior to the requested release date. |
| 2 | SACT BN S–1 | Processes the request. Ensures counseling is accomplished as stated in paragraph 1–12. The request will include— <br> *a.* The officer's reason for requesting hardship REFRAD. <br> *b.* A brief synopsis of the counseling session (para 1–12). <br> *c.* Date officer reported on current tour of AD; type, effective date, and date of termination of current AD commitment. <br> *d.* Whether officer is occupying a"key" position and a replacement is required. <br> *e.* Whether services of the officer have been such as to entitle him or her to be released from AD under honorable conditions. <br> *f.* Whether medical board or PEB proceedings are pending or appropriate. <br> *g.* Whether the officer is currently undergoing a course of instruction that will result in an ADSO upon completion or termination. Specify course title, beginning and closing dates and ADSO incurred. <br> *h.* Whether responsible for public property or funds. <br> *i.* Recommendation for approval or disapproval and characterization of service. Include complete justification when approval is recommended and the officer has not fulfilled an ADSO. Also include justification for disapprovals. <br> *j.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, or under the control of civil authorities. <br> *k.*Date officer departed CONUS or other area of residence for OCONUS assignment. Date of arrival OCONUS of dependents, whether at Government or personal expense, whether logistical support was furnished and the rotation date, if applicable. |
| 3 | BN S–1 C&S | Reviews and makes recommendation. Forwards the request through channels, as appropriate, to HRC–Alexandria (AHRC–OPD–A) for final action or to HQDA (DAJA–PT) or HQDA (DACH–PER), as applicable, for final action. A request submitted by an officer temporarily in CONUS from an OCONUS command will be forwarded directly to HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), or HQDA (DACH–PER), as applicable, for final action. |
| 4 | SACT (TP/TA) | Receives separation instructions and separates the officer. Final release orders and separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section V
## Task: Process Voluntary Release from Active Duty Essential to National Interest

## 2–11. Rules for processing voluntary release from active duty essential to national interest

*a.* An officer may request REFRAD (see fig 2–1) to provide more valuable service (in civilian capacity) to the nation. The request must be motivated by national interest and not personal desire.

*b.* An officer elected or appointed to Congress will be released without application.

*c.* An officer appointed to a Federal Court or Federal or State public office or elected to a public office of a State may be released from AD on written request, provided the evidence establishes that the office to which appointed or elected requires full-time service. Officers commissioned through a funded program (for example, AMEDD, FLEP, USMA, ROTC, or special procurement programs), will not be released until completion of that initial Service school obligation.

*d.* If the application is approved, HRC–Alexandria (AHRC–OPD–A) (or HRC–St. Louis (AHRC–AR) for USAR AGR officers) will forward separation instructions to the appropriate PSC/MPD.

*e.* If disapproved, HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), HQDA (DACH–PER); or HRC–St. Louis (AHRC–AR), as applicable, will return the application to the officer through channels.

## 2–12. Steps for processing voluntary release from active duty essential to national interest

The steps required for processing voluntary REFRAD that is essential to national interest are as shown in table 2–4.

**Table 2–4**
**Processing voluntary REFRAD that is essential to national interest**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Submits essential to national interest REFRAD request (fig 2–1) with supporting documents to commander. |
| 2 | SACT BN S–1 | Processes the request. Ensure counseling is accomplished as stated in paragraph 1–12. The request will include—<br>*a.* Name of firm or agency or enterprise with which applicant will be associated, product manufactured or services, title and description of position to be filled, and applicant's qualifications for the position.<br>*b.* Applicant's connection with the activity prior to military service.<br>*c.* Documentation from appropriate officials substantiating *a* and *b,* above and the need for the services and indicating the latest date position must be filled.<br>*d.* Certification from appropriate civil official when an officer is appointed to a Federal Court or Federal or State public office or elected to a public office of a State. Certification will state the office to which the officer has been elected or appointed and whether such office requires full-time service.<br>*e.* A brief synopsis of the counseling session (para 1–12).<br>*f.* Date officer reported on current tour of AD; type, effective date, and date of termination of current AD commitment.<br>*g.* Whether officer is occupying a "key" position and a replacement is required.<br>*h.* Whether medical board or PEB proceedings are pending or appropriate.<br>*i.* Whether the officer is currently undergoing a course of instruction that will result in an ADSO upon completion or termination. Specify course title, beginning and closing dates, and ADSO incurred.<br>*j.* Whether responsible for public property or funds.<br>*k.* Recommendation for approval or disapproval and characterization of service. Also include complete justification when approval is recommended and the officer has not fulfilled an ADSO and justification for disapproval.<br>*l.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, or under the control of civil authorities.<br>*m.* Date officer departed CONUS or other area of residence for OCONUS assignment. Date of arrival OCONUS of dependents, whether at Government or personal expense, whether logistical support was furnished and the rotation date, if applicable. |
| 3 | BN S–1 C&S | Reviews and makes recommendation. Forwards the request through channels, as appropriate, to HRC–Alexandria (AHRC–OPD–A) for final action or to HQDA (DAJA–PT) or HQDA (DACH–PER), as applicable, or to HRC–St. Louis (AHRC–AR) (for USAR AGR officers) for final action. The SAA is to forward such a request to HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA), or HQDA (DACH), as applicable. |
| 4 | SACT (TP/TA) | Receives separation instructions and separates the officer. Final release orders and separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VI
## Task: Process Voluntary Release from Active Duty Due to Pregnancy

## 2–13. Rules for processing voluntary release from active duty due to pregnancy

*a.* A commander with SAA may release an RC officer who requests REFRAD because of pregnancy provided the officer has no ADSO. This authority may not be further delegated. When the SAA approves the REFRAD, release instructions will be forwarded to the appropriate PSC/MPD. Should the SAA disapprove the REFRAD request, he or she will make a recommendation to include justification and forward the request to HRC–Alexandria (AHRC–OPD–A) HQDA (DAJA–PT), HQDA (DACH–PER), or HRC–St. Louis (AHRC–AR), as applicable, for final action.

*b.* For an officer not under the jurisdiction of a commander having SAA, the approval authority is CG, HRC, or TJAG or the DACH (or CDR, HRC–St. Louis (AHRC–AR) for USAR AGR officers). On approved applications, HRC–Alexandria (AHRC–OPD–A) (or HRC–St. Louis (AHRC–AR) for USAR AGR officers) will forward REFRAD instructions to the appropriate PSC/MPD.

*c.* When it has been determined that an officer is pregnant, she will be counseled by her immediate commanding officer or executive officer. The counselor will explain to the officer that the purpose of the counseling is to provide information concerning her rights, entitlements, and responsibilities with respect to continued AD or separation (see table 2–5). The counselor will not influence or direct the Soldier to make any particular decision. A statement of counseling (see fig 2–2) will be signed by the counselor. A copy of the statement of counseling will be filed in the officer's Military Personnel File (MPF) or (OMPF).

**Table 2–5**
**Voluntary release from active duty due to pregnancy**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Informs her commander that she is pregnant and furnishes supporting documentation. |
| 2 | SACT BN S–1 | On confirmation of an officer's pregnancy, C&S will advise the officer of the following rights and responsibilities:<br>*a.* Option to remain on AD or to request separation.<br>*b.* Entitlement to maternity care even if separated (AR 40–400).<br>*c.* Provisions for leave and absence during and after pregnancy (AR 600–8–10).<br>*d.* Provisions for maternity clothing.<br>*e.* Policy governing availability for worldwide assignment (AR 614–30).<br>*f.* Local policies governing entitlements to basic allowance for subsistence (BAS) and assignment to Government family quarters, to include when and how she would be eligible.<br>*g.* Policies governing assignment OCONUS (AR 614–30). If accompanied by dependent(s), requirement to make suitable arrangements for the unaccompanied evacuation of the dependent(s) in an emergency situation (for example, mobilization).<br>*h.* On PCS, the Government will pay for the child's transportation only when—<br>(1) Traveling to, from, or between OCONUS permanent stations when the officer serves or has been approved to serve a "with dependents" tour and her child is command-sponsored.<br>(2) Traveling to an OCONUS station, the officer must have approval of the OCONUS commander for concurrent travel of the child.<br>*i.* Availability of legal assistance counseling concerning paternity laws governing child support, if applicable.<br>*j.* If she remains on AD, the necessity of careful planning for her child's care without sacrifice of her military responsibilities. She must consider—<br>(1) Who will care for the child during duty hours, alerts, field duty, and roster duty. Consideration should be given to child care cost.<br>(2) Plans for housing, access to duty, transportation arrangements and availability of telephone.<br>(3) Consideration of financial obligations that will accrue for child care, housing, transportation and other emergency needs and how these obligations will be met.<br>*k.* Provisions for submission of a dependent care statement of counseling on the birth of the child.<br>*l.* Provisions authorizing separation of an officer whose substandard performance of duty is not solely attributable to the condition of pregnancy. |
| 3 | BN S–1 C&S | Sign the Pregnancy Counseling Statement and file in the officer's MPF (fig 2–2). |
| 4 | SLDR | Submits REFRAD request (fig 2–1) if she so desires. |
| 5 | SACT BN S–1 | Process the request. Ensures counseling has been accomplished (step 2). The request will include—<br>*a.* A brief synopsis of the counseling session.<br>*b.* Date officer reported on current tour of AD; type, effective date, and date of termination of current AD commitment.<br>*c.* Whether officer is occupying a "key"position and if a replacement is required.<br>*d.* Whether medical board or PEB proceedings are pending or appropriate.<br>*e.* Whether the officer is currently undergoing a course of instruction that will result in an ADSO upon completion or termination. Specify course title, beginning and closing dates, and service obligations incurred.<br>*f.* Whether responsible for public property or funds.<br>*g.* Recommendation for approval or disapproval and character of service. Include complete justification when approval is recommended and the officer has not fulfilled an ADSO. Also include justification for disapprovals.<br>*h.* Statement that the officer is not under investigation or awaiting result of trial, being considered for administrative elimination, AWOL, or under the control of civil authorities.<br>*i.* Date officer departed CONUS or other areas of residence for OCONUS assignment. Date of arrival of dependents, whether at Government expense, whether logistical support was furnished, and the rotation dates if applicable. |

**Table 2–5**
**Voluntary release from active duty due to pregnancy—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 6 | BN S–1 C&S | Reviews the case and makes recommendation (if disapproval is recommended, justification must be provided). |
| | | *a.* For when an officer who is under an SAA, the request will be forwarded through channels to the SAA for approval. Should the SAA elect not to approve the request, the SAA will make a recommendation, including justification, and forward the request as indicated in *b*, below for final action. If appropriate, the SAA will provide release instructions to the PSC/MPD and forward a copy of the action to HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), or HQDA (DACH–PER), as applicable. |
| | | *b.* For an officer not under an SAA, or when the SAA recommends disapproval, the request will be forwarded through channels to HRC–Alexandria (AHRC–OPD–A) for final action or to HQDA (DAJA–PT) or HQDA (DACH–PER), as applicable, for final action. |
| | | *c.* For USAR AGR officers forward through channels to HRC–St. Louis (AHRC–AR) for final action. |
| 7 | SACT (TP/TA) | Receives separation instructions and separates the officer. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

*d.* An officer who is commissioned through a funded program or a training recipient (for example, AMEDD, FLEP, USMA, ROTC, or special procurement programs) will not be released until completion of that initial Service school obligation. An officer serving under a contractual agreement, such as but not limited to incentive special pay, medical additional special pay, medical officer retention bonus, or nurse accession bonus, will not be released until completion of the service obligation. In addition, an officer will not be released from AD until the compulsory obligation acquired as a result of completing flight school is served. However, when extenuating circumstances exist, an officer may request a hardship separation in accordance with paragraph 2–9.

*e.* An officer who remains on AD will be assigned to an area where concurrent travel of dependents is authorized until completion of the initial service obligation.

*f.* If, before the REFRAD is accomplished, a medical officer determines that a pregnancy has terminated for any reason (including birth) the authority for separation no longer exists.

*g.* A pregnant officer may request leave of absence per AR 600–8–10.

*h.* An officer may request a specific separation date. However, the separation authority and the officer's military physician will determine the separation date. The date must not be later than 30 calendar days before the expected date of delivery, or the date is the latest date her military physician will authorize her to travel to her home of record or entry on active duty location, whichever date is earlier.

*i.* An officer released under honorable conditions who is pregnant at the time of release is entitled to maternity care per AR 40–400. These medical benefits are limited to care in military hospitals and do not, regardless of circumstances, include care obtained in civilian hospitals.

*j.* Characterization of service for REFRAD due to pregnancy may be characterized as honorable or under honorable conditions.

## 2–14. Steps for processing voluntary release from active duty due to pregnancy
The steps required for processing voluntary REFRAD due to pregnancy are as shown in table 2–5.

## Section VII
## Task: Process Voluntary Release from Active Duty of an Obligated Officer to Attend School

## 2–15. Rules for processing voluntary release from active duty of an obligated officer to attend school
*a.* An officer who is serving the initial tour of AD and who is not mission essential, may request REFRAD to attend a recognized institution of higher education. An officer who is commissioned through a funded program or a training recipient (for example, AMEDD, FLEP, USMA, ROTC, or special procurement programs) will not be released until completion of that initial Service school obligation. Recognized institutions are those listed (or determined eligible for such listing) by the Department of Education. The course of instruction that the officer has requested enrollment in must lead to an associate or higher degree.

*b.* A commander with SAA may approve requests with the exception of the following:

(1) AMEDD officers.

(2) The Judge Advocate General's Corps (JAGC) officers.

(3) Chaplains.

(4) Officers requesting to attend foreign schools.

(5) Officers requesting to attend theological schools that are not listed and are not eligible for listing, in the Education Directory, part 3.

*c.* If the application is approved, HRC–Alexandria (AHRC–OPD–A) (or HRC–St. Louis (AHRC–AR) for USAR AGR officers) will forward the separation instructions to the appropriate PSC/MPD.

*d.* If the application is disapproved, HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), or HQDA (DACH–PER), as applicable (or HRC–St. Louis (AHRC–AR) for USAR AGR officers), will return the application to the officer through channels.

*e.* Early release of a Medical or Dental Corps officer to accept residency training or fellowship positions, leading to a specialty board eligibility and/or internship, is not authorized under this regulation unless the officer is enrolled in a degree program. If the officer is enrolled in a degree program, he or she may request release, with appropriate evidence of enrollment from the educational institution. An officer should not seek a residency position with a reporting date prior to expiration of an AD tour. An officer serving on an initial tour of AD may request a short-term extension of AD under the provisions of AR 135–215 when the officer is unable to secure a residency appointment on the expiration of the term of service or when the officer intends to ensure employment until acceptance in a program.

*f.* The officer's school reporting date must be in the last 3 months of the officer's remaining active service. Normally, the effective date of early release will not be earlier than 10 calendar days before the class starting date. Accrued leave will not be added to extend this period. As an exception, an officer may be separated up to 30 calendar days before the class start date. Exceptions of this nature are authorized in the case of an officer who is returning from OCONUS and moving family to the location of the educational institution or when because of the school's latest registration date (relating to class start date), later REFRAD of the officer would cause undue hardship. When late registration is permitted by the school, an officer who is otherwise ineligible for separation under this task may be separated on the first day of the last 3 months of active duty service.

## 2–16. Steps for processing voluntary release from active duty of an obligated officer to attend school

The steps required for processing voluntary REFRAD of an obligated officer to attend school are as shown in table 2–6.

**Table 2–6**
**Voluntary release from active duty of an obligated officer to attend school**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Submits REFRAD request (fig 2–1) to attend school.<br>*a.* The request must include documentary evidence from an appropriate school official (Registrar, Dean of Admissions) that the officer has been accepted for enrollment, without qualification, commencing with a specific school term in a full-time resident course of instruction leading to an associate or higher degree. *Without qualification* means the officer is accepted for admission without being subject to any further approval by the school prior to entrance. *Full-time resident course of instruction* means the officer must take the minimum number of credit hours for the semester, quarter or term that the school considers to be a full-time course of instruction.<br>*b.* If the school is not currently listed in the *Education Directory,* part 3, the statement of the school official must include whether the school has been determined by the Office of Education to be eligible for such listings. The statement will include the latest date by which the applicant must report to the school in person for registration in order to meet the school's requirement for attendance, state the school's specific accreditation status and the date the status was acquired, and must include the name of the accrediting agency or association granting such accreditation.<br>*c.* The officer must clearly establish that the specific school term for which he or she seeks enrollment is academically the most opportune time for the officer to begin or resume education. A statement to this effect is not sufficient. Specific reasons why further delay would cause personal hardship must be included. |
| 2 | SACT<br>BN S–1 | Processes the request. Ensures counseling is accomplished as stated in paragraph 1–12. In addition to step 1 above, the request will include—<br>*a.* A brief synopsis of the counseling session.<br>*b.* Date officer reported on current tour of AD; type, effective date, and date of termination of current AD commitment.<br>*c.* Whether officer is occupying a "key" position and if a replacement is required.<br>*d.* Whether medical board or PEB proceedings are pending or appropriate.<br>*e.* Whether responsible for public property or funds.<br>*f.* Recommendation for approval or disapproval and character of service. Include complete justification when approval is recommended and the officer has not fulfilled an ADSO. Also include justification for disapprovals.<br>*g.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, absent without leave, or under the control of civil authorities.<br>*h.* Date officer departed CONUS or other area of residence for OCONUS assignment. Date of arrival OCONUS of dependents, whether at Government or personal expense, whether logistical support was furnished, and the rotation date if applicable. |

**Table 2–6**
**Voluntary release from active duty of an obligated officer to attend school—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 3 | BN S–1<br>C&S | Reviews the request, approves it, or makes recommendation, as appropriate (if disapproval is recommended, provide justification).<br>    *a.* For an officer who is under an SAA, the request will be forwarded through channels to the SAA for approval (exceptions listed in para 2–15*b*). Should the SAA elect not to approve the request, or paragraph 2–15*b* applies, the SAA will make a recommendation, including justification for disapproval and forward the request as stated in *b* below for final action. If appropriate, the SAA will provide release instructions to PSC/MPD and forward a copy of the action to HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), or HQDA (DACH–PER), as applicable.<br>    *b.* For an officer not under an SAA or when the SAA recommends disapproval or if paragraph 2–15*b* applies, the request will be forwarded through channels to HRC–Alexandria (AHRC–OPD–A) for final action or to HQDA (DAJA–PT), or HQDA (DACH–PER), as applicable, for final action. |
| 4 | SACT<br>(TP/TA) | Receives separation instruction from the SAA or HRC, and separates the officer. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VIII
## Task: Process Voluntary Release from Active Duty of a United States Army Reserve Warrant Officer for Entry on AD as a USAR Commissioned Officer

**2–17. Rules for processing voluntary release from active duty of a United States Army warrant officer for entry on active duty as a United States Army Reserve commissioned officer**

*a.* A commander with SAA may release a USAR warrant officer (WO) from AD (does not apply to USAR AGR) who terminates appointment to accept an appointment as a USAR commissioned officer with concurrent AD in the latter status. This authority may not be further delegated.

*b.* The officer's release date will be the day prior to the entry date on AD as a commissioned officer.

*c.* The USAR WO's REFRAD and acceptance of USAR commissioned officer status on AD will be announced by order, per AR 600–8–105.

**2–18. Steps for processing voluntary release from active duty of a United States Army Reserve warrant officer for entry on active duty as a United States Army Reserve commissioned officer**

The steps required for processing voluntary REFRAD of a USAR warrant officer for entry on AD as a USAR commissioned officer are as shown in table 2–7.

**Table 2–7**
**USAR warrant officer voluntary release from active duty for entry on active duty as United States Army Reserve commissioned officer**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Receives appointment notification memorandum and provides the PSC/MPD a copy. |
| 2 | SACT<br>BN S–1 | Receives approved release notification from the SAA. Prepare appropriate separation forms pertaining to the individual's REFRAD and revocation of appointment as a WO. |
| 3 | SACT<br>(TP/TA) | Releases the individual from AD as a WO on the day prior to the date of entry on AD as a USAR commissioned officer. Final release orders and forms will cite regulatory authority and SPD code as shown in AR 635–5–1. |

## Section IX
## Task: Process Voluntary Release from Active Duty for an Officer of a Medical Holding Detachment

**2–19. Rules for processing voluntary release from active duty for an officer of a medical holding detachment**

*a.* Excluding a dual status officer or USAR AGR officer, a commander with SAA may release an officer from AD for the convenience of the Government when the officer is assigned to a medical holding detachment and—

(1) Is serving initial obligated tour of AD (includes an officer who is commissioned through a funded program or a training recipient (for example, AMEDD, FLEP, ROTC, or special procurement programs).

(2) Declines further retention in service or requests voluntary release.

*b.* This authority may not be further delegated.

*c.* HRC–Alexandria (AHRC–OPD–A) will approve requests involving a dual status officer and forward separation instructions to the appropriate PSC/MPD.

*d.* An officer assigned to a medical holding detachment, including those returned to CONUS from a short-tour area for hospitalization, may be released from AD on completion of hospitalization, provided the officer has 3 months or less remaining to serve on AD commitment at the time of release from the medical facility.

*e.* An officer medically evacuated from a hostile fire area for hospitalization in a long-tour area and assigned to a medical holding detachment may be returned to CONUS and released from AD provided the officer has 3 months or less remaining to serve on AD commitment at the time of release from the medical facility.

## 2–20. Steps for processing voluntary release from active duty for an officer of a medical holding detachment

The steps required for processing voluntary REFRAD for an officer of a medical holding detachment are as shown in table 2–8.

**Table 2–8**
**Voluntary release from active duty for an officer of a medical holding detachment**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Submits REFRAD request (fig 2–1) to PSC/MPD. |
| 2 | SACT BN S–1 | Reviews, processes, and forwards through channels to commander with SAA. Includes— *a.* Date reported on current tour of AD; type, effective date, and date of termination of current AD commitment. *b.* Whether medical board or PEB proceedings are pending or appropriate. |
| 3 | C&S | The SAA approves or disapproves (other than a dual status officer) the request. For a dual status officer, forwards the request, to include recommendations, to HRC–Alexandria (AHRC–OPD–A). |
| 4 | SACT (TP/TA) | Receives separation instructions from the SAA or HRC and separates the officer. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section X
## Task: Process Involuntary Release from Active Duty Due to Maximum Age

## 2–21. Rules for processing involuntary release from active duty due to maximum service

*a.* An officer will be released from active duty (REFRAD) unless he or she requests voluntary retirement) on the last day of the month in which he or she attains the following maximum ages, unless the officer's release date is required sooner by maximum service, or the Secretary of the Army authorizes the officer's retention on an individual basis:

(1) An officer of the ARNGUS assigned as Chief, National Guard Bureau will be REFRAD at age 64.

(2) Major general (or brigadier general officer recommended for permanent promotion to major general) will be REFRAD at age 62.

(3) Any other commissioned officer, other than warrant officer, will be REFRAD at age 60. An officer may be retained on active duty (AD) until eligible for retirement if he or she is within 2 years of active service (AS) retirement eligibility.

(4) A warrant officer who qualifies for retired pay under Chapter 1223 of Title 10, United States Code, will be REFRAD on the last day of the month in which he or she attains age 60, unless authorized retention beyond age 60.

(5) A warrant officer, age 60 or older, who can attain 20 years of qualifying service for retired pay under Chapter 1223 of Title 10, United States Code, prior to attaining age 62, will be REFRAD on the last day of the month in which he or she attains 20 years of qualifying service unless authorized retention.

(6) A warrant officer who cannot qualify for retired pay under Chapter 1223 of Title 10, United States Code, will be REFRAD on the last day of the month in which he or she attains age 62.

(7) The Secretary of the Army may retain in an active status certain ARNG or USAR officers, with their consent, in the Medical Corps, Dental Corps, Veterinary Corps, designated as an allied health officer; biomedical sciences officer or the optometry section of the Medical Services Corps, the Army Nurse Corps, Army Medical Specialist Corps, and the Chaplains. During the retention of the officer must fill a missions-based requirement. Retention under this provision may not extend beyond the date on which the officer becomes 67 years of age (10 USC 14703). Request for retention under this provision will be forwarded through channels to Chief, National Guard Bureau, NBG-ARH, 1411 Jefferson Davis Highway, Arlington, VA 22201–3237 (for ARNG officers); Commanding Genera, Human Resource Command (CG, HRC-Alexandria), AHRC-OPH-P, 200 Stovall Street, Alexandria, VA 22332 or CG, HRC-St. Louis, AHRC-AR, 1 Reserve Way, St. Louis, MO 53132–5200 (for USAR AGR officers).

*Note.* With regard to paragraphs 2–21*a*(4), (5), and (6), a warrant officer must request and be approved for retention beyond age 60 in order for the service performed beyond age 60 to be creditable for retired pay (10 USC 2308).

*b.* Officers indicated in para 21*a*(3) of this regulation who cannot qualify for retirement under chapter 6 prior to attainment of age 60 will be released from active duty as prescribed by *a* above, except those on scheduled release date who are within 2 years of eligibility for retirement under chapter 6 or for retired pay under AR 135–180. If otherwise qualified, these officers may be retained in active duty until eligible for such retirement or retired pay, which occurs first.

*c.* Officers to be released under this paragraph will be notified through channels by HRC-Alexandria (AHRC-OPD-A) or HRC-St. Louis (AHRC-AR) or USAR AGR officers) not than 90 calendar days prior to the scheduled release date, unless release is to be effective because of expiration of service agreement, in which case provisions of paragraphs 2–7 and 2–8 apply.

*d.* The officer's separation will not be delayed past the schedule release date due to nonsubmission or late submission of a voluntary retirement request.

*e.* An ARC officer—

(1) In the grade of major that failed selection for promotion to the grade of lieutenant colonel for the second time, separation will be the latter of —

*(a)* The first day of the month after the month is which the officer completes 20 years of commissioned service or;

*(b)* The first day of the seventh month after the board that considered the officer for the second time receives final approval authority, unless the officer has a service remaining obligation, or is retained under other provisions of law.

(2) In the grade of captain who failed selection for promotion to major for the second time will be removed from active duty no later than the first day of the seventh month after the board that considered the officer of the second time receives final approval authority, unless the officer has a service remaining obligation or is retained under other provisions of law.

(3) In the grade of first lieutenant who failed selection for promotion to captain for the second time will be removed from active duty no later than the first day of the seventh month after the board that considered the officer for the second time receives final approval authority, unless retained under other provisions of law.

(4) An officer of the ARNGUS assigned to a headquarters or headquarters detachment of a State, the Canal Zone, Puerto Rico, Virgin Islands, or the District of Columbia as United States Property and Fiscal Officer and an officer assigned to the Selective Service System may be retained on AD and in an active status until further retention is considered inappropriate by HRC or the agency concerned or until age 60, whichever is earlier.

(5) An officer of the ARNGUS assigned as Chief, National Guard Bureau.

(6) An officer whose retention is approved on an individual basis by the Secretary of the Army.

(7) An officer who on attainment of age 58 is within 2 years of qualifying for retired pay under AR 135–180 will be retained, if otherwise qualified, until the end of the month in which age 60 is reached.

*f.* Officers who twice fail selection for promotion may be continued on active duty under the provisions of 10 USC 14701 and 14703.

*g.* An officer, other than a warrant officer, whose retention in an active Reserve status is authorized beyond the removal date specified in AR 140–10 (USAR officer) or NGR 635–100 (ARNGUS officer) but does not qualify for retention on AD under the following exceptions will be released under the applicable criteria in *b* through *d*, above. Exceptions are as follows:

(1) An Army Nurse Corps or Army Medical Specialist Corps lieutenant colonel or below in an RC may, at the discretion of the Secretary of the Army, be retained on AD and in an active status until 30 calendar days after the date he or she completes 30 years of service (computed under 10 USC 14706).

(2) An officer, other than a warrant officer, within 2 years of qualifying for retirement (10 USC 3911—20 years active service including 10 years of commissioned officer service or 10 USC 1331—20 years qualifying service) prior to attaining maximum length of service will be retained on AD and in an active status until the end of the month after he or she becomes eligible for retirement.

(3) An AMEDD officer (excluding all Medical Service Corps officers except podiatrists and optometrists) or chaplain who can not qualify for retirement under chapter 367 (10 USC 3911) upon completion of service (prescribed in *b* through *d*, above) but who can attain retirement eligibility by age 60 under 10 USC 1331 may be retained (with consent) on AD and in an active status until he or she qualifies for retirement but can not be retained later than age 68.

(4) An officer of the ARNGUS assigned to a headquarters or headquarters detachment of a State, the Canal Zone, Puerto Rico, Virgin Islands, or the District of Columbia as United States Property and Fiscal Officer and an officer assigned to the Selective Service System may be retained on AD and in an active status until further retention is considered inappropriate by HRC or the agency concerned or until age 60, whichever is earlier.

(5) An officer of the ARNGUS assigned as Chief, National Guard Bureau.

(6) An officer whose retention is approved on an individual basis by the Secretary of the Army.

(7) An officer who on attainment of age 58 is within 2 years of qualifying for retired pay under AR 135–180 will be retained, if otherwise qualified, until the end of the month in which age 60 is reached.

*h.* The mandatory release of a RC warrant officer is governed by the field promotion to CW2 ADL selection for voluntary indefinite (VI) status and by promotion consideration for CW3 ADL. A RC CW3, CW4, or CW5 who is not integrated into the RA will be mandatorily released from AD on the last day of the month after he or she completes 20 years AS. A warrant officer qualified for retirement under chapter 6 may apply for voluntary retirement, effective not later than the scheduled release date. Exceptions are as follows:

(1) A warrant officer retained by HRC under a voluntary retention program.

(2) A warrant officer serving on the chief warrant officer, W-3 (CW3), chief warrant officer, W-4 (CW4), or chief warrant officer, W-5 (CW5) will not be released prior to completion of an incurred ADSO, unless granted a waiver for earlier release. In any case, the release will not be prior to completing 31 calendar days of active service in the new grade.

(3) A warrant officer who began current AD warrant officer tour prior to 1 October 1987 and who has completed less than 20 years active service or is serving beyond 20 years active service on an incurred ADSO, and who is recommended for active duty list promotion to CW3, CW4, or CW5 will be allowed to remain on AD until promoted and until he or she has completed the incurred ADSO, or until promoted and he or she has completed the time needed to complete 20 years of active service for retirement, as appropriate. Earlier release may be required to meet current needs of the Active Army.

(4) A warrant officer serving on an initial tour of OBV service will be retained on AD until expiration of OBV service unless earlier release is required to meet current needs of the Active Army.

*i.* Officers to be released will be notified directly by CG, HRC, normally not later than 6 months prior to the scheduled release date. In addition, a copy of the notification memorandum will be forwarded to the SAA and the officers' immediate commander for inclusion in the officers' MPRJ. The AGR officers who will be released from AD under this section will be notified by the Chief, National Guard Bureau; Chief, Army Reserve; or the State adjutants general.

*j.* An officer scheduled for release (under this paragraph) who is not eligible or does not apply for retirement but who is hospitalized will have release determination made according to the medical examination.

*k.* The officer's separation will not be delayed past the scheduled release date due to nonsubmission or late submission of a voluntary retirement request.

## 2–22. Steps for processing involuntary release from active duty due to maximum age
The steps required for processing involuntary REFRAD due to maximum age are as shown in table 2–9.

**Table 2–9**
**Involuntary release from active duty due to maximum age**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Receives maximum age release notification from HRC or HRC–St. Louis (for USAR AGR officers) 90 calendar days prior to release date. Officer may apply for retirement if eligible to be effective not later than the scheduled release date. |
| 2 | PPAA | Determines whether medical board or PEB proceedings are pending or appropriate per paragraph 1–23. |
| 3 | C&S | The SAA establishes procedures ensuring separation of an officer according to individual instructions issued by HRC or HRC–St. Louis unless the officer requests voluntary retirement to be effective not later than the scheduled release date. |
| 4 | TRCT (TP/TA) | Separates or retires officer on scheduled release date. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section XI
## Task: Process Involuntary Release from Active Duty Due to Maximum Service

## 2–23. Rules for processing involuntary release from active duty due to maximum service
*a.* An RC officer, to include warrant officers, will be REFRAD when they complete 20 years of active service. Commissioned officers, other than warrant officers, may request voluntary retirement under 10 USC 3911, provided that they have 10 years of active service as a commissioned officer. Warrant officers may request voluntary retirement under 10 USC 1293. Exceptions are as follows:

(1) An officer retained by HRC under a voluntary retention program.

(2) An officer whose service obligation extends beyond 20 years of active service.

(3) An AGR officer, to include an AGR warrant officer, whose retention beyond 20 years of active service is based on the needs of the Army as outlined under the provisions of AR 135-18, paragraph 4-7a.

(4) An officer recommended for promotion to lieutenant colonel through major general by an ADL promotion board is retained until they complete 3 years active service in the respective grade; a major selected by an ADL promotion board is retained until completion of 6 months active service in grade unless—

*(a)* The officer requests earlier release of retirement.

*(b)* Earlier release is required to meet current needs of the Active Army.

*(c)* The officer is removed from the approved promotion list and is not subsequently selected for promotion to that grade.

(5) A United States property and fiscal officer and those assigned to the Selected Service System may be retained until further retention is considered inappropriate by HRC, or age 60, whichever is earlier.

(6) An officer of the ARNGUS assigned as Chief, National Guard Bureau.

(7) An officer selected for attendance at the staff college level school or senior service college before completing 20 years of active service will be retained on AD until completing 2 years of AD following graduation or until termination of attendance at the designated school.

(8) An officer selected for a command position by the DA Command Selection Board will remain on AD to report to the designated assignment. The officer will be retained on AD up to 90 calendar days after completing assignment to the designated command position.

*b.* An officer holding a permanent grade of —

(1) Major general in a RC who has not been recommended for promotion to lieutenant general, or a brigadier general recommended for promotion, will be released on the fifth anniversary of the officer's appointment in that grade or 30 days after completion of 35 years of commissioned service, whichever is later (10 USC 14508). However, at the discretion of the Secretary of the Army, a RC major general may be retained on AD up to and including the last day of the month in which the officer becomes age 62 (see para 2-21a(2)).

(2) Brigadier general in a RC who has not been recommended for promotion to the grade of major general will be released on the fifth anniversary of the officer's appointment in that grade, or 30 days after completion of 30 years of commissioned service, whichever is later (10 USC 14508). However, at the discretion of the Secretary of the Army, a RC brigadier general may be retained on AD up to and including the last day of the month in which the officer becomes age 60 (see para 2-23a(3)).

*c.* An officer holding a permanent grade of colonel, or a lieutenant colonel recommended for promotion to colonel, in a RC will be separated not later than the last day of the month in which he or she completes 30 years of commissioned service (10 USC 14507(b)).

*d.* An RC lieutenant colonel not recommended for promotion to colonel will be separated not later than the last day of the month in which he or she completes 28 years of commissioned officer service (10 USC 14507(a)).

*e.* An RC officer—

(1) In the grade of major that failed selection for promotion to the grade of lieutenant colonel for the second time, separation will be the latter of —

*(a)* The first day of the month after the month is which the officer completes 20 years of commissioned service or;

*(b)* The first day of the seventh month after the board that considered the officer for the second time receives final approval authority, unless the officer has a service remaining obligation, or is retained under other provisions of law.

(2) In the grade of captain who failed selection for promotion to major for the second time will be removed from active duty no later than the first day of the seventh month after the board that considered the officer of the second time receives final approval authority, unless the officer has a service remaining obligation or is retained under other provisions of law.

(3) In the grade of first lieutenant who failed selection for promotion to captain for the second time will be removed from active duty no later than the first day of the seventh month after the board that considered the officer for the second time receives final approval authority, unless retained under other provisions of law.

(4) An officer of the ARNGUS assigned to a headquarters or headquarters detachment of a State, the Canal Zone, Puerto Rico, Virgin Islands, or the District of Columbia as United States Property and Fiscal Officer and an officer assigned to the Selective Service System may be retained on AD and in an active status until further retention is considered inappropriate by HRC or the agency concerned or until age 60, whichever is earlier.

(5) An officer of the ARNGUS assigned as Chief, National Guard Bureau.

(6) An officer whose retention is approved on an individual basis by the Secretary of the Army.

(7) An officer who on attainment of age 58 is within 2 years of qualifying for retired pay under AR 135–180 will be retained, if otherwise qualified, until the end of the month in which age 60 is reached.

*f.* Officers who twice fail selection for promotion may be continued on active duty under the provisions of 10 USC 14701 and 14703.

*g.* An officer, other than a warrant officer, whose retention in an active Reserve status is authorized beyond the removal date specified in AR 140–10 (USAR officer) or NGR 635–100 (ARNGUS officer) but does not qualify for retention on AD under the following exceptions will be released under the applicable criteria in *b* through *d*, above. Exceptions are as follows:

(1) An Army Nurse Corps or Army Medical Specialist Corps lieutenant colonel or below in an RC may, at the discretion of the Secretary of the Army, be retained on AD and in an active status until 30 calendar days after the date he or she completes 30 years of service (computed under 10 USC 14706).

(2) An officer, other than a warrant officer, within 2 years of qualifying for retirement (10 USC 3911—20 years active service including 10 years of commissioned officer service or 10 USC 12731—20 years qualifying service) prior to attaining maximum length of service will be retained on AD and in an active status until the end of the month after he or she becomes eligible for retirement.

(3) An AMEDD officer (excluding all Medical Service Corps officers except podiatrists and optometrists) or chaplain who can not qualify for retirement under chapter 367 (10 USC 3911) upon completion of service (prescribed in *b* through *d*, above) but who can attain retirement eligibility by age 60 under 10 USC 12731 may be retained (with their consent) on AD and in an active status until he or she qualifies for retirement but can not be retained later than age 68.

(4) An officer of the ARNGUS assigned to a headquarters or headquarters detachment of a State, the Canal Zone, Puerto Rico, Virgin Islands, or the District of Columbia as United States Property and Fiscal Officer and an officer assigned to the Selective Service System may be retained on AD and in an active status until further retention is considered inappropriate by HRC or the agency concerned or until age 60, whichever is earlier.

(5) An officer of the ARNGUS assigned as Chief, National Guard Bureau.

(6) An officer whose retention is approved on an individual basis by the Secretary of the Army.

(7) An officer who on attainment of age 58 is within 2 years of qualifying for retired pay under AR 135–180 will be retained, if otherwise qualified, until the end of the month in which age 60 is reached.

*h.* The mandatory release of a RC warrant officer is governed by the field promotion to CW2 ADL selection for RA integration.

(1) A warrant officer retained by HRC under a voluntary retention program.

(2) A warrant officer serving on the chief warrant officer, W-3 (CW3), chief warrant officer, W-4 (CW4), or chief warrant officer, W-5 (CW5) will not be released prior to completion of an incurred ADSO, unless granted a waiver for earlier release. In any case, the release will not be prior to completing 31 calendar days of active service in the new grade.

(3) A warrant officer who began current AD warrant officer tour prior to 1 October 1987 and who has completed less than 20 years active service or is serving beyond 20 years active service on an incurred ADSO, and who is recommended for active duty list promotion to CW3, CW4, or CW5 will be allowed to remain on AD until promoted and until he or she has completed the incurred ADSO, or until promoted and he or she has completed the time needed to complete 20 years of active service for retirement, as appropriate. Earlier release may be required to meet current needs of the Active Army.

(4) A warrant officer serving on an initial tour of OBV service will be retained on AD until expiration of OBV service unless earlier release is required to meet current needs of the Active Army.

*i.* Officers to be released will be notified directly by CG, HRC, normally not later than 6 months prior to the scheduled release date. In addition, a copy of the notification memorandum will be forwarded to the SAA and the officers' immediate commander for inclusion in the officers' MPF. The AGR officers who will be released from AD under this section will be notified by the Chief, National Guard Bureau; Chief, Army Reserve; or the State adjutants general.

*j.* An officer scheduled for release (under this paragraph) who is not eligible or does not apply for retirement but who is hospitalized will have release determination made according to the medical examination.

*k.* The officer's separation will not be delayed past the scheduled release date due to nonsubmission or late submission of a voluntary retirement request.

## 2–24. Steps for processing involuntary release from active duty due to maximum service

The steps required for processing involuntary REFRAD due to maximum service are as shown in table 2–10.

**Table 2–10**
**Involuntary release from active duty due to maximum service**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Receives maximum service release notification memorandum from HRC (or HRC–St. Louis for USAR AGR officers). |
| 2 | PPAA BN S–1 | *a.* Upon receipt of notification memorandum, determines whether medical board proceedings are pending or appropriate under paragraph 1–23. Informs the officer that if they desire to retire coincident with their REFRAD, or earlier, an application for retirement must be submitted. Advises the officer that the separation will not be delayed due to nonsubmission or late submission of a request for voluntary retirement.<br>*b.* Submits requests for retention based on military necessity to CDR, HRC–Alexandria (AHRC–OPD–A), or CDR, HRC–St. Louis (AHRC–AR), for USAR AGR officers with justification (amount of advance notice commander had for planning and new effective date requested). Officer will continue separation processing to preclude unnecessary hardship if the retention is not approved. |
| 3 | PPAA (TP/TA) | Separates or retires officer on scheduled release date. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section XII
## Task: Process Involuntary Release from Active Duty Due to Nonselection of Active Guard Reserve Continuation

### 2–25. Rules for processing involuntary release from active duty due to nonselection of active guard reserve continuation

*a.* An AGR officer on an initial period of duty will be separated from AD 90 calendar days after notification of continuation board action of nonselection (AR 135–18, para 4–6) or at the end of the initial period of duty, whichever is later, unless earlier release is requested by the officer. An AGR officer on a subsequent period of duty who is not recommended for continuation will be released from AD 90 calendar days after notification of continuation board action unless earlier release is requested by the officer.

*b.* For AGR officers who are not recommended for continuation, Chief, National Guard Bureau; Chief, Army Reserve; and State adjutants general are authorized to order REFRAD under this section. The authority may not be further delegated.

*c.* The AGR officers on AD who are within 2 years of eligibility for military retirement will ordinarily not be involuntarily released from AD until eligible for such retirement. However, the Secretary of the Army may approve the REFRAD of officers when there are unusual circumstances and their retention is not considered to be in the best interests of the Army.

### 2–26. Steps for processing involuntary release from active duty due to nonselection of active guard reserve continuation

The steps required for processing involuntary REFRAD due to nonselection of AGR continuation are as shown in table 2–11.

**Table 2–11**
**Involuntary release from active duty due to nonselection of active guard reserve continuation**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | NGB or Office of the Chief, Army Reserve (OCAR), will notify AGR officers of their non-selection for continuation. |
| 2 | PPAA (TP/TA) | Separates or releases the officer, as appropriate, on scheduled release date. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section XIII
## Task: Process Involuntary Release from Active Duty by the Department of the Army Active Duty Board

### 2–27. Rules for processing involuntary release from active duty by the Department of the Army Active Duty Board

*a.* The Department of the Army Active Duty Board (DAADB) (qualitative) is the Army's tool for ensuring that only an RC officer who consistently maintains high standards of performance, efficiency, morality, and professionalism is

permitted to serve on active duty. The Director, Army Council of Review Boards, will operate the DAADB. Approval authority to release or retain an officer under this paragraph is the Secretary of the Army or their designated representative. Their decisions are final.

*b.* The DAADB is one part of the Army's total "loss management" program.

*c.* Local commanders; CDR, HRC; Chief, Army Reserve (CAR); CDR, HRC–St. Louis; Director, Army National Guard (DARNG); TJAG; or the DACH may recommend that an RC officer be considered by a DAADB to determine if the officer's manner of performance, degree of efficiency, or misconduct constitutes consideration for involuntary separation. Files referred to the DAADB will be identified according to the following criteria:

(1) Less than 18 years of AFS on the projected separation date.

(2) Evidence of a significant act or condition of misconduct or moral or professional dereliction.

(3) Degree of efficiency.

(4) Manner of performance, when compared to contemporaries, particularly in recent years of service.

(5) Relative potential for useful service.

(6) The presence of unfavorable information, with primary consideration to the most recent years of service and repetitive tendency.

(7) No established release date within 6 months of notification of referral for consideration by the DAADB.

*d.* Demonstrated significant acts or conditions of misconduct or moral or professional dereliction may be one or more of the following or similar acts or similar conditions:

(1) Discreditable or intentional failure to meet personal financial obligations.

(2) Mismanagement of personal affairs detrimentally affecting the performance of duty of the officer concerned.

(3) Mismanagement of personal affairs to the discredit of the service.

(4) Intentional omission or misstatement of fact in official statements or records for the purpose of misrepresentation.

(5) Acts of personal misconduct (including, but not limited to acts committed while in a drunken or drug intoxicated state).

(6) Intentional neglect or failure to perform duties.

(7) Conduct unbecoming an officer.

(8) Conduct or actions resulting in the loss of a professional status, such as withdrawal, suspension or abandon of professional license, endorsement or certification which is directly or indirectly connected with the performance of one's military duties and necessary for the performance thereof, including withdrawal of clinical privileges for an AMEDD officer.

(9) Acts of behavior not clearly consistent with the interests of the national security.

(10) Conduct or actions by a warrant officer resulting in the loss of special qualifications (such as withdrawal or revocation of Criminal Investigation Divisions (CIDs) accreditation, revocation of marine qualification license, removal from the Personnel Reliability Program (PRP), withdrawal of clinical privileges or loss of flying status), which directly or indirectly precludes a warrant officer from performing in military occupational specialty (MOS) and is necessary for MOS performance. The REFRAD based on these reasons may not be utilized if reclassification action is feasible and in the best interest of the service or if loss of special qualification was due to medical reasons beyond the control of the warrant officer. In these cases, a statement from the career management division, citing the reasons the officer cannot be reclassified, must be a part of the evidence considered by the board.

(11) Failure to respond to rehabilitation efforts regarding acts of child/spouse maltreatment or abuse and/or other acts of family violence.

*e.* While not all inclusive, existence of one or more of the following or similar conditions authorizes the release from active duty of an officer because their degree of efficiency and manner of performance is substandard. The DAADB action will be initiated for conditions under paragraphs *(7)*, *(9)*, and *(10)* below or elimination action will be initiated for the same conditions under chapter 4, paragraph 4–2.

(1) Downward trend in overall performance resulting in an unacceptable record of efficiency or a consistent record of mediocre service.

(2) Failure to keep pace or to progress with contemporaries, such as successive promotion failure or a low record of efficiency when compared with another officer of the same grade, branch, and length of service.

(3) Failure to exercise necessary leadership or command expected of an officer of their grade.

(4) Failure to assimilate technical proficiency required of the officer's grade.

(5) Failure to discharge properly assignments commensurate with the officer's grade and experience.

(6) Apathy, defective attitude, or other character disorders to include inability or unwillingness to expend effort.

(7) Failure to respond to rehabilitation efforts regarding an alcohol or other drug problem in a reasonable length of time (AR 600–85).

(8) Failure to conform to prescribed standards of dress, personal appearance, and military deportment.

(9) Failure to achieve satisfactory progress after enrollment in the Army weight control program or failure to maintain established weight/body fat standards after removal from an established weight control program (AR 600–9).

This provision does not include those judge advocates and AMEDD officers who have incurred a statutory active duty service obligation for participating in Army sponsored education and training programs. These programs are the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program or the Uniformed Services University of the Health Sciences (10 USC, chapters 104, 105).

(10) When no medical problems exist, and an officer has two consecutive failures of the Army Physical Fitness Test (APFT). This provision does not include those judge advocates and AMEDD officers who have incurred a statutory active duty service obligation for participating in Army sponsored education and training programs. These programs are the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program or the Uniformed Services University of the Health Sciences (10 USC, chapters 104, 105).

*f.* A DA Form 268 (Report to Suspend Favorable Personnel Actions) will be initiated (AR 600–8–2) when an officer is identified for DAADB actions.

*g.* The DAADB is convened under prescribed guidance as stated in the Memorandum of Instruction (MOI), issued by the Secretary of the Army or designee. Therefore, the MOI may modify the terms of this regulation for the board, without changing the regulation, unless it is contrary to statute.

*h.* An officer who will complete 18 or more years of AFS on scheduled release date will not be processed under this section, unless such action is approved by the Secretary of the Army or their designee.

*i.* The officer will be notified in writing (see fig 2–3) by CG, HRC; CAR; CDR or their designee, HRC–St. Louis; DARNG; TJAG; or DACH, as appropriate, through the general officer show cause authority (GOSCA) (a GOSCA could also be the initiating officer if DAADB is field initiated) that their record is being referred to the DAADB to be considered for involuntary REFRAD. The initiating officer will initiate the Suspension of Favorable Personnel Action.

*j.* The initiating officer (must be at GOSCA or higher level) will consider the officer's rebuttal and either close the case and notify the officer, or forward the case with the officer's rebuttal (if submitted) to CDR, HRC–Alexandria (AHRC–OPD–A). If the initiating officer decides to forward the DAADB to Commander, HRC for further processing, the initiating officer also will consider whether the respondent should be eliminated from the service under chapter 4 of this regulation. If the initiating officer determines that elimination may be warranted, the DAADB initiating officer will instead initiate an elimination action under chapter 4 of this regulation. If the DAADB initiating officer determines that the respondent should not be eliminated, but merely considered for release from active duty by the DAADB, the initiating officer will make a written recommendation to that effect, addressing the respondent's potential for future service. If the case is not closed, CDR, HRC–Alexandria (AHRC–OPD–A), forwards the case to Director, Army Review Boards Agency, ATTN: SFMR–RB–JA, 1901 South Bell Street, 2D floor, Arlington, VA 22202–4508.

*k.* The Army Review Boards Agency will convene DAADB under prescribed guidance stated in the MOI. The board will forward cases with recommendations to the Secretary of the Army or designated representative for the final decision. Officers cases approved for retention in the Army will be sent to CDR, HRC–Alexandria (AHRC–OPD–A), and closed favorably. Officers cases approved for release from active duty will be sent to CDR, HRC–Alexandria (AHRC–OPD–A), for REFRAD processing.

*l.* HRC, OCAR, HRC–St. Louis, DARNG, TJAG, or DACH, as applicable, will notify the officer through channels that the DAADB selected him or her for retention.

*m.* Commander, HRC–Alexandria (AHRC–OPD–A), will forward the necessary documentation for officers not on the ADL to HRC–St. Louis, Army Reserve Active Duty Management Directorate, ARPC–ARO, 1 Reserve Way, St. Louis, MO 63132–5200.

*n.* Commander, HRC–Alexandria (AHRC–OPD–A), or CDR, HRC–St. Louis (AHRC–AR), will issue and forward REFRAD instructions to the appropriate PSC/MPD when the Secretary of the Army or designated representative approves the involuntary separation of the officer.

*o.* If the Secretary of the Army or his designee directs the release from active duty of an ARNGUS or USAR officer, HRC (AHRC-OPD-A) will notify the Commander, HRC-St. Louis or the Chief, National Guard Bureau, according to the officer's component, that the officer has been released from active duty. The Commander, HRC-St. Louis or the Chief, National Guard Bureau, may consider an officer released from active duty under the DAADB procedures for separation based upon the same conduct. The mere fact that an officer has been released from active duty by DAADB procedures is not adequate basis to require an officer to show cause for retention in the service.

*p.* Secretary of the Army or their designee is the final approving authority on all DAADB cases.

*q.* An officer approved for involuntary REFRAD by the Secretary of the Army—

(1) For misconduct, moral or professional dereliction and is—

*(a)* Assigned in CONUS, will be released from AD no earlier than 5 calendar days and no later than 14 calendar days after the officer receives written notification.

*(b)* Assigned OCONUS, will be returned to the CONUS separation transfer point no later than 21 calendar days after the officer receives written notification, and released from AD no later than 5 calendar days after arriving at the CONUS separation TP/TA.

(2) Solely for substandard performance of duty will be released from AD no later than 30 calendar days after the officer receives written notification. The officer will not be released prior to the 30th day without consent.

*r.* While separations under this section are involuntary, there is no entitlement to separation pay (except para *s*, below) unless specifically authorized for half-separation pay by the DODPM.

*s.* When budgetary or authorization limitations require a reduction of the officer strength, the DAADB may be convened under the instructions of the Secretary of the Army or designee to determine which officers will be separated. These officers are not considered ineffective or substandard in duty performance, their release is determined solely on the needs of the service. Officers designated for release from AD under this paragraph may be released on any date between the date of notification and the established mandatory release date of the officer. The officer will not be released prior to the established date without consent. Early release will have no effect on entitlement to separation pay.

## 2–28. Steps for processing involuntary release from active duty by the Department of the Army Active Duty Board

The steps required for processing involuntary REFRAD by the DAADB are as shown in table 2–12.

**Table 2–12**
**Involuntary release from active duty by the Department of the Army Active Duty Board**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1<br>C&S | A field commander may recommend through channels to the GOSCA that DAADB be initiated on a particular officer. If the GOSCA supports the DAADB action, A request will be made in writing to CDR, HRC—Alexandria (AHRC–OPD–A); CDR, HRC–St. Louis (AHRC–AR); TJAG; or Chief of Chaplains, as applicable, to provide two copies each of the officer official military personnel file (OMPF) and officer record brief (ORB). The GOSCA forwards the DAADB notification memorandum (fig 2–3), including the officer's OMPF and ORB, to the officer (fig 2–3). |
| 2 | SLDR | Upon receipt of DAADB notification memorandum, from either HQDA or the GOSCA, completes and forwards the acknowledgment of notification (fig 2–4) within 24 hours. Reviews data provided and forwards rebuttal (if desired) within 30 calendar days from receipt of notification memorandum. Rebuttal may be forwarded directly or through channels as desired by the officer. If forwarded directly, send to the initiating office (HQDA or the initiating GOSCA) by certified mail. |
| 3 | PPAA<br>BN S–1<br>C&S | When the officer forwards the rebuttal through channels, commanders may review. Documents, comments, or recommendations will not be added. The last endorser will forward the rebuttal by certified mail to the initiating office (HQDA or the initiating GOSCA). The initiating officer will consider the officer's rebuttal and either close the case and notify the officer, or forward the case with the officer's rebuttal (if submitted) to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 4 | PPAA<br>ARBA | CDR, HRC (AHRC-OPD-A) forwards active duty board action, officer's rebuttal and officer's OMPF to ARBA. ARBA conducts DAADB. Secretary of the Army's designee, generally the DASA-RB, determines whether officer will be retained or released. |
| 5 | PPAA<br>(TP/TA) | Upon receipt of separation instructions, processes officer for separation. When the officer desires an early release, has the officer complete the memorandum as shown at figure 2–5 and places it in the officer's MPF as a permanent document. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section XV
## Task: Process Involuntary Release from Active Duty Due to Civilian Criminal Conviction

## 2–29. Rules for processing involuntary release from active duty due to civilian criminal conviction

*a.* Under the provisions of 10 USC 12312, as implemented by DODI 1332.40, an RC officer on active duty who is convicted and sentenced to confinement in a Federal or State penitentiary or other correctional institution for a period of more than one year or for a crime of moral turpitude (including, but not limited to, child abuse, incest, indecent exposure, soliciting prostitution, embezzlement, check fraud, and any felony or other offense against the mores of society), and whose sentence has become final, may be REFRAD by the Secretary of the Army or his designee.

*b.* When an officer on active duty is convicted and sentenced to confinement in a Federal or State penitentiary or other correctional institution for a period of more than one year or for a crime of moral turpitude, and the convicted officer's sentence has become final, the GCMCA of the convicted officer may consider the officer for REFRAD under this paragraph. If the GCMCA decides to initiate a recommendation to REFRAD the convicted officer, the GCMCA will also consider whether the respondent should instead be eliminated under paragraph 4-2 or dropped from the rolls (DFR) under paragraph 5-15 of this regulation. If the GCMCA recommends that the respondent should not be eliminated or dropped from the rolls, but merely considered for REFRAD, the GCMCA will make a written recommendation to that effect, addressing the respondent's potential for future service. If the GCMCA determines that

elimination, DFR or some other disposition is warranted, the initiating officer need not make any recommendation regarding REFRAD.

*c.* If the GCMCA decides to recommend the convicted officer for REFRAD, the GCMCA will notify the officer concerned in writing using the format shown in Figure 2-6. The notice to the officer will include documentation establishing that the conviction and sentence are final. The officer will acknowledge receipt of the notice in writing within 24 hours. The officer will be afforded the assistance of a member of the Judge Advocate General's Corps, or he may choose to retain a civilian counsel at no expense to the Government. The officer will be afforded 30 days to provide a written response to the recommendation of the GCMCA. The officer may waive in writing the assistance of counsel and the opportunity to make a response.

*d.* If, after receiving the officer's response and obtaining the advice of his Staff Judge Advocate, the GCMCA decides to recommend the REFRAD of the officer, the GCMCA will forward to the Commander, HRC, his initial notice to the officer and attachments, the officer's response, if any, and his recommendation. The GCMCA will provide a copy of his recommendation to the convicted officer. In the case of a judge advocate, chaplain, or medical or nurse corps officer, the GCMCA will forward the action through TJAG, the Chief of Chaplains, or the Surgeon General, as appropriate, for their recommendation. The Commander, HRC, and in appropriate cases TJAG, the Chief of Chaplains, or the Surgeon General, will provide a copy of their recommendations to the convicted officer. No other documents, comments, or recommendations will be added to the action without referral to the officer for comment. The Commander, HRC, will forward the action to Deputy Assistant Secretary of the Army – Review Boards (DASA-RB) for decision. Where the Secretary of the Army's delegation of authority restricts action to a superior decision authority, such as an officer who has completed more than 18 but less than 20 years of Active Federal Service, the DASA-RB will prepare the action for that decision authority.

*e.* The CG, HRC, or the Commander, HRC-St. Louis, will issue separation instructions to the appropriate PSC/MPD when the Secretary of the Army or their designee approves the recommendation to release the officer from active duty. An officer assigned to CONUS or assigned OCONUS, but held in a Federal or State penitentiary or other correctional institution, will be separated not earlier than 5 calendar days and not later than 14 calendar days after the officer is notified of the decision of the Secretary of the Army or his designee. An officer assigned OCONUS who is not currently confined will be returned to the CONUS transition centers (TCs) no later than 21 calendar days after the officer is notified, and separated not later than 5 calendar days after the officer arrives at the CONUS TP/TA.

*f.* Under the provisions of 10 USC 986(c), an officer convicted in any court of the United States of a crime and sentenced to imprisonment for a term exceeding one year generally may not hold a Secret or higher security clearance. Final revocation or denial of a Secret security clearance will result in the officer's elimination from the service in the interest of national security.

*g.* If the conviction is subsequently set aside, the officer may consent to be returned to active duty. An officer returned to active duty may be subject to adverse administrative action or court-martial for the conduct that was the subject of the earlier criminal proceedings, consistent with the order or action that set aside the conviction.

## 2–30. Steps for processing involuntary release from active duty due to civilian criminal conviction
The steps required for processing involuntary REFRAD due to civil conviction are as shown in table 2–14.

**Table 2–13**
**Involuntary release from active duty due to civilian criminal conviction**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | C&S BN S–1 | When an officer is convicted as specified in paragraph 2–29*a*, refers the action and documents to the officer (fig 2–6). Initiates a DA Form 268 according to AR 600–8–2. |
| 2 | SLDR | *a.* Forwards acknowledgment of notification (fig 2–4) within 24 hours. *b.* Prepares and forwards a written statement or rebuttal (if so desired) within 30 days of notification with assistance from legally qualified counsel who may be a member of the Judge Advocate General's Corps or civilian counsel retained by the officer. |
| 3 | PPAA | Determines whether medical board or PEB proceedings are pending or appropriate. |
| 4 | BN S–1 | Forwards separation requests with detailed recommendation and the officer's rebuttal (when submitted), through the GOSCA to CDR, HRC–Alexandria (AHRC–OPD–A); The Judge Advocate General (DAJA–PT); Chief of Chaplains (DACH–PER); or CDR, HRC–St. Louis (AHRC–AR), as appropriate. |
| 5 | C&S | The GOSCA will not include any additional documents, comments or recommendations to the case, without referral to the officer for further comment. |
| 6 | PPAA (TP/TA) | When separation instructions (TP/TA) are received, separates the officer. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

**Section XVI**
**Task: Process Involuntary Release from Active Duty Pending Appellate Review**

**2–31. Rules for processing involuntary release from active duty pending appellate review**

*a.* A Reserve officer whose sentence as approved by the general court-martial convening authority (GCMCA) includes a dismissal (commissioned officers) or dishonorable discharge (warrant officer who is not commissioned) without confinement may be placed on excess leave (AR 600–8–10) (in lieu of REFRAD) prior to completion of appellate review.

*b.* A Reserve officer sentenced to dismissal (commissioned) or dishonorable discharge (warrant officer who is not commissioned) may be released from AD prior to appellate review completion, upon completion of confinement.

*c.* When the sentence after final appellate review does not include dismissal or dishonorable discharge, the officer will be returned to AD (with consent) in the same grade, and with the same service commitment as existed upon release from AD.

*d.* Transportation in kind will be furnished to the officer. A lump sum payment for unused leave is not authorized. Reimbursement for travel of dependents, and shipment of household goods will be as authorized by the Joint Federal Travel Regulation (JFTR), volume 1. The officer will be advised that, in the event appeal results in a final characterization of the release as under honorable conditions, he or she may file a claim with the Defense Finance and Accounting Service for benefits withheld on release.

*e.* DD Form 214 will not be prepared.

*f.* HRC–Alexandria (AHRC–OPD–A) will forward a letter of instructions directing the REFRAD in each case to the appropriate commander. Appropriate separation forms will be completed and issued by HRC on final disposition of the case.

*g.* For USAR AGR officers sentenced to confinement • CG, HRC, will notify CDR, HRC–St. Louis (AHRC–AR), for appropriate orders.

**2–32. Steps for processing involuntary release from active duty pending appellate review**
The steps required for processing involuntary REFRAD pending appellate review are as shown in table 2–14.

**Table 2–14**
**Release from active duty pending appellate review**

| Step | Work center | Required action |
|---|---|---|
| 1 | C&S | The GCMCA notifies HRC–Alexandria (AHRC–OPD–A) or HRC–St. Louis (AHRC–AR), as appropriate, immediately when an RC officer has been approved for a sentence to dismissal or dishonorable discharge with no confinement. When the officer is to be returned to the CONUS, includes the appropriate TP/TA as information addressee. |
| 2 | C&S | The commander of the confinement facility notifies CDR, HRC–Alexandria (AHRC–OPD–A) or CDR, HRC–St. Louis (AHRC–AR), as appropriate, not later than 2 weeks prior to completion of an RC officer's confinement that has been sentenced to dismissal or dishonorable discharge and confinement, and whose sentence has not been finally approved. Notifications are exempt from report control under AR 335–15 and when appropriate will include the following: *a.* Name, grade, SSN, branch and assignment. *b.* Date and source of general courts-martial order, and sentence as approved. *c.* Date of release from confinement. *d.* Date of departure, mode of travel, transportation terminal and estimated time of arrival (if being returned from OCONUS command). |
| 3 | C&S | The GCMCA of the confinement facility returns the officer stationed OCONUS to the appropriate CONUS TP/TA to await separation instructions from HRC. |
| 4 | C&S | *a.* The commander of the confinement facility issues reassignment orders directing the officer to report to a TP/TA for separation. Includes in the reassignment orders the following statement: "Under the provisions of the Uniform Code of Military Justice, Manual for Courts-Martial," an officer could be retained in the service pending final action on the court-martial charges under which he or she stands convicted. The fact that he or she is being released from AD shall not effect or be construed to effect, constructively or by impliedly, any condonation or pardon of the offense or offenses under which the officer stands convicted, or remission, in whole or in part, of the sentence adjudged against them. The period of service from which he or she is being released from AD will be characterized according to the final action on said sentence. *b.* Complete DD Form 214 WS and forwards to CDR, HRC–Alexandria (AHRC–OPD–A) or CDR, HRC–St. Louis (AHRC–AR), as appropriate. Includes with the transmittal memorandum five copies of the final release order. |
| 5 | C&S | The SAA ensures an officer released under this section is not terminated prior to receipt of final instructions from HRC–Alexandria or HRC–St. Louis, as appropriate. |

**Table 2–14**
**Release from active duty pending appellate review—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 6 | PPAA (TP/TA) | Ensures that action is taken as required by AR 190–47, paragraph 5–2, and AR 635–10, paragraph 3–15. Separates the officer. |
| 7 | C&S | The SAA will advise CDR; CDR, HRC–Alexandria (AHRC–OPD–A); or CDR, HRC–St. Louis (AHRC–AR); as appropriate, by electronic means, the date the officer is released from AD and the officer's permanent home address. |

## Section XVII
## Task: Process Involuntary Release from Active Duty and Termination of Reserve Appointments of Student Officers and Warrant Officers Attending Branch Orientation, Familiarization Courses, or Warrant Officer Basic Course (WOBC)

### 2–33. Rules for processing involuntary release from active duty and termination of Reserve appointments of student officers and warrant officers attending branch orientation, familiarization courses, or Warrant Officer Basic Course

*a.* An RC commissioned officer with less than 5 years commissioned service or an RC warrant will be released from AD and discharged from their USAR commission when the officer fails to meet the standards of service schools due to—

(1) Misconduct.

(2) Moral or professional dereliction.

(3) Academic or leadership deficiencies.

(4) Resigning from a course.

*b.* An officer attending any basic course while detailed from branch for strength accounting only and who is attending a course of instruction at a different branch school as part of basic course is included in this section.

*c.* Effective 1 October 1992, warrant officers W–1, who are appointed contingent upon successful completion of WOBC, will be REFRAD or discharged if—

(1) Eliminated from WOBC due to resignation from the course or for failure to meet the conduct, moral, physical, professional, academic, or leadership standards.

(2) Failure of RC, WO, W1 to successfully complete WOBC within 2 years of appointment (3 years with HQDA (DAPE–MPO) or Chief, National Guard Bureau (GB–ARP–O) waiver).

*d.* For officer or warrant officers attending a service school who are resigning from the course, HQDA (AHRC–OPD–A) is the final authority to approve or disapprove the REFRAD or discharge. The GCMCA for that officer will forward a recommendation to CDR, HRC. Officers and warrant officer who resigns from a course or voluntarily terminate attendance will normally be required to complete the period of service required by law and regulation incident to their appointment as officers or warrant officers. For all other cases, the GCMCA for an officer attending a service school (TJAG for an officer attending The Judge Advocate General's School) has final authority to approve or disapprove the officer's REFRAD (ARNGUS and USAR officers) or discharge (USAR officers only) under this section. This authority will not be further delegated.

*e.* For purposes of this section, the term school commandants includes commanders of U.S. Army medical treatment facilities when a branch or specialty qualifying course is conducted in such a facility.

*f.* The Commander, HRC–St. Louis will direct the discharge of an officer of the USAR who has been released from ADT under a self-terminating order. The school commandant will forward all documents and reports pertaining to a USAR officer to CDR, HRC–St. Louis (AHRC–PAP), 1 Reserve Way, St. Louis, MO 63132–5200.

*g.* The school commandant will forward all documents and reports pertaining to an ARNGUS officer to HQDA (NGB–ARP–O), Chief National Guard Bureau, 2500 ARMY PENTAGON, WASH DC 20310–2500, under NGR 635–100, who has responsibility for withdrawal of Federal recognition of all ARNGUS officers.

### 2–34. Steps for processing involuntary release from active duty and termination of Reserve appointments of student officers and warrant officers attending branch orientation, familiarization courses, or Warrant Officer Basic Course

The steps required for processing involuntary REFRAD and termination of Reserve appointments of student officers and WOs attending branch orientation, familiarization courses, or WOBC are as shown in table 2–15.

**Table 2–15**
**Involuntary release from active duty and termination of Reserve appointments of student officers and warrant officers attending branch, familiarization courses, or Warrant Officers Basic Course**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1<br>C&S | *a.* The school commandant at the start of each course advises each student that may be affected by this section of the rules and procedures herein.<br>*b.* When a student fails to meet the standards of the school, recommends that student be released from AD and refers case to the school faculty board. The student may waive consideration of pending separation by a faculty board and accept the decision of the approval authority in respect to their release/discharge. |
| 2 | SLDR | If the student desires a faculty board, they may present to the board any circumstances the student considers extenuating. |
| 3 | C&S | If the student desires a faculty board, the school faculty board then considers the student's case and includes in its findings all circumstances surrounding the failure and leadership potential of the student. |
| 4 | C&S | The school commandant forwards recommendations with the faculty board proceedings (unless the student waives consideration by the board) to the officer exercising GCM jurisdiction over the school. The Commandant, The Judge Advocate General's School, forwards proceedings to ATTN: HQDA, (DAJA–PT), The Judge Advocate General, 2200 Army Pentagon, Washington, DC 20310–2200. |
| 5 | PPAA<br>BN S–1<br>C&S | The GCMCA/TJAG will, if the student desires a board, then approve or disapprove the faculty board's findings and recommendations.<br>*a.* Return the proceedings to the school commandant when the REFRAD or discharge (or other action within the authority of the school commandant) is directed.<br>*b.* Forward the proceedings to CDR, HRC–Alexandria (AHRC–OPD–A), when retention with branch transfer is approved.<br>*c.* When the final approved action must be considered or executed by HRC, forward the proceedings to CDR, HRC–Alexandria (AHRC–OPD–A).<br>*d.* Determine whether medical board or physical evaluation board proceedings are pending or appropriate per paragraph 1–22. |
| 6 | C&S | The school commandant authorizes a student serving on ADT to return in time to arrive at their home station by the termination date of self-terminating order, when he or she has not received the final decision of the case. |
| 7 | SACT<br>(TP/TA) | *a.* Separates a student whose REFRAD (USAR and ARNGUS) or discharge (USAR only) is directed by the GCM authority or TJAG. (Exception: for a student of the USAR on ADT who has returned home under self-terminating orders and any student of the ARNGUS on full-time training duty, then para 2–33e or f applies). Unless one of exceptions apply, final release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1.<br>*b.* Forwards to CDR, HRC–St. Louis (AHRC–PAT–R), for USAR students, or to Chief, National Guard Bureau (NGB–ARP–O), as appropriate, one copy of the release order, a report of the student's academic performance, a copy of the faculty board proceedings (if applicable), and the action directed by the GCMCA or TJAG. For an ROTC graduate, includes the name of the school. |

## Section XVIII
## Task: Process Involuntary Early Release of Army National Guard of the United States and United States Army Reserve Officers on Active duty for Training, Active Duty for Special Work, and Temporary Tours of Active Duty

**2–35. Rules for processing involuntary early release of Army National Guard of the United States and United States Army Reserve officers on active duty for training, active duty for special work, and temporary tours of active duty**

*a.* ARNGUS and USAR commissioned and warrant officers may be involuntarily released early from ADT, ADSW, and TTAD for any of the reasons shown in paragraphs *(1)* through *(3)* , below. The unit or agency sponsoring the tour will initiate the recommendation for involuntary early release when appropriate, taking into consideration the length of time remaining on the officer's tour, based on automatic release date authorized by self-terminating orders. (This section does not relieve the commander from moral obligation to pursue separation for cause under other sections of this regulation when the circumstances exist.) The approval authority for early release under paragraphs *(2)* and *(3)*, below is the commander of the unit or agency sponsoring the tour and does not require board action.

(1) An officer's conduct, degree of efficiency, or manner of performance is seriously deficient.

(2) There is a change in mission requirements which results in malutilization of the officer's skills (no board).

(3) Funds are curtailed for the tour (no board).

*b.* The initiating commander will refer the recommendation for involuntary early release (see fig 2–7) to the officer for rebuttal or comment. Specific reasons must be included in the recommendation. The officer's rebuttal or comments

must be returned to the initiating commander within 15 calendar days from the date of receipt. No reasons will be added after the officer's review, without further referral to the officer (AR 600–37). The officer may submit a written request (see fig 2–1) for voluntary early release instead of responding to the recommendation for involuntary early release. Should the officer request voluntary release, the request will be processed in the same manner as a recommendation for involuntary early release, except that no board action is required. The officer's request for voluntary release will be accepted and all involuntary release action will cease.

*c.* The unit or agency commander sponsoring the tour that initiated the involuntary early release under *a*(1,) above, will submit a completed recommendation to include the officer's rebuttal or comments. The recommendation will be sent through command channels of the unit or agency sponsoring the tour to CDR, HRC–St. Louis (AHRC–OPZ–O), 1 Reserve Way, St. Louis, MO 63132–5200, for USAR officers or to HQDA (NGB–ARP–O), Chief National Guard Bureau, 2500 Army Pentagon, Washington, DC 20310–2500, for ARNGUS officers. In addition, a copy of the recommendation will be sent to the officer's assigned unit. Intermediate commanders will recommend approval or disapproval with reasons and forward promptly to the next higher headquarters.

*d.* The DARNG and CDR, HRC–St. Louis, acting for HQDA, will convene a board of officers to consider recommendations for involuntary early release under *a*(1), above, concerning their respective personnel. The board will determine if the officer will be retained or released from the tour. In all cases, when release is ordered, the commander will contact the orders-issuing-agency for amendment of orders. The DARNG and the CG, HRC–St. Louis, will prescribe the board proceedings. A personal appearance by the officer before the board is not authorized. The board proceedings will be final.

*e.* An officer to be retained or released will be notified through the proper channels. An officer will be released within 30 calendar days after notice that the release has been approved or at the end of the tour, whichever is earlier. In no case will the officer be retained beyond the end date of the tour due to the release action not being completed.

*f.* An officer evaluation report or academic evaluation report, as appropriate, will be submitted on each officer who is involuntarily released or who voluntarily requests release in lieu of the involuntary release action. Each report will be sent through the rating chain to ATTN NGB–ARP–O, Chief National Guard Bureau, 2500 Army Pentagon, Washington, DC 20310–2500, or to CDR, HRC–St. Louis (AHRC–PAV–EO), 1 Reserve Way, St. Louis, MO 63132–5200 (AR 623–105).

*g.* Entitlement to separation pay for officers who are involuntarily released should be determined by referring to the DODPM, part 4, chapter 4.

*h.* Paragraphs 2–29 and 2–30 do not apply to officers released early from their tour under this section.

## 2–36. Steps for processing involuntary early release of Army National Guard of the United States or United States Army Reserve officers on active duty training, active duty for special work, and temporary tours of active duty

The required steps for processing involuntary early release of ARNGUS or USAR officers on ADT, ADSW, and TTAD are as shown in table 2–16.

**Table 2–16**
**Involuntary early release of Army National Guard of the United States or United States Army Reserve officers on active duty training, active duty for special work, and temporary tours of duty**

| Step | Work center | Required action |
|---|---|---|
| 1 | PPAA BN S–1 | Prepares and forwards involuntary early release recommendation (fig 2–7) to the officer. |
| 2 | SLDR | Receives involuntary early release recommendation and responds with a rebuttal or comments or requests voluntary early release (fig 2–1) in lieu of involuntary early release. Response must be in writing and provided to the initiating commander within 15 calendar days of receipt of the recommendation for involuntary early release. |
| 3 | BN S–1 C&S | Reviews rebuttal, or comments, or voluntary early release request. Each commander in the rating chain of the unit or agency sponsoring the officer's tour that initiated the recommendation will recommend approval or disapproval and provide reasons for the recommendation. *a.* Recommendations for early release initiated under paragraph 2–35*a*(2) and (3), the commander of the unit or agency that sponsored the respective tour is the approval/disapproval authority. *b.* For recommendations for early release initiated under paragraph 2–35*a*(1), the complete action will be promptly forwarded by each commander in the chain through the next higher headquarters to CDR, HRC–St. Louis (AHRC–OPM), for USAR officers or to Chief, National Guard Bureau (NGB–ARP–O) for ARNGUS officers. |
| 4 | BN S–1 PPAA (TP/TA) | Receives release notification and ensures officer is released within 30 calendar days or at the end of the officer's tour, whichever is earlier. Ensures that the appropriate evaluation report is prepared. Release orders and forms will cite regulatory authority. |

**Section XIX**
**Task: Process Involuntary Release from Active Duty Due to Failure of Selection for Permanent Reserve Promotion**

## 2–37. Rules for processing involuntary release from active duty due to failure of selection for permanent Reserve promotion

*a.* The provisions of this section do not apply to commissioned officers and warrant officers on the ADL (AR 600–8–29, 10 USC 620, and (37 USC 201(b), 10 USC Part II of subtitle A, Warrant Officer Management Act). Except as indicated in *b* through *e*, below, the officers and warrant officers listed in subparagraphs *(1)* and *(2)*, below, will be released from AD. They will be discharged on the 120th calendar day after receipt of involuntary release notification. This is unless earlier release is voluntarily requested or transfer to the Retired Reserve is requested and the Soldier is eligible per AR 140–10. Officers and warrant officers with a remaining service obligation will be transferred to the Ready Reserve.

(1) Reserve commissioned officers serving on AD as commissioned officers who fail a second time to be selected for promotion to permanent Reserve grade of captain, major, or lieutenant colonel.

(2) USAR warrant officers serving on AD who fail a second time to be selected for promotion to permanent grade of CW3 or CW4.

*b.* Reserve commissioned officers holding a permanent Reserve grade of 2LT and serving on AD as commissioned officers and who are not promoted to the permanent Reserve grade of 1LT on or before completing 3 years promotion service will be released. These officers must be released from AD and discharged on the date of completion of such service unless they have a remaining service obligation. Those serving an obligated period of AD will be retained on AD until completion of this obligation.

*c.* Reserve warrant officers holding the permanent Reserve grade of W1 and serving on AD as warrant officers and who are not promoted to the permanent Reserve grade of CW2 on or before date completing 3 years promotion service will be released from AD. They will be released from AD and discharged on date of completion of such service unless they have a service obligation. Those serving an obligated period of service will be retained on AD until completion of their obligation.

*d.* Officers and warrant officers within 2 years of qualifying for retirement will be retained on AD until the last day of the month following the month they qualify for such retirement. This will apply to those qualifying for retirement under chapter 6 (20 years AFS including 10 years commissioned service for officers) on their scheduled release date. Also, these officers and warrant officers must be able to qualify before attaining maximum ages specified in this chapter. Release must, however, be approved by the Secretary of the Army (10 USC 12686).

*e.* An officer or warrant officer eligible for retirement under chapter 6 may apply for retirement to be effective not later than the first day of the month following the month in which release is directed.

*f.* HRC–St. Louis forwards the notification of nonselection through command channels for personal presentation to the officer.

*g.* HRC–St. Louis, upon receipt of the signed acknowledgement of notification of REFRAD and election of options from the officer, forwards a copy of the signed acknowledgement and election of options to the personnel service support team.

## 2–38. Steps for processing involuntary release from active duty due to failure of selection for permanent Reserve promotion

The steps required for processing involuntary REFRAD due to failure of selection for permanent Reserve promotion are as shown in table 2–17.

**Table 2–17**
**Involuntary release from active duty due to failure of selection for permanent Reserve promotion**

| Step | Step | Required action |
|------|------|-----------------|
| 1 | C&S | The commander personally notifies the officer of their nonselection. The commander will counsel the officer regarding their options. |
| 2 | SLDR | The officer is notified and counseled by commander. The officer signs the acknowledgment of notification and election of options and forwards to CDR, HRC–St. Louis, by the established suspense date. |
| 3 | C&S | The commander ensures the officer's acknowledgment and election of options is forwarded to CDR, HRC–St. Louis, by the established suspense date. |

**Table 2–17**
**Involuntary release from active duty due to failure of selection for permanent Reserve promotion—Continued**

| Step | Step | Required action |
|------|------|-----------------|
| 4 | PSST | Upon receipt of the established separation date and the officer's election of options from CDR, HRC–St. Louis, processes the officer for REFRAD and discharge/transfer to Retired Reserve, as applicable. A copy of the acknowledgment and election of options will be filed in the officer's MPF. Separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

**(Letterhead)**

**Office symbol**                                                                                                  **(Date)**


MEMORANDUM THRU (Channels)

FOR: CDR, HRC (AHRC-OPD-A) or The Judge Advocate General (DAJA-PT) or Chief of Chaplains (DACH-PER) or CDR, HRC-STL (AHRC-OP) for ADT or ADSW or CDR, HRC-STL (AHRC-AR) for AGR or CNGB (NGB-ARP-O)

Subject: Request for Voluntary Release from Active Duty or Early Release from ADT, ADSW-AC, OR ADSW-RC (as appropriate).


1.  I, **(name, grade, branch, SSN)**, hereby request voluntary release from active duty or early release under AR 600-8-24, **(add appropriate paragraph number)** effective **(date)** or as soon as practicable thereafter.

2.  Reason for voluntary release from active duty or early release: **(hardship, essential to national interest, pregnancy, attend school, enlistment/reenlistment in the RA, assigned to medical hold, in lieu of involuntary early release, whichever applies).**

3.  **(When reason is pregnancy, include)** I understand this request may only be withdrawn with the approval of HQDA, even though the reason for submission may change. **(Also, include certification of pregnancy.)**

4.  I understand that if my release form active duty is accepted that my character of service will be characterized as Honorable or Under Honorable Conditions.

5.  I understand that if I participated in certain advanced education programs, I may be required to reimburse the U.S. Government as stated in written agreement made by me with the U.S. Government under law and regulations.

6.  Present duty station:

Assignment:

Attachment, **(if any):**

7.  I **(do) (do not)** desire separation overseas.  **(Applicable only if currently serving in an overseas area.)**

8.  As of **(the date of this application)**, I have **(number)** days of accrued leave.  I **(do) (do not)** plan to take transition leave.  I plan to take **(number)** days leave **(if applicable).**

9.  My mailing address immediately after release from active duty will be **(complete address).**


**JANE J. DOE**
**Captain, AD**
**(SSN)**

**Figure 2–1. Sample format request for voluntary REFRAD or early release**

STATEMENT OF COUNSELING

**(Date)**

I affirm that I have counseled **(name, grade and SSN)** this date on applicable items contained in AR 600-8-25, table 2-5, concerning her rights, entitlements, and responsibilities.

**(Signature of counseling officer)**

**(Typed name, grade SSN and organization of counseling officer)**

Orig:  Officer
1 copy:  MPF

**Figure 2–2. Sample format for pregnancy statement of counseling**

(Letterhead)

Office symbol                                                                                                  (Date)

MEMORANDUM THRU (Channels—see paragraph 3-4)

FOR:

Subject: Department of the Army Duty Board

1. We continually review records to provide career guidance and periodic performance evaluation for officers managed within the Officer Personnel Management Directorate. During our review, we identify those officers whose degree of efficiency and manner of performance are below the level of their contemporaries. The records of these officers are selected for referral to a Department of the Army Active Duty Board (DAADB) to be considered for involuntary release from active duty under the provisions of AR 600-8-24 paragraph 2-27. A recent review by the DAADB is appropriate. In conjunction with this action a DA Form 268 (enclosure 1), has been initiated as set forth in AR 600-8-2.

2. The DAADB will review your OMPF and make its final determination on whether you will be retained or involuntarily release from active duty based on the guidance provided at enclosure 2. Should you be selected for involuntary release, your release will be as indicated below, after receipt of the board's official determination.

   a. For misconduct moral or professional dereliction and if you are - -

      (1) Assigned in CONUS, you will be released from AD no earlier than 5 calendar days and no later 14 calendar days after receipt of written release notification.

      (2) Assigned in OCONUS, you will be returned to the CONUS separation transfer point no later than 21 calendar days after receipt of written release notification and released from AD no later than 5 calendar days after arriving at CONUS TCs.

   b. Solely for substandard performance of duty, you will be released from AD no later than 30 calendar days after receipt of written release notification. You will no be release prior to the 30th calendar day without your consent.

3. A microfiche copy of your OMPF (enclosure 3) and a copy of your Officer Record Brief (ORB) (enclosure 4) are provided for your review. Copies of these records will be submitted to the board. I encourage you to review your record and ensure its accuracy and completeness.

4. You may submit any written material that you wish the board to consider. The information you submit may or may not reverse the decision to forward your records to the board but will, in any case, be considered by the board when reviewing your OMPF. You may not appear before the board. Information that you wish to provide to this board should be addressed to U.S Army Human Resources Command (AHRC-OPD-A), 200 Stovall Street, Alexandria VA 22332-0478; The Judge Advocate General, (DAJA-PT), 2200 Army Pentagon, Washington DC 20310-2200; Chief of Chaplains, (DACH-PER), 2700 Army Pentagon, Washington DC 20310-2700; U.S Army Human -St Louis, (AHRC-AR), 1 Reserve Way, St Louis MO 63131-5200 for USAR AGR officers as applicable, and must be forwarded by certified mail.

5. Acknowledge receipt of this letter by completing and mailing the acknowledgement of notification (fig 2-4) within 24 hours. You will be provided 30 calendar days from receipt of this notification to complete the review of your OMPF and submit correspondence to the board, if desired. After this period, the board will consider your records as they exist at the time.

FOR THE COMMANDER:

Encls

as

**Figure 2–3. Sample format for DAADB recommendation**

*(Date)*

SUBJECT: Acknowledgment of Notification for Recommendation for Involuntary Release from Active Duty

TO: *(Officer Recommending Release from Active Duty)*

1. I have received your memorandum recommending my involuntary separation from active duty.

2. I *(will) (will not)* make a statement or submit a rebuttal in my behalf. My statement/rebuttal is enclosed *(if applicable).*

Encl *(if appropriate)*                        *(Signature of the officer)*
                                               *(Typed name, rank, and SSN)*

**Figure 2–4. Sample format for officer's acknowledgment of notification**

---

**(Date)**

Subject:  Release date Under AR 600-8-24, chapter 2, paragraph 2-27.

TO:  **(Officer Recommending Release from Active Duty)**

1.  I received official notification on **(date)** that I am to be involuntarily release from active duty under the provisions of AR 600-8-24, chapter 2, paragraph 2-27, no later than **(insert the number of days as determined by para 2-27q)** calendar days after the date of my notification.

2.  I hereby consent to be release from active duty on (date).

3.  I understand that my release prior to the **(insert the number of days from para 1 above)** calendar days after I received notification will have no bearing on my entitlements.

(Signature of the officer)
(Typed name, grade and SSN)

**Figure 2–5. Sample format for involuntary release from active duty notification**

*(Letterhead)*

*Office symbol (MARKS number)*                                                      *(Date)*

MEMORANDUM THRU (Channels)

FOR: *(Individual Officer)*

SUBJECT: Recommendation for Involuntary Release from Active Duty

1. I am initiating action recommending you to be involuntarily released from active duty under provisions of AR 600-8-24, *(add appropriate paragraph)* due to *(add appropriate reason, that is, misconduct, moral or professional dereliction, civil court conviction (specific Federal or State court)).*

2. My recommendation is based on the following *(list only applicable reasons that can be supported by specific factual allegations and evidence) (attach copy of civil conviction):*

    a.

    b.

3. In conjunction with this action, a suspension of favorable personnel action (DA Form 268) has been initiated (AR 600-8-2).

4. You may have the assistance of an officer of The Judge Advocate General's Corps appointed as counsel or seek your own civilian counsel (obtained by you at no expense to the Government) to prepare a written statement indicating any pertinent facts or rebuttal to your involuntary separation. This statement may be sworn or unsworn.

5. I recommend you be separated with *(type)* character of service. Your case will be forwarded to the ASA (M&RA) without referral to a DA Active Duty Board. *(Use only for civil court conviction.)*

6. Request you complete the acknowledgment *(fig 2-4)* and return it with this correspondence and your statement or rebuttal within 7 calendar days *(30 days for civil court conviction cases that will not be referred to a DA Active Duty Board)* of receipt of this memorandum. If your case is processed for referral to a DA Active Duty Board, you will receive an additional opportunity to provide a statement/rebuttal.

                                           *(Signature)*

Encls                                        *(Name)*
                                                *(Rank, branch)*
                                              *(Command element)*

**Figure 2–6. Sample format for recommendation for involuntary release from active duty**

**(Letterhead)**

Office symbol                                                                                                    **(Date)**

MEMORANDUM THRU (Channels)

FOR: **(Individual Officer)**

Subject:  Recommendation for involuntary Early release from ADT, ADSW-AC, or ADSW-RC **(as appropriate).**

1.  I am initiating action recommending you be involuntarily release from your **(ADT, ADSW-AC, or ADSW-RC, as appropriate)** under the provisions of AR 600-8-24, paragraph 2-35, due to **(add appropriate reason: see para 2-35a).**

2.  My recommendation is based on the following **(list only specific reasons):**

      a.

      b.

3. You have the option to submit a voluntary request for early release from your tour in place of this recommendation for involuntary early release from your tour.

4. You may have the assistance of an officer of the Judge Advocate General's Corp or seek your own civilian counsel (Obtain by you at no cost to the Government) to prepare written comments indicating any pertinent facts or rebuttal to this recommendation for your involuntary release from your tour.  Comments or rebuttal may be sworn or unsworn.

5. Your request for voluntary early release from your tour or your comments/rebuttal to the involuntary early release will be provided to the initiating officer to this recommendation within 15 calendar days of receipt.

6.  This recommendation with your comments or rebuttal or your voluntary early release request will be forwarded through channels to CDR, HRC-STL, or the Chief, National Guard Bureau, as appropriate, for board action (if appropriate).

**(Signature Block)**

**Figure 2–7. Sample format for recommendation for involuntary early release from ADT, ADSW–AC, or ADSW–RC**

# Chapter 3
# Resignations

## Section I
## Scope

### 3–1. Introduction
   *a.* This chapter prescribes the tasks, rules, and steps for processing voluntary resignations. Except as provided in *b,* below, any officer of the Active Army or USAR may tender a resignation under provisions of this chapter. The

Secretary of the Army or his designee may accept resignations and orders will be issued by direction of the CG, HRC. An officer whose resignation has been accepted will be separated on the date specified in Department of the Army's orders or as otherwise directed by the Department of the Army. An appropriate discharge certificate as specified by the CG, HRC, will be furnished by the appropriate commander at the time the officer is separated. The date of separation, as specified or directed, will not be changed without prior approval of HQDA nor can valid separation orders be revoked subsequent to the specified or directed date of separation.

*b.* Except when resignation is under section VI of this chapter, USAR officers in an AGR status or on ADT, ADSW, TTAD and Soldiers on AD pursuant to 10 USC 12304 (Presidential Selected Reserve) will request resignations under the provisions of AR 135–175. Before such a request is submitted, they must be released from their active duty status.

*c.* Under normal circumstances any officer (RA or other than Active Army (OTRA)) may submit a request for unqualified resignation, provided all Service Remaining Requirements (SRRs) have been met. Such application will be submitted not earlier than 12 months or less than 6 months prior to the requested separation date. The 6 month requirement may be waived by the Separation Approval Authority. Appropriate documentation must accompany the request.

### 3–2. Withdrawal of resignation
*a.* An officer may request withdrawal of resignation at any time prior to commencing travel pursuant to orders issued for the purpose of separating the officer. The request, including reasons, will be forwarded through channels specified in paragraph 3–4. Each forwarding endorsement will include recommendation for approval or disapproval. Reasons for disapproval will be stated.

*b.* A resignation may be withdrawn only with the approval of HQDA, with the exception of an unqualified resignation. An unqualified resignation may be withdrawn on the approval of an endorsing commander in the field and returned to the officer concerned, provided the resignation has not been forwarded by the commander to CG, HRC.

### 3–3. Notification to finance and accounting officer
When notice of acceptance of the resignation is received by the installation or local commander, he or she will notify the appropriate finance and accounting officer.

### 3–4. Routing
*a.* Resignations under paragraphs 3–13 and 4–11(*i*)(2) of this regulation must be processed through the GOSCA or through the GCMCA. These actions will be routed to that commander through the same channels as court-martial actions. The GOSCA or GCMCA will forward the resignation with the recommendation for elimination and comments directly to CDR, HRC–Alexandria (AHRC–OPD–A). Additionally, an information copy of the correspondence will be forwarded to interested higher headquarters (for example, MACOM) in the chain of command.

*b.* Resignations under paragraphs 3–5 and 5–9 of this regulation will be forwarded through normal administrative channels to HRC. For resignations under paragraph 3–5, forward to CDR HRC–Alexandria (AHRC–OPD–A), Alexandria, VA 22332–0478; HQDA (DAJA–PT), The Judge Advocate General, 2200 Army Pentagon, Washington, DC 20310–2200; or HQDA (DACH–PER), Chief of Chaplains, 2700 Army Pentagon, Washington, DC 20310–2700, as applicable. The officer's immediate commander will send resignations under paragraph 3–11 (resignation because of pregnancy) directly to CDR, HRC–Alexandria (AHRC–OPD–A), or the HQDA agency shown above as applicable to judge advocates or chaplains. Resignations under paragraphs 3–5 and 5–9 will be processed as follows: In those commands where the normal administrative channels include a headquarters exercising GCM authority, that headquarters will—

(1) Forward resignations under paragraph 3–5, as stated in *b*, above, and under paragraph 5–9, directly to CDR HRC–Alexandria (AHRC–OPD–A), ALEX VA 22332–0478.

(2) Provide information copies of the action to interested higher headquarters (for example, MACOM) in the chain of command.

*c.* In those commands authorized to deal directly with HQDA on routine personnel matters and those administrative channels that do not include a headquarters that exercises GCM jurisdiction, the commander may designate, in writing, the subordinate units or activities in his command that may forward these separation requests directly to CDR, HRC–Alexandria (AHRC–OPD–A), or agency shown in *b*, above. Principal officials of HQDA Staff agencies are included in this category concerning class II installations under their control. The headquarters designated will ensure that the request is complete and correct. Resignations under this paragraph will be in writing and an information copy of the resignation will be sent to CDR, HRC–Alexandria (AHRC–OPD–A). The first forwarding endorsement will contain the following:

(1) Recommendation for approval or disapproval and type of discharge to be furnished. If approval is recommended and the officer has not fulfilled the service requirements specified in paragraph 3–5, complete justification will be included. Similarly, recommendations for disapproval will state reasons.

(2) Statement that none of the conditions in paragraph 1–11*b* exist or if any do exist, a complete explanation.

(3) Statement that necessary action has been or will be taken to adjust and close any public property or financial accounts of the officer concerned.

(4) Report of any recent misconduct of the officer concerned that had not been previously reported to HQDA. Any serious misconduct committed or discovered subsequent to the endorsement will be reported to HRC–Alexandria (AHRC–OPD–A) in an expeditious manner.

(5) If the officer is serving OCONUS, statement of whether they are accompanied by dependents and the date the officer will complete the OCONUS tour.

(6) If the officer is serving OCONUS and requests separation OCONUS, recommendation concerning such request. If disapproval is recommended, reasons will be given. If approval is recommended, include a positive statement that the foreign country concerned specifically consents to separation in that country.

(7) Statement that the officer is physically qualified for separation or that the officer will be scheduled for medical examination according to paragraph 1–22*a* as appropriate.

(8) Succeeding forwarding endorsements will contain recommendations for approval or disapproval and type of discharge certificate to be furnished.

(9) For additional information required, see pertinent section for each type of resignation.

## Section II
## Task: Process Unqualified Resignation

### 3–5. Rules for processing unqualified resignation

*a.* Any officer on AD (for more than 90 calendar days) may tender a resignation under this paragraph except when action is pending that could result in resignation for the good of the Service; officer is under a suspension of favorable actions, pending investigation, under charges; or any other unfavorable or derogatory action is pending.

*b.* Normally, resignations will not be accepted unless on the requested date of separation the officer has fulfilled the service obligation below.

(1) Graduates of fully funded commissioning programs must complete the ADSO incurred by participation in such programs. However, this obligation may be waived if the monies are recouped.

(2) An officer must serve in the Armed Forces until completion of statutory military service obligation (MSO). REFRAD under provisions of chapter 2 of this regulation does not terminate the MSO. An officer has an 8–year MSO. To waive an officer's MSO, the ASA(M&RA) must find that the officer has no potential for service under conditions of full mobilization. Time spent as a cadet at the United States Military Academy or as an ROTC cadet does not count towards fulfilling the MSO. An officer who requests resignation before completing the 8–year MSO must agree to accept an indefinite appointment in the USAR to complete such service obligation. The act of taking the Reserve officer's oath by a Active Army (AA) officer is sufficient to simultaneously terminate the officer's RA status by operation of law.

(3) Service academy graduates and ROTC DMGs who are released/separated from active duty before completing their ADSO will complete the remaining portion of their ADSO in the Selected Reserve. This requirement may only be waived by the ASA (M&RA) or delegate. The Deputy Chief of Staff, G-1 or their delegate will determine if unit positions are available for these officers.

(4) An officer who has received a PCS must complete the ADSO incurred by the reassignment. (See AR 614–30.)

(5) An officer who has attended or is attending a service school, civilian educational institution, or special training for which a utilization tour is required will complete any period of service specified by AR 350–100 and appropriate regulations.

(6) An officer on orders for assignment to a military mission, a military assistance advisory group, or attaché office must complete training and the overseas tour of duty prescribed by AR 614–30.

(7) An officer on orders to a course of instruction, an OCONUS station, or any other assignment that will incur an ADSO will comply with such orders unless an exception is granted by HRC. Exceptions will be considered on an individual basis, provided the resignation is submitted within 30 calendar days of receipt of the alert or reassignment order, whichever is earlier.

*c.* The first colonel in the officer's chain of command or supervision will counsel the officer (except for chaplains, judge advocates, and AMEDD personnel) with less than 10 years AFCS when they submit an unqualified resignation. The counseling will be as stated in paragraph 1–12*b.*

*d.* Judge advocates, chaplains, and AMEDD officers will be counseled by a senior officer of their branch in their chain of technical supervision or as specifically designated by their branch. This counseling will be as stated in paragraph 1–12*b.*

*e.* HRC–Alexandria (AHRC–OPD–A) will issue separation instructions on approved requests to the appropriate PSC/MPD.

*f.* If disapproved, HRC–Alexandria (AHRC–OPD–A); HQDA (DAJA–PT) (judge advocates); or HQDA (DACH–PER) (chaplains), as applicable, will notify the officer through the officer's chain of command.

*g.* An officer who submits an unqualified resignation accepted by HRC will receive an Honorable discharge or a

General discharge under honorable conditions. A DD Form 256 ( Honorable Discharge Certificate) (based on the officer's record of service) will be provided.

## 3–6. Steps for processing unqualified resignation

The steps required for processing unqualified resignation are as shown in table 3–1.

**Table 3–1**
**Processing unqualified resignation**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Submits request for unqualified resignation to their commander (fig 3–1). |
| 2 | SACT<br>BN–1 | *a.* Reviews and forwards the officer's request for resignation at least 90 calendar days prior to the requested separation date, through channels to CDR, HRC–Alexandria (AHRC–OPD–A); HQDA (DAJA–PT) (judge advocates); or HQDA (DACH–CH–PER) (chaplains), as applicable. (As an exception, an officer who has a service obligation beyond 6 months may submit the request, as an exception to policy, more than 6 months in advance of the requested effective date.)<br>*b.* The first forwarding endorsement will state—<br>(1) The officer's reason for submitting the resignation.<br>(2) A brief synopsis of the counseling session (para 3–5*c* or *d*).<br>(3) Whether the officer is currently undergoing a course of instruction that upon completion or termination will result in an active duty service obligation. Specify course title, beginning and closing dates, and service obligations incurred.<br>(4) Recommendation for approval or disapproval and type of discharge to be furnished. Include complete justification when approval is recommended and the officer has not fulfilled a service requirement. Also, include justification for disapproval.<br>(5) Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, under the control of civil authorities, or insane.<br>(6) Statement that necessary action has been or will be taken to adjust and close any public property or financial accounts of the officer concerned.<br>(7) Report of any recent misconduct of the officer concerned which had not previously been reported to HRC. Any misconduct committed or discovered subsequent to endorsement will be reported to HRC–Alexandria (AHRC–OPD–A) in an expeditious manner.<br>(8) If the officer is serving OCONUS, indicate whether he or she is accompanied by dependents and the date the officer will complete the normal OCONUS tour.<br>(9) If the officer is serving OCONUS and requests separation OCONUS, include a recommendation concerning such request. If disapproval is recommended, include justification. If approval is recommended, include a positive statement that the foreign country concerned specifically consents to the officer's separation in that country.<br>(10) Statement that the officer is physically qualified for separation or that the officer will be scheduled for medical examination according to the regulation.<br>(11) Whether an RA officer desires an appointment in the USAR (not on AD). If USAR is requested, include recommendation for approval or disapproval. Include justification when disapproval is recommended. |
| 3 | SACT<br>TP/TA | Upon receipt of separation instructions, process officer for separation. Final orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section III
## Task: Process Resignation for the Purpose of Enlistment/Reenlistment in the Active Army

## 3–7. Rules for processing resignation for the purpose of enlistment/reenlistment in the Active Army

*a.* An officer or warrant officer on the ADL who meets the criteria as stated in either *b* or *c*, below, may submit a resignation for the purpose of enlistment or reenlistment in the RA. The officer or warrant officer must be counseled that if he or she enlists in the RA, the officer must submit a memorandum of resignation from USAR officer or warrant officer appointment. The resignation will be sent to CDR, HRC–Alexandria (AHRC–OPD–A). A Soldier may not serve on AD in an enlisted status and continue to hold a USAR officer or warrant officer appointment.

*b.* Any former enlisted member of the RA who was on AD as a Reserve officer or warrant officer of the Army or who was discharged as an enlisted member to accept a temporary appointment as an Army officer or warrant officer may be reenlisted in the enlisted grade held before serving as an officer or warrant officer. There will be no loss of seniority or credit for service, regardless of the existence of a vacancy in their pay grade, or of a physical disability incurred or service connected, or incurred in the line of duty. This is provided that the individual's service is terminated by an honorable discharge (or general discharge under honorable conditions) and he or she is released from AD for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge. An officer is not entitled to be reenlisted if the officer was discharged or released from Active Duty as a Reserve Officer on the basis of a determination of misconduct, moral or professional derelection, substandard duty performance,

or in the interests of national security, or where the officer's former enlisted status was based solely on participation in a pre-commissioning program that resulted in the Reserve commission held by that person during active duty from which the officer was released or discharged. Reenlistments rights, grade, and procedures for applying for reenlistment under this paragraph are provided in AR 601–280, paragraphs 1–6 and 3–13. Unused leave will be carried forward to the new status.

*c.* Any former enlisted member of the RA on AD as an officer or warrant officer (without statutory entitlement to reenlist) who is not eligible to retire as an officer or warrant officer but has sufficient creditable service to retire in an enlisted status may be enlisted for the purpose of retirement (this is not a statutory entitlement). The individual may apply for enlistment in the rank of SGT; however, individual qualifications will determine the grade to be awarded (AR 601–280, paragraph 1–6d(3)).

*d.* The Secretary of the Army may deny enlistment or reenlistment to anyone, including those who otherwise meet the criteria specified in *c,* above, except those who have a "statutory entitlement" (10 USC 3258).

*e.* The counseling as stated in paragraph 1–12*b* is not required for a resignation submitted under this section.

*f.* Separation instructions on approved requests will be issued by HRC–Alexandria (AHRC–OPD–A) to the appropriate PSC/MPD. For the purpose of retirement, an officer or warrant officer will be discharged on the third day prior to the first day of the month in which retirement is desired. For the purpose of continuing a military career in an enlisted status, an officer or warrant officer will be discharged on the day prior to the day of enlistment in the RA. HRC will forward a copy of the approved resignation packet to CDR, HRC–St. Louis (AHRC–OPZ–O).

*g.* A resignation approved by HQDA will be Under Honorable Conditions. A DD Form 256A or DD Form 257A discharge certificate (based on the officer's record of service) will be provided.

## 3–8. Steps for processing resignation for the purpose of enlistment/reenlistment in the Active Army
The steps required for processing resignation for the purpose of enlistment/reenlistment in the RA are as shown in table 3–2

**Table 3–2**
**Resignation for the purpose of enlistment/reenlistment in the Active Army**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Submits resignation (fig 3–1) not later than 120 calendar days prior to the requested separation date (paras 5 through 9 of figure 3–1 do not apply when submitting a resignation under this section). Add the following statement to figure 3–1, para 4: "I am tendering my resignation for the purpose of enlisting in the Active Army (to continue my military career in enlisted status, for retirement, input as appropriate)." He or she should coordinate with the local reenlistment office concerning enlistment in the RA. |
| 2 | SACT | *a.* When the purpose for submitting the resignation is for enlistment in the RA for retirement, process the resignation to include— <br> (1) Date officer reported on current tour of AD. <br> (2) Permanent enlisted grade and SSN. <br> (3) Grade determination according to AR 601–280, if appropriate. <br> (4) DA Form 2339 (Application for voluntary retirement) under AR 635–200, Chapter 12. <br> (5) Medical examination. See AR 40–501. <br> *b.* When the purpose for submitting the resignation is for enlistment in the RA to continue Army career in enlisted status, process the resignation. The following will be added as a new paragraph 5, figure 3–1, "I will enlist in the RA at place of separation on the day following the effective date of my discharge as an officer." |
| 2 | BN S–1 C&S | Reviews and forwards the officer's resignation through channels to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 3 | SACT TP/TA) | On receipt of separation instructions, discharges the officer or warrant officer as directed in paragraph 3–7f. Separation orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IV
## Task: Process Resignation of an Officer who did not meet Medical Fitness Standards when Appointed

## 3–9. Rules for processing resignation of an officer who did not meet medical fitness standards when appointed
*a.* A probationary officer who did not meet medical fitness standards when accepted for appointment but now meets the medical fitness standards for retention may submit a resignation.

*b.* A medical board must find that the officer has a medical condition that—

(1) Would have permanently disqualified the officer for entry in the military service had the condition been detected at the time of acceptance for appointment.

(2) Does not disqualify the officer for retention in the military service under AR 40–501, chapter 3.

(3) Was not service aggravated. However, a service aggravated condition that does not disqualify the officer for retention under AR 40–501, chapter 3, precludes eligibility for resignation.

*c.* Separation instructions on approved requests will be issued by HRC–Alexandria (AHRC-OPD–A) to the appropriate PSC/MPD.

*d.* As applicable, HRC–Alexandria (AHRC–OPD-A), HQDA (DAJA–PT), or HQDA (DACH–PER) will return disapproved requests through channels to the officer.

*e.* A DD Form 256A will be issued.

## 3–10. Steps for processing resignation of an officer who did not meet medical fitness standards when appointed

The steps required for processing resignation of an officer who did not meet medical fitness standards when appointed are as shown in table 3–3.

**Table 3–3**
**Resignation for failure to meet medical standards at time of appointment**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Submits resignation (fig 3–2). |
| 2 | SACT<br>BN S–1<br>C&S | Forwards the officer's request for resignation with supporting medical documents and Medical Board proceedings through administrative channels to CDR, HRC–Alexandria (AHRC–OPD–A), or HQDA (DAJA–PT) (judge advocates) or HQDA (DACH–PER) (chaplains), as applicable. The first forwarding endorsement will include a—<br>*a.* Recommendation for approval or disapproval and type of discharge to be furnished. Also include complete justification when disapproval is recommended.<br>*b.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, under control of civil authorities, or insane.<br>*c.* Statement that necessary action has been or will be taken to adjust or close any public property or financial accounts of the officer concerned.<br>*d.* Statement if the officer is serving OCONUS and requests separation OCONUS, that the foreign country concerned specifically consents to the officer's separation in that country. |
| 3 | SACT<br>(TP/TA) | Upon receipt of separation instructions, processes officer for separation. Final orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section V
## Task: Process Resignation Due to Pregnancy

## 3–11. Rules for processing resignation due to pregnancy

*a.* An officer may tender her resignation due to pregnancy. The CG, HRC, is the final approval authority.

*b.* When it has been determined that an officer is pregnant, she will be counseled by her immediate commander or the executive officer. The counselor will explain to the officer that the purpose of the counseling is to provide her with information concerning her rights, entitlements, and responsibilities with respect to continued AD or separation. The counselor will not influence or direct her to any particular entitlements and/or options. A statement of counseling (fig 2–2) will be signed by the counselor. This counseling is a command responsibility. A copy of the Statement of Counseling will be filed in the officer's MPF.

*c.* Normally, an officer will not tender a resignation for pregnancy until she has completed her initial service obligation incurred from the funded program under which she was commissioned. When extenuating circumstances exist, a request for an exception to policy may be submitted. However, the officer must accept an indefinite appointment in the USAR in order to complete the service obligation. The officer will be assigned to the U.S. Army Control Group (Standby). The change of status from Active Army to RC is to be accomplished without a break in service.

*d.* Separation instructions on approved requests will be issued by HRC–Alexandria (AHRC–OPD–A), to the appropriate PSC/MPD.

*e.* As applicable, HRC–Alexandria (AHRC–OPD–A), HQDA (DAJA–PT), HQDA (DACH–PER) will return disapproved requests through channels to the officer.

*f.* A pregnant officer's discharge will be honorable. A DD Form 256A (Honorable Discharge Certificate) will be furnished based on the officer's military record.

## 3–12. Steps for processing resignation due to pregnancy
The steps required for processing resignation due to pregnancy are as shown in table 3–4.

**Table 3–4**
**Resignation due to pregnancy**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Informs her commander that she is pregnant and is thinking of resigning. Provides supporting medical documentation. |
| 2 | SACT<br>BN S–1<br>C&S | On confirmation of an officer's pregnancy, she will be advised of the following rights and responsibilities:<br>*a.* Option to remain on AD or to request separation.<br>*b.* Entitlement to maternity care even if separated (AR 40–400).<br>*c.* Provisions for leave and absence during and after pregnancy (AR 600–8–10).<br>*d.* Provisions for maternity clothing.<br>*e.* Policy governing availability for worldwide assignment (AR 614–30).<br>*f.* Local policies governing entitlements to Government family quarters and BAS, to include when and how she would be eligible.<br>*g.*Policies governing assignment overseas (AR 614–30). If accompanied by dependent(s), requirement to make suitable arrangements for the unaccompanied evacuation of the dependents(s) in an emergency situation (for example, mobilization).<br>*h.* On PCS, the Government will pay for the child's transportation only when—   (1) Traveling to, from, or between OCONUS permanent station when the officer serves or has been approved to serve a "with dependents" tour and her child is command sponsored.<br>(2) Traveling to an OCONUS station, the officer must have approval of the OCONUS commander for concurrent travel of the child.<br>*i.*Availability of legal assistance counseling concerning paternity laws governing child support, passports, visa requirements, and birth registration for OCONUS, if applicable.<br>*j.* If she remains on AD, the necessity of careful planning for her child's care without sacrifice of her military responsibilities. She must consider the following:<br>(1) Who will care for the child during duty hours, alerts, field duty, and roster duty. Consideration should be given to the cost of child care.<br>(2) Plans for housing, access to duty, transportation arrangements and availability of telephone.<br>(3) Consideration of financial obligations that will accrue for child care, housing, transportation, and other emergency needs and how these obligations will be met.<br>*k.* Provisions for submission of a dependent care statement of counseling on the birth of the child, if applicable. (An officer with less than 3 years service.)<br>*l.* Provisions authorizing separation of an officer whose substandard performance of duty is not solely attributable to the condition of pregnancy. |
| 3 | SACT | Requests that counselor sign the pregnancy counseling statement and file it in the officer's MPF (fig 2–2). |
| 4 | SLDR | Submits resignation request (fig 3–3) if she so desires. |
| 5 | SACT<br>BN S–1<br>C&S | Processes the request. Ensures counseling has been accomplished (step 2). The request will be forwarded through channels to CDR, HRC–Alexandria (AHRC–OPD–A), or CDR HRC–St. Louis (AHRC–AR), 1 Reserve Way, St. Louis, MO 63132–5200, or HQDA (DAJA–PT) or HQDA (DACH–PER), as applicable. The request will include the following:<br>*a.* A brief synopsis of the counseling session.<br>*b.* Date officer reported on current tour of AD; type, effective date, and date of termination of current AD commitment.<br>*c.* Whether officer is occupying a key position and if a replacement is required.<br>*d.* Whether medical board or PEB proceedings are pending or appropriate.<br>*e.* Whether the officer is currently undergoing a course of instruction that upon completion or termination, will result in an ADSO. Specify course title, beginning and closing dates, and service obligation incurred.<br>*f.* Whether responsible for public property or funds.<br>*g.* Recommendation for approval or disapproval. Include complete justification when approval is recommended and the officer has not fulfilled a service requirement. Also include justification for disapprovals.<br>*h.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, or in the hands of civil authorities.<br>*i.* Date officer departed CONUS or other area of residence for OCONUS assignment. Date of arrival OCONUS of dependents—whether at Government or personal expense—whether logistical support was furnished and the rotation date, if applicable. |

**Table 3–4**
**Resignation due to pregnancy—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 6 | SACT (TP/TA) | Upon receipt of separation instructions, processes officer for separation. Final orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VI
## Task: Process Resignation for the Good of the Service in Lieu of General Court-Martial

### 3–13. Rules for processing resignation for the good of the Service in lieu of general court-martial

*a.* An officer may submit a resignation for the good of the Service (RFGOS) in lieu of general court-martial (GCM) under the following circumstances (cannot submit unqualified resignation):

(1) Court-martial charges have been preferred against the officer with a view toward trial by GCM.

(2) The officer is under a suspended sentence of dismissal.

*b.* The tender of a RFGOS does not preclude or suspend procedures. A convening authority will not, however, take action on the findings and sentence in such cases until the Secretary of the Army or designee has acted on the RFGOS.

*c.* An officer under court-martial charges or under investigation with a view toward court-martial will be retained on AD until final disposition of the charges or investigation or until the officer's RFGOS is approved.

*d.* The commander will ensure that RFGOS are voluntary and that applicants are—

(1) Provided the opportunity to consult with legally qualified counsel who is a member of the Judge Advocate General's Corps or a civilian counsel retained by the officer at own expense.

(2) Allowed a reasonable period of time to consider requesting a RFGOS.

*e.* A RFGOS will be expeditiously forwarded by the commander exercising general court-martial jurisdiction direct to CDR, HRC–Alexandria (AHRC–OPD–A), as outlined in paragraph 3–4. Court-martial proceedings may be continued until action by the convening authority on the findings and sentence of the court. A convening authority will not take action in a case until the Secretary of the Army or delegate acts on the RFGOS. In the event trial is held prior to the time notification of action is taken on the RFGOS, the convening authority will immediately transmit to CDR, HRC–Alexandria (AHRC–OPD–A) the result of the trial, including sentence adjudged.

*f.* The RFGOS along with the officer's OMPF and ORB without recommendation will be forwarded by HRC–Alexandria (AHRC–OPD–A) to the Deputy Assistant Secretary of the Army - Review Boards (DASA-RB), (SFMR-RB-JA).

*g.* When the RFGOS is not accepted, HRC–Alexandria (AHRC–OPD–A) will return the case to the GOSCA and provide copies to HRC–Alexandria (AHRC–MSP–F) and the appropriate career management division.

*h.* Separation instructions on approved cases will be issued and forwarded by HRC–Alexandria (AHRC–OPD–A) to the appropriate PSC/MPD. HRC-Alexandria (AHRC-OPD-A) will provide a copy of the separation orders to the Deputy Assistant Secretary of the Army - Review Boards (DASA-RB), (SFMR-RB-JA).

*i.* An officer separated under this paragraph normally receives characterization of service of Under Other Than Honorable Conditions.

*j.* An officer who resigns for the good of the Service (regardless of the character of service received) is barred from rights under laws administered by the Veterans Affairs based on the period of service from which the officer resigned. Exceptions are War Risk, United States Government (converted), National Service Life Insurance, or Servicemember's Group Life Insurance (38 USC 1965).

### 3–14. Steps for processing redesignation for the good Service in lieu of general court-martial
The steps required for processing RFGOS in lieu of GCM are as shown in table 3–5.

**Table 3–5**
**RFGOS in lieu of GCM**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Submits RFGOS (fig 3–4). |
| 2 | PPAA BN S–1 | Processes RFGOS and forwards through the same channels as court-martial actions to the commander exercising GCM jurisdiction. |

**Table 3–5**
**RFGOS in lieu of GCM—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 3 | C&S | The commander exercising GCM-jurisdiction includes a recommendation of approval or disapproval and recommended characterization of service and type discharge. A recommendation of disapproval must include justification. Forwards the packet to CDR, HRC-Alexandria (AHRC-OPD-A). An information copy of the packet will be forwarded to (interested higher headquarters, for example, MACOM) in the chain of command. An RFGOS submitted by an officer after court-martial charges are preferred will be expeditiously forwarded by the commander exercising GCM jurisdiction direct to CDR, HRC–Alexandria (AHRC–OPD–A), as outlined in paragraph 3–4. In addition to the information required by paragraph 3–4 and figure 3–4, the data as listed in *a* through *f* below will accompany the RFGOS (all such data submitted must be legible). Court-martial proceedings may be continued until action by the convening authority on the findings and sentence of the court. A convening authority will not take action in a case until the Secretary of the Army or delegate acts on the RFGOS. In the event trial is held prior to the time notification is received, the convening authority will transmit to CDR, HRC–Alexandria (AHRC–OPD–A), by electronic message the result of trial including any sentence. Also included will be the following:<br>*a.* Copy of court-martial charges.<br>*b.* Copy of all reports of investigations, to include Article 32 investigation (if conducted).<br>*c.* Any documentary evidence that supports acceptance of the resignation.<br>*d.* Statement signed by Staff Judge Advocate (or legal officer) in cases referred for trial as required by Manual for Courts-Martial.<br>*e.* Psychiatric evaluation when grounds exist indicating the officer is (or was at the time of misconduct) mentally incompetent.<br>*f.* Explanation of abnormal delay between date of offense, completion date of investigation and submission of resignation (if applicable). Forward the packet to CDR, HRC–Alexandria (AHRC–OPD–A). An information copy of the packet will be forwarded to interested higher headquarters in the chain of command. |
| 4 | C&S | When the RFGOS while under suspended sentence to dismissal is submitted, the commander exercising GCM jurisdiction includes in the packet a copy of the court-martial order. When a copy of the court-martial order is not available or if further misconduct is involved, include a summary of the facts in the forwarding endorsement. Forward the packet to CDR, HRC–Alexandria (AHRC–OPD–A). An information copy of the packet will be forwarded to interested higher headquarters in the chain of command. |
| 5 | PPAA (TP/TA) | Upon receipt of separation instructions, separates the officer not later than 14 calendar days after receipt of notification (when officer is stationed in CONUS), or not later than 5 duty days after the officer arrives at the CONUS TP/TA. Forwards the officer's fingerprints to the Federal Bureau of Investigation (FBI) according to AR 190–47. Final orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

**(Letterhead)**

Office symbol                                                                                                 **(Date)**

MEMORANDUM THRU (Channels—see paragraph 3-4)

FOR CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Unqualified Resignation

1. I, **(name, grade, branch, SSN)**, tender my unqualified resignation from the Army under the provisions of AR 600-8-24, chapter 3, **(add appropriate section)**, to be effective **(date)** or as soon as practicable thereafter.

2. I am not under suspension of favorable personnel action, under investigation, pending charges, or being considered for elimination.

3. I **(have/have not)** fulfill my Active Duty Service Obligations (ADSOs) as specified in AR 350-100.

4. I desire to tender my resignation because **(reason (s)**.

5. I understand that my resignation, if accepted, will be under Honorable conditions and that I will be furnished an Honorable or General Discharge Certificate as determined by Headquarters Department of the Army.

6. Present duty station **(address) (assignment and/or attachment, if any)**.

7. I **(do/do not)** desire separation overseas.  **(Applicable only if currently serving in an overseas area)**

8. I **(do/do not)** desire appointment in the U.S. Army Reserve.  I also understand that if I have not completed my statutory 8-year Military Service Obligation (MSO), I will be transferred to the IRR to complete that obligation.  (For regular Army Officers only; if affirmative, include the following information):

    a. Basic pay entry date.

    b. Permanent home address **(complete)**

    c. I **(have/have not)** previously held a Reserve commission.

9. I **(will/will not)** accept release from active duty in lieu of resignation. **(For non-Regular Army officers only)**

10. As of the date of this application, I have **(number)** days accrued leave.  I **(do/do not)** plan to take transition leave. If applicable, complete the following:  I plan to take **(number)** days leave.

11. I understand that if I participated in certain advanced education programs (including, but not limited to Tuition Assistance, Degree Completion Program, and Cooperative Degree Program), I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

12. I understand my resignation is voluntary and that I am not entitled to separation pay.

13. My mailing address immediately after the date of separation will be **(address)**.

**(Signature Block)**

**Figure 3–1. Sample format for unqualified resignation**

**(Letterhead)**

**Office symbol**                                                                                           **(Date)**


MEMORANDUM THRU (Channels - -see para 3-4)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Resignation for Failure to Meet the Medical Fitness Standards at Time of Appointment


1.  I, **(name, grade, branch, SSN),** tender my resignation from the Army under the provisions of AR 600-8-24, chapter 3, section IV, to be effective **(date).**

2.  Present duty station **(address)  (assignment and/or attachment, if any).**

3.  I understand that this resignation, if accepted, will be accepted under Honorable conditions and that I will be furnished and Honorable Discharge Certificate.

4.  I **(do/do not)** desire separation overseas.  **(If currently serving in an overseas area.)**

5.  I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

6.  I understand that my resignation is voluntary and that I am not entitled to separation pay.


**(Signature block)**

**Figure 3–2. Sample format for resignation for failure to meet the medical standards at time of appointment**

**(Letterhead)**

**Office symbol**                                                                                          **(Date)**

MEMORANDUM THRU (Channels - - see para 3-4)

FOR:  CDR, HRC **(as appropriate – see para 3-4a)**

Subject:  Resignation

1.   I, **(name, grade, branch, SSN),** tender my resignation from the Army under the provisions of AR 600-8-24, chapter 3, section V, to be effective **(date).**

2.   I understand that this resignation may be withdrawn only with the approval of HQDA, even though the circumstances that are the cause of its submission may change.

3.   Present duty station, **(address)  (assignment and/or attachment, if any).**

4.  I (do/do not) desire appointment in the U.S. Army Reserve.  If applicable, include the following:

   a.  Basic pay entry date.

   b.  Permanent home address.

   c.  I **(have/have not)** previously held a Reserve Commission.

5.   I (do/do not) desire separation overseas.  **(If currently serving in an overseas area.)**

6.  Attached is a certificate of pregnancy.

7.   I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

8.  My mailing address immediately after the date of separation will be **(address).**

9.  I understand that my resignation is voluntary and that I am not entitled to separation pay.

**(Signature Block)**

**Figure 3–3. Sample format for pregnancy resignation**

**Office symbol**                                                                                                              **(Date)**

MEMORANDUM THRU (Channels - -see para 3-4)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Resignation for the Good of the Service (in lieu of general court-martial or due to homosexual conduct)

1.  I, **(name, grade, branch, SSN),** voluntarily tender my resignation form the Army for the good of the service under the provisions of AR 600-8-24, chapter 3, **(insert para 3-13 or para 3-15)**.  I do not desire to appear before a court-martial or board of officers.  I have not been subject to coercion with respect to this resignation, have been advised of, and fully understand the implications of this action.

2.  I have been advised that prior to submitting this resignation I may, at my option, consult with and be represented by legally qualified counsel who may be a member of The Judge Advocate General's Corps, or civilian counsel, retained by me.  **(Include one of the following statements: I have elected not to exercise the right,  (or) I have been fully advised and counseled in this matter by (name) (a member of the Judge Advocate General's Corps) (or civilian counsel) on (date) at (place)).**

3.  I have been afforded an opportunity to present matters in explanation, mitigation, or defense of my case and **(include one of the following statements: Such matters are attached; (or) Such matters are contained in the report of the investigation conducted under Article 32, UCMJ, (or) I elect to remain silent).**

4.  I understand that this resignation, if accepted, may be considered as being Under Other Than Honorable Conditions.  I also understand that a resignation for the good of the Service may be withdrawn only with the approval of HQDA.  I further understand that if my resignation is accepted Under Other Than Honorable Conditions, I will not be entitled to compensation for unused accrued leave.

5.  If my resignation is accepted, regardless of the type of discharge certificate furnished, I understand that I will not receive separation pay and that I will be barred from all rights, based on the period of service from which I will be separated, under any laws administered by the Department of Veterans Affairs, except War Risk, U.S. Government (converted), National Service Life Insurance, or Servicemen's Group Life Insurance policies I may hold.

6.  Present duty station **(address) (assignment and/or attachment, if any).**

7.  I **(do/do not)** desire separation overseas.  **(If currently serving in an overseas area.)**

8.  My mailing address after separation will be **(address).**

9.  I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

**(Signature block)**

**Figure 3–4. Sample format for the good of the service resignation**

## Chapter 4
## Eliminations

### Section I
### Scope

### 4–1. Overview
*a.* An officer is permitted to serve in the Army because of the special trust and confidence the President and the nation have placed in the officer's patriotism, valor, fidelity, and competence. An officer is expected to display responsibility commensurate to this special trust and confidence and to act with the highest integrity at all times. However, an officer who will not or can not maintain those standards will be separated.

*b.* Every officer deserves a fair chance to demonstrate their capabilities. When an officer shows ineffective tendencies (especially if the officer is inexperienced) when practicable, they will be given another chance under another commander. The officer's ineffectiveness will be systematically recorded in documents that specify each period covered, duties observed, and defects noted. Recommendations for elimination action will not be based on generalities and vague impressions. It is necessary to document, in writing, the precise reasons an officer is considered ineffective.

*c.* A U.S. Army Reserve or Army National Guard officer must hold, or be capable of holding, a security clearance of at least secret. An Active Army officer must hold a security clearance of at least secret. This requirement may not be waived. The final denial or revocation of an officer's Secret security clearance by appropriate authorities acting pursuant to DODD 5200.2-R and AR 380-67 requires the discharge of that officer from the service." An officer whose security clearance has been withdrawn or withheld due to unfavorable information regarding loyalty, subversion, or security violations may be processed for involuntary separation under AR 380-67, paragraph 8-201.2. In accordance with AR 380-67, paragraph 8-103, however, the officer should first be considered for discharge under this regulation. The administrative procedures prescribed in AR 380-67, chapter 8, will be followed until the case is referred to HRC-Alexandria (AHRC-OPD-A).

*d.* This chapter prescribes the tasks, rules, and steps for eliminating officers in the Active Army for substandard performance of duty, misconduct, moral or professional dereliction, and in the interests of national security.

### 4–2. Reasons for elimination
While not all inclusive, when one of the following or similar conditions exist, elimination action may be or will be initiated as indicated below for—

*a.* Substandard performance of duty.

(1) A downward trend in overall performance resulting in an unacceptable record of efficiency, or a consistent record of mediocre service.

(2) Failure to keep pace or to progress with contemporaries, as demonstrated by a low record of efficiency when compared with other officers of the same grade and competitive category.

(3) Failure to exercise necessary leadership or command expected of an officer of their grade.

(4) Failure of an officer to absorb technical proficiency required for grade and competitive category.

(5) Failure to properly perform assignments commensurate with an officer's grade and experience.

(6) Apathy, defective attitudes, or other characteristic disorders to include inability or unwillingness to expend effort.

(7) Failure to respond to alcohol or drug problem rehabilitation efforts in a reasonable length of time. (See AR 600–85 for further explanation.) Elimination action will be initiated. Care should be taken to avoid the inclusion of limited-use evidence, as defined in AR 600–85, chapter 6.

(8) Failure to conform to prescribed standards of dress, personal appearance, or military deportment.

(9) Failure to achieve satisfactory progress after enrollment in the Army weight control program or failure to maintain the weight/body fat standards established under the provisions of AR 600–9 after removal from an established weight control program. Elimination action will be initiated. This provision does not include those judge advocates and AMEDD officers who have incurred a statutory ADSO for participating in Army sponsored education and training programs such as the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program, or the Uniform Services University of the Health Sciences (10 USC, chapters 104, 105).

(10) When no medical problems exist, and an officer has two consecutive failures of the APFT, elimination action will be initiated. This provision does not include those judge advocates and AMEDD officers who have incurred a statutory ADSO for participating in Army sponsored education and training programs such as the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship, or the Uniform Services University of the Health Sciences (10 USC, chapters 104, 105).

(11) Failure of a course at a service school for academic reasons by a probationary or nonprobationary RA officer. For failure by an RC officer, see paragraph 2–33.

(12) Failure of a probationary officer to resign under paragraph 3–9 when their commander determines the best interest of the Government and the individual can be served by the officer's discharge.

(13) The discovery of other conditions concerning a probationary officer that, had they been known at the time of appointment, would have precluded appointment.

(14) The discovery of any other condition concerning a probationary officer that indicates the officer's retention in the Army would not be in the best interest of the United States.

(15) Probationary RA commissioned and warrant officers entering AD who are confirmed Human Immunodeficiency Virus (HIV) positive within 180 calendar days of their original appointment or probationary USAR, ARNG commission and warrant officers who report for initial entry training in an AD (other than ADT) status and are confirmed HIV positive within 180 calendar days of reporting to AD will be processed for elimination.

(16) Failure to establish an adequate Family Care Plan in accordance with AR 600-20, paragraph 5-5.

*b.* Misconduct, moral or professional dereliction, or in the interests of national security.

(1) Discreditable or intentional failure to meet personal financial obligations.

(2) Mismanagement of personal affairs that are unfavorably affecting an officer's performance of duty.

(3) Mismanagement of personal affairs to the discredit of the Army.

(4) Intentional omission or misstatement of fact in official statements or records for the purpose of misrepresentation.

(5) Acts of personal misconduct (including but not limited to acts committed while in a drunken or drug intoxicated state).

(6) Homosexual conduct (see para 4–22).

(7) Intentional neglect of or failure to perform duties.

(8) Conduct unbecoming an officer.

(9) Conduct or actions that result in the loss of a professional status, such as withdrawal, suspension or abandonment of professional license, endorsement, or certification that is directly or indirectly connected with or is necessary for the performance of one's military duties. (For AMEDD officers, this includes the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges.)

(10) The final denial or revocation of an officer's Secret security clearance by appropriate authorities acting pursuant to DODD 5200.2-R and AR 380-67.

(11) Unless precluded by paragraph 4–18*d*(4), elimination action will be initiated against an officer who is medically diagnosed as drug dependent or identified as having committed an act of personal misconduct involving drugs.

(12) Conduct or actions by a warrant officer resulting in a loss of special qualifications (such as withdrawal/revocation of CID accreditation, revocation of marine qualification license, removal from the PRP, withdrawal of clinical privileges or loss of flying status) that directly or indirectly precludes a warrant officer from performing in MOS and is necessary for the performance of those duties. Eliminations based on these reasons may not be utilized if reclassification action is feasible and in the best interest of the Service or if the loss of special qualifications was due to medical reasons beyond the control of the warrant officer.

(13) Failure to respond in a reasonable length of time to rehabilitation efforts regarding repeated acts of child/spouse maltreatment or abuse and/or other acts of family violence.

(14) Failure of a course at a service school by an RA officer because of misconduct, moral or professional dereliction. For failure by an RC officer, see paragraph 2–33.

(15) Conviction by court martial that did not impose a punitive discharge for a sexually violent offense listed in AR 27-10, chapter 24.

*c.* *Derogatory information.* The following reasons (or ones similar) require an officer's record to be reviewed for consideration of terminating appointment. Standing alone, one of these conditions may not support elimination, however, this derogatory information combined with other known deficiencies form a pattern that, when reviewed in conjunction with the officer's overall record, requires elimination.

(1) Punishment under UCMJ, article 15.

(2) Conviction by court-martial.

(3) The final denial or revocation of an officer's Secret security clearance by appropriate authorities acting pursuant to DODD 5200.2-R and AR 380-67.

(4) A relief for cause officer evaluation report (OER) (DA Form 67–9, (Officer Evaluation Report)) under AR 623–105, paragraph 3–32.

(5) Adverse information filed in the OMPF in accordance with AR 600–37.

(6) Failure of a course at a service school.

## 4–3. Medical condition

*a.* An officer referred or recommended for elimination under this chapter who does not meet medical retention

standards will be processed through both the provisions of this regulation and through the MEB/PEB process as described in paragraph 1–22.

*b.* When it is determined the officer's mental condition contributed to military inefficiency or unsuitability, the medical evaluation will include a psychiatric study of the officer. This study will indicate whether the officer was able to distinguish right from wrong and whether the officer currently has the mental capacity to understand board and judicial proceedings and participate in defense. When applicable, the report will also indicate whether the incapacitating mental illness could have been the cause of the conduct under investigation.

*c.* At the time an officer is to appear before the Board of Inquiry, if he or she does not possess sufficient mental capacity to understand the nature of the proceedings or does not behave or cooperate intelligently in defense, the proceedings will be delayed until the officer recovers, or the officer will be processed through medical channels, whichever applies.

*d.* If a physical or mental condition develops after an officer has been recommended for involuntary separation or after the Board of Inquiry proceedings are completed, the officer's commander will immediately notify HRC–Alexandria (AHRC–OPD–A).

## 4–4. Limitations

*a.* An officer will not be considered for involuntary separation because of conduct that has been the subject of judicial proceedings that resulted in an acquittal.

*b.* Except as provided in *d*, below, no officer will be considered for elimination for reasons stated in paragraph 4–2 because of conduct that has been the subject of administrative elimination proceedings that resulted in final determination that the officer should be retained in the Service. For purposes of this paragraph, an officer will be considered to have been the subject of elimination proceedings only if allegations against the officer were acted on by a Board of Inquiry convened under this chapter.

*c.* The limitations set forth in *b* above are not applicable when—

(1) Substantial new evidence is discovered that was not known at the time of the original proceedings despite the exercise of due diligence and that would probably produce a result significantly less favorable for the officer at a new hearing.

(2) Subsequent conduct by the officer warrants considering him or her for discharge. Such conduct need not independently justify the member's elimination but must be sufficiently serious to raise a substantial question as to the officer's potential for further useful military service. However, this exception does not permit further consideration of conduct of which the officer has been absolved in a prior final factual determination based on the merits by a judicial body.

(3) An express exemption has been granted by HRC, in writing, upon a determination that administrative separation should be effected because of the unusual circumstances of the case.

*d.* Under the circumstances in (1) through (4) below, an officer who has been considered for elimination and retained on AD may again be required to show cause for retention:

(1) An officer may be again considered for elimination because of lack of proficiency or recurrent misconduct subsequent to the earlier consideration.

(2) An officer may be again considered for elimination because of misconduct that occurred prior to that alleged in the earlier proceedings but that was not sooner discovered despite the exercise of due diligence.

(3) An officer who has been considered for elimination for substandard performance of duty and retained may again be considered for elimination for substandard performance of duty at any time 1 year after the prior case has been closed.

(4) An officer may be considered for elimination for misconduct, moral or professional dereliction, or in the interest of national security at any time subsequent to the closing of the prior case that resulted in the officer's retention on AD. However, an officer may not again be required to show cause for retention on AD solely because of conduct that was the subject of the previous proceedings, unless the findings and recommendations of the Board of Inquiry or the Board of Review that considered the case are determined to have been obtained by fraud or collusion. The grounds for elimination in the earlier case may be joined with new grounds in the later case, provided the earlier elimination proceedings does not include a factual determination specifically absolving the member of the allegations then under consideration. If the grounds for elimination in the earlier proceedings are joined, the additional grounds considered in the subsequent proceedings need not independently justify the member's discharge but must be sufficiently serious to raise a substantial question as to the member's potential for further useful military service.

*e.* Punishment resulting from trial by court-martial or under the provisions of UCMJ, article 15, for misconduct and subsequent use of this fact in support of elimination under this regulation do not constitute double jeopardy.

## 4–5. Separation date

An officer approved for involuntary separation by the Secretary of the Army or their designee or whose request for resignation or discharge in lieu of elimination is approved will be separated accordingly.

*a.* For misconduct, moral, or professional dereliction, or in the interest of national security.

(1) In CONUS, an officer will be separated no earlier than 5 calendar days and not later than 14 calendar days after the officer receives written notification.

(2) Outside CONUS, an officer will be returned to the CONUS separation TP/TA no later than 21 calendar days after the officer receives written notification. Separation will occur no later than 5 calendar days after arriving at the CONUS TP/TA.

*b.* Solely substandard performance of duty. Not later than the 30th calendar day after receipt of notification by the officer concerned; the officer will not be released prior to the 30th calendar day, however, without consent.

## Section II
## Boards

### 4–6. Board of Inquiry

*a.* The Board of Inquiry's purpose is to give the officer a fair and impartial hearing determining if the officer will be retained in the Army. Through a formal administrative investigation conducted under AR 15-6 and this regulation, the Board of Inquiry establishes and records the facts of the Respondent's alleged misconduct, substandard performance of duty, or conduct incompatible with military service. Based upon the findings of fact established by its investigation and recorded in its report, the board then makes a recommendation for the officer's disposition, consistent with this regulation. The Government is responsible to establish, by preponderance of the evidence, that the officer has failed to maintain the standards desired for their grade and branch or that the officer's Secret-level security clearance has been permanently denied or revoked by appropriate authorities acting pursuant to DODD 5200.2-R and AR 380-67. In the absence of such a showing by the Government, the board will retain the officer. However, the respondent is entitled to produce evidence to show cause for his retention and to refute the allegations against him. The Respondent's complete OMPF will be entered in evidence by the Government and considered by the Board of Inquiry.

*b.* Boards of Inquiry are appointed by the appropriate GOSCA. Concurrence must be obtained from the appropriate commander when an officer assigned to a different command is used on a Board of Inquiry. The local installation convening the Board of Inquiry will fund the travel of board members from other installations.

*c.* The GOSCA will advise members of a Board of Inquiry that duty on the board takes priority over all other duties unless properly excused by the appointing authority.

*d.* The Board of Inquiry will be completed no later than 120 calendar days from the date the GOSCA is notified by HRC to conduct the Board of Inquiry or on a GOSCA initiated elimination, 90 days from the date the GOSCA directs that a Board of Inquiry be conducted. Whenever completion of the Board of Inquiry is delayed beyond the established time, the GOSCA will notify CDR, HRC–Alexandria (AHRC–OPD–A) by electronic message of the reason for the delay and the projected date for the Board of Inquiry to be completed.

*e.* The CG, U.S. Army Military District of Washington, will have jurisdiction as GOSCA for all personnel assigned or attached to the U.S. Army, Military District of Washington. This authority may be delegated by the CG, U.S. Army, Military District of Washington, in appropriate cases to officers who could otherwise act as GOSCAs.

*f.* The GOSCA will issue the orders appointing the Boards of Inquiry.

*g.* Except as modified by this regulation, the board will conform to the provisions of AR 15–6 applicable to formal proceedings.

### 4–7. Board membership

*a.* Boards will consist of at least three voting members and a recorder, legal advisor, and respondent's counsel without vote. The president of the board of inquiry will be the grade of colonel or above and senior in grade to the respondent. Other voting members will be RA officers on AD (unless the respondent is a RC officer) in the grade of lieutenant colonel or above and senior in grade and rank to the respondent. When the respondent is an RC officer, one or more of the voting members will be an RC officer, preferably the same component.

*b.* When an RC officer on AD is not reasonably available, the GOSCA will, through the MACOM, advise HRC–Alexandria (AHRC–OPD–A) and request that a retired RC (10 USC 1187) officer in the grade of lieutenant colonel or above be ordered to AD to serve on the Board of Inquiry. When the GOSCA knows that an eligible and qualified retired RC officer is located in the area of responsibility, that officer's name, rank, date of rank, and address will be furnished the MACOM and to HRC–Alexandria (AHRC–OPD–A). The GOSCA will also include the respondent's rank and date of rank and the approximate convene date of the Board of Inquiry.

*c.* The MACOM, if possible, or the CG, HRC, will make the final selection of the officer and if necessary coordinate with CG, HRC–St. Louis, to issue the AD orders. The CG, HRC, or the MACOM will notify the GOSCA (by electronic message) of the selected officer, including the officer's AD entry date.

*d.* When the respondent is a minority, female, or special branch (10 USC 3064), the board will (upon the officer's written request) include a minority, female, or special branch as voting member (if reasonably available, as this provision is not an entitlement). If an officer is in more than one category and he or she requests officers from all or two categories, the board membership may be met by one or more officers (if reasonably available, as this provision is

not an entitlement). The request for these members, if desired, will be submitted 7 days from the date that the respondent receives the notification or else the right to request is waived.

*e.* When the reasons for elimination include substandard performance of duty (para 4–2, except 4–2a(9)), the board membership will include an officer of the same branch as the respondent (if reasonably available, as this is not an entitlement). Normally, this is the only time a Chaplain, AMEDD, or JAGC officer serves as a board member unless he or she is the only available RC colonel in the area and the respondent is an RC officer.

*f.* No officer will be a voting member of a Board of Inquiry who—

(1) Is serving (or has previously served) as a witness for the respondent.

(2) Served as a member of the selection board in the particular case or served as a member on any previous Board of Inquiry, Review, or other board of officers with respect to the respondent.

(3) Was a member (or was the reviewing authority) of a previous court-martial in which the respondent was the accused.

(4) Previously recommended (or participated in recommending) the respondent for elimination from active duty.

(5) Rendered a derogatory evaluation report on the respondent.

(6) Otherwise considered the respondent's case.

*g.* In addition to the reasons stated in *f* above, voting members and the legal advisor may be challenged for cause for any reason that indicates they can not participate in the case in a fair and impartial manner. The challenge will be determined by the senior unchallenged board member.

*h.* Except for the legal advisor and the recorder, only voting members may attend a closed session.

## 4–8. President of the Board of Inquiry

The board's president—

*a.* Ensures the respondent is granted reasonable time to prepare and present their case. Undue delay will not be permitted and the case will be conducted as expeditiously as possible.

*b.* Determines the board's convene date (not earlier than 30 calendar days from the officer's receipt of notification to show cause by CG, HRC, or GOSCA).

*c.* Will make every effort to ensure Board of Inquiry is completed no later than 90 calendar days from the date the GOSCA directs that a Board of Inquiry be conducted.

*d.* Secures a proper location with an atmosphere consistent with the spirit and seriousness of the proceedings.

*e.* Calls each session to order formally.

*f.* Administers the oath to the recorder.

*g.* Ensures the board members are familiar with the elimination policy of this regulation and have been afforded the opportunity to examine and study the respondent's elimination packet and complete OMPF prior to convening the Board of Inquiry and asked if they are aware of any grounds that might be the basis for challenge for cause.

*h.* Advises the respondent of responsibilities, rights, and options as outlined in paragraph 4–11.

## 4–9. Recorder of the Board of Inquiry

*a.* The board recorder will be a Judge Advocate or Department of the Army civilian attorney who is permanently assigned to the board. The board service will constitute the recorder's primary duty; however, it will not preclude other duties when the workload permits. (Alternate or assistant recorders may be detailed to the Board of Inquiry.)

*b.* The recorder is responsible for the proper presentation and handling of the Government case, to include the development of new evidence pertinent to the factual allegations in the case. The recorder's duties are not discharged by a perfunctory entering in the record of evidence provided by the Department of the Army. The recorder will investigate the case, seek new evidence that may be locally available, and become thoroughly familiar with the respondent's history and the deficiencies or conduct (as appropriate) that led the selection board, CG, HRC, or GOSCA to conclude that the officer fails to meet prescribed standards or has been derelict in moral professional duties. The recorder will also be able to place evidence offered by the respondent in perspective with the remainder of the officer's military record.

*c.* If during the course of the recorder's investigation of the case, the recorder finds additional evidence similar in nature to that previously presented to the officer under paragraph 4–2, that evidence is admissible. This additional evidence may be considered by the Board of Inquiry as proof of an amended or new factual allegation in support of a reason for elimination.

(1) Only in those instances where the newly discovered evidence results in the addition of a reason for elimination (not included in the officer's notification memorandum (see para 4–18)) is it necessary to return the case to the CG, HRC, or GOSCA for issuance of a new notification memorandum.

(2) The fact that the additional evidence may support the stated reason of conduct unbecoming an officer (see para 4–2b(8)) does not in itself allow its consideration unless it can also be related to another enumerated reason for elimination in paragraph 4–2, which was included in the officer's notification memorandum.

(3) If such additional evidence is considered and if the board determines that the officer has not had a reasonable period of time to prepare a response to such evidence, reasonable delay must be granted on the officer's request.

*d.* The recorder will not assist the board in drafting its findings and recommendations but will, in addition to the above mentioned duties, comply with AR 15–6, paragraph 5–3, and complete the following:

(1) Notify the officer (in writing and not less than 10 calendar days before the convene date) of the time and location where the Board of Inquiry will convene.

(2) Allow the officer access to releasable records and furnish copies (if desired) prior to the hearing, as is reasonably necessary, for the respondent to prepare and present the case.

(3) Obtain two copies of the respondent's OMPF (microfiche) and ORB from HRC–Alexandria (AHRC–MSR), HRC-St. Louis, or the NGB, as appropriate.

(4) At the initial session, read the order/letter appointing the board.

(5) Enter in the record the time, date, place, and station and indicate the presence of the board members, respondent and counsel (if any).

(6) Administer the oath to board members, legal advisor, witnesses, and reporter.

(7) Ensure all records and documents relating to the case are provided to the board members.

(8) Verbally present to the board a synopsis of the entire case when appropriate.

(9) Cross-examine the witnesses called by the respondent or their counsel.

## 4–10. Legal advisor

The legal advisor is a Judge Advocate or Department of the Army civilian attorney assigned by the appointing authority to the Board of Inquiry to serve only as an advisor, not a voting member. The legal advisor—

*a.* Will be present at all open sessions and may be called on to advise on the admissibility of evidence, arguments, motions or other contentions of counsel, procedures, and any other matter determined appropriate by the president of the board.

*b.* Is prohibited from taking part in presenting the case or cross-examining witnesses.

*c.* Will not give *ex parte* advice, except as provided for during deliberation (see para 4–15*a*), in a closed session of the Board of Inquiry.

*d.* May not dismiss any factual allegation, reason for elimination, or recommendation for elimination against the respondent but will advise the board as to the proper form of such, paying special attention to procedures for the findings and recommendation of the board (see para 4–15*b*) and the legal sufficiency thereof.

## 4–11. Respondent

When a Board of Inquiry convenes to consider an officer's recommendation for involuntary separation, the board will determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence. The respondent will be present at all open sessions of the board unless he or she is excused by the president of the board and expressly waives the right to attend. Additionally, the respondent—

*a.* Will be provided with counsel who is an officer of the JAGC or be allowed to obtain civilian counsel of own selection without expense to the Government, provided that procurement of their own counsel does not result in an unreasonable delay. The GOSCA will determine whether a requested delay to obtain civilian counsel is reasonable. If a requested delay is denied, the determination and the reasons will be stated in writing and made a part of the records of proceedings by the GOSCA.

*b.* Will be allowed reasonable time, as determined by the Board of Inquiry, to prepare case. The respondent may submit a written request (citing the specific reasons) for continuance to the Board of Inquiry. In no instance will the officer have less than 30 calendar days from the date of notification of requirement to show cause for retention on AD.

*c.* Will be allowed, at all stages of the proceedings, full access to the records of the hearings, including all documentary evidence referred to the board, except when protection of classified documents is clearly consistent with the interests of national security. In such cases, the respondent will be furnished, to the extent that the national security permits, as determined by the Secretary of the Army, a summary of the information contained in the documents withheld.

*d.* May challenge for cause any member of the board. The convening authority will appoint additional members if necessary to ensure that the board membership is not reduced to fewer than three officers.

*e.* Will be allowed to appear in person and present evidence or be represented by counsel, before a Board of Inquiry. The respondent—

(1) Will not be reimbursed for expenses incident to the appearance or assistance of civilian counsel.

(2) At any time after the appointment of the board and before the close of the proceedings, may submit documents to the Board of Inquiry from record of service, letters, answers, depositions, sworn or unsworn statements, affidavits, certificates, or stipulations. This includes but is not limited to, depositions of witnesses not deemed to be reasonably available or witnesses unwilling to appear voluntarily.

(3) Will be allowed to present case without undue interference by the board. However, unreasonable delays will not

be tolerated. Such presentations may include any evidence relevant to a respondent's rehabilitation or reformation as well as any matters in extenuation or mitigation that the respondent desires to present.

(4) May testify in person by sworn or unsworn statement or elect to remain silent. Should the respondent elect to testify, he or she may be required to submit to examination by the board as to any matter concerning which he or she testified but not in contravention of the UCMJ, Article 31. When electing to testify, the respondent is entitled to an explanation of rights regarding self-incrimination under UCMJ, article 31, and a Privacy Act statement will be prepared and signed. (See AR 15–6, app B.)

*f.* May request that witnesses, whose testimony is relevant to the case, appear before the Board of Inquiry.

*g.* May question any witness brought before the board.

*h.* In accordance with paragraph 4-24, may at any time prior to final action in their case—

(1) Apply for voluntary retirement, if eligible.

(2) Tender resignation.

(3) Request discharge (RA officers—10 USC 1186; OTRA officers—10 USC 14905).

*i.* Will be asked before the hearing is terminated to state for the record whether he or she has presented all available evidence in behalf. If not, the respondent will be required to make a concise statement of the substance of the expected evidence. The statement and any documentary evidence referred to the board will be included in the record of hearing. The board will then determine whether the respondent will be granted additional time to produce such evidence.

*j.* Will be furnished a copy of the proceedings less classified documents if requested.

*k.* Will have the right to submit to the GOSCA a statement or brief within 7 calendar days after receipt of the Board of Inquiry report of proceedings of the case.

## 4–12. Respondent's counsel

*a.* A Judge Advocate or Department of the Army civilian attorney will be assigned to each Board of Inquiry as the respondent's counsel.

*b.* The respondent is also entitled to retain civilian counsel at own expense. If civilian counsel is retained, the assigned military counsel will be relieved of duties and responsibilities in connection with the case unless the respondent chooses to use any services of the assigned counsel.

*c.* The respondent's counsel may request, on the respondent's behalf, copies of documents contained in the respondent's OMPF and/or evaluation report files that may assist in preparing the case. These documents will be specifically identified and limited to documents relevant to the case. Forward requests (by electronic message) to HRC–Alexandria (AHRC–OPD–A).

*d.* The respondent's counsel will be present at all open sessions of the board unless absence is expressly excused by the president of the board.

## 4–13. Witnesses

To the maximum extent possible, the respondent has the right to be confronted with the witnesses against him or her.

*a.* The personal appearance of witnesses should be obtained whenever practicable in preference to the use of depositions, affidavits, or written statements. Accordingly, such requests will be honored by the board if the requested witness is considered reasonably available and testimony will add materially to the case. Requests for witnesses will include a statement specifying the substance of expected testimony.

*b.* The president of the Board of Inquiry will request the commander or Government agency to order witnesses to appear as witnesses for the Government that are members of the Armed Forces or civilian employees of the Government. The availability of the witness is determined by the appropriate commander. If the commander determines that a requested witness is not reasonably available, the reasons will be furnished to the president of the board, who will have this determination appended to the record of proceedings.

*c.* Military members and civilian employees of the Army, called as witnesses on behalf of the Government and required to travel are entitled to temporary duty allowance as prescribed in the JFTR and DFAS-IN Regulation 37–1, chapter 10. Other witnesses requested by the respondent will not be reimbursed for expenses relating to their appearance unless they qualify for invitational travel orders under JFTR.

*d.* Witnesses appearing before the board will be sworn.

*e.* Boards of Inquiry may call witnesses on their own motion.

## 4–14. Spectators

At the respondent's request, the board president may permit the respondent's personal friends or relatives to be present during open board hearings. However, the respondent will be advised the presence of these spectators terminates the confidential status of the proceedings. The board president may exclude any spectator when (in the opinion of the board) presence interferes with the proceedings. Any person called as a witness will not be present as a spectator.

## 4–15. Conclusion of hearing

*a. Deliberation.* After the closing arguments, only the voting members of the Board of Inquiry will meet in the

closed sessions of deliberations. The board may seek the advice of the legal advisor whenever necessary. However, the board will be opened, and the advice will be obtained in open session (and incorporated in the record) with the recorder, respondent, and counsel present.

*b. Findings and recommendations.*

(1) The Board of Inquiry determines its findings and recommendation by secret written ballot in closed session, with a majority vote deciding any issue.

(2) Based on the evidence (presented at the hearings), the board will make a separate finding (including a brief statement) on each factual allegation and reason for involuntary separation. The Board will render findings of fact, supported by a preponderance of the evidence, that describe specific relevant conduct by the Respondent in sufficient detail to support the Board's recommendation. The findings will address each separate reason for separation and each separate factual allegation. The Board may choose to address mitigating, extenuating or aggravating factors in its findings where the Board believes that such findings are necessary to support or explain the Board's recommendation. The board may (based on the evidence) present findings that amend or specify new allegations. However, new allegations must support a reason for elimination that was included in the findings of the selection board or in the officer's notification memorandum. The board may recommend retention (with or without reassignment) or involuntary separation (see para 4–22 for homosexual conduct cases). The board will include the type of discharge certificate and characterization to issue, when elimination is recommended (and the officer is not retirement eligible (10 USC 3911)) for misconduct, moral or professional dereliction, or in the interest of national security.

(3) The board may not recommend removal of documents such as OERs, article 15s, and Memoranda of Reprimand from an officer's OMPF. The board recommendations are limited to either retention (with or without reassignment) or elimination.

(4) After the board determines its findings and recommendations, the board members may request the presence of the legal advisor and reporter at the closed session to assist with compiling the board's findings and recommendation in the acceptable format.

(5) The board's findings and recommendations will be announced to the respondent.

*c. Report of proceedings.*

(1) The record of proceedings will be kept in summarized form unless a verbatim record is required by the appointing authority after consultation with the servicing judge advocate or legal advisor concerning the availability of verbatim reporters. The summarized transcript will include the following:

*(a)* A copy of the order appointing the Board of Inquiry and amending orders (if any).

*(b)* A copy of the documents showing initiation of the elimination action and the decision to refer the case to a Board of Inquiry.

*(c)* Names and appropriate identifying information, such as rank and unit of assignment for military members or city and state of residence for civilians, of all witnesses called before the board. Extraneous and easily abused identifying information, such as a Social Security number, date of birth, driver's license number, or residential address will not be entered into the record of a Board of Inquiry to identify witnesses appearing before the Board, nor will they be used to identify board members or support personnel.

*(d)* A verbatim transcript of the findings and recommendations of the Board of Inquiry.

*(e)* Other information as is deemed appropriate by the appointing authority. The board president, legal advisor, recorder, or respondent's counsel may recommend other information for inclusion.

*(f)* An accurate account of the board's proceedings, insofar as practicable, will be prepared according to the general instructions set forth in AR 15–6, chapter 3, section III. A DA Form 1574 (Report of Proceedings by Investigating Officer/Board of Officers) will be prepared to accompany the verbatim or summarized proceedings. If a Reserve Component officer is appointed to the Board when required by paragraph 4-7a, or a minority, female or special-branch officer is appointed when requested under paragraph 4-7d, the Reserve Component, minority, female, or special-branch officer will be identified as such in the listing of persons present in section II of DA Form 1574.

*(g)* A summarized record of testimony presented and heard and of all other formal conversations that took place during all open sessions of the Board of Inquiry.

*(h)* A summarized record of any closed session that required the presence of the legal advisor and the reporter.

*(i)* True copies or true extract copies of all documents used as a basis for requiring the respondent to show cause and all other documents that are accepted as evidence in the case. These documents must be legible and reproducible. Copies that are illegible will not be used.

*(j)* A statement that the findings and recommendations were determined by secret written ballot in closed session. The members of the Board of Inquiry who did not concur in the findings and/or recommendations of the Board of Inquiry may file a statement of their nonconcurrence and the reasons therefore for inclusion in the record.

(2) Guidance for the preparation of a verbatim report of a Board of Inquiry is contained in figure 4–1. This text should be modified freely when preparing a summarized transcript.

(3) A Board of Inquiry data sheet (see fig 4–2) will be used as a final check of the report of proceedings only

insofar as it is consistent with the elimination procedures established by this regulation. Figure 4–2 is only intended to provide guidance.

(4) Clemency may not be concurrently recommended by a Board of Inquiry when the board has concluded that an officer should be eliminated. Clemency can only be exercised by the Secretary of the Army or their designee.

## 4–16. Actions concerning Board of Inquiry defects

At any time after receipt and review of a case by the GOSCA or HRC, the following actions may be taken with respect to substantial defects that may be noted:

*a.* The retention of the officer may be directed.

*b.* If the Board of Inquiry has failed to make findings or recommendations required by the applicable regulations, the case may be returned to the same board for compliance with the regulations concerned.

*c.* If there is an apparent procedural error or omission in the record of proceedings that may be corrected without reconsideration of the findings and recommendations of the board, the case may be returned to the same board for corrective action.

*d.* If the Board of Inquiry committed an error, other than as is dictated in *b* and *c*, above, that substantially prejudiced a substantial right of the officer, the case may be returned for a rehearing by a new board. The new board may be furnished the evidence properly considered by the previous board, including extracts from the record of testimony of those witnesses not deemed reasonably available to testify at the rehearing. The new board may call additional witnesses. New allegations that could form the basis for an elimination under paragraph 4–2 may be presented to the new Board of Inquiry. First, however, the officer will be given notice of the new allegations and provided an opportunity to respond. The case will then be processed as stated in paragraph 4–18. The new board will not be advised of the findings and recommendations of the previous board. The new board's findings and recommendations may not be less favorable than that of the previous board unless additional allegations are considered. Likewise, the recommendation of the appointing authority may not be less favorable than initial recommendation, unless additional allegations are considered by the subsequent board.

*e.* When a case is returned to the board pursuant to *b* or *c*, above, and one or more members of that board are unavailable because of factors such as death, hospitalization, or PCS, new members may be appointed. The case may proceed with an opportunity to challenge the members and after the substance of all proceedings is made known to the new member or members and the recorded testimony of each witness previously examined is made known to the new member. No more than one rehearing may be directed by the GOSCA without approval from DASA-RB.

## 4–17. Board of review

*a.* An officer recommended for elimination by a Board of Inquiry will have their case referred to a Board of Review. The Board of Review is appointed by the Secretary of the Army or their designee and has the same board composition as the Board of Inquiry. The Board of Review, after thorough review of the records of the case, will make recommendations to the Secretary of the Army or their designee as to whether the officer should be retained in the Army. Appearance by the respondent (or the counsel) is not authorized. The Board of Review will refer to paragraph 4–22 for homosexual conduct cases.

*b.* No officer will sit as a member of the Board of Review who—

(1) Has been called as a witness.

(2) Was a member of the selection board for respondent.

(3) Appeared as a witness before or was a member on any previous Board of Inquiry, Board of Review, or board of officers with respect to the respondent.

(4) Was a member or was the reviewing authority in a court-martial before which the respondent was the accused.

(5) Previously has recommended or participated in recommending elimination or REFRAD of the officer concerned.

(6) Rendered a derogatory evaluation report on the accused.

(7) Otherwise has considered the case of the accused.

(8) Does not meet the board membership requirements.

*c.* When the board recommends—

(1) Retention in the Army (with or without reassignment), the proceedings will be forwarded to HRC–Alexandria (AHRC–OPD–A) and the case will be closed.

(2) Elimination from the Army (to include type of discharge and characterization, if applicable), the recommendation will be transmitted to the Secretary of the Army or their designee, who makes the final decision.

*d.* An officer discharged solely for substandard performance of duty will receive an honorable discharge. The Board of Review may recommend the characterization of discharge to be more favorable than recommended by the Board of Inquiry but not less favorable.

*e.* When the Board of Review recommends elimination, it may also recommend clemency, stating the reasons. However, only the Secretary of the Army or their designee may grant clemency.

*f.* The Board of Review will furnish the respondent a copy of the board proceedings.

**Section III**
**Task: Process Elimination of a Nonprobationary Officer**

**4–18. Rules for processing an elimination of a nonprobationary officer**

*a.* Elimination action may be initiated by—

(1) Commanding General, HRC. Such notification will be sent by certified mail.

(2) A GOSCA, for an officer assigned or attached to command (see glossary) (unless specifically withheld by HQDA.)

(3) The Deputy Chief of Staff, G-1, when recommendations are made by HQDA promotion, school, and command boards and career field designation boards that an officer should be required to show cause for retention on active duty. The DCS, G–1 or their designated representative in the grade of major general or above will review such names and decide if initiation of elimination is appropriate. If initiation of elimination is appropriate, the action will be processed according to the rules and steps of the applicable sections of this chapter.

(4) The Secretary of the Army, the Chief of Staff, and such officials in their offices as are designated by them. The action will be processed according to the rules and steps of the applicable sections of this chapter.

*b.* Unless precluded by *d*(4) below, elimination action will be initiated against an officer who is identified by one or more of the reasons outlined in paragraph 4–2.

*c.* Any subordinate commander may recommend to the GOSCA the initiation of elimination proceedings for an officer in command.

*d.* The commander has the discretion to initiate disciplinary action under the UCMJ or to recommend or initiate elimination proceedings under the provisions of this regulation.

(1) The fact that elimination proceedings were initiated when disciplinary action could have been taken will not affect the validity of the elimination proceedings.

(2) Elimination action will not be used in lieu of disciplinary action solely to spare an officer who may have committed serious misconduct from the harsher penalties that may be imposed under the UCMJ.

(3) Conduct that was the subject of judicial or nonjudicial punishment may be the basis for elimination proceedings under this regulation. (See para 4–4*b*.)

(4) Elimination proceedings, however, will not be initiated with respect to conduct that is the subject of UCMJ charges unless the charges are dismissed or appellate review has been completed.

*e.* Regardless of who initiates the elimination action, the initiating official will furnish the appropriate MACOM a copy of the notification memorandum. The GOSCA will ascertain the identity and location of Government witnesses and make reasonable efforts to ensure their availability to appear before a Board of Inquiry.

*f.* On receipt of elimination actions from the GOSCA, CG, HRC may take the following actions prior to the Board of Review:

(1) Close the case (prior coordination with the initiating official required for an elimination initiated under *a*(3) and (4) above, and, through channels, notify the officer.

(2) Forward the case to a Board of Review.

*g.* When the Board of Review recommends elimination, the board will forward the case directly to the Secretary of the Army or their designee for the final decision.

*h.* When the Board of Review recommends retention (with or without reassignment), HRC–Alexandria (AHRC–OPD–A) will close the case and, through channels, notify the officer.

*i.* When the Secretary of the Army or their designee approves elimination, HRC–Alexandria (AHRC–OPD–A) will forward separation instructions to the appropriate PSC/MPD.

**4–19. Steps for processing an elimination of a nonprobationary officer**
The required steps for processing an elimination of a nonprobationary officer are as shown in table 4–1.

**Table 4–1**
**Processing elimination of a nonprobationary officer**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1<br>C&S | The initiating official (see para 4–18*a*(1) or (2) or (3) or (4) above) notifies the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on AD (fig 4–1). Initiates a DA Form 268. (See AR 600–8–2.) |
| 2 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the reasons supporting the elimination action and the factual allegations supporting the reasons. Only applicable reasons as outlined in paragraph 4–2 (or para 4–22 for homosexual conduct) that can be supported by specific factual allegations and evidence may be the basis for elimination. Evidence to support the elimination must be able to stand on its own merits. Prior coordination with the servicing judge advocate or legal advisor is required for actions initiated by the GOSCA. Advises the officer that he or she may—<br>*a.* Tender resignation in lieu of elimination (para 4–24).<br>*b.* Request discharge in lieu of elimination (para 4–24).<br>*c.* Apply for retirement in lieu of elimination if otherwise eligible for voluntary retirement as stated in chapter 6, paragraph 6–17*d.* Voluntary retirement application will be amended to specifically state that the application is submitted in lieu of elimination.<br>*d.* Appear before a Board of Inquiry to show cause for retention. |
| 3 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she has 30 calendar days to acknowledge receipt in writing, to prepare a written statement or rebuttal or elect one of the options as stated in *a, b, c,*and *d* above. |
| 4 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the least favorable discharge that he or she may receive. (An officer separated solely for substandard performance (para 4–2*a*) will receive an Honorable Discharge. If separated for reason(s) under paragraph 4–2*b* or 4–22*h* (homosexual conduct) an officer may receive an Under Other Than Honorable Discharge. |
| 5 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she may consult with the local finance and accounting officer concerning possible entitlement to separation pay. |
| 6 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that if he or she requests resignation or discharge in lieu of elimination action, he or she will be separated as stated below.<br>*a.* Not later than 30 calendar days after receipt of notification that request for resignation or discharge was approved (only when separated solely for substandard performance). Release will not be prior to the 30th day without the officer's consent.<br>*b.* Not later than 14 calendar days and no earlier than 5 calendar days after receipt of notification that the request for resignation or discharge was approved when stationed in CONUS.<br>*c.* For an officer assigned OCONUS, he or she will be returned to the CONUS separation TP/TA no later than 21 calendar days after receipt of written notification that the request for resignation or discharge was approved, and separated no later than 5 calendar days after arrival at the CONUS TP/TA. |
| 7 | C&S | The initiating official personally signs the memorandum. |
| 8 | PPAA<br>BN S–1<br>C&S | The GOSCA furnishes a copy of the notification memorandum directly to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 9 | SLDR | Officer responds with acknowledgement of receipt (fig 2–4). Submits a written statement or rebuttal or elects one of the options in step 2 above within 30 calendar days.<br>*a.* The statement or rebuttal may be prepared with the assistance of an officer of the JAGC or civilian counsel obtained by the officer at no expense to the Government.<br>*b.* The statement or rebuttal should contain any pertinent facts bearing on the question of the officer's elimination. Documents submitted must be legible and reproducible. They may be sworn or unsworn.<br>*c.* The officer submits the appropriate application for separation if in lieu of elimination option is selected.<br>*d.* The officer undergoes a separation physical examination within 5 duty days from the date the option is chosen. |

**Table 4–1**
**Processing elimination of a nonprobationary officer—Continued**

| Step | Work center | Required action |
|---|---|---|
| 10 | C&S | The initiating official (CG, HRC or GOSCA, as appropriate), on receipt of the officer's statement or rebuttal and/or option selection, will act as follows—<br>  *a.* Closes the case (see para 4–22 and 4–23 for homosexual conduct). (Prior to closing cases initiated under para 4–18*a*(3) or (4), CG, HRC, will coordinate with the initiating official.) (The GOSCA may only close a case that he or she initiated.)<br>  *b.* Expeditiously forwards the appropriate application and all elimination papers directly to CDR, HRC–Alexandria (AHRC–OPD–A), if the officer elects one of the options in step 2*a* through *c*of this table. (When the GOSCA is not the GCMCA, furnishes a copy to the GCMCA.) The forwarding endorsement includes the direct point of contact for the elimination action (to include name and telephone number).<br>  *c.* If the officer declines to elect an option, refer the case to a Board of Inquiry. The GOSCA is authorized to appoint a field Board of Inquiry without referral to HRC. The GOSCA notifies CDR, HRC–Alexandria (AHRC–OPD–A), by electronic message that a Board of Inquiry is being appointed and requests that two copies of the officer's OMPF and ORB be provided.<br>  *d.* Determines whether medical board or physical evaluation board proceedings are pending or appropriate (para 4–3*a*) if the case is not closed. |
| 11 | C&S | The GOSCA, prior to forwarding the case to the Board of Inquiry, ensures that—<br>  *a.* All evidence considered by the board is included, and that the report of investigation is complete.<br>  *b.* Documents are legible and reproducible.<br>  *c.* The statement submitted by the officer is made a part of the record. |
| 12 | C&S | The GOSCA forwards the case to the Board of Inquiry. The Board of Inquiry will be completed no later than 90 calendar days from the date that the GOSCA directs that a Board of Inquiry be conducted. |
| 13 | C&S | The GOSCA forwards the Board of Inquiry proceedings to the CDR, HRC (AHRC–OPD–A) no later than 30 calendar days after the board's adjournment. This time limit must be met. |
| 14 | C&S | The GOSCA, when a Board of Inquiry recommends retention, closes the case, notifies the officer in writing, and notifies CDR, HRC–Alexandria (AHRC–OPD–A), that the officer has been retained by the Board of Inquiry and of the date of the officer's notification. Forwards the board's proceedings (original copy only, either verbatim or summarized transcript) with a copy of the officer's notification memorandum to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 15 | C&S | The GOSCA, when a Board of Inquiry recommends elimination, closes the case if retention is appropriate (only for eliminations initiated by a GOSCA for an officer assigned or attached to command (unless specifically withheld by HQDA)) and complies with step 14 above. |
| 16 | C&S | The GOSCA, when the Board of Inquiry recommends elimination or it was initiated under paragraph 4–18*a*(1), (3), or (4), completes the following administrative actions:<br>  *a.* Furnishes the officer a copy of the Board of Inquiry report and obtains a receipt of acknowledgement.<br>  *b.* Gives the officer the options listed in step 2*a* through *c* of this table.<br>  *c.* Advises the officer that—<br>  (1) He or she may submit an appellate brief and statement within 7 calendar days after receipt of the Board of Inquiry report or proceedings.<br>  (2) The entire case will be considered by a Board of Review and the officer will be entitled to a copy of the Board of Review report.<br>  (3) If the Board of Review determines that the officer should not be retained, the case will be referred to the Secretary of the Army or their designee for final action. If the Board of Review determines the officer should be retained, the case will be closed. In either event, the officer will be notified at the earliest and practicable time by CG, HRC.<br>  *d.* Have the officer undergo a separation physical examination (para 1–22).<br>  *e.* Establish internal suspense controls to ensure expeditious processing of the separation physical examination. |

Table 4–1
**Processing elimination of a nonprobationary officer—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 17 | C&S | The GOSCA, when a Board of Inquiry recommends elimination (after completing the administrative action required in step 16 above), forwards by personal endorsement the original report of the Board of Inquiry proceedings to HRC commander including—<br><br>*a.* Recommendation of approval or disapproval of the Board of Inquiry's recommendation (state reason(s) when disapproval is recommended). The GOSCA may recommend retention when elimination is recommended by the board.<br><br>*b.* A statement that the officer was furnished a copy of the Board of Inquiry report and whether the officer desires a copy of the Board of Review report.<br><br>*c.* A recommendation of the type of discharge to be issued. (Only applicable where the officer was required to show cause for retention for reasons indicated in paragraph 4–2*b* and provided the officer is not eligible for retirement under chap 6.) The recommendation of the type of discharge may be more favorable but may not be less favorable than that recommended by the board.<br><br>*d.* The officer's appellate brief (if submitted). The GOSCA must include a statement in the forwarding memorandum that the brief was reviewed and may submit any other appropriate comments concerning the brief. Derogatory information that has not been previously provided to the respondent will not be added to the forwarding memorandum. If the GOSCA believes it necessary to include in his endorsement derogatory information that was not previously made part of the action, the Respondent will be served with a copy of the derogatory information and will be provided with a reasonable opportunity to rebut the information.<br><br>*e.* All rebuttals and resignations or requests for discharge in lieu of elimination will have the GOSCA's personal endorsement. |
| 18 | PPAA<br>(TP/TA) | On receipt of separation instructions, takes action to separate the officer. Final release orders and forms cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IV
## Task: Process Elimination of a Probationary Officer

### 4–20. Rules for processing an elimination of a probationary officer

*a.* The rules for a nonprobationary officer (see para 4–18) also apply to a probationary officer.

*b.* A probationary officer is—

(1) An RA commissioned officer with fewer than 5 years of ACS (10 USC 630).

(2) An RC officer who has fewer than 5 years commissioned service.

(3) A warrant officer who has fewer than 3 years service since original appointment in present component.

*c.* If at any time during the processing of the recommendation, the officer no longer meets the probationary criteria stated above, the case will be processed under paragraph 4–18.

*d.* An officer identified for elimination may—

(1) Tender a resignation in lieu of elimination.

(2) Request discharge in lieu of elimination.

(3) Apply for retirement in lieu of elimination if otherwise eligible. (Format for voluntary retirement will be amended to specifically state that the application is submitted in lieu of elimination.)

*e.* Processing an officer's recommendation for elimination under this paragraph does not require referral to a Board of Inquiry or a Board of Review unless the officer declines to elect one of the options listed above and an Other Than Honorable Discharge is recommended.

*f.* If the officer declines to elect one of the options listed in *d* above and if an Honorable or General Discharge (Under Honorable Conditions) is recommended, CG, HRC, will forward the case to the Secretary of the Army for final decision. The GOSCA will make a formal recommendation concerning the options submitted by the officer.

*g.* If the officer declines to elect one of the options listed in *d*, above, and if an Other Than Honorable Discharge is recommended, the case will be processed as if the officer was a nonprobationary officer.

*h.* CG, HRC, will forward the case to the DASA-RB.

*i.* The DASA-RB or ASA(M&RA) may direct—

(1) Retention.

(2) Discharge.

(3) Referral to a Board of Inquiry.

*j.* Action by the DASA-RB or ASA(M&RA), as appropriate, acting for the Secretary of the Army, is final.

*k.* When the DASA-RB or ASA(M&RA), as appropriate, directs the officer's retention, HRC–Alexandria (AHRC–OPD–A) will close the case and notify the officer through the GOSCA.

*l.* When theDASA-RB or ASA(M&RA), as appropriate, approves the elimination, HRC–Alexandria (AHRC–OPD–A) will forward separation instructions to the appropriate PSC/MPD.

*m.* When the DASA-RB or ASA(M&RA), as appropriate, refers the case to a Board of Inquiry, procedures in table 4–1, steps 10 through 19 will be followed.

## 4–21. Steps for processing an elimination of a probationary officer

The required steps for processing the elimination of a probationary officer are as shown in table 4–2.

**Table 4–2**
**Processing elimination of a probationary officer**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1<br>C&S | The initiating official (para 4–18*a*(1) or (2) or (3) or (4) above) notifies the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on AD (fig 4–1). Initiates a DA Form 268. (See AR 600–8–2.) |
| 2 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the reasons supporting the elimination action and the factual allegations supporting the reasons. Only applicable reasons as outlined in paragraph 4–2 (or para 4–22*b* for homosexual conduct) that can be supported by specific factual allegations and evidence may be the basis for eliminations. Evidence to support the elimination must be able to stand on its own merits. Prior coordination with a servicing judge advocate or legal advisor is required for actions initiated by the GOSCA. Advises the officer that he or she may—<br>*a.* Tender resignation in lieu of elimination (para 4–24).<br>*b.* Request discharge in lieu of elimination (para 4–24).<br>*c.* Apply for retirement in lieu of elimination if otherwise eligible for voluntary retirement as stated in paragraph 6–17. Voluntary retirement application will be amended to specifically state that the application is submitted in lieu of elimination. |
| 3 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she has 30 calendar days to acknowledge in writing, to prepare a written statement or rebuttal, and/ or to elect one of the options stated in step 2 above. Advises the officer of the least favorable discharge and characterization that he or she may receive. An officer separated solely for substandard performance (para 4–2*a*) will receive an Honorable Discharge. If separated for reason(s) under paragraph 4–2*b* or 4–22*h* (homosexual conduct), an officer may receive an Under Other Than Honorable Discharge. If an Honorable or General (Under Honorable Conditions) discharge is recommended, there will be no Board of Inquiry unless directed by the DASA-RB or ASA(M&RA), as appropriate. |
| 4 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she may consult with the local finance and accounting officer concerning possible entitlement to separation pay. |
| 5 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that if he or she requests resignation or discharge in lieu of elimination action, he or she will be separated as stated below.<br>*a.* Not later than 30 calendar days after receipt of notification that request for resignation or discharge was approved (only when separated solely for substandard performance). Release will not be prior to the 30th day without the officer's consent.<br>*b.* Not later than 14 calendar days or earlier than 5 calendar days after receipt of notification that the request for resignation or discharge was approved when stationed in CONUS.<br>*c.* For an officer assigned OCONUS (except as stated in *a* above), he or she will be returned to the CONUS separation TP/TA no later than 21 calendar days after receipt of written notification that the request for resignation or discharge was approved and will be separated no later than 5 calendar days after arrival at the CONUS TP/TA. |
| 6 | C&S | The GOSCA personally signs the memorandum. |
| 7 | PPAA<br>BN S–1<br>C&S | The GOSCA furnishes a copy of the notification memorandum directly to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 8 | SLDR | The officer responds with acknowledgement of receipt (fig 2–4). Submits a written statement or rebuttal and/or elects and submits an option at step 2 above to the initiating official within 30 calendar days.<br>*a.* The statement or rebuttal may be prepared with the assistance of an officer of the JAGC or civilian counsel obtained by the officer at no expense to the Government.<br>*b.* The statement or rebuttal should contain any pertinent facts bearing on the question of the officer's elimination. Documents submitted must be legible and reproducible. They may be sworn or unsworn.<br>*c.* Undergo a separation physical examination within 5 duty days if an option is selected. |

**Table 4–2**
**Processing elimination of a probationary officer—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 9 | C&S | The initiating official (CG, HRC, or the GOSCA, as appropriate), on receipt of the officer's statement or rebuttal and/or option selection, does as follows:<br>*a.* Closes the case. (See paras 4–22 and 4–23 for homosexual conduct.) (Prior to closing cases initiated under para 4–18*a*(3) or (4), CG, HRC, will coordinate with the initiating official.) (The GOSCA may only close a case that he or she initiated.)<br>*b.* If the officer elects one of the options listed at step 2, forwards the appropriate application and all elimination documents directly and expeditiously to CDR, HRC–Alexandria (AHRC–OPD–A). Recommends approval or disapproval of the application and includes the point of contact (name and telephone number).<br>*c.* If the officer declines to elect one of the options, and an Honorable or General Discharge (Under Honorable Conditions) is recommended, forwards the case directly to CDR, HRC–Alexandria (AHRC–OPD–A). Include the point of contact (name and telephone number).<br>*d.* If the officer declines to elect one of the options and if an Under Other Than Honorable Discharge is recommended, the elimination action will be processed under the procedures for a non-probationary officer at table 4–1, steps 10 through 19, then return to step 11 below.<br>*e.* If the case is not closed, determine whether medical board or PEB proceedings are pending or appropriate (para 4–3*a*). |
| 10 | PPAA<br>(TP/TA) | On receipt of separation instructions, take action to separate the officer. Final release orders and forms cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section V
## Task: Process Elimination of an Officer for Homosexual Conduct

### 4–22. Rules for processing an elimination of an officer for homosexual conduct

*a.* AR 600–20 contains general policies concerning homosexual conduct, including statutory provisions, pertinent definitions, and guidelines for command-directed fact-finding inquiries. AR 195–2 provides guidance on criminal investigation of sexual misconduct by the U.S. Army Criminal Investigation Command and other DOD Law Enforcement organizations. AR 380–67 offers guidance on personnel security and clearance matters related to homosexual conduct.

*b.* Homosexual conduct is grounds for separation from the Army under the criteria and terms set forth below. Homosexual conduct includes homosexual acts, a statement by an officer that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted marriage. A statement by an officer that demonstrates a propensity or intent to engage in homosexual acts is grounds for separation not because it reflects the officer's sexual orientation but because the statement indicates a likelihood that the officer engages in or will engage in homosexual acts. An officer's sexual orientation is considered a personal and private manner and is not a bar to continued service under this section unless manifested by homosexual conduct in the manner described below. Except as indicated, a officer will be separated if one or more of the following approved findings have been made by the separation authority:

(1) The officer has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts, unless there are further approved findings that the officer has demonstrated that—

*(a)* Such acts are a departure from the officer's usual and customary behavior;

*(b)* Such acts under all the circumstances are unlikely to recur;

*(c)* Such acts were not accomplished by use of force, coercion, or intimidation;

*(d)* Under the particular circumstances of the case, the officer's continued presence in the Army is consistent with the interests of the Army in maintaining proper discipline, good order, and morale; and

*(e)* The officer does not have a propensity or intent to engage in homosexual acts.

*(f)* In determining whether retention is appropriate, separation boards/authorities must ensure that all of the foregoing limited conditions are met. Additionally, a determination as to whether retention is warranted under the limited circumstances is required if the officer clearly and specifically raises such limited circumstances.

(2) The officer has made a statement that he or she is a homosexual or bisexual, or words to that effect, unless there are further approved finding that the officer has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. A statement by a officer that he or she is homosexual or bisexual, or words to that effect, creates a rebuttable presumption that the officer engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. The rebuttable presumption provision will be specifically included in the initiation of the elimination memorandum (fig 5–1). The officer will be advised of this presumption and given the opportunity to rebut the presumption by presenting evidence demonstrating that he or she does not engage in, attempt to engage in, have a propensity to engage in, or intend to engage in homosexual acts. Propensity means more than an abstract preference or desire to engage in homosexual acts; it indicates a likelihood that a person engages or will engage in homosexual acts. In determining whether an officer has

successfully rebutted the presumption that he or she engages in, attempts to engage in, or has a propensity or intent to engage in homosexual acts, some or all of the following may be considered:

*(a)* Whether the officer has engaged in homosexual acts;

*(b)* The officer's credibility;

*(c)* Testimony from others about the officer's past conduct, character, and credibility;

*(d)* The nature and circumstances of the officer's statement;

*(e)* Any other evidence relevant to whether the officer is likely to engage in homosexual acts (this list is not exhaustive; any other relevant evidence may also be considered).

(3) The officer has married or attempted to marry a person known to be of the same sex (as evidenced by the external anatomy of the persons involved).

(4) The officer will bear the burden of proving by a preponderance of the evidence throughout the proceedings that retention is warranted under the limited circumstances described in paragraphs (1) and (2) except in cases where the officer's conduct was solely the result of a desire to avoid or terminate military service.

*c.* Separation is not required when a determination is made that—

(1) The officer engaged in acts, made statements, or married or attempted to marry a person known to be of the same biological sex for the purpose of avoiding military service; and

(2) Separation of the officer would not be in the best interest of the Army.

*d.* Subsequent to the original initiation of elimination action, succeeding actions required to dispose of the case will be attended to vigorously. Except for delays required to protect the rights of the respondent, prompt attention and expeditious handling will be given to elimination cases.

*e.* A nonprobationary officer (and a probationary officer recommended for a discharge of Under Other Than Honorable Conditions) recommended for elimination due to homosexual conduct is entitled to a Board of Inquiry and a Board of Review.

*f.* An officer recommended for elimination due to homosexual conduct will undergo a medical evaluation.

*g.* An officer recommended for elimination due to homosexual conduct will have a psychiatric evaluation when requested by—

(1) The officer.

(2) The examining physician.

(3) The commander that recommended separation.

(4) The Board of Inquiry.

*h.* The type of discharge an officer receives will reflect the characterization of service. An officer may receive a discharge Under Other Than Honorable Conditions when there is a finding that during the current term of service, the officer attempted, solicited, or committed a homosexual act—

(1) By using force, coercion, or intimidation.

(2) With a person under age 16.

(3) With a subordinate in circumstances that violate customary military superior-subordinate relationships.

(4) Openly in public view.

(5) For compensation.

(6) Aboard a military vessel, aircraft, or another location subject to military control, which had or was likely to have an adverse impact on discipline, good order, or morale. Because of the close proximity of other members of the Armed Forces under these circumstances, privacy cannot reasonably be expected.

*i.* A board convened to determine whether an officer should be separated for homosexual conduct will follow the procedures authorized in appropriate paragraphs of this regulation except for the following:

(1) If a Board of Inquiry or Review finds that one or more of the circumstances under *b* above, is supported by the evidence, the board will recommend elimination as appropriate unless the board finds that retention is required under the limited circumstances described above.

(2) If the board does not find that there is sufficient evidence that one or more of the circumstances authorizing separation has occurred, the board will recommend retention unless the case involves another basis for separation for which the officer has been duly notified.

(3) The burden of proving that retention is required under the limited circumstances rests with the officer except in cases where the officer's conduct was solely the result of a desire to avoid or terminate military service.

(4) Specific findings regarding the existence of the limited circumstances requiring an officer's retention set forth in*b*, above, are required to be made by a Board of Inquiry or Review only if—

*(a)* The officer specifically presents the limited circumstances; and

*(b)* The board relies on such circumstances to justify the officer's retention.

*j.* Upon final approval by the DASA-RB or ASA(M&RA), as appropriate, of elimination proceedings against any

officer of the active Army, that officer, regardless of component, will be discharged as the result of such proceedings. The office of HRC–Alexandria (AHRC–OPD–A) will forward separation instructions to the appropriate PSC/MPD.

## 4–23. Steps for processing an elimination of an officer for homosexual conduct
The required steps for processing an elimination of an officer for homosexual conduct are as shown in table 4–3.

**Table 4–3**
**Processing elimination of an officer for homosexual conduct**

| Step | Work center | Required action |
|---|---|---|
| 1 | BN S–1 PPAA | Commander receives information that an officer may require that elimination action be initiated because of homosexual conduct or the officer makes a self-admitted written statement that he or she is homosexual or bisexual. |
| 2 | BN S–1 PPAA | The commander inquires thoroughly and comprehensively into the matter and ascertains all the facts in accordance with AR 600–20. |
| 3 | BN S–1 PPAA | The commander initiates an investigation if there is any credible evidence to believe that a basis for elimination exists due to homosexual conduct in accordance with AR 600–20. |
| 4 | BN S–1 PPAA | The commander, when the information is sufficient enough to authorize investigation, takes necessary action to protect the security of the command. This includes suspension of the officer's security clearance (if any) and denial of access to classified defense information, until the case is closed. |
| 5 | BN S–1 PPAA | The commander initiates a DA Form 268. (See AR 600–8–2.) |
| 6 | BN S–1 PPAA | When an investigation is required, AR 195–2 provides guidance on criminal investigations of sexual misconduct by CID and other law enforcement organizations. However, CID Regulation 195–1 states that CID will not normally investigate allegations of adult private consensual sexual misconduct if that offense is the only offense involved unless referred by a commander or upon approval by CG or Deputy Commander, U.S. Army Criminal Investigation Command. |
| 7 | BN S–1 PPAA | The commander, when the investigation substantiates the allegations— <br> *a.* Refers the officer for a medical examination and mental status evaluation. <br> *b.* Refers to AR 380–67 on personal security and clearance matters related to homosexual conduct. Revocation of security will be according to AR 380–67, chapter 8. |
| 8 | C&S | A physician conducts a medical evaluation that includes a mental status evaluation SF Form 600 (Health Record-Chronological Record of Medical Care). |
| 9 | C&S | A psychiatrist conducts a psychiatric evaluation (when required). Includes in the diagnosis an opinion of whether— <br> *a.* The officer was able to distinguish right from wrong at the time of the conduct under investigation. <br> *b.* The officer currently has the mental capacity to understand board and judicial proceedings and participate in own defense. <br> *c.* The officer is suffering from an incapacitating mental illness and whether the illness was probably the cause of the homosexual conduct. |
| 10 | C&S | The medical treatment facility commander forwards the original medical evaluation (including the psychiatric study, if any) to the unit commander and ensures a copy of each report is filed in the officer's health record. |
| 11 | BN S–1 PPAA | The commander ensures that all facts indicating homosexual conduct be recorded properly. The file will contain the following: <br> *a.* Officer's date and place of birth. <br> *b.* Amount of active service. <br> *c.* Date and current period of service. <br> *d.* Statement of witnesses (UCMJ, art 31). <br> *e.* Medical evaluation reports. <br> *f.* Officer's statement (in their own behalf if it is desired). |
| 12 | BN S–1 PPAA | The commander, if there is not sufficient evidence to make a recommendation for elimination, stops the action. |
| 13 | BN S–1 PPAA | The commander, if there is sufficient evidence, forwards the file with recommendation for elimination through command channels to the GOSCA for processing. Intermediate commanders may take one of the following actions: <br> *a.* Recommend disapproval of recommendation because there is not sufficient evidence that one or more of the circumstances authorizing separation under paragraph 4–22*b* has occurred. <br> *b.* Recommend approval of the commander's recommendation and forward the file to the GOSCA. |

**Table 4–3**
**Processing elimination of an officer for homosexual conduct—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 14 | C&S | The GOSCA may disapprove the recommendation for elimination, close the case and return it to the originator due to insufficient evidence that one or more of the circumstances authorizing separation under paragraph 4–22*b* has occurred or may approve the recommendation and notify the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on active duty.<br>  *a.* When the case is for a probationary officer, follow steps 1 through 10 of table 4–2 and step 15 below. If the officer declines to elect one of the options and if an Under Other Than Honorable Conditions Discharge is recommended, the elimination action will be processed under the actions at table 4–1, steps 1 through 19, and step 15 below. If the DASA-RB or ASA (M&RA), as appropriate, directs a Board of Inquiry, the elimination action will be further processed under table 4–1, steps 10 through 19, and then return to step 15 below.<br>  *b.* When the case is for a nonprobationary officer, follow steps 3 through 19 of table 4–1 and then return to step 15 below. |
| 15 | PPAA (TP/TA) | On receipt of separation instructions, takes action to separate the officer. Release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VI
## Task: Process an Option that an Officer Elects while Elimination Action Is Pending

**4–24. Rules for processing an option that an officer elects while elimination action is pending**

*a.* An officer identified for elimination may, at any time during or prior to the final action in the elimination case, elect one of the following options (as appropriate):

(1) Submit a resignation in lieu of elimination.

(2) Request discharge in lieu of elimination.

(3) Apply for retirement in lieu of elimination if otherwise eligible.

*b.* When an option is elected, the GOSCA may suspend elimination proceedings pending final action on the option elected by the officer. If prior to final action on an officer's resignation in lieu of elimination, the officer is retained by a show-cause board, board of review, or the GOSCA, the officer's request for resignation becomes void.

*c.* Any officer who has been the subject of any substantiated adverse finding or conclusion from an officially documented investigation, proceeding or inquiry (except minor traffic infractions) since the officer's last promotion, will have the case forwarded to the Army Grade Determination Review Board for a grade determination under AR 15-80 to determine the highest grade the officer satisfactorily held while on AD, provided that such information is reflected, or should be reflected by regulation, in the officer's OMPF. Final retirement grade determination is made by DASA-RB or ASA(M&RA), as appropriate. The office of HRC–Alexandria (AHRC–OPD–A) forwards the following:

(1) Retirement application.

(2) The elimination notification memorandum (to include all supporting documentation).

(3) Officer rebuttal (if any).

(4) OMPF.

*d.* When an officer submits a resignation in lieu of elimination or a request for discharge in lieu of elimination, the officer waives the right to a hearing before a Board of Inquiry, and the case will be processed without convening a Board of Inquiry.

*e.* An officer may wish to waive the right to a Board of Inquiry contingent upon receiving a characterization of service more favorable than the least favorable characterization authorized for the reason for elimination set forth in the notice of elimination.

(1) Officers wishing to submit a conditional waiver will submit a completed Resignation in Lieu of Elimination (see fig 4-5) or a Request for Discharge in Lieu of Elimination (see fig 4–7).

(2) Commanders will ensure that an officer has had an opportunity to consult with counsel before waiving the right to a hearing before a Board of Inquiry.

*f.* The appropriate separation authority may approve or disapprove the conditional waiver.

*g.* If the conditional waiver is disapproved, the case will be referred to a Board of Inquiry unless there is a subsequent resignation in lieu of elimination or request for discharge in lieu of elimination, where the officer unconditionally waives the right to a hearing before a Board of Inquiry.

*h.* Upon final determination, HRC–Alexandria (AHRC–OPD–A) will forward appropriate separation instructions to the appropriate PSC/MPD.

**4–25. Steps for processing an option that officer elects while elimination action is pending**
The required steps for processing an option that officer elects while elimination action is pending are as shown in table 4–4.

**Table 4–4**
**Processing an option that officer elects while elimination action is pending**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | Selects an option.<br>*a.* Resignation, if reason for elimination is substandard performance of duty. (Use format shown in fig 4–4.)<br>*b.* Resignation, if reason for elimination is substandard performance and/or misconduct, moral or professional dereliction, or in the interest of national security. (Use format shown in fig 4–5.)<br>*c.* Discharge, if reason for elimination is substandard performance of duty. (Use format shown in fig 4–6.)<br>*d.* Discharge, if reason for elimination is substandard performance and/or misconduct, moral or professional dereliction, or in the interest of national security. (Use format shown in fig 4–7.)<br>*e.* Retirement. (Use format shown in figure 6–1, amended as required to specifically state that the application is submitted in lieu of elimination proceedings.) |
| 2 | PPAA<br>BN S–1 | Processes the option. Determines whether medical board or PEB proceedings are pending or appropriate (para 4–3*a*). The commander makes recommendation for approval or disapproval and for type of discharge and forwards to the GOSCA with the following documents:<br>*a.* Elimination recommendation memorandum (GOSCA to officer).<br>*b.* Self-admitted homosexual conduct statement (if applicable).<br>*c.* Report of investigation (if applicable).<br>*d.* Medical examination and mental status evaluation (if applicable).<br>*e.* DA Form 268. |
| 3 | C&S | The GOSCA makes recommendation for approval or disapproval and for type of discharge to be furnished and immediately forwards the option request, to include all supporting documents to CDR, HRC–Alexandria (AHRC–OPD–A), with an information copy to the GCMCA (if different from the GOSCA) concerned. |
| 4 | C&S | The GOSCA advises CDR, HRC–Alexandria (AHRC–OPD–A), in writing of the status of the Board of Inquiry proceedings. |
| 5 | PPAA<br>(TP/TA) | On receipt of separation instructions, takes action to separate the officer. Release orders and forms will cite the regulatory authority and SPD as shown in AR 635–5–1. |

Record of Board Proceedings
Proper
(Last, first name, middle initial) (SSN and Grade)
By
Board of Inquiry Under
Appointed by (Title of appointing authority)
Held at

(Place(s) of hearings)                    on (Date(s) of hearings)

| Index | Record |
|---|---|
| Introduction to counsel | R |
| Explanation of rights to respondent | R |
| Findings | R |
| Recommendation | R |

### Testimony

Name of witness                                          Direct and redirect/Cross/Recross
FOR GOVERNMENT
FOR RESPONDENT

### Exhibits Admitted in Evidence

Page where

| Number of letter | Description | Offer | Admitted |
|---|---|---|---|

### Copies of Record

One copy of record furnished to the respondent.
(Number) copy (ies) of record forwarded herewith.

### Board Personnel and Abbreviations

| PRES | President |
|---|---|
| MEMB | 1 |
| MEMB | 2 |
| REC | Recorder |
| RESP C | Respondent Counsel |
| WIT | Witness |

Party
Name and Rank
Unit of assignment
Component (Active/Reserve)

Where either (RESP C or RESP) may be commenting, the abbreviation RESP C is shown in the example; however, the report should show the appropriate abbreviation (RESP C OR RESP)

### Proceedings of a Board of Inquiry

Which met at (location), at (time) hour, (date), pursuant to the following orders:
(Note: The orders appointing the Board of inquiry, as well as amendments, will be described by the recorder at this point by headquarters of issuance, date and subject.)

PRES: The Board will come to order. Has the respondent specifically requested that certain persons be admitted to attend these proceedings as spectators?

REC: No such request has been made.

PRES: The appointing authority has not specifically authorized the presence of any spectator during the proceedings, and none will be permitted.

REC: This board of inquiry is appointed by (name): (as amended by (Name)) a copy has been furnished to each member of the board, the respondent the appointed respondent counsel, and to the reporter for incorporation in the record at this point as Government Exhibit No. 1. I shall now read the orders.)

REC: The following persons named in the appointing orders are present: (names). The following persons named in the appointing orders are absent: (names). The respondent concerned, (names) is present.

REC: The mission of this Board of inquiry is to afford the respondent a fair an impartial hearing with regard to the requirement that the officer show cause why he or she should not be eliminated from the Army, and to determine from the evidence presented the course of action that will best serve the interest of the Government without jeopardizing the rights of the respondent.

REC: (Name), a reporter has been made available to record and transcribe these proceedings and will now be sworn.

**Figure 4–1. Format guidance for Board of Inquiry verbatim report**

(Note: The reporter rises and stands with right hand raised; the recorder or president rises, faces the reporter, and administers the oath.)

REC:  You swear (or affirm) that you will faithfully perform the duties of reporter to this board? So help you God?

REPT:  I do.

PRES.  (Name), as the respondent in these proceedings, you may represent yourself or be represented (by the appointed respondent's counsel) or (by individual military counsel of your own selection, if reasonably available, or civilian counsel obtained by you at no expense to the Government). I now ask you whether you will represent yourself or will you be represented?

RESP C:  The respondent (is represented by(name), the appointed respondent's counsel) and/or (introduces as individual respondent's counsel).

PRES.  Will the respondent's counsel call any member of the board as a witness in these proceedings?

RESP C:  No.

PRES.  No member of the board has sat on any other Board of Inquiry in considering the case of the respondent. No member of the board will be or has been called as a witness, and no member has previously recommended or has been a member of any board that recommended elimination or relief from active duty of the respondent. No member of the board has been a member of reviewing authority of a court-martial in which this respondent was the accused, nor has any member of the board otherwise considered the case of the respondent or been a member of the selection board that found that the respondent should show cause for his or her retention in the Army.

PRES.  I now ask the respondent to state his or her date of rank or grade which serving.

RESP:

PRES.  If any member is junior to the respondent in date of rank, he or she will now state.

All members of the board indicated they were senior.

PRES.  (Name), as the respondent in these proceedings you have the following rights and privileges: (Note: The president will read the pertinent portions of para 4–11 of this regulation, which will be recorded verbatim by the reporter.)

PRES.  The records in this case disclose (no grounds for challenging any member for cause) (grounds for the challenge of (name), for the following reasons: (reason(s))). If any member of the board or if the recorder is aware of any facts that he or she believes may be a ground for challenge of any member by the respondent, he or she should now state those facts. In this connection, I remind the members of the board that they have seen certain records, documents, and reports that were furnished to the board prior to this meeting. Notwithstanding this fact, do you know of any reason why you would not be able to hear the evidence submitted by the respondent and make a fair and impartial determination in this case? (Note: If the member states no such facts, the president should recite for the record, "Apparently, no such facts are known.")

REC:  The Government (has no challenge)(challenges (name) for the reason (reason)). (Note: The board is responsible to ensure that all members are eligible.)

PRES.  Does the respondent desire to challenge any member of the board for cause?

RESP:  The respondent (has no challenges) (challenges (name) for cause on the ground (reason(s))). (Note: The respondent and recorder may present arguments for or against sustaining the challenge. The challenged member may be called to testify concerning the grounds for challenge. The senior unchallenged member of the board determines whether a challenge will be sustained. Challenges will be disposed of individually in the order presented.)

PRES.  The board will be closed.

The board was closed at(time) hours, (date).

The board opened at (time) hours, (date).

PRES.  The board is open.

REC:  All members present when the board closed, the respondent, counsel, recorder, and reporter are again present.

PRES.  The challenge is (sustained) (overruled). (Note: If a challenge is sustained, the recorder should recite for the record, "The challenged member withdrew from the board and from the hearing room". If, as a result of sustained challenges, the membership of the board is reduced below the three required, it will recess pending the appointment of replacement by the appointing authority.)

REC:  The board will be sworn. (Note: All persons in the hearing room will stand while the oath is being administered to the board, the legal adviser, and the recorder. Each member of the board raises the right hand as his or her name is called by the recorder in administering the following oath.)

REC:  You, General (name), Colonel (name), (name), do swear (or affirm) that you will faithfully perform all duties imposed on you as a member of this Board of Inquiry; that you will faithfully and impartially examine, inquire in and hear, according to the evidence, your conscience, and applicable regulation, the matter now before you involving (name), the respondent; and that you will not disclose the opinion or vote, if known to you, of any particular member of the board on a challenge or on the findings and recommendations unless required to do so before a court of justice in the due course of law. So help you God.

EACH MEMBER: I do. (Note: The members lower their hands, but remain standing while the recorder administers the oath to the legal adviser, who raises his or her right hand.)

REC:  You, (name), do swear (or affirm) that you will faithfully and impartially perform, according to your conscience and the laws and regulations provided for hearings of this nature, all duties incumbent on you as legal adviser for this board and that you will not disclose the findings or recommendations of the board in this case until they shall have been announced by the board. So help you God.

LEGAL ADVISER: I do. (Note: The legal adviser lowers his or her hand and remains standing along with the board members while the President administers the oath to the recorder, who raises his or her right hand.)

PRES.  You, (name), do swear (or affirm) that you will faithfully execute all the orders of this Board of Inquiry and that you will faithfully supervise the accurate recording of the evidence received in and the proceedings had in, the matter now before this board. So help you God.

REC.  I do.

PRES.  The board is now convened. (Note: If it is desired to orient the board in open session, it should be done at this point.) I am familiar with the

**Figure 4–1. Format guidance for Board of Inquiry verbatim report—Continued**

contents of the records, documents, and reports that were furnished to the board with this case. (Note: If there is to be a verbal presentation of the case it should be done at this point.)

PRES: Does any member desire a recess at this time to make further study? (Note: If no recess is requested, the reporter should note that fact for the record.)

PRES: (Name), as the respondent in these proceedings, you may present such evidence as is pertinent to your case. I now ask you whether you desire a copy of the record of these proceedings?

REC: He or she (does/does not).

PRES: The recorder, in lieu of and under the direction and supervision of myself as president of the board, will now proceed with the presentation of the evidence on behalf of the Government.

REC: I request that the reporter mark this exhibit for identification. (Note: The reporter is responsible for keeping a list of exhibits marked for identification and also as finally accepted in evidence. Government exhibits should be numbered consecutively; defense exhibits should be lettered consecutively. To clarify the proceedings in regard to exhibits, they should be admitted by the same number or letter they bore "for identification", even though omissions appear in the sequence of numbers or letters of exhibits finally admitted. Ordinarily, the words "for identification" are simply lined out when an exhibit is admitted in evidence. The reporter will mark on the exhibit (or affix the tag) the appropriate number or letter and state, for example:

REPT: This will be Government Exhibit (No. XX) for identification.

REC: Government Exhibit (No. XX) for identification is a letter (describe by date, subject, file number, name of author, and name of addressee) together with (number) endorsement, in which the individual concerned (name and grade of respondent), was notified that he or she would be required to show cause why he or she should remain in the Army. I offer it in evidence as Government Exhibit (No. XX). (Note: At the time an exhibit is offered in evidence, respondent's counsel should be afforded the opportunity to examine same and object.)

PRES: Government Exhibit (No. XX) for identification is admitted in evidence as Government Exhibit (No. XX).

REC: I offer the exhibit in evidence to show that respondent was notified in writing of the charges against him or her at least 30 days before the convening board.

REC: I invite the board's attention to the fact that by the (number) endorsement, dated (date), forming a part of Government Exhibit (No. XX), the respondent elected to appear before a Board of Inquiry.

REC: I ask that the reporter mark this exhibit for identification.

REPT: This will be Government Exhibit (No. XX) for identification.

REC: Government Exhibit (No. XX) for identification is a letter (describe the letter in detail, including headquarters of issuance, date, subject, file number, and addressee) notifying the respondent of this hearing. By endorsement (number), dated (date), attached to and forming a part of the exhibit, the respondent acknowledged receipt. I offer the exhibit in evidence as Government Exhibit (No. XX) to show that he or she was given not less than 10 days notice of the time and place of the convening of this board.

PRES: Government Exhibit (No. XX) for identification is admitted in evidence as Government Exhibit (No. XX).

REC: I ask that the reporter mark this exhibit for identification.

REPT: This will be Government Exhibit (No. XX) for identification.

REC: Government Exhibit (No. XX) for identification is a letter directed by the appointing authority to the president of the board (describe the letter in detail, including headquarters of issuance, date, subject, file number, and addressee) comprised of the basic communication and (number) endorsements, attached which are (number) enclosures, the findings of the selection board and all documentary evidence identified by it in support. I offer the exhibit in evidence as Government Exhibit (No. XX) as constituting all the records and documents referred to the board.

PRES: Government Exhibit (No. XX) for identification is admitted in evidence as Government Exhibit (No. XX).

REC: I ask that the reporter mark this exhibit for identification.

REPT: This will be Government Exhibit (No. XX) for identification.

REC: Was respondent furnished copies of all pertinent records on (date) when notified of requirement to show cause? Government Exhibit (No. XX) for identification is a receipt signed by him or her dated (date). I offer it in evidence as Government Exhibit (No. XX).

PRES: Government Exhibit (No. XX) for identification is admitted in evidence as Government Exhibit (No. XX).

REC: With the concurrence of the president and the consent of the respondent, the recorder and respondent's counsel stipulate as follows:

PRES: The stipulation is accepted.

REC: The Government calls as a witness (name). (Note: When the witness is sworn he or she raises the right hand, and the president or recorder administers the oath.)

REC: You swear (or affirm) that the evidence you shall give in these proceedings shall be the truth, the whole truth, and nothing but the truth? So help you God?

WIT: I do.

REC: State your full name (grade, organization, station, and Armed Forces (occupation and residence.)

WIT:

REC: Do you know the respondent in these proceedings?

WIT: Yes.

REC: Will you state the respondent's name and point to him or her.

WIT:

REC: Let the record show that the witness pointed to the respondent. (Note: The recorder will ask like preliminary qualifying questions of witnesses called by the respondent. After the Government has completed the direct examination of the witness, the defense cross-examines or declines to cross-examine the witness.)

REC: The Government has no (further) questions.

**Figure 4–1. Format guidance for Board of Inquiry verbatim report—Continued**

PRES:   The record of proceedings so far had in this matter will now be read to the new members by the recorder. The recorder of the proceedings so far was then read to the new members.

(Note:  The President should grant a recess, if the new members desire it for further study of the case.)

PRES:   The proceedings have been read to date, the hearings may proceed.  (Note:  The respondent's counsel then proceeds to complete the case for the respondent, following which the recorder or the president presents any available evidence in rebuttal.)

RESP C: The respondent has no further evidence to present in his or her behalf.

REC:    The Government has no further evidence to present.

PRES:   The board will be closed.  The board was closed at (time) hour, (date).  Note the findings will be stated as specified in                              paragraph 4-15b).

### Findings and Recommendations

The board opened at (time) hour, (date)

PRES:   The board is open.

REC:    Let the record show that all voting members when the board was closed, the respondent, counsel, recorder and reporter are   again present.

PRES:   (Name), it is my duty as president of this board of inquiry to inform you that the board in closed session and by secret  written ballot, a majority of the members present at the time the vote was taken concurring, has made the following findings and recommendations:

### Findings

The board having carefully considered the evidence before it finds:

(The board will make specific findings d of facts supported by a preponderance of the evidence, in sufficient detail to support the Board's recommendation.  The findings will address each separate reason for separation and each separate factual allegation.  The board may choose to address mitigating, extenuating or aggravating factors in its findings where the Board believes that such findings are necessary to support or explain the Board's recommendation.  Standing alone, conclusory statements such as "the respondent engaged in conduct unbecoming an officer" are not findings of fact.  In the case of disagreement, a member may make dissenting findings.)

### Recommendations

PRES:   In view of such findings, the board recommends:

(The board will make recommendations supported by the findings.  In the case of disagreement, a member may make a   dissenting recommendation).

PRES:   The matters before this Board of Inquiry having been determined, the proceedings are ended.  The proceedings were completed at (time) hours, (date).

### Authentication of Record of Board of Inquiry

In reference to the matter of **(respondent)**

                                        **(President)**
                                        **(Member)**
                                        **(Member)**

**(Recorder)**
I have examined the record of the Board of Inquiry hearing.

                                        **(Respondent's counsel)**

**Figure 4–1. Format guidance for Board of Inquiry verbatim report—Continued**

PRES:   The record of the proceedings so far had in this matter will now be read to the new member by the recorder. The record of the proceedings so far was then read to the new member.

(Note: The president should grant a recess, if the new members desire it for further study of the case.)

PRES:   The proceedings have been read to date, the hearing may proceed. (Note: The respondent's counsel then proceeds to complete the case for the respondent, following which the recorder or the president presents any available evidence in rebuttal.)

RESP C:   The respondent has no further evidence to present in his or her behalf.

REC:   The Government has no further evidence to present.

PRES:   The board will be closed. The board was closed at (time) hours, (date). (Note: The findings will be stated as specified in para 4–15b).

### Findings and Recommendations

The board opened at (time) hours, (date).

PRES:   The board is open.

REC:   Let the record show that all members present when the board was closed, the respondent, counsel, recorder, and reporter are again present.

PRES:   (Name), it is my duty as president of this Board of Inquiry to inform you that the board in closed session and on secret ballot, a majority of the members present at the time the vote was taken concurring, has made the following findings and recommendations:

### Findings:

The board having carefully considered the evidence before it finds:

(A brief statement of the reason(s), including factual data when considered necessary for clarification) for each finding will be included.) In view of such findings, the board recommends:

PRES:   The matter before this Board of Inquiry having been determined, the proceedings are ended. The proceedings were completed at (time) hours, (date).

### Authentication of Record of Board of Inquiry

In reference to the matter of *(respondent)*.

*(President)*
*(Member)*
*(Member)*

*(Recorder)*

I have examined the record of the Board of Inquiry hearing.

*(Respondent's counsel)*

**Figure 4–1. Format guidance for Board of Inquiry verbatim report—Continued**

All items are applicable to records of proceedings under this regulation before Boards of Inquiry. The recorder of the board and the appointing authority (or his or her designated representative) will answer the following questions with a yes or no response and attest to the response by entering the date and their signatures (including rank) at the completion of the questions.

The board, through its president, is completely responsible for all aspects of the proceedings. It is the responsibility of the recorder to ensure throughout the hearing that the Government's case is presented fully. The recorder will be alert to develop new evidence in its favor to support the allegations made by the Government, including the procurement and presentation, and to examine witnesses. Unless otherwise indicated, all cited references are from this regulation. A copy of this data sheet will be furnished to each board member for his or her use, at the time of appointment.

1. Was respondent served with a notice to show cause (paras 4–18 through 4–23)?

2. If respondent made an election other than to appear, was appropriate action taken (paras 4–24 and 4–25)?

3. Were the orders appointing the board issued by the GOSCA (para 4–6f)?

4. Did the order appointing the board designate a respondent's counsel (para 4–12a)?

5. Is the board comprised of three or more officers of proper grade and one or more recorders, and is each qualified (para 4–7)?

6. If the respondent is a non-Regular Army officer, was one or more members of the board a Reserve component officer (para 4–7a)?

7. Do the appointing orders clearly specify the matter to be investigated and cited specifically the regulations which the board is convened (AR 15–6, para 2–1b)?

8. Was an officer of The Judge Advocate General's Corps designated as recorder (para 4–9a)?

9. Was a civilian court reporter erroneously employed (AR 15–6, para 2–2)?

10. Does the record show at the outset of each session the time, date, place, and station; and does it also show the time of each closing (para 4–9d(5))?

11. Were all orders appointing the board and appointing personnel read by the recorder at the initial session, and are they attached to the records as exhibits (para 4–9d(4))?

12. Were at least three members or such larger number as constitutes a majority of those detailed as members, present at all hearings (para 4–7a)?

13. At the opening of each session, did the recorder note for the record the presence of members of the board and the respondent and his or her counsel, if any (para 4–9d(5))?

14. If a member was absent or a new member was appointed, was the record read by and were all prior proceedings made known to, him or her before the proceedings continued (AR 15–6, para 5–2d)?

15. Does the record show that the officer concerned was notified by the GOSCA of show cause action and furnished substance of the grounds at least 30 days prior to convening of a board (paras 4–8b, 4–11b)?

16. Does the record show that the officer concerned was given at least 10–days notice of the time and place of the convening of the board (para 4–9d(1))?

17. Does the record show that at a sufficiently early date, the respondent had access to and was furnished copies, if desired, of all releaseable records and documents referred to the board (para 4–9d(2))?

18. Was the respondent advised by the president of his or her rights and privileges as prescribed by paragraph 4–8g?

19a. Did the president ask the members of the board to state any facts known to them that they believe might be grounds for challenge for cause (para 4–8f)?

b. Was the respondent extended the right to challenge any member of the board for cause (para 4–11d)?

20. Was action of the board on challenges proper(para 4–11d)?

21. Were the members of the board sworn by the recorder, and was the recorder sworn by the president (para 4–9d and 4–8e)?

22. Does the record show that at the outset of the proceedings the members refreshed their memories as to the contents of the records, documents, and reports furnished with the case (para 4–8f)?

23. Was the respondent permitted counsel of his or her own selection under the conditions set forth in paragraphs 4–11a, 4–12a, and 4–12b)?

24. Did the president advise the respondent of his or her right to present pertinent evidence (para 4–11f)?

25. Did the president ask the respondent to state for the record whether he or she desired a copy (para 4–11c)?

26. Were spectators other than those specifically requested by the respondent or as authorized by the appointing authority, present during the proceedings (para 4–14)?

27a. Was the respondent at all open sessions of the board, unless the respondent was excused by the President of the Board and expressly waived his or her right to attend (para 4–11)?

b. Was the respondent at all open sessions of the board, unless his or her absence was expressly excused by the respondent (para 4–12d)?

28a. Were all witnesses, including the respondent if he or she elected to testify, sworn (para 4–13d and 4–11f(4))?

b. Were they sworn by the president or recorder (para 4–9d(6) and AR 15–6, para 3–1)?

29. Was the respondent advised of his or her rights under the Uniform Code of Military Justice, article 31, where appropriate(para 4–11f and AR 15–6, para 5–5)?

**Figure 4–2. Board of Inquiry data sheet**

30. Is a copy of the psychiatric report made part of the record (para 4–3 and table 4–3, as appropriate)?

31. If hospitalization for observation or treatment was directed by the board, were the proceedings suspended, pending final medical disposition (para 4–3c)?

32. If evidence was submitted through a deposition(para 4–13a), was it taken as provided in the Uniform Code of Military Justice, article 49 (AR 15–6, para 13b)?

33. If evidence on behalf of the Government was procured by affidavit or correspondence, was the respondent given reasonable notice and afforded an opportunity to meet adverse allegations (para 4–11c and AR 15–6, para 5–8)?

34. Did the board insist on the highest quality of evidence reasonably obtainable and available (AR 15–6, para 3–15)?

35. Are all exhibits properly identified in and bound with the record (AR 15–6, para 3–15)?

36. Was the respondent afforded reasonable opportunity to present his or her case (paras 4–11b,c; 4–8a; 4–9d(1) and (2); 4–11f(2), (3), and(4))?

37. Before the hearing was terminated and near the end, was the respondent asked by the president to state for record whether he or she had presented all evidence available in his or her own behalf (para 4–11j)?

38. If answered in the negative, did the president require him or her to make a concise statement for the record of the substance of the expected evidence, and was all documentary evidence referred to in the statement included in the record (para 4–11j)?

39. Was the action of the board on requests by the respondent for additional time to procure and present evidence appropriate (para 4–11j)?

40. Did the board make proper findings and include data required by paragraph 4–15b(1)?

41. Are the findings supported by substantial evidence (AR 15–6, para 3–9)?

42. Does the recommendation conform to and is it limited to one of the permissible prescribed forms (para 4–15b(2))?

43. Were the findings and recommendation of the board determined in closed session by secret ballot, a majority of the members present at the time the vote was taken concurring in each (para 4–15b(1))?

44. Were the findings and recommendation announced to the respondent as soon as they were finally determined (para 4–15b(5))?

45. Was the record prepared by the recorder or under his or her supervision (AR 15–6, para 5–3)?

46. Were the requirements of AR 15–6, paragraphs 3–13 through 3–19, complied with in preparing the record?

47a. Is the record authenticated by the signatures of all members present at the deliberations on the findings and recommendation and also by that of the recorder (AR 15–6, para 3–16)?

b. If any of the foregoing persons were unable to authenticate the record because of death, disability, or absence, is the reason stated following the authentication by the officers (AR 15–6, para 3–16)?

48. Is the record prepared in duplicate, each complete with all exhibits appended (para 4–15c)?

49. Has the respondent's counsel examined the record of the Board of Inquiry hearing and so indicated by his or her signature following the authentication?

*(Signature and grade of recorder)*

*(Signature and grade of appointing
authority (or designated representative))*

**Figure 4–2. Board of Inquiry data sheet—Continued**

*(Letterhead)*

*Office symbol (MARKS number)*                                                                                    *(Date)*
MEMORANDUM THRU (Channels)

FOR: *(Individual officer)*

SUBJECT: Initiation of Elimination


1. You are required to show cause for retention on active duty under the provisions of *(insert AR 600-8-24, applicable para)*because of *(insert reasons(s), that is, substandard performance of duty and/or misconduct and/or moral or professional dereliction).*

2. My action is based on the following specific reasons for elimination:*(List only applicable reasons as outlined in AR 600-8-24, para 4-2 or para 4-22, that can be supported by specific factual allegations and evidence. Examples are listed in a and b below.)*

   a. Failure to exercise necessary leadership required of an officer of your grade. Specifically, as a result of the following incidents, you were relieved from command as evidenced by your relief for cause OER for the period YYMMDD-YYMMDD (encl xx):

      (1) *(State factual allegations.)*

      (2) *(State factual allegations.)*

   b. Intentional neglect of performance of duties. Specifically, your neglect to properly secure weapons assigned to your custody as evidenced by OER for the period of YYMMDD-YYMMDD (encl xx).

3. In conjunction with this action, a DA Form 268 (Suspension of Favorable Personnel Actions) has been initiated according to AR 600-8-2 (encl xx).

4. You may either have the assistance of an officer of The Judge Advocate General's Corps appointed as counsel or seek civilian counsel of your own selection (obtained by you at no expense to the Government) to prepare a written statement indicating any pertinent facts or any rebuttal bearing on the question of your elimination.

   a. This statement may be sworn or unsworn.

   b. Documents submitted in rebuttal must be legible and reproducible.

   c. You may also confer with your counsel for legal advice concerning your options stated in paragraph 7 below.

5. *(FOR PROBATIONARY OFFICERS ONLY)* I am recommending you to be discharged with an/a *(specify discharge)*Discharge. *(For officers recommended for an Honorable or General Discharge, add)*"If an Honorable or General Discharge is recommended, your case will be forwarded directly to PERSCOM for submission to the Assistant Secretary of the Army (Manpower and Reserve Affairs), without referral to a Board of Inquiry." *(For officers recommended for misconduct or moral or professional dereliction, add)*,"The least favorable discharge you may receive is an Under Other Than Honorable Conditions Discharge." The least favorable characterization of service you may receive is an Under Other Than Honorable Conditions *(include when an officer is recommended for misconduct or moral or professional dereliction).* The final decision on the type of discharge will be determined by HQDA*(include for all officers).*

   *(FOR A NONPROBATIONARY OFFICER)* If you are eliminated for substandard performance of duty only, you will receive an Honorable Discharge. If you are eliminated for misconduct, moral or professional

**Figure 4–3. Sample format for initiation of elimination**

Dereliction, the favorable discharge you may receive is an Under Other Than Honorable Condition Discharge.  The final decision on the type of discharge will be determined by HQDA **(include for all officers).**

6.  Before taking further action, I will consider all written comments or a rebuttal that you may submit with your acknowledgement.

7.  In accordance with AR 600-8-24, paragraph 4-24, you may–

      a. Submit your resignation in lieu of elimination according to AR 600-8-24, chapter 4.  You may not request an effective date.  The effective date will be as stated in AR 600-8-24, paragraph 4-5.

      b. Request discharge in lieu of elimination **(RA commissioned officers only)**, according to AR 600-8-24, chapter 4.  You may not request an effective date.  The effective date will be as stated in AR 600-8-24, paragraph 4-5.

      c. Apply for retirement in lieu of elimination if otherwise eligible, according to AR 600-8-24, chapter 4 and 6.  The effective date for retirement will be **(as applicable, if you have at least 19 years and 6 months of AFS but less than 20 years AFS, the effective date will not be later than 60 days from the date you attain 20 years AFS.  If you have 20 or more years AFS, the effective date will be no later than 60 days from the date you elect retirement in lieu of elimination)**.  You must specifically state that your application for retirement is submitted in lieu of elimination.

      d. **(FOR A NONPROBATIONARY OFFICER)** In place of resignation, discharge or retirement, submit a rebuttal or a declination statement and request appearance before a Board of Inquiry.

      e. **(FOR A PROBATIONARY OFFICER)** In place of resignation or discharge, submit a rebuttal statement and if a discharge Under Other than Honorable Conditions is recommended, request appearance before a Board of Inquiry.

8.  You have 30 calendar days from the date you receive this notification to acknowledge receipt in writing and exercise on of the options in paragraph 7.

9.  Your acknowledgement should be in the format provided at AR 600-8-24, figure 2-4.  If you elect an option in paragraph 7a through c, you will include you tender of resignation, request for discharge, or application for retirement in lieu of elimination as enclosure to your acknowledgement.

FOR THE COMMANDER:

Encls **(as appropriate)**                                     (Initiator or the GOSCA signature)
   (List supporting documents)
   (OERs, LOR, Art 15 and so forth)
Format (acknowledgements)

CF:
AHRC-OPD-A)
CDR **(appropriate MACOM)**

Note:  The OMPF and ORB will not be forwarded with the memorandum initiating the elimination action.  If the officer elects a Board of Inquiry, an updated OMPF and ORB will be provided at that time.

**Figure 4–3. Sample format for initiation of elimination—Continued**

(Letterhead)

**Office symbol**                                                                                                    **(Date)**

MEMORANDUM THRU (Channels - -see para 3-4)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Resignation in Lieu of Elimination Proceedings

1.  I, **(name, grade, branch, SSN),** having been informed that I am being considered for elimination, do voluntarily tender my resignation from the Army under the provisions of AR 600-8-24, chapter 4, in lieu of further elimination proceedings.

    a.  I have been advised that prior to submitting this resignation I may, at my option, consult with, and be represented by legally qualified counsel who may be a member of The Judge Advocate General's Corps or civilian counsel retained by me**.  (Include one of the statements in b below.)**

    b.  I have elected not to exercise this right **(or)** I have been fully advised and counseled in this matter by **(name) (a member of The Judge Advocate General's Corps) (or civilian counsel)** on **(date)** at **(place).**  I fully understand the implications of this voluntary action.

2**.  (Use whichever of the following statements is appropriate, depending on whether the officer submits the resignation before or after appearing before a Board of Inquiry:)**

    a.  I elect to waive any right I have either to appear before a board of officers with legally qualified counsel who may be a member of The Judge Advocate General's Corps or civilian counsel retained by me, or to submit matters in explanation, rebuttal, or defense concerning the allegations in my case; or **(in the case of a probationary commissioned officer who consequently has no right to appear before a Board of Inquiry)** I elect to waive any right I have to submit matters in explanation, rebuttal, or defense concerning the allegations in my case.

    b.  I have appeared before a Board of Inquiry **(with legally qualified counsel) (if appropriate),** and that board having recommended elimination, I elect to waive any further consideration of my case by any appellate or review agency.

3.  If this resignation is accepted, I understand that I will be furnished an Honorable Discharge Certificate, and I understand that I may not specify an effective date for this resignation.

4.  My present duty station is **(address) (assignment).**

5.  I **(do/do not)** desire separation overseas.  **(If currently serving in an overseas area.)**

6.  My mailing address after separation will be **(address).**

7.  I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

8.  I understand my resignation is voluntary and that I am not entitled to separation pay.

**(Signature block)**

**Figure 4–4. Sample format for resignation in lieu of elimination proceedings (substandard performance)**

**(Letterhead)**

Office symbol                                                                                                      **(Date)**

MEMORANDUM THRU (Channels—see paragraph 3-4)

FOR CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Resignation in lieu of Elimination Proceedings

1.  I, **(name, grade, branch, SSN)**, having been informed that I am being considered for elimination, do voluntarily tender my resignation from the Army under the provisions of AR 600-8-24, chapter 4, in lieu of further elimination proceedings.

2.  I have been advised that prior to submitting this resignation I may, at my option, consult with and be represented by legally qualified counsel who may be a member of The Judge Advocate General's Corp or civilian counsel retained by me.  Include one of the following statements:

       a. I have elected not to excise this right.

b. I have been fully advised and counseled in this matter by **(name) (a member of the Judge Advocate General's Corp) or civilian counsel)** on **(date)** at **(place):**  I fully understand the implications of this voluntary action.

3. **(Use whichever of the following statement is appropriate, depending on whether the officer submits the resignation before or after appearing before a Board submits the resignation before or after appearing before a Board of Inquiry:)**

       a. I elect to waive any right I have either to appear before a board of officers with legally qualified counsel who may be a member of the Judge Advocate General's Corp or civilian counsel retained by me, or to submit matters in explanation, rebuttal or defense concerning the allegations in my case, or **(for probationary officers who have been notified by the GOSCA that they will receive an Honorable or General Under Honorable Conditions Discharge if their elimination is approved)** I elect to waive any right I have to submit matters in explanation, rebuttal, or defense concerning the allegations in my case.

       b. I have appeared before a Board of Inquiry **(with legally qualified counsel) (if appropriate)**, and that board having recommended elimination, I elect to waive any further consideration of my case by any appellate or review agency.

4. If this resignation is accepted, I understand that I will be furnished an Honorable, General or Under Other Than Honorable Condition Discharge, as determined by HQDA.  I understand that I may not specify an effective date for this resignation.

       a. **(For a probationary officer, who has been recommended for elimination, the characterization of service will not be less than that specified in the GOSCA's notification letter to the officer.  For example:  If the GOSCA recommended a General Discharge, paragraph 4 should read, "I also understand that I may be furnished an Honorable or General Discharge as determine by HQDA."**  I understand I may not specify an effective date for resignation.

       b. **The same principle applies for all officers, regardless of years of service, who appear before a field Board of Inquiry and subsequent request separation in lieu of further elimination processing.  Mention of a discharge certificate of a less favorable character than that recommended by the Board of Inquiry will be omitted from paragraph 4 of the letter requesting separation.)**

5. I further understand that if this resignation is accepted Under Other Than Honorable Conditions, I will not be entitled to compensation for unused accrued leave and that I may be barred from all rights, based on the period of service from which I will be separated under any laws administered by the Department of Veterans Affairs, except War Risk, US Government (Converted), National Service Life Insurance, Service-Member's Group Life Insurance policies I may hold.  **(If an Other Than Honorable Discharge is not listed in paragraph 4, omit paragraph 5.**  I understand that I may not specify an effective date for this resignation.

6.  My present duty station is **(address) (assignment/and or attachment, if any.)**

7.  I **(do/do not)** desire separation overseas **(If currently serving in an overseas area.)**

8.  My mailing address after separation will be **(address.)**

9. I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

10. I understand my resignation is voluntary and that I am not entitled to separation pay.

**(Signature Block)**

**Figure 4–5. Sample format for resignation in lieu of elimination proceedings (substandard performance of duty and/or misconduct, moral or professional dereliction, or in the interest of national security)**

**(Letterhead)**

Office symbol                                                                                                    **(Date)**

MEMORANDUM THRU (Channels—see paragraph 3-4)

FOR CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Discharge in lieu of Elimination Proceedings

1.  I, **(name, grade, branch, SSN)**, having been informed that I am being considered for elimination, do request discharge from the Army under the provisions of AR 600-8-24, chapter 4, in lieu of further elimination proceedings.

2.  I have been advised that prior to submitting this request for discharge I may, at my option, consult with and be represented by legally qualified counsel who may be a member of The Judge Advocate General's Corp or civilian counsel retained by me.  **Include one of the following statements:**

       a. I have elected not to excise this right.

       b. I have been fully advised and counseled in this matter by **(name) (a member of the Judge Advocate General's Corp) or civilian counsel)** on **(date) at (place):**  I fully understand the implications of this voluntary action.

3. **(Use whichever of the following statement is appropriate, depending on whether the officer submits the request for discharge before or after appearing before the Board of inquiry: )**

       a. I elect to waive any right I have either to appear before a board of officers with legally qualified counsel who may be a member of the Judge Advocate General's Corp or civilian counsel retained by me, or to submit matters in explanation, rebuttal or defense concerning the allegations in my case, or **(in the case of a probationary officers (see AR 600-8-24, paragraph 4-19), who consequently has no right to appear before a Board of Inquiry.)**  I elect to waive any right I have to present matters in explanation, rebuttal, or defense concerning the allegations in my case.

       b. I have appeared before a Board of Inquiry **(with legally qualified counsel) (if appropriate)**, and that board having recommended elimination, I herby elect to waive any further consideration of my case by any appellate or review agency.

4.  If this request for discharge is accepted, I understand that I will be furnished an Honorable Discharge Certificate.  I understand that I may not specify an effective date for this discharge.

5.  My present duty station is **(address) (assignment/and or attachment, if any.)**

6.  I **(do/do not)** desire separation overseas **(If currently serving in an overseas area.)**

7.  My mailing address after separation will be **(address.)**

8.  I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

9.  I understand my discharge is voluntary and that I am not entitled to separation pay.

**(Signature Block)**

**Figure 4–6. Sample Format for Discharge in Lieu of Elimination Proceedings (For RA officers only - substandard proceedings)**

(Letterhead)

Office symbol                                                                                                      (Date)

MEMORANDUM THRU (Channels—see paragraph 3-4)

FOR CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject: Discharge in lieu of Elimination Proceedings

1. I, **(name, grade, branch, SSN)**, having been informed that I am being considered for elimination, do request discharge from the Army under the provisions of AR 600-8-24, chapter 4, in lieu of further elimination proceedings.

2. I have been advised that prior to submitting this request for discharge I may, at my option, consult with and be represented by legally qualified counsel who may be a member of The Judge Advocate General's Corp or civilian counsel retained by me. **(Include one of the following statements):**

       a. I have elected not to excise this right.

       b. I have been fully advised and counseled in this matter by **(name) (a member of the Judge Advocate General's Corp) or civilian counsel)** on **(date) at (place):** I fully understand the implications of this voluntary action.

3. **(Use whichever of the following statement is appropriate, depending on whether the officer submits the request for discharge before or after appearing before the Board of inquiry: )**

       a. I understand that I have a right to appear before a Board of Inquiry with legally qualified counsel who may be a member of the Judge Advocate General's Corp or civilian counsel retained by me, or to present matters in explanation, rebuttal or defense concerning the allegations in my case. I hereby voluntarily waive consideration of my case by a Board of Inquiry contingent upon receiving a characterization of service no less favorable than **(Honorable) (General), Under Honorable Conditions.)** Statement on my behalf **(are (are not)** submitted with this request. **(Encl (s) numbered.)**

       b. I have appeared before a Board of Inquiry **(with legally qualified counsel) (if appropriate)**, and that board having recommended elimination, I herby elect to waive any further consideration of my case by any appellate or review agency.

4. If this request for discharge is accepted, I understand that I will be furnished an Honorable, General, or Under Other Than Honorable Conditions Discharge, as determined by HQDA. **(For officers who appear before a field of Inquiry and subsequently request discharge in lieu of further elimination processing, mention of a discharge certificate of less favorable character than that recommended by the Board of Inquiry will be omitted from paragraph 4 of this letter requesting separation.)** I understand I may not specify an effective date for this discharge. **("For a probationary officer, who has been recommended for elimination, the characterization of service will not be less than that specified in the GOSCA's notification letter to the officer. For example: If the GOSCA recommended a General Discharge, paragraph 4 should read, "I also understand that I may be furnished an Honorable or General Discharge as determine by HQDA."** I understand that I may not specify an effective date for this discharge.

5. I further understand that if this resignation is accepted Under Other Than Honorable Conditions, I will not be entitled to compensation for unused accrued leave and that I may be barred from all rights, based on the period of service from which I will be separated under any laws administered by the Department of Veterans Affairs, except War Risk, US Government (Converted), National Service Life Insurance, Service-Member's Group Life Insurance policies I may hold. **(If an Other Than Honorable Discharge is not listed in paragraph 4, omit paragraph 5.)**

6. My present duty station is **(address) (assignment/and or attachment, if any).**

7. I **(do/do not)** desire separation overseas **(If currently serving in an overseas area.)**

8. My mailing address after separation will be **(address).**

9. I understand that if I participated in certain advanced education programs, I may be required to reimburse the United States Government as stated in written agreement made by me with the United States Government under law and regulations.

10. I understand my discharge is voluntary and that I am not entitled to separation pay.

(Signature Block)

**Figure 4–7. Sample format for discharge in lieu of elimination proceedings (Substandard performance of duty and/or misconduct, moral, or professional dereliction, or in the interest of national security)**

# Chapter 5
# Miscellaneous Types of Separations

## Section I
## Scope

### 5–1. Overview
This chapter prescribes disposition and procedures concerning miscellaneous types of separations whereby an officer may be dismissed, released, separated, and discharged from AD. In addition it provides procedures whereby officers on AD or retired may be dropped from the rolls of the Army.

### 5–2. Authority
The final decision concerning acceptance of all requests for separation under this chapter will be made by HRC or HRC–St. Louis (as appropriate).

*a.* The Secretary of the Army will direct discharge of officers through orders.

*b.* An officer whose discharge has been directed will be separated on the date specified in DA orders or as directed by HRC and HRC–St. Louis (as appropriate).

## Section II
## Task: Process Separation of an Officer due to Lack of Jurisdiction

### 5–3. Rules for processing separation of an officer due to lack of jurisdiction
*a.* If a U.S. court or judge orders the release of an officer from AD, the CG, HRC, or CG, HRC–St. Louis (as applicable) will take the appropriate action to direct the release from military control of the officer concerned.

*b.* Similar action will be taken on the final determination of a convening authority of a general or special court-martial, a military judge, a president of a special court-martial, or a military appellate court that an individual is not currently a member of the Army.

*c.* This paragraph and the appropriate SPD code from AR 635–5– 1 will be cited as the authority for separation.

### 5–4. Steps for processing separation of an officer due to lack of jurisdiction
The steps required for processing separation of an officer due to lack of jurisdiction are as shown in table 5–1.

**Table 5–1**
**Separation of an officer due to lack of jurisdiction**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR PPAA | When served with an order or writ, he or she immediately reports it to The Judge Advocate General, as directed per AR 27–40, paragraph 3–3. |
| 2 | PPAA C&S | Notifies CDR, HRC–Alexandria (AHRC–OPD–A), by electronic message to include the information contained in the Advisory Report furnished to The Judge Advocate General. |

## Section III
## Task: Process Discharge of Active Duty List Chaplain who Loses Professional Qualifications due to the Withdrawal of Ecclesiastical Endorsement

### 5–5. Rules for processing discharge of an active duty list chaplain who loses professional qualifications due to a withdrawal of ecclesiastical endorsement
*a.* Chaplains are required to possess a valid ecclesiastical endorsement (DD Form 2088) from an authorized Religious Organization (RO) for both initial appointment and continuation on active duty. If a RO endorsing agent withdraws a chaplain's ecclesiastical endorsement, then the officer immediately loses their chaplain status and must cease all religious activities, such as, performance of rites, ceremonies, services, pastoral counseling, and so forth.

*b.* Once notified by the Office of the Chief of Chaplains (OCCH) of a withdrawal of ecclesiastical endorsement, a chaplain must select one of the options listed in Table 5-2, step 1 below. However, if the chaplain fails to indicate an option to the OCCH within 30 days of notification, he or she will be immediately processed under this section for involuntary separation from active duty unless such separation is more appropriate for other reasons under Chapter 4 (Eliminations).

*c.* Secretary of the Army makes the final determination.

*d.* Separations under this section will be Honorable and a DD Form 256A will be issued.

## 5–6. Steps for processing discharge of an active duty list chaplain who loses professional qualifications due to a withdrawal of ecclesiastical endorsement

The steps required for processing the discharge of an ADL chaplain who loses professional qualifications due to a withdrawal of ecclesiastical endorsement are shown in table 5–2.

**Table 5–2**
**Discharge due to loss of professional qualifications due to withdrawal of ecclesiastical endorsement**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | DACH | Upon notification of a loss of ecclesiastical endorsement by a RO, the Chief of Chaplains will notify the chaplain (in writing) and advise him or her of their— |
| | | *a.* Right to counsel (military counsel or civilian counsel obtained at own expense). |
| | | *b.* Involuntary separation from active duty if he or she fails to submit an acknowledgment and option preference within 30 calendar days of official notification. |
| | | *c.* Choice of the following options: |
| | | (1) Seek another ecclesiastical endorsement (officer has 90 calendar days to provide a new DD Form 2088 to the OCCH.) |
| | | (2) Apply for branch transfer according to AR 614–100, chapter 4. |
| | | (3) Submit request for voluntary retirement (if eligible). |
| | | (4) Submit request for voluntary resignation. |
| | | *d.* In accordance with this regulation, involuntary separation from AD will occur if the chaplain is denied a branch transfer or cannot obtain a new DD Form 2088 (Statement of Ecclesiastical Certification) from a valid RO. |
| 2 | SLDR | Makes option selection and submits paperwork to OCCH. |
| 3 | DACH | *a.* Chaplain provides new DD Form 2088 to OCCH. The DACH-PEA files the new endorsement in the chaplain's Career Management Information File (CMIF) and makes appropriate changes to the officer's OMPF and ORB. |
| | | *b.* Process the application for branch transfer according to AR 614–100, chapter 4. |
| | | *c.* When either *d* or *e* below is applicable, determines whether medical board or PEB proceedings are pending or appropriate. |
| | | *d.* When a chaplain requests retirement, processes the application according to chapter 6. |
| | | *e.* When a chaplain requests resignation, processes the request according to paragraphs 3–5 and 3–6. |
| | | *f.* Final separation orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IV
## Task: Process Separation of an Officer who does not Consent to Recall to Active Duty from Temporary Disability Retired List

## 5–7. Rules for processing separation of an officer who does not consent to recall to active duty from the Temporary Disability Retired List

*a.* An officer on the TDRL who does not consent to return to AD after they are found physically fit will be discharged unless they are permanently retired under another provision of law.

*b.* HRC–Alexandria (AHRC–OPD) will forward to the officer a notification memorandum concerning removal from the TDRL.

*c.* Separations under this section will be Under Honorable Conditions. A DD Form 256A will be provided based on the officer's characterization of service before placement on the TDRL.

## 5–8. Steps for processing separation of an officer who does not consent to recall to active duty from the Temporary Disability Retired List

The steps required for processing separation of an officer who does not consent to recall to AD from the TDRL are as shown in table 5–3.

**Table 5–3**
**Separation for failure to consent to active duty recall from Temporary Disability Retired List**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | C&S | HRC–Alexandria (AHRC–OPD) separates (to include the final order) an officer who fails to consent to recall to AD from the TDRL. Prepares and furnishes to the officer discharge orders and the appropriate discharge certificate. Final separation orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section V
## Task: Process Separation of Commissioned Officers and Chief Warrant Officers who are Twice Nonselected for Active Duty List Promotion by an HQDA Centralized Board

### 5–9. Rules for processing separation of commissioned officers and chief warrant officers who are twice nonselected for active duty list promotion by an HQDA centralized board

*a.* Commissioned officers and chief warrant officers on the active duty list twice nonselected for promotion to the rank of captain, major, or lieutenant colonel and CW3, CW4, or CW5 will be involuntarily released from or discharged unless they are—

(1) Selectively continued (see AR 600–8–29, para 1–14).

(2) Within 2 years of retirement (completes 18 or more years AFS on their scheduled release date).

(3) Retired.

(4) A health professions officer. These officers shall be retained on active duty until completion of their active duty service obligation prior to discharge, unless sooner retired or discharged under another provision of law (10 USC 632 (c) (1)).

*b.* HRC–Alexandria (AHRC–OPD–A) will forward the notification memorandum (that states the officer's options) and, if applicable,"acknowledgment of notification of nonselection" for ADL promotion to the commander of the nonselected officer.

*c.* Commissioned officers and chief warrant officers (except as stated in *d* and *e* below) will be separated on the 1st day of the 7th calendar month after approval of the promotion board's report unless earlier release is voluntarily requested or retention on AD in a Reserve status is approved by the Secretary of the Army or their designee.

*d.* An officer may request an earlier separation date or submit a resignation, for example, to accept an appointment as a warrant officer or for continuing on active duty in an enlisted status (AR 601–280) (whichever applies and if eligible).

*e.* An officer or and warrant officer who is within 2 years of qualifying for retirement under chapter 6 (20 years active Federal service) on scheduled release date and who can so qualify prior to attaining the maximum age will be retained on active duty until the last day of the month following the month he or she qualifies for retirement. Maximum ages are specified in chapter 2, section XI (RC, age 60 or for warrant officer, age 62) or chapter 6, section VII (RA, age 62).

*f.* An officer or warrant officer eligible for retirement under chapter 6 may apply for retirement to be effective not later than the first day of the seventh month beginning after the month in which the President or Secretary of the Army (as applicable) approves the report of the board that considered the officer or warrant officer the second time.

*g.* If otherwise eligible, an officer may submit a resignation to continue a military career in an enlisted status, or a commissioned officer may submit a resignation to be appointed as a USAR warrant officer. The resignation date will be not later than the mandatory discharge or release date. For a warrant officer (with only warrant officer status), the resignation will not be later than the mandatory discharge or release date.

*h.* When an officer's case is referred to a HQDA Special Selection Board for promotion reconsideration (AR 600–8–29, chap 7), the officer will continue to be processed for separation as scheduled. However, when reconsideration is not completed by the scheduled separation date, HRC–Alexandria (AHRC–OPD–A) will temporarily suspend the separation date, pending completion. When the board's decision is unfavorable, the officer will be separated not later than 30 calendar days after their receipt of notification.

*i.* An officer's discharge under this paragraph will be under Honorable conditions and a DD Form 256A will be issued.

### 5–10. Steps for processing separation of commissioned officers and chief warrant officers who are twice nonselected for active duty list promotion by an HQDA centralized board

The steps required for processing separation of commissioned officers and chief warrant officers who are twice nonselected for ADL promotion by an HQDA centralized board are as shown in table 5–4.

**Table 5–4**
**Twice nonselected for promotion separation (HQDA Board)**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1 | The commander notifies the non-selected officer no earlier than 2 days before the release of the appropriate promotion list. Counsels the officer regarding options and ensures the officer returns the "Acknowledgment of notification of Nonselection" to CDR, HRC–Alexandria (AHRC–OPD–A), by the suspense date. Files a copy of the notification memorandum and the acknowledgment in the officer's MPF until the officer is separated. |
| 2 | PPAA | Reports a dual status officer to CDR, HRC–Alexandria (AHRC–OPD–A), for processing. |
| 3 | PPAA | To prevent a break in service, when an officer elects to continue on AD in another status (for example, enlistment or appointment as a warrant officer), forwards the request for resignation or discharge (fig 5–1 or fig 5–2) as follows (ensures the officer states in the memorandum of resignation or discharge that he or she will not be entitled to separation pay):<br>    a. For a commissioned officer, not later than 3 months before the mandatory discharge or release date.<br>    b. For a warrant officer, as soon as possible after receipt of the mandatory discharge. |
| 4 | PPAA<br>TP/TA | Final separation orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VI
## Task: Process Separation of an Officer due to Nonselection of a Field Promotion

### 5–11. Rules for separation of an officer due to nonselection of a field promotion

*a.* An active duty list officer not recommended for promotion to the grade of 1LT or CW2 (AR 600–8–29, chap 3) will be separated not later than 90 calendar days after the Promotion Review Authority approves the nonrecommndation for promotion. A warrant officer within 2 years of retirement is excluded.

*b.* With the exception of a dual status officer, the SAA may approve early release of an officer or warrant officer on the active duty list.

*c.* Officers separated under this paragraph will receive a DD Form 256A.

### 5–12. Steps for processing separation of an officer due to nonselection of a field promotion

The steps required for processing separation of an officer due to nonselection of a field promotion are as shown in table 5–5.

**Table 5–5**
**Field promotion nonselection separation**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1 | Determines whether medical board or PEB proceedings are pending or appropriate (para 1–22). The commander reports a dual status officer to HRC–Alexandria (AHRC–OPD–A) for processing. |
| 2 | PPAA<br>(TP/TA) | Ensures officer is separated not later than the scheduled release date. Final separation orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. Forwards a copy of DA Form 78–R (Recommendation for Promotion to 1LT/CW2) with all enclosures and comments to—<br>    a. CDR, HRC–Alexandria (AHRC–appropriate career management division).<br>    b. CDR, HRC–Alexandria (AHRC–MSR). |

## Section VII
## Task: Process Separation of an Officer due to Conviction by Foreign Tribunal

### 5–13. Rules for processing separation of an officer due to conviction by foreign tribunal

*a.* An officer will be discharged when they have been convicted by a foreign tribunal and either of the following applies:

(1) The officer has been sentenced to death or imprisonment for more than 6 months, regardless of whether the sentence was suspended.

(2) Regardless of actual sentence imposed, the officer has been convicted of an offense for which a sentence of more than 6–months of confinement is authorized by the Manual for Courts-Martial, United States, appendix 12. (When the offense is not listed in the Maximum Punishments Chart or not closely related to an offense listed, the maximum punishments authorized by the United States or District of Columbia Code (whichever is less) will apply.)

*b.* HRC–Alexandria (AHRC–OPD–A) will make final determination as to the officer's disposition and provide separation instructions or guidance for further processing under chapter 4 (whichever applies) to the CONUS MACOM.

## 5–14. Steps for processing the separation of an officer due to conviction by foreign tribunal

The steps required for processing the separation of an officer due to conviction by foreign tribunal are as shown in table 5–6.

**Table 5–6**
**Processing separation due to conviction by foreign tribunal**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1<br>C&S | The OCONUS MACOM forwards to CDR, HRC–Alexandria (AHRC–OPD–A), a report of an officer who is convicted after final action has been taken by foreign authorities. The report will contain—<br>*a.* A recommendation as to administrative discharge or other disposition.<br>*b.* A copy of the official United States observer's report of trial or a transcript of the trial, if obtainable.<br>*c.* Officer's name, grade, Social Security number, branch, and organizational assignment.<br>*d.* Alleged offense (includes all pertinent facts and circumstances).<br>*e.* Name of court, date, and place of trial.<br>*f.* Offense(s) of which found guilty, sentence imposed, and whether suspended.<br>*g.* Matters in mitigation, extenuation, or aggravation.<br>*h.* Appellate action, if any, and results.<br>*i.* Whether further action is possible or recommended. |
| 2 | PPAA<br>BN S–1<br>C&S | The OCONUS MACOM, when HRC authorizes an officer's discharge in a foreign country, informs the United States diplomatic mission in the country of such action. |
| 3 | PPAA<br>(TP/TA) | Upon receipt of separation instructions, takes action to separate the officer. |

## Section VIII
## Task: Process an Officer who is Dropped from the Army Rolls

### 5–15. Rules for processing an officer who is dropped from the Army rolls

*a.* Under 10 USC 1161 and 12684, the Secretary of the Army or their designee may drop any commissioned officer from the rolls of the Army who—

(1) Is not entitled to receive retired pay and has been found guilty by civil authorities of any offense and sentenced to confinement in a Federal or State penitentiary or correctional institution and their sentence has become final.

(2) Has been absent without leave (AWOL) for at least 3 months.

(3) Is deprived of retired pay under title 5, USC, chapter 83, subchapter II.

*b.* An RA warrant officer who has not been commissioned may not be dropped from the rolls under *(1)* or *(2)*, above.

*c.* Commander, HRC–Alexandria (AHRC-OPD–A), will issue separation instructions to drop the officer from the Army rolls, when appropriate.

*d.* Commander, HRC–St. Louis (AHRC–AR), must release USAR AGR officers from AGR status.

### 5–16. Steps for processing an officer who is dropped from the Army rolls

The steps required for processing an officer who is dropped from the Army rolls are as shown in table 5–7.

**Table 5–7**
**Dropped from the rolls**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1 | The commander, when information is received that indicates an officer warrants being dropped from the rolls of the Army, forwards such information through channels to CDR, HRC–Alexandria (AHRC–OPD–A). Includes—<br>*a.* A detailed statement (including documentary evidence) why the officer may be dropped from the Army rolls.<br>*b.* When appropriate, a certified copy of the court order conviction or letter from the warden of the penitentiary or correctional institution verifying the officer's confinement. |
| 2 | PPAA<br>(TP/TA) | Upon receipt of separation instructions, takes action to separate the officer. When separation is accomplished, forwards officer fingerprints to the FBI as required in AR 190–47, paragraph 5–2, and AR 635–10, paragraph 3–15. |

## Section IX
## Task: Process Dismissal of an Officer due to General Courts-Martial Proceedings

### 5–17. Rules for processing dismissal of an officer due to general courts-martial proceedings

*a.* An officer convicted and sentenced to dismissal as a result of GCM proceedings will be processed pending appellate review of such proceedings as follows:

(1) An RA officer will be retained on AD until the appellate review is completed or placed on excess leave in accordance with AR 600–8–10.

(2) An RC officer may be released from AD pending completion of the appellate review, under paragraphs 2–33 and 2–34, or placed on excess leave in accordance with AR 600–8–10 in lieu of REFRAD.

*b.* The HRC will make the final determination regarding retention or separation. Separation instructions will be issued by HRC–Alexandria (AHRC–OPD–A) to the appropriate PSC/MPD.

### 5–18. Steps for processing dismissal of an officer due to general courts-martial proceedings

The steps required for processing dismissal of an officer due to general courts-martial proceedings are as shown in table 5–8.

**Table 5–8**
**Dismissal due to general courts-martial proceedings**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | PPAA<br>BN S–1<br>C&S | The commander forwards to CDR, HRC–Alexandria (AHRC–OPD–A), a report of an officer who meets the criteria in the above rule. The report will contain the following:<br>*a.* Officer's name, grade, Social Security number, branch, and organizational assignment.<br>*b.* Alleged offense (includes all pertinent facts and circumstances). |
| 2 | PPAA<br>(TP/TA) | Upon receipt of separation instructions, separates the officer and forwards fingerprints to the FBI as required in AR 190–47, paragraph 10–2, and AR 635–10, paragraph 3–15. |

**(Letterhead)**

**Office symbol**                                                                                            **(Date)**

MEMORANDUM THRU (Channels - - see para 3-4)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Resignation

1.  I, **(name, grade, branch, SSN)**, tender my resignation from the Army under the provisions of AR 600-8-24, chapter 5, paragraph 5-9, to be effective **(date)**.

2.  I understand that I will not be entitled to separation pay on separation..

3.  Present duty station is **(address) (assignment and/or attachment, if any).**

4.  I **(do/do not)** desire separation overseas.  **(If currently serving in an overseas area.)**

5.  I **(do/do not)** desire appointment in the U.S. Army Reserve.  **(For Regular Army officers only.)**  If affirmative, include the following information:

    a.  Basic pay entry date.

    b.  Permanent home address  **(complete).**

    c.  I **(have/have not)** previously held a Reserve Commission.

6.  I understand that I participated in certain advanced education programs, I may be required to reimburse the U.S. Government as stated in written agreement made by me with the U.S. Government under law and regulations.

**(Signature block)**

**Figure 5–1. Sample format for resignation (nonselection for promotion)**

**(Letterhead)**

**Office symbol**                                                                                                    **(Date)**


MEMORANDUM THRU (Channels - - see para 3-4)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Request for Discharge


1.  I, **(name, grade, branch, SSN)**, request to be discharged from the Army under the provisions of AR 600-8-24, chapter 5, paragraph 5-9.

2.  My present duty station is **(address) (assignment and/or attachment, if any).**

3.  I **(do/do not)** desire separation overseas.  **(If currently serving in an overseas area.)**

4.  I **(do/do not)** desire appointment in the U.S. Army Reserve.  If affirmative, include the following:

   a.  Basic pay entry date.

   b.  Permanent home address.

   c.  I **(have/have not)** previously held a Reserve Commission.

5.  I understand that I participated in certain advanced education programs, I may be required to reimburse the U.S. Government as stated in written agreement made by me with the U.S. Government under law and regulations.

6.  My mailing address immediately after the date of separation will be **(address)**.


**(Signature block)**

**Figure 5–2. Sample format for request for discharge (nonselection for promotion)**


# Chapter 6
# Retirements

## Section I
## Overview

### 6–1. The officer retirement program

   *a.* This chapter applies to nondisability retirement of ADL commissioned and warrant officers on AD to include AGR commissioned and warrant officers who have 20 years or more of AFS.

   *b.* A commissioned officer, in the rank of major and below may retire in the highest rank served satisfactorily on AD for 6 or more months unless entitled by law to a higher grade (Title 10, United States Code, Section 1370(a)(1),).

   *c.* A commissioned officer must serve on AD 3 years in grade to retire in rank above major and below lieutenant general. However, the Secretary of Defense has authorized the Secretary of the Army to waive this requirement in individual cases involving extreme hardship or exceptional or unusual circumstances (10 USC 1370(a)(2)).

   *d.* Under 10 USC 1370(c), an officer who is serving in or who has served in the grade of general (O-10) or

lieutenant general (O–9) may be retired in that grade only after the Secretary of Defense certifies in writing to the President and Congress that the officer served on active duty satisfactorily in that grade.

*e.* Generally, unless entitled to a higher retired grade under some other provision of law, or reduced in accordance with a grade determination review conducted under the provisions of AR 15–80, a warrant officer retires as determined by the Secretary of the Army in the permanent Regular or Reserve warrant officer grade, if any, that he or she held on the day before retirement or in the higher warrant officer grade, if any, in which he or she served on active duty satisfactorily, as determined by the Secretary of the Army, for a period of more than 30 days (10 USC 1371).

*f.* When an action is initiated against a commissioned officer with a view to trying such officer by court-martial, the Secretary of the Army may delay that officer's retirement (without prejudice) until the action is completed (10 USC 639).

*g.* All retirements, except for disability separations, involving commissioned and warrant officers who, since their last promotion, have been the subject of any substantiated adverse finding or conclusion from an officially documented investigation, proceeding or inquiry (except minor traffic infractions) will be forwarded to ASA (M&RA) in accordance with AR 15-80, for a grade determination, provided such information is reflected, or should be reflected by regulation, in the officer's OMPF. Examples of such findings or conclusions include, but are not limited to, a memorandum of reprimand; nonjudicial punishment under Article 15; UCMJ, court-martial, or civilian conviction. Even if the information described above is not required to be filed in the officer's OMPF, the separation authority may forward any retirement that contains information deemed substantiated, adverse, and material to determination of retired grade.

## 6–2. Computation of service

*a.* There are different types of creditable military service. Each type is computed according to the applicable provisions of Federal law for the various types of retirement. Active Federal service (AFS) is applicable for retirement under this chapter. For mandatory retirement of an RA commissioned officer, AFS may include constructive service (for a commissioned officer on active duty on 14 September 1981) and is computed to determine whether—

(1) An RA or RC officer may retire voluntarily.

(2) An RA commissioned or warrant officer must be retired mandatorily.

(3) A warrant officer may be advanced to a higher commissioned grade.

*b.* Retired pay is computed according to pay formulas in Title 10, United States Code, chapters 71 and 371; provisions contained in the retirement law; and according to title 37 of U.S. Code.

*c.* Upon appointment in the RA, certain commissioned officers are credited with constructive service. This amount of service is used to determine the RA grade and placement on the ADL and counts as mandatory retirement service for commissioned officers on active duty before 15 September 1981. When the mandatory retirement service is greater than the total service for basic pay, it is used as the multiplier in determining the percentage in computing retired pay. No period of service subsequent to the date the officer meets the service requirements for mandatory retirement is creditable in the computation of retired pay unless specified by law.

*d.* For voluntary retirements that do not require a waiver and do not appear to involve retirement of a Regular commissioned officer with at least 30 but less than 40 years of active service for retirement purposes, service computations will be performed at the installation maintaining the local personnel file or MPF, as appropriate of the retiree. For general officers, JAGC officers, chaplains, officers managed by the Special Management Branch, Regular commissioned officers with at least 30 but less than 40 years of active service for retirement purposes, and those that require waiver, service computations will be performed by HRC–Alexandria (AHRC–OPD–A). Service computations for USAR officers not on the ADL will be performed by HRC–St. Louis (AHRC–AR). For those retirements where the GCMCA or their designee is the approval authority, HRC–Alexandria (AHRC–MSR) will provide the service fiche of the retiree to the installation upon request. When service has been computed for retirement or retired pay and an officer claims additional service that is not stated in the current official U.S. Army Register, or the officer's OMPF, the officer will contact the installation for recomputation of service. The officer will provide justifying documents. The documents must be certified statements of service, discharge certificates, or other official evidence. These documents will be submitted at least 6 months prior to the retirement date, to allow time for verification and updating of the records. Officers of the USAR who are not on the ADL will contact HRC–St. Louis (AHRC–AR) for recomputation of service.

## 6–3. Retirement order

*a.* The installation maintaining the retiree's MPF will publish the retirement order for voluntary retirements (except for general officers) at the earliest possible date. The installation maintaining the retiree's MPF will forward the retirement order to the appropriate PSC/MPD, TP/TA or PSST, as applicable. The HRC–St. Louis (HRC–AR) will publish the retirement order for USAR officers not on the ADL. The retirement packet will contain the following items:

(1) A memorandum of instructions (only if waiver is requested).

(2) Computation of service (DA Form 7301–R (Officer Service Computation for Retirement)). DA Form 7301–R

will be locally reproduced on 8½- by 11-inch paper. A copy for reproduction purposes is located at the back of this regulation.

(3) Copies of the order (to include the Control Number for nonwaiver voluntary retirement).

*b.* When the PSC/MPD or the TP/TA has not received the officer's retirement packet by the 20th of the retirement month, the office will notify the installation or HRC–Alexandria (AHRC–OPD–A) or, if applicable, CDR, HRC–St. Louis (AHRC–AR). The installation or HRC–Alexandria AHRC–OPD–A) or HRC–St. Louis (AHRC–AR) will verify the retirement order. If applicable, HRC–Alexandria (AHRC–OPD–A) or HRC–St. Louis (AHRC–AR) will respond by electronic message and letter follow-up.

*c.* Once the retirement has been approved and the order issued, it will not be amended or revoked except for promotion option, extreme compassionate reasons, or for the good of the service. The amendment or revocation must occur prior to the retirement date.

## 6–4. Career recognition

*a.* The officer's commander is authorized to issue an additional announcement of the retirement when the retiring officer's career merits special recognition.

*b.* The announcement will have the same number as the retirement order but with the prefix EXT and will state key events in the officer's career.

*c.* The information will be obtained from field documents and by interview.

*d.* This announcement may be placed on bulletin boards and in the officer's file, read at ceremonies, and presented to the officer in an appropriate binder. (See fig 6–1 for example.)

## 6–5. Retirement location

*a.* Generally, an officer's retirement will be processed at the authorized and directed TP/TA stated in AR 635–10. An officer may retire at a location of personal choice, according to AR 635–10. Once the officer has elected a location, the location cannot be changed unless it is to the authorized and directed TP/TA. A change from one location of choice to another location of choice is not authorized. An officer who requests (prior to departure from unit assignment) that the location of choice be changed to the authorized and directed TP/TA must provide justification to the commander that maintains the personnel records. When approved, the commander will notify the TP/TA commander (at the officer's location of choice) to mail the retirement packet to the directed TP/TA. Retirement orders will not be amended, and AR 600–8–105, format 434, will not be used.

*b.* The retirement packet for an officer stationed in CONUS will be forwarded to the PSC/MPD that has custody of personnel record.

*c.* The retirement packet for an OCONUS returnee will be forwarded to the TP/TA that the officer elected.

*d.* An officer serving OCONUS who desires to retire OCONUS (subject to the overseas commander's and host government's approval) must so specify in the voluntary retirement request or in the preretirement information for mandatory retirement. When applicable, the officer will obtain a passport from the nearest United States Consulate.

*e.* An officer in a leave status on the retirement date will be processed according to AR 600–8–10.

## 6–6. Medical examination

Medical examination prior to retirement is required. The required medical examination will be scheduled not earlier than 4 months prior to the retirement date or the beginning of the officer's transition leave date. The officer's immediate commander will ensure the medical examination is processed according to AR 40–501.

## 6–7. Hospitalization/Physical Evaluation Board

*a.* An officer who requests (or is scheduled for) retirement and has a medical problem (or becomes hospitalized) will be evaluated by the commander (or designated representative) at the MTF to determine if referral to a PEB is necessary. When the officer is referred to the PEB, the MTF will promptly notify CDR, HRC–Alexandria (AHRC–OPD–A), or HQDA (DAPE–GO for general officers). The Physical Evaluation Board Liaison Officer must provide the officer's medical condition and scheduled date of the PEB.

*b.* An officer found fit for duty by a PEB will retire on the first day of the month following the month the officer is found fit.

*c.* When a PEB is not necessary but additional medical care is, a nondisability retirement will be processed. Medical treatment will continue up to and after (if necessary) the approved retirement date. The retirement date will not be changed because of medical treatment.

## 6–8. Retirement status

*a.* An RA Officer placed on the retired list continues to be an officer of the U.S. Army.

*b.* Unless there is evidence of fraud, an officer's retirement under a particular statute exhausts the power of the President and the Secretary of the Army. The record of Executive action cannot be revoked or modified to make the retirement relate to another statute, even though more than one statute properly applied at the time of retirement. No

member of the Army may be ordered to active duty solely for the purpose of qualifying for retired pay for non-Regular service (10 USC 12737).

## 6–9. Residence and travel abroad
A retired officer may travel or reside in any area to which access is authorized U.S. citizens by the United States Department of State. Permission for travel or for residence is a Department of State matter and does not require approval from officials in HQDA.

## 6–10. Advancement of an Active Army warrant officer to a higher grade
*a.* When a retired warrant officer's active service plus service on the retired list totals 30 years, they are entitled to be advanced on the retired list to the highest grade satisfactorily served on active duty, as determined by the Secretary of the Army (10 USC 3964).

*b.* Orders announcing a warrant officer's advancement are issued by the HRC–St. Louis (AHRC–PAP), 1 Reserve Way, St. Louis, MO 63132–5200. Notification is sent to the officer; to Retired Pay Operations, Defense Finance and Accounting Service, Indianapolis, IN 46249–0001; and to other appropriate agencies.

## 6–11. Restoration of an Active Army warrant officer to a former grade
An RA warrant officer or enlisted member advanced to a higher commissioned grade under 10 USC 3964 may be restored on the retired list to their former grade. The officer must apply within 3 months of the advancement to the Secretary of the Army for approval.

## 6–12. Permanent professors of the United States Military Academy
Upon retirement, any permanent professor of the United States Military Academy (USMA) in a grade below brigadier general whose service as such a professor has been long and distinguished may, in the discretion of the President, be retired in the grade of brigadier general (10 USC 3962).

## Section II
## Voluntary Retirements

## 6–13. Approval authority
*a.* The Secretary of the Army is the approval authority for retirements. The Secretary of the Army has delegated approval authority for voluntary retirements (waiver/nonwaiver) to CG, HRC-Alexandria. CG-HRC-Alexandria may approve, disapprove, or delay/defer the requested retirement date of an officer who has completed 20 but less than 30 years of active Federal service. Endorsing commanders are reminded that an officer requesting a voluntary nonwaiver retirement who has completed 20 but less than 30 years of active Federal service is eligible, but not entitled to retire upon request. Commanders who wish to recommend denial of a voluntary nonwaiver retirement request should forward the application to HRC-Alexandria with an accompanying statement setting forth the recommendation of denial. Voluntary retirements may be denied or delayed based on the needs of the Army, and each application will be evaluated on its individual merits. Approval authority for voluntary retirements requiring a waiver is HRC and, in some cases, the Secretary of the Army. Approval authority for voluntary retirements of regular commissioned officers with at least 30 but not less than 40 years of active service for retirement purposes is the Secretary of the Army. Approval of retirement requests may be mandatory or discretionary, based on the specific provision of law. Delegation of approval authority does not include the following retirement categories:

(1) General officer, ACC Colonel and promotable Lieutenant Colonel retirements.

(2) Retirement with fewer than 20 years of service (early retirement).

(3) Mandatory retirements (when an officer has been notified by HQDA, for example, of Selective Early Retirement Board, reduction in force, maximum service, or maximum age.

(4) Retirement applications submitted by officers of The Judge Advocate General's and Chaplain Corps (must be approved by The Office of the Judge Advocate General (DAJA–PT) or the Office of the Chief of Chaplains, respectively).

(5) Officers managed by the Special Management Branch.

(6) Active Guard/Reserve (AGR) retirements/waivers of USAR AGR officers must be approved by the Commander, HRC-ST Louis (AHRC-AR), Reserve Way, St. Louis, MO 53132–5200. The Chief, National Guard Bureau, as appropriate, must approve all retirements/waivers of NG AGR officers

(7) Applications from Soldiers who require any type of a waiver to permit retirement. The retirement application of Soldiers who are "flagged" or should have been flagged must be submitted to HQDA for approval, with the exception of "flags" imposed for APFT failure or overweight. See AR 600–8–2, paragraph 1–15. The retirement application of officers who have an active duty service obligation must be submitted to HQDA for approval (see AR 350–100).

(8) Officers pending involuntary separation proceedings, for example, an officer directed to show cause.

(9) Regular commissioned officers with at least 30 but less than 40 years of active service for retirement purposes.

*b.* Voluntary retirement requests may be submitted up to 12 months before the requested retirement date, or projected start date of transition leave and not later than 9 months prior to the projected start date of transition leave. The officer must have 19 or more years AFS and be able to complete all service obligations by the retirement date.

*c.* Guidance for retirement at 20 years of service is listed as follows:

(1) An RA or USAR commissioned officer with 20 years AFS (of which 10 years is active commissioned service may on their request and the approval of Secretary of the Army be retired (10 USC 3911). A USAR officer does not have to be serving on active duty in commissioned status or in an active USAR status to be eligible under this paragraph.

(2) Any warrant officer with 20 years AFS may upon request and the approval of the Secretary of the Army be retired (10 USC 1293). For a Reserve warrant officer to retire under this provision, they must have USAR status at time of retirement. It is not necessary for them to have served, or to be serving on AD in the warrant officer status at time of retirement.

(3) For AD enlisted personnel who concurrently hold commissioned or warrant officer status in the USAR, *(1)* and *(2)*, above, also apply.

*d.* An RA commissioned officer with 30 years service may upon their request and the approval of the Secretary of the Army be retired (10 USC 3918). Reference for computation of retired pay is 10 USC 3991.

*e.* An RA commissioned or warrant officer who has at least 40 years of service will be retired upon request (10 USC 3924). Reference for computation of retired pay is 10 USC 3991.

## 6–14. Service for determining retirement eligibility

*a.* Voluntary retirement eligibility is determined by AFS (10 USC 3926). To determine whether an officer may be retired voluntarily, the years of AFS are computed by adding—

(1) All active service in the Army or the Air Force.

(2) All service in the Navy or Marine Corps that would be credited for determining retirement eligibility in the respective Service (10 USC 3926(a)).

(3) For an officer of the Active Army, all active service performed as an officer of the Philippine Constabulary.

(4) All RA commissioned officer service in the Medical Corps as a contract surgeon, acting assistant surgeon, or contract physician under a contract to serve full-time and to take and change station as ordered.

(5) All RA commissioned officer service in the Dental Corps as a contract dental surgeon or acting dental surgeon.

*b.* Constructive service as defined in paragraph 6–2*c* is not creditable for a voluntary retirement or for retired pay purposes after a voluntary retirement.

## 6–15. Service obligations

*a.* Generally, an officer who completes certain formal education or training programs accepts career status, a certain promotion, or a PCS and incurs an ADSO (AR 350–100). Normally, an officer must be able to fulfill the ADSO on or before the effective date of retirement. However, CG, HRC, may grant nonstatutory waivers. Each request will be on a case by case basis.

*b.* An RC officer requesting voluntary retirement in lieu of elimination action (see para 4–24) is not subject to this paragraph.

*c.* An RA warrant officer scheduled for mandatory retirement may accept an ADL promotion to pay grade CW3, CW4, or CW5 without incurring ADSO. Retention of these warrant officers beyond their mandatory retirement date is not authorized.

*d.* An officer assigned OCONUS on an unaccompanied tour must be able to complete 12 months of the officer's tour on or before the effective date of retirement.

*e.* An officer on an accompanied tour (when dependents travel at Government expense) must be able to complete 12 months of the officer's tour from the date the dependents arrive in the overseas command. This ADSO does not preclude the officer from completing the prescribed tour length in accordance with AR 614–30. The 12–month overseas restriction does not apply to a RC officer applying for retirement in conjunction with REFRAD under the provisions of chapter 2 of this regulation.

*f.* The ODCS, G-1, or their designee may defer the voluntary retirement of an officer assigned to a critical position until a replacement is available through the normal requisitioning cycle. A request for an officer's deferment must include the justification (see AR 350–100, paras 19–b and 4–1).

*g.* The ODCS, G-1 or their designee may waive a nonstatutory ADSO for the convenience of the Army or when substantial or undue hardship will result to the officer. The waiver request must be documented with detailed justification. When the best interest of the Army is involved, the following should be considered when processing the request for retirement:

(1) Retirement in lieu of elimination under chapter 4 or in lieu of other unfavorable personnel action justifying a waiver of the service obligation.

(2) Retirement of any officer nonselected for promotion to CW3, CW4, CW5, or lieutenant colonel.

## 6–16. Voluntary retirement in lieu of mandatory retirement or in conjunction with the scheduled release from active duty

*a.* An RA officer may request voluntary retirement in lieu of mandatory retirement under section VI of this chapter.

*b.* The CG, HRC, will notify the RC officer who is on the ADL and scheduled for involuntary REFRAD under chapter 2 of their retirement eligibility date when it is on or before the RC officer's mandatory release date.

*c.* A retirement eligible officer who is twice nonselected for promotion to the grade of lieutenant colonel or below may retire. The officer's effective date of retirement will not be later than the mandatory separation date.

*d.* An officer who receives a notification memorandum of impending elimination may request retirement in lieu of elimination, if the officer has 19 years and 6 months or more active Federal service (AFS) on the date of such application. If the officer elects to retire and the elimination action involved misconduct or moral or professional dereliction, CG, HRC, will forward the retirement application and memorandum of notification for elimination with all supporting documentation to the Army Grade Determination Board. Any comment or rebuttal by the officer and the officer's OMPF will be included in the forwarding documentation. The Army Grade Determination Review Board will make recommendation as to the highest grade that the officer has served on AD satisfactorily. The effective date of retirement for an officer—

(1) With 19 years and 6 months but less than 20 years AFS will not be later than 60 days after the officer attains 20 years AFS.

(2) With 20 or more years AFS will not be later than 60 days from the date the officer elected retirement in lieu of elimination.

## Section III
## Task: Process Retirement in Lieu of Permanent Change of Station

### 6–17. Rules for processing retirement in lieu of permanent change of station

*a.* An officer may request retirement in lieu of PCS when he or she has at least 19 years, 6 months AFS and a firm PCS alert is received. The retirement request must be submitted within 30 calendar days of the alert. When an alerted officer indicates that he or she might exercise the option to retire in lieu of PCS, Career Division may initiate a request, with recommendation to approval authority CG, HRC to disapprove or delay the retirement based on the needs of the Army.

*b.* Assignment alert is the official notification of an impending assignment sent by writing, voice, e-mail or other medium from DA or HRC assignments officials to an officer. An assignment is considered "firm" when an officer has been selected to fill a valid requisition (that is, when and where the officer will be assigned).

*c.* All service obligations must be met (or waived) before retirement. The PSC/MPD will verify service obligations by contacting the officer's career management division before forwarding the retirement request. The waiver request must be documented with detailed justification. Requests that are not forwarded through channels will be returned.

*d.* An officer retiring in lieu of PCS will normally remain at the same duty station until retirement unless the needs of the Service or local circumstances clearly require reassignment (for example, due to deletion of the position, reorganization, disciplinary problems). If possible, the officer will be reassigned within the same installation if there is a valid need. When this is not possible, the officer may be reassigned to the closest military installation where there is a valid need. An officer will not be reassigned exclusively for the purpose of being closer to the requested location of retirement.

*e.* The officer may request the retirement to be effective any date not later than 6 months from the date of the PCS alert or the first day of the month after the officer attains 20 years AFS, whichever is later.

*f.* Once a retirement is approved, the appropriate career management division will revoke the PCS orders and notify the officer. The retirement will not be withdrawn nor will the effective date of the retirement be extended. However, a request for an earlier date will be considered on an individual basis.

*g.* On an approved retirement, HRC–Alexandria (AHRC–OPD–A) will notify the installation.

### 6–18. Steps for processing retirement in lieu of permanent change of station

The steps required for processing retirement in lieu of PCS are as shown in table 6–1.

**Table 6–1**
**Processing retirement in lieu of permanent change of station**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | BN S–1 | Notifies the officer of PCS alert or orders. |
| 2 | SLDR | Receives notification of PCS alert or orders. Application for retirement must be submitted within 30 days of receipt of the alert or orders. |
| 3 | SACT | *a.* Prepares and processes retirement application to include waiver, if required (fig 6–2).<br>(1) Interviews officer to obtain information for application.<br>(2) Advises the officer of his or her responsibility to obtain a medical examination prior to the retirement date and that failure to complete it will not affect or delay the retirement but could affect later claims for Service-connected medical problems.<br>*b.* Forwards the application through channels to CDR, HRC–Alexandria (AHRC–OPD–A), or HQDA (DAJA–PT), The Judge Advocate General, 2006 Army Pentagon, Washington, DC 20310–2006; or HQDA (DACH–PER), 2700 Army Pentagon, Washington, DC 20310–2700, as applicable. |
| 4 | BN S–1 | *a.* Commander having custody of applicant's MPF or hospital commanders operating independent transfer activities—<br>(1) Verifies from available records and documents all information given in the application.<br>(2) Ensures that the officer has read paragraph 1–22.<br>(3) Ensures that prompt action has been taken to adjust and close any public property or financial accounts of applicants.<br>*b.* Intermediate commanders review application to ensure compliance with this chapter and forward with recommendation of approval or disapproval, together with statement that action is or is not in contravention with AR 600– 8–2. Recommendation for disapproval will state reason. |
| 5 | TRCT (TP/TA) | Receives retirement packet and conducts retirement processing. Final separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IV
## Task: Process Voluntary Retirement Application

### 6–19. Rules for processing a voluntary retirement application

*a.* Request for voluntary retirement will be considered on an individual basis.

*b.* Request will be prepared according to figure 6–2 and forwarded to the appropriate approval authority (para 6–14*a*) not earlier than 12 months before the retirement date or no later than 9 months before the requested retirement date or beginning date of transition leave, whichever is the earliest.

*c.* Request may be submitted (with justification) later than 9 months—

(1) During an emergency.

(2) To preclude a hardship to the officer.

(3) When the requested retirement date coincides with the date returned from overseas.

(4) When the losing command agrees with the retirement.

(5) When an officer accepts by means of a signed statement that a delay in submitting the request shortens the processing time and may preclude retirement on the requested date. Without this statement in the retirement application, the application will be returned without action.

*d.* Upon request for a control number, HRC–Alexandria (AHRC–OPD–A) will verify the retirement eligibility of the officer, inform the appropriate Career Management Division within the Officer Personnel Management Directorate, and provide the control number to the MPD/PSC within 7 working days of the request.

*e.* Upon request, HRC–Alexandria (AHRC–OPD–A) will forward the service fiche for an officer to the installation maintaining the officer's MPF within 14 calendar days, for use in service computation.

*f.* HRC-Alexandria (AHRC-OPD-A) will issue a control number to the appropriate MPD/PSB for all approved retirements. Retirements disapproved by HQDA will be returned through channels to the officer.

### 6–20. Steps for processing a voluntary retirement application

The steps required for processing a voluntary retirement application are as shown in table 6–2.

**Table 6–2**
**Processing voluntary retirement application**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 1 | SLDR | *a.* Submit application (fig 6–2).<br>*b.* For an officer retiring in lieu of mandatory release, includes the following —<br>(1) The scheduled mandatory release date.<br>(2) The specific reason for release (for example, chap 4).<br>(3) Subject and date of the HRC memorandum notifying the officer of mandatory release date.<br>(4) When a retirement application is submitted in lieu of elimination, ensure it states, "submitted in lieu of elimination." |
| 2 | BNS1/UNIT | Prepares waiver request, when applicable and forwards application through chain of command to the appropriate approval authority. |
| 3 | SACT | *a.* Receive application.<br>*b.* Obtain MPF.<br>*c.* Review eligibility.<br>*d.* Schedule appointment.<br>*e.* Request OMPF from HRC–Alexandria (AHRC–MSR) for nonwaiver retirements only (see paras 6–2e and *f*).<br>*f.* Advises the officer of his or her responsibility to obtain medical examination prior to the retirement date and that failure to complete it will not affect or delay the retirement but could affect later claims for Service-connected medical problems.<br>*g.* Notify strength management work center of impending retirement.<br>*h.* Request control number from HRC for all retirement applications. Do not forward nonwaiver retirement applications to HRC. PSB/MPD should only forward applications to HRC when a waiver is required and/or the endorsing commander recommends disapproval. The information in (1) and (2) below will be provided when requesting a control number, via the Total Officer Personnel Management Information System interactive processing officer retirement screen.<br>(1) Separation Request date: in format YYYYMMDD.<br>(2) Retirement Request Status Code: Code "I" for initial.<br>*i.* Receive control number within 7 working days of request (only nonwaiver retirements).<br>*j.* After the OMPF is received, conduct interview for service computation, if applicable. Prepare service computation form (DA Form 7301–R) if applicable. Requests verification of active/inactive service time not substantiated in MPF. Upon completion of the service computation, forwards application to the appropriate approval authority.<br>*k.* Forwards the application for—<br>(1) An ADL commissioned or warrant officer when HQDA is the approval authority, through channels to CDR, HRC–Alexandria (AHRC–OPD–A) Judge Advocate General Corps officers to HQDA (DAJA–PT), The Judge Advocate General, 2006 Army Pentagon, Washington, DC 20310–2006, and Chaplains to HQDA (DACH–PER), Chief of Chaplains, 2700 Army Pentagon, Washington, DC 20310–2700.<br>(2) A general officer, through MACOM to General Officer Management Office, Office of the Chief of Staff, Army, 200 Army Pentagon, Washington, DC 20310–0200.<br>(3) RC commissioned and warrant officers not on the ADL (10 USC 620) to CDR, HRC–St. Louis (AHRC–AR), 1 Reserve Way, St. Louis, MO 63132–5200.<br>(4) For ARNGUS commissioned and warrant officers not on AD, to the appropriate State adjutant general. |
| 4 | C&S | *a.* Commanders having custody of applicant's MPF or hospital commanders operating independent transfer activities—<br>(1) Verify from available records and documents all information given in the application.<br>(2) Ensure that the officer has read paragraph 1–22.<br>(3) Ensure that prompt action has been taken to adjust and close any public property or financial accounts of the applicant.<br>*b.* Intermediate commanders review application to ensure compliance with this chapter and forward with written recommendation of approval or disapproval together with statement that action is or is not in contravention with AR 600–8–2. Recommendation for disapproval will state reason. |

**Table 6–2**
**Processing voluntary retirement application—Continued**

| Step | Work center | Required action |
|------|-------------|-----------------|
| 5 | SACT | *a.* Receives approval from HQDA. |
| | | *b.* Prepare retirement order if applicable (see para 6–3). The retirement order will contain the control number. Retirement orders are prepared in accordance with AR 600–8–105. Distribution of the order will include the MACOM to which the officer is assigned, the servicing finance and accounting center, and HRC–Alexandria (AHRC–MSR). Orders formats for all officer retirements are— |
| | | (1) 680 – Active Army |
| | | (2) 682 – Other than Active Army (OTAA) |
| | | (3) 684 – Dual Status |
| | | (4) 700 – Amendment of Orders |
| | | (5) 705 – Revocation of Orders |
| | | *c.* File approved application and allied documents (orders and service computation documents) MPF and return to personnel records work center. |
| | | *d.* Provides retirement packet to the officer. Retirement packet will contain the following: |
| | | (1) A memorandum of instruction. |
| | | (2) Computation of service. |
| | | (3) Orders with the control number. |
| 6 | TRCT (TP/TA) | Receives and processes retirement packet. Final separation forms will cite regulatory authority, and SPD as shown in AR 635–5–1. |

## Section V
## Task: Process a Retirement Withdrawal or a Change in the Retirement Date

### 6–21. Rules for processing a retirement withdrawal or a change in the retirement date

*a.* The request to withdraw or change the effective date of approved retirement applications will only be approved by HRC for promotion, compassionate reasons, or for the convenience of the Army. The HRC-Alexandria (AHRC–OPD-A) will notify the appropriate MPD/PSB of the approval or disapproval of request and issue a new control number to be used on the amendment or revocation of the retirement order.

*b.* Retirement applications in lieu of PCS are final.

*c.* An endorsing commander may approve a retirement withdrawal, provided a control number has not been issued or that the retirement application has not been forwarded to the approval authority (HQDA).

*d.* When an officer has an approved retirement pending and is subsequently selected for promotion, he or she may request to withdraw the application to accept the promotion. However, the officer remains subject to worldwide assignment according to the needs of the Army.

### 6–22. Steps for processing a retirement withdrawal or a change in the retirement date

The steps required for processing a retirement withdrawal or a change in the retirement date are as shown in table 6–3.

**Table 6–3**
**Processing retirement withdrawal or retirement date change**

| Step | Work Center | Required Action |
|------|-------------|-----------------|
| 1 | SLDR | Submits request to withdraw or change retirement date. |
| 2 | SACT BN S–1 | Forwards the officer's request to withdraw the retirement or change the date (with justification) through channels to CDR, HRC–Alexandria (AHRC–OPD–A): HQDA (DAJA–PT), The Judge Advocate General, 2006 Army Pentagon, Washington, DC 20310–2006; or HQDA (DACH–PER), Chief of Chaplains, 2700 Army Pentagon, Washington, DC 20310–2700, as applicable, to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 3 | TRCT (TP/TA) | Receives the appropriate amendment/revocation of the retirement order and processes same. |

## Section VI
## Mandatory Retirement

### 6–23. Scope

*a.* A mandatory retirement is required by law and is initiated by HQDA. An officer must be retired on the date established by the applicable statute unless specifically provided by law (10 USC 640). An officer may request retirement and be retired voluntarily on mandatory retirement date.

*b.* The address of the office responsible for a mandatory retirement of a general officer is General Officer Management Office, Office of the Chief of Staff, Army, 200 Army Pentagon, Washington, DC 20310–0200.

## 6–24. Service for mandatory retirement

Service for mandatory retirement for commissioned officers who did not serve on AD prior to 15 September 1981 is active Federal commissioned service. Service for commissioned officers on AD on 14 September 1981 is active commissioned service in the RA on and after 15 September 1981 plus the amount of service creditable to the officer on 14 September 1981 for the purpose of determining whether the officer is subject to involuntary retirement.

## Section VII
## Task: Process Mandatory Retirement Due to Maximum Age

### 6–25. Rules for processing mandatory retirement due to maximum age

*a.* Unless otherwise retired or separated, an RA commissioned officer will retire effective the first day of the month following the month the officer reaches age 62 (10 USC 1251).

*b.* An RA commissioned officer who is a permanent professor, the director of admissions, or the registrar at the USMA will retire effective the first day of the month following the month age 64 is reached.

*c.* The President may defer retirement of an RA commissioned officer serving in a position that carries a grade above major general. However, the deferment may not extend beyond the first day of the month following the month the officer reaches age 64. (Only 10 such deferments may be in effect at one time.)

*d.* The Secretary of the Army may defer the retirement of certain health professions officers. For RA officers, this provision is limited to Medical Corps, Dental Corps, and Army Nurse Corps officers if the officer will be performing duties during the deferment that consist primarily of providing patient care or performing other clinical duties. Deferment under this provision may not extend beyond the first day of the month following the month of the officer's 68th birth date (10 USC 1251 as amended by Public Law 101–189). Requests for deferment under this provision will be forwarded through the officer's chain of command to CDR, HRC–Alexandria (AHRC–OPH–P). For USAR officers, see paragraph 2–23*a*(6).

*e.* Unless otherwise retired or separated, a warrant officer with 20 years active service will retire not later than 60 days after the officer reaches age 62 (10 USC 1263). Under extenuating circumstances, the Secretary of the Army may defer the retirement of a warrant officer up to 4 months.

*f.* The maximum age retirement notification memorandum will be forwarded by HRC–Alexandria (AHRC–OPD–A) to the officer and commander approximately 9 months before the officer's scheduled retirement date. In addition, a copy will be sent to the appropriate PSC/MPD. The memorandum advises the officer of approaching retirement, expressing appreciation for service and the suggestion that contact be made with the local examining facility concerning any medical defects of which the officer is aware. The memorandum includes the officer's mandatory retirement date, the specific statutory authority for the retirement and pertinent data.

*g.* On receipt of the officer's preretirement data, HRC–Alexandria (AHRC–OPD–A) will complete the preretirement packet and forward it to the appropriate TP/TA.

### 6–26. Steps for processing mandatory retirement due to maximum age

The steps required for processing mandatory retirement due to maximum age are as shown in table 6–4.

**Table 6–4**
**Processing mandatory retirement due to maximum age**

| Step | Work center | Required Action |
|------|-------------|-----------------|
| 1 | SLDR | Receives maximum age notification approximately 9 months before the scheduled retirement, including the following guidance:<br>*a.*Mandatory retirement date, the specific statutory authority, and pertinent service data.<br>*b.* Advisement to contact local medical examining facility regarding any known medical problems. |
| 2 | SAA<br>C&S<br>BN S–1 | Receives copy of the officer's maximum age notification memorandum, including the preretirement data instructions. |
| 3 | PSC<br>SACT | Receives copy of the officer's maximum age notification memorandum and takes the following actions:<br>*a.* Coordinates to ensure the officer has received notification memorandum and to provide assistance as needed.<br>*b.* Controls the separation processing.<br>*c.* Maintains the officer's file for 30 calendar days after retirement, then destroys the file. |

**Table 6–4**
**Processing mandatory retirement due to maximum age—Continued**

| Step | Work center | Required Action |
|------|-------------|-----------------|
| 4 | BN S–1 SACT | Forwards the officer's preretirement data (fig 6–3) through channels (includes point of contact (POC) and telephone number), a minimum of 3 months prior to the scheduled date, to the following:<br>    *a.*General Officer Management Office, Office of the Chief of Staff, Army, 200 Army Pentagon, Washington, DC 20310–0200.<br>    *b.* CDR, HRC–Alexandria, ATTN (AHRC–OPD–A), ALEX VA 22332–0478, for all other officers. |
| 5 | TRCT (TP/TA) | Receives retirement packet and conducts retirement processing. Final separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VIII
## Task: Process Mandatory Retirement due to Maximum Service

### 6–27. Rules for processing mandatory retirement due to maximum service

*a.* Unless earlier retired, an RA major general (not on a list of officers recommended for promotion) shall, if not earlier retired, be retired on the first day of the first month beginning after the date of the fifth anniversary of appointment to that grade or on the first day of the month after the month in which he or she completes 35 years of active commissioned service, whichever is later (10 USC 636).

*b.* Unless earlier retired, an RA brigadier general (not on a list of officers recommended for promotion) shall, if not earlier retired, be retired on the first day of the first month beginning after the date of the fifth anniversary of appointment to that grade or on the first day of the month after the month in which he or she completes 30 years of active commissioned service, whichever is later (10 USC 635).

*c.* Unless earlier retired, an RA colonel (not on a list of officers recommended for promotion) shall, if not earlier retired, be retired on the first day of the month after the month in which he or she completes 30 years of active commissioned service (10 USC 634).

*d.* Unless earlier retired, an RA lieutenant colonel (not recommended for promotion) will retire the first day of the month after the month which the officer completes 28 years ACS (10 USC 633).

*e.* The Secretary of the Army may retire any USMA permanent professor with more than 30 years commissioned service (10 USC 3920).

*f.* Rules for processing mandatory retirement for warrant officers follow.

(1) Each RA warrant officer in the grade of chief warrant officer, CW5, shall, if not earlier separated or retired, be retired on the first day of the month after completing 30 years and 60 days active service as a warrant officer except as provided by 5 USC 8301 (10 USC 1305(a)(2)(A)).

(2) Each RA warrant officer below the grade of chief warrant officer, CW5, shall, if not earlier retired, be retired on the first day of the month after completing 30 years and 60 days active service or 24 years and 60 days active service as a warrant officer, whichever occurs first except as provided by 5 USC 8301 (10 USC 1305(a)(1) and 10 USC 1305(a)(2)(B)).

(3) Each RA chief warrant officer who on 1 February 1992 was on the chief warrant officer active duty list or on a recommended active duty promotion list to a chief warrant officer grade may be retained, if not earlier retired or separated, on active duty until 60 days after the date on which he or she completes 30 years of active service except as provided by 5 USC 8301.

*g.* The maximum service notification memorandum will be forwarded by HRC–Alexandria (AHRC–OPD–A) to the officer and their commander approximately 9 months before the officer's scheduled retirement date. In addition, a copy will be forwarded to the appropriate PSC/MPD. The memorandum advises the officer of their approaching retirement, expressing appreciation for service, and includes a suggestion that contact be made with the local examining facility concerning any medical defects of which the officer is aware. The memorandum includes the officer's mandatory retirement date, the specific statutory authority for the retirement, and pertinent data.

*h.* On receipt of the officer's preretirement data, HRC–Alexandria (AHRC–OPD–A) will complete the retirement packet and forward it to the appropriate TP/TA.

### 6–28. Steps for processing mandatory retirement due to maximum service

The steps required for processing mandatory retirement due to maximum service are as shown in table 6–5.

**Table 6–5**
**Processing mandatory retirement due to maximum service**

| Step | Work center | Required Action |
|------|-------------|-----------------|
| 1 | SLDR | Receives maximum service notification memorandum approximately 9 months before the mandatory retirement date and the following guidance:<br>*a.* Mandatory retirement date, the specific statutory authority, and pertinent service data.<br>*b.* Advisement to contact local medical examining facility regarding any known medical problems. |
| 2 | SAA<br>C&S<br>BN S–1 | Receives copy of the officer's maximum service notification memorandum including the preretirement data instructions. |
| 3 | BN S–1<br>SACT | Receives copy of the officer's maximum service notification memorandum and takes the following actions:<br>*a.*Coordinates to ensure the officer has received notification memorandum and to provide assistance as needed.<br>*b.* Controls the separation processing.<br>*c.* Maintains the officer's file for 30 days after the retirement, then destroys the file. |
| 4 | BN S–1<br>SACT | Forwards the officer's preretirement data (fig 6–3), including POC and telephone phone number, through channels, a minimum of 3 months prior to the scheduled date, to the following:<br>*a.* General Officer Management Office, Office of the Chief of Staff, Army, 200 Army Pentagon, Washington, DC 20310–0200.<br>*b.* CDR, HRC–Alexandria (AHRC–OPD–A), ALEX VA 22332–0478, for all other officers. |
| 5 | TRCT<br>(TP/TA) | Receives retirement packet and conducts retirement processing. Final separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IX
## Task: Process Selective Early Retirement/Selective Retirement

### 6–29. Rules for processing selective early retirement/selective retirement

*a.* A duly appointed board of officers may consider the following RA officers for selective early retirement (10 USC 638) or RA chief warrant officers for selective early retirement (10 USC 581) when—

(1) A regular warrant officer who holds a warrant officer grade above W–1 and who is not on a promotion list of warrant officers recommended for promotion and who is retirement eligible under any provisions of law.

(2) A captain who is not on a list for promotion to major who is retirement eligible or who after 2 additional years or less of AFS would be eligible for retirement.

(3) A major who is not on a list for promotion to lieutenant colonel who is retirement eligible or who after 2 additional years or less of AFS would be eligible for retirement.

(4) A lieutenant colonel who has been nonselected for promotion two or more times and who is not on a list for promotion to colonel.

(5) A colonel who has served at least 4 years of AD in that grade and whose name is not on a list for promotion to brigadier general.

(6) A brigadier general has served at least 3 years and 6 months of AD in that grade and whose name is not on a list of officers recommended for promotion.

(7) A major general has served at least 3 years and 6 months of AD in that grade.

*b.* Officers with an approved voluntary retirement or a mandatory retirement date during the same fiscal year as the board or the following fiscal year will not be considered for selective early retirement.

*c.* A colonel and below will be retired under any provision of law under which the officer is eligible, on the date requested by the officer and approved by the Secretary of the Army. This date will not be later than the first day of the seventh calendar month beginning after the month the selective early retirement board report is approved by the Secretary of the Army. An officer who is not retirement eligible as of the date the Secretary of the Army signs the board's results will be retired on the first day of the month after the officer becomes retirement eligible.

*d.* A brigadier general or major general will be retired under any provision of the law under which the officer is eligible, on the date requested by the officer and approved by the Secretary of the Army. This date will not be later than the 1st day of the 10th calendar month beginning after the month the selective early retirement board report is approved by the Secretary of the Army.

*e.* The retirement of a commissioned officer or a chief warrant officer pursuant to this section will be an involuntary retirement for purposes of any other provision of law.

*f.* The DCS, G–1 will sign the notification memorandum. The office of HRC–Alexandria (AHRC–OPD–A) will forward through a flag officer the notification memorandum to each officer selected for early retirement. The following will be included:

(1) Service computation.
(2) Acknowledgment.
(3) Administrative instructions.
(4) Retirement application.

## 6–31. Steps for processing selective early retirement/selective retirement
The steps required for processing selective early retirement/ selective retirement are as shown in table 6–6.

**Table 6–6**
**Processing selective early retirement/selective retirement**

| Step | Work center | Required Action |
|---|---|---|
| 1 | C&S | Receives notification memorandum on individual officer or warrant officer selected for early retirement. Notifies officer or warrant officer concerned and returns signed statement that he or she was notified to CDR, HRC–Alexandria (AHRC–OPD–A). |
| 2 | SLDR | Receives notification from a flag officer of selection for early retirement. Complies with the administrative instructions in the notification memorandum. |
| 3 | TRCT (TP/TA) | Receives retirement packet and conducts retirement processing. Final separation forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

*(Letterhead)*

EXT - ORDERS S121-23                                                    *(Date)*

ANNOUNCEMENT OF RETIREMENT

The retirement of **Colonel Franklin L. Baker, *(duty position)*,** is announced with the deepest regret but with greatest appreciation for his long distinguished career of 30 years.

Colonel Baker was born May 1933 in Arapahoe, Colorado.Commissioned in the Field Artillery, on gradu-ation from the United States Military Academy in 1955, he attended Airborne School and was assigned to the 82d Airborne Division for 2 years.Colonel Baker subsequently served for 3 years in Panama, followed by a transfer to the 173d Airborne Brigade for a year of combat command and staff duty. Service in Vietnam was followed by a 3-year instructorship assignment at the United States Air Force Academy and subsequent return to Vietnam for duty with the 196th Infantry Brigade. Between troop duty assignments, Colonel Baker graduated from the Armed Forces Staff College.

A 2-year tour at Fort Benning, Georgia, with the U.S. Army Combat Board ended in 1974. Colonel Baker then joined the 101st Airborne Division (Air Assault) where he served as the Division Artillery operations officer and commanded the 1st Battalion,321st Field Artillery. Colonel Baker was next posted to Headquarters, Department of the Army, in the office of the Chief, Army National Guard Bureau. In 1980, Colonel Baker deployed to the Republic of Korea for a 4-year assignment as the Chief of the Operational Plans Divisions of both the Republic of Korea/United States Combined Forces Command and Headquarters, United States Forces, Korea. From 1984 to 1989, Colonel Baker was assigned to the Office of the Deputy Chief of Staff for Personnel and served in a top-level management posi-tion. Colonel Baker's last assignment was as a member of the Headquarters, Department of the Army, Deputy Chief of Staff for Personnel Review Boards, and as president of the Secretary of the Army Conscientious Objector Review Board.

During his illustrious career, Colonel Baker has been honored for valor on the battlefield and for meritorious service in positions of great responsibility. His many awards and decorations include four Bronze Stars, two awards of the Meritorious Service Medal, three awards of the Air Medal, and the Senior Parachutists and Aircraft Crewmember's Badges. Colonel Baker's many friends and fellow sol-diers join together on this day in wishing him the best of health and happiness in his well-earned retirement.

**PAUL A. DOE**
**Major General, USA**
**Commanding**

**Figure 6–1. Format guidance for announcement of retirement**

(Letterhead)

**Office symbol**                                                                                                    (Date)

MEMORANDUM THRU (Channels)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Voluntary Retirement

1.  Under the provisions of law cited in AR 600-8-24, paragraph (**number**), I requester that I be released from active duty and assignment on (**last day of the month which retirement would otherwise be effective**) and placed on the retired list on (**first day of the following month**) or as soon thereafter as practicable, and that I be transferred to the Retired Reserve immediately on retirement (**Regular Army officers omit last phrase**).  I will have completed over (**number**) years of active service on the requested retirement date.

2.  Assignment status:  (**Enter organization and station to which currently assigned and duty station to which attached, if any.**)

3.  Authorized place of retirement:  (**Enter the authorized and directed transfer activity where required to be processed-AR 635-10, para 2-18a.  If applicable, identify the CONUS debarkation area.**)

4.  Location of choice transfer activity:  (**Members electing to be processed for retirement at a transfer activity other than one prescribed by AR 635-10, para 2-18a, enter an appropriate transfer activity as provided by AR 635-10, para 2-19, otherwise enter "not applicable."**)

5.  I have been counseled as specified by AR 635-10, paragraph 2-19.  I fully understand the provisions of AR 635-10, chapter 2, section V, concerning entitlement to per diem, travel, and transportation allowances based on retirement at a location of choice transfer activity.

6.  I have read AR 600-8-24, paragraphs 6-6 and 6-7.  I am responsible for ensuring that a physical examination is completed not earlier than 4 months nor later than 1 month prior to my approved retirement date or start date of transition leave, whichever is earlier (subject physical to be arranged through coordination with my unit of assignment).  I am aware that the purpose of this examination is to ensure that my medical records reflect as accurately as possible my state of health on retirement and to protect my interest and those of the Government.  I also understand that my retirement will take effect on the requested date and that I will not be held on active duty to complete this examination.

7.  In accordance with title 10, United States Code, I understand that - -

    a.  Enrollment in the Survivor Benefit Plan (SBP) is the only way that I may continue a portion of my retirement pay to my family at my death.

    b.  I must receive SBP counseling for myself and my spouse no less than 30 days before retirement.

    c.  I will be enrolled in full SBP coverage if I fail to elect otherwise in writing before my retirement.

    d.  I cannot elect less than full spouse SBP without my spouse's written agreement.  I received a spousal concurrence for this purpose in conjunction with this application/letter.  I realize there are other forms that must be completed during SBP counseling.

    e.  Failure to return the completed spousal concurrence statement to the proper officials prior to my retirement packet being sent to the Defense Finance Accounting Service will result in my being irrevocably and irreversibly enrolled in SBP at full cost

---

**Figure 6–2. Format guidance for voluntary retirement application**

8.  Address on retirement:  **(Enter a reliable forwarding address for mail).**

9.  I am familiar with AR 600-8-24, paragraph 6-22, and understand that if the Secretary of the Army accepts this application, it may not be withdrawn except for extreme compassionate reasons or for the definitely established convenience of the Government.

10.  **If AR 600-8-24, para 6-16, is applicable, continue with the information required by para 6-16g.)**

11.  As of the date of this application, I have **(number)** of days accrued leave.  I **(do/do not)** plan to take transition leave.  **(If applicable, complete the following:)**  I plan to take **(number)** days leave.

12.  I understand the provisions of AR 600-8-24, table 6-1 or 6-2, pertaining to determination of my retired grade. Considering those provisions and after a review of my records, I believe that I am entitled to retire in the grade of **(grade),** I understand that final determination of my retired grade will be made by HQDA and that I will be informed if I am not entitled to retire in the grade I have specified in this paragraph.

13.  This application **(is/is not)** submitted in lieu of complying with PCS instructions.

14.  I understand that if I participated in certain advanced education programs, I may be required to reimburse the U.S. Government as stated in written agreement made by me with the U.S. Government under law and regulations.

15.  My current duty telephone numbers are as follows:
     DSN:  (000-0000)    Commercial:  ((000) 000-0000)

16.  A fax machine is available at the following
     DSN:  (000-0000)    Commercial:  ((000) 000-0000)


**JOHN J. DOE**
**Colonel, IN**
**(SSN)**

**Note:  Enlisted personnel applying for retirement in an officer grade will include their active duty enlisted rank and primary military occupation specialty.**

**Figure 6–2. Format guidance for voluntary retirement application—Continued**

**(Letterhead)**

**Office symbol**                                                                                          **(Date)**

MEMORANDUM THRU (Channels)

FOR:  CDR, HRC (AHRC-OPD-A), 200 Stovall Street, Alexandria, VA 22332-0478

Subject:  Pre-Retirement Information

1.  The following information is submitted in accordance with AR 600-8-24, **(enter table 6-4, 6-5, or 6-6):**

  a.  Assignment status:  **(Enter organization and station to which currently assigned and duty station to which attached, if any.)**

  b.  Address on retirement:  **(Enter a reliable forwarding address for mail).**

  c.  Authorized place of retirement:  **(Enter the authorized and directed transfer activity where required to be processed-AR 635-10, para 2-17.  If applicable, identify the CONUS debarkation area.)**

  d.  Location of choice transfer activity:  **(Members electing to be processed for retirement at a transfer activity other than one prescribed by AR 635-10, para 2-17, enter an appropriate transfer activity as provided by AR 635-10, para 2-18; otherwise enter "Not applicable").**

2.  I have been counseled as specified by AR 635-10, paragraph 2-18.  I fully understand the provisions of AR 635-10, chapter 2, section V, concerning entitlement to per diem, travel, and transportation allowances based on retirement at a location of choice transfer activity.

3.  I have read AR 600-8-24, paragraphs 6-6 and 6-7.  I am responsible for completing the medical examination for Separation/Retirement Statement of option furnished by my unit of assignment, and I am responsible for ensuring that if a physical examination is desired that it is started not earlier than 4 months prior to my approved retirement date or the beginning of my transition leave, whichever is earlier (subject physical to be arranged through coordination with my unit of assignment).  I am aware that the purpose of this examination is to ensure that my medical records reflect as accurately as possible my state of health upon retirement and to protect my interests and those of the Government.  I also understand that my retirement will take effect on the scheduled date and that I will not be held on active duty to complete this examination.

4.  In accordance with title 10, United States Code, I understand that - -

  a.  Enrollment in the Survivor Benefit Plan (SBP) is the only way that I may continue a portion of my retirement pay to my family at my death.

  b.  I must receive SBP counseling for myself and my spouse no less than 30 days before retirement.

  c.  I will be enrolled in full SBP coverage if I fail to elect otherwise in writing before my retirement.

  d.  I cannot elect less than full spouse SBP without my spouse's written agreement.  I received a spousal concurrence for this purpose in conjunction with this application/letter.  I realize there are other forms that must be completed during SBP counseling.

  e.  Failure to return the completed spousal concurrence statement to the proper officials prior to my retirement packet being sent to the Defense Finance Accounting Service will result in my being irrevocably and irreversibly enrolled in SBP at full cost

5.  My current duty telephone numbers are as follows:
    DSN:  (000-0000)   Commercial:  ((000) 000-0000)

6.  A fax machine is available at the following
    DSN:  (000-0000)   Commercial:  ((000) 000-0000)

**JOHN J. DOE**
**Colonel, IN**
**(SSN)**

**Figure 6–3. Format guidance for preretirement information**

## Appendix A
## References

**Section I**
**Required Publications**

**AR 15–6**
Procedures for Investigating Officers and Boards of Officers. (Cited in paras 4–6, 4–9, 4–11, and 4–15.)

**AR 15–80**
Army Grade Determination Review Board and Grade Determinations. (Cited in para 6–1.)

**AR 27–40**
Litigation. (Cited in table 5–4.)

**AR 37–104–4**
Military Pay and Allowances Policy and Procedures— Active Component. (Cited in para 1–15.)

**AR 40–400**
Patient Administration. (Cited in paras 1–22 and 2–13 and tables 2–5 and 3–4.)

**AR 40–501**
Standards of Medical Fitness. (Cited in paras 1–22, 3–8, 3–9, 6–6, and table 3–2.)

**AR 135–18**
The Active Guard/Reserve (AGR) Program. (Cited in paras 2–25 and 2–27.)

**AR 135–91**
Service Obligations, Methods of Fulfillment, Participation Requirements, and Enforcement Procedures. para (Cited in para 2–3.)

**AR 135–155**
Promotion of Commissioned Officers and Warrant Officers Other Than General Officers. (Cited in summary of change.)

**AR 135–180**
Qualifying Service for Retired Pay Nonregular Service. (Cited in paras 2–23 and 2–25.)

**AR 135–215**
Officer Periods of Service on Active Duty. (Cited in paras 2–5, 2–15, 2–27, and 2–29.)

**AR 135–381**
Incapacitation of Reserve Component Soldiers. (Cited in para 1–22.)

**AR 140–10**
Assignments, Attachments, Details, and Transfers. (Cited in paras 2–25 and 2–41.)

**AR 140–30**
Active Duty in Support of the United States Army Reserve (USAR) and Active Guard Reserve (AGR) Management Program. (Cited in para 2–5.)

**AR 190–47**
The Army Corrections System. (Cited in tables 2–16, 3–5, 3–6, 5–7, and 5–8.)

**AR 335–15**
Management Information Control System. (Cited in table 2–16.)

**AR 350–100**
Officer Active Duty Service Obligations. (Cited in paras 1–11, 2–5, 3–5, 6–14, and 6–16.)

**AR 380–67**
The Department of the Army Personnel Security Program. (Cited in paras 1–28, 4–22, and table 4–3.)

**AR 600–8–2**
Suspension of Favorable Personnel Actions (FLAGS). (Cited in paras 2–31, 2–34, 6–14, 6–19, 6–21, and tables 2–15, 4–1, 4–2, 4–3, 6–1, and 6–2.)

**AR 600–8–29**
Officer Promotions. (Cited in paras 2–41, 5–9, and 5–11.)

**AR 600–9**
The Army Weight Control Program. (Cited in paras 2–31, and 4–2.)

**AR 600–37**
Unfavorable Information. (Cited in paras 2–39 and 4–2.)

**AR 600–43**
Conscientious Objection. (Cited in para 1–31.)

**AR 600–85**
Army Substance Abuse Program (ASAP). (Cited in paras 2–31 and 4–2.)

**AR 601–100**
Appointment for Commissioned and Warrant Officers in the Regular Army. (Cited in para 2–21.)

**AR 601–280**
Army Retention Program. (Cited in paras 3–7, 5–9, and table 3–2.)

**AR 614–30**
Overseas Service. (Cited in paras 2–5, 3–5, tables 2–5 and 3–4.)

**AR 614–100**
Officer Assignment Policies, Details, and Transfers. (Cited in table 5–2.)

**AR 614–120**
Interservice transfer of Army Commissioned Officers on the Active Duty List. (Cited in para 1–32.)

**AR 623–105**
Officer Evaluation Reporting System. (Cited in paras 2–39, and 4–2.)

**AR 635–10**
Processing Personnel for Separation. (Cited in paras 1–26, 5–18, 6–5, and tables 2–16, 3–16, 5–7, and 5–8.)

**AR 635–40**
Physical Evaluation for Retention, Retirement or Separation. (Cited in para 1–23.)

**AR 635–200**
Active Duty Enlisted Administrative Separations. (Cited in table 3–2.)

**Manual for Courts–Martial United States**
(Cited in paras 2–36 and 5–13 and table 3–5.) (Available at www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**DODD 5200.2–R**
Personnel Security Program (Cited in paras 1–21a, b(4), and c.)

**DODPM**
Department of Defense Military Pay and Allowances Entitlements Manual. (Cited in paras 1–13, 1–24, 2–31, and 2–39.) (Available from http://secureappz.hqda.pentagon.mil/perdiem/trvlregs.html.)

**JFTR**
Joint Federal Travel Regulation, Volume 1. (Cited in paras 2–35, and 4–13.) (Available from http://secureappz.hqda.pentagon.mil/perdiem/trvlregs.html.)

**NGR 635–100**
Termination of Appointment and Withdrawal of Federal Recognition. (Cited in paras 2–25, and 2–37) (Available from www.ngbpdc.ngb.army.mil/arngfiles.asp.)

**Section II**
**Related Publications**
A related publication is merely a source of additional information. The user does not have to read it to understand this publication. Public Laws are available at http://thomas.loc.gov/bss/. Volumes of the Code of Federal Regulations are available at http://www.gpoaccess.gov/cfr/index.html and volumes of the United States Code are available at http://www.gpoaccess.gov/uscode/.

**AR 135–100**
Appointment of Commissioned and Warrant Officers of the Army.

**AR 135–175**
Separation of Officers.

**AR 135–200**
Active Duty for Missions, Projects, and Training for Reserve Component Soldiers.

**AR 195–2**
Criminal Investigation Activities.

**AR 600–8**
Military Personnel Management.

**AR 600–8–10**
Leaves and passes.

**AR 600–8–105**
Military Orders.

**AR 600–20**
Army Command Policy.

**AR 600–110**
Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV).

**AR 601–10**
Management and Mobilization of Retired Soldiers of the Army.

**AR 601–210**
Regular Army and Army Reserve Enlistment Program.

**AR 635–5**
Separations Documents.

**AR 635–5–1**
Separation Program Designator (SPD) Codes.

**DODI 1332.29**
Eligibility of Regular and Reserve Personnel for Separation Pay.

**Public Law 101–189**
National Defense Authorization Acts for Fiscal Years 1990 and 1991.

**Public Law 102–190, section 551(c)**
National Defense Authorization Acts for Fiscal Years 1992 and 1993.

**5 USC, chapter 83**
Retirement.

**5 USC 8301**
Uniform retirement date.

**10 USC, chapter 71**
Computation of retired pay.

**10 USC, chapter 104**
Uniform Services University of The Health Sciences.

**10 USC, chapter 105**
Armed Forces Health Professions Financial Assistance Programs.

**10 USC, chapter 371**
Computation of Retired Pay.

**10 USC 101**
Definitions.

**10 USC 571 note**
Warrant Officer Management Act.

**10 USC 603 (a)**
Appointments in time of war or national emergency.

**10 USC 611**
Convening of selection boards.

**10 USC 620**
Active-Duty Lists.

**10 USC 630**
Discharge of commissioned officers with less than five years of active commissioned service or found not qualified for promotion for first lieutenant or lieutenant (junior grade).

**10 USC 631**
Effect of failure of selection for promotion: first lieutenants and lieutenants (junior).

**10 USC 633**
Retirement for years of service: regular lieutenant colonels and commanders.

**10 USC 634**
Retirement for years of service for Regular Army colonels and Navy captains.

**10 USC 635**
Retirement for years of service: regular brigadier general and rear admirals (lower half).

**10 USC 636**
Retirement for years of service: regular officers in grades above brigadier general and rear admiral (lower half).

**10 USC 638**
Selective Early Retirement.

**10 USC 639**
Continuation on active duty to complete disciplinary action.

**10 USC 640**
Deferment of retirement or separation for medical reasons.

**10 USC 1164**
The maximum ages for retention of warrant officers after 20 years of active Federal service.

**10 USC 1165**
Regular warrant officers: separation during three-year probationary period.

**10 USC 1166**
Regular warrant officers: elimination for unfitness or unsatisfactory performance.

**10 USC 1181**
Authority to establish procedures to consider the separation of officers for substandard performance of duty and for certain other reasons.

**10 USC 1186**
Officer considered for removal: voluntary retirement or discharge.

**10 USC 1187**
Officers eligible to serve on boards.

**10 USC 1223**
Retired pay for non-regular service.

**10 USC 1251**
Provides for exceptions to age 62 retirement for age criteria for regular commissioned officers.

**10 USC 1263**
Age 62: regular commissioned officers; exceptions.

**10 USC 1293**
Twenty years or more: warrant officers.

**10 USC 1305**
Thirty years or more: regular warrant officers.

**10 USC 1331**
Reference to chapter 1223.

**10 USC 1370(a) (1)**
Retired grade: commissioned officers general rule; exception.

**10 USC 1371**
Warrant officers: general rule.

**10 USC 2004**
Detail of commissioned officers as students at law schools.

**10 USC 2005**
Advanced education assistance: active duty agreement; reimbursement requirement.

**10 USC 2123**
Members of the program: active duty obligation; failure to complete training; release from program.

**10 USC 3064**
Special branches.

**10 USC 3911**
Regular or reserve commissioned officers: twenty years or more.

**10 USC 3918**
Thirty years or more: regular commissioned officers.

**10 USC 3920**
More than thirty years: permanent professors and Director of Admissions of the United States Military Academy.

**10 USC 3924**
Forty years or more: Army officers.

**10 USC 3926**
Computation of years of service: voluntary retirement; enlisted members.

**10 USC 3962**
Higher grade for service in special positions.

**10 USC 3964**
Higher grade after 30 years of service: warrant officers.

**10 USC 3991**
Computation of retired pay.

**10 USC 12207**
Commissioned officers: service credit upon original appointment.

**10 USC 12301**
Reserve Components; generally.

**10 USC 12308**
Retention after becoming qualified for retirement pay.

**10 USC 12313**
Reserves: release from active duty.

**10 USC 12643**
Boards for appointment, promotion, and certain other purposes: composition.

**10 USC 12646**
Commissioned officers: retention of after completing 18 or more, but less than 20, years of service.

**10 USC 12681**
Reserves: discharge authority.

**10 USC 12683**
Reserve officers: limitation on involuntary separation.

**10 USC 12686**
Reserves on active duty within two years of retirement eligibility: limitation on release from active duty.

**10 USC 12731**
Age and service requirements.

**10 USC 12737**
Limitation on active duty.

**10 USC 14507(a)**
Removal from the reserve active-status list for years of service: reserve lieutenant colonels and colonels of the Army, Air Force, and Marine Corps and reserve commands and captains of the Navy.

**10 USC 14508**
Removal from the reserve active-status list for years of service: reserve general and flag officers.

**10 USC 14701**
Selection of officers for continuation on the reserve active-status list.

**10 USC 14703**
Authority to retain chaplains and officers in medical specialties until specified age.

**10 USC 14706**
Computation of total years of service.

**10 USC 14907**
Army National Guard to the United States and Air National Guard of the United States: discharge and withdrawal of Federal recognition of officers absent without leave.

**37 USC**
Pay and allowances of the uniformed services.

**37 USC 201(b)**
Pay grades: assignment to; general order.

**37 USC 204(b)**
Entitlement.

**38 USC**
Veteran's Benefits.

**38 USC 3103**
Periods of eligibility.

**50 USC, Appendix Sec. 454**
Military Selective Service Act of 1967.

**Section III**
**Prescribed Forms**
Except otherwise stated, DA forms are available on the Army Publishing Directorate Web site (www.apd.army.mil). DD forms are available from the OSD Web site (http://www.dtic.mil/whs/directives/infomgt/forms/formsprogram.htm). SFs are available from the GSA Web site (http://www.GSA.Gov.forms).

**DA Form 7301–R**
Officer Service Computation for Retirement.

**Section IV**
**Referenced Forms**

**DA Form 67–9**
U.S. Army Officer Evaluation Report.

**DA Form 78–R**
Recommendation for Promotion to 1LT/CW2.

**DA Form 200**
Transmittal Record.

**DA Form 201**
Military Personnel Records Jacket, U.S. Army.

**DA Form 268**
Report to Suspend Favorable Personnel Actions.

**DA Form 1574**
Report of Proceedings by Investigating Officer/Board of Officers.

**DA Form 2339**
Application for Voluntary Retirement.

**DD Form 214**
Certificate of Release or Discharge from Active Duty. (Available through normal forms supply channels.)

**DD Form 214WS**
Certificate of Release for Discharge from Active Duty, Worksheet. (Available through normal forms supply channels.)

**DD Form 256A**
Honorable Discharge Certificate. (Available through normal forms supply channels.)

**DD Form 577**
Signature Card.

**DD Form 2088**
Statement of Ecclesiastical Certification.

**SF 600**
Health Record—Chronological Record of Medical Care.

**Glossary**

**Section I**
**Abbreviations**

**AD**
active duty

**ADL**
active duty list

**ADSO**
active duty service obligation

**ADSW**
active duty for special work

**ADT**
active duty for training

**AFCS**
active Federal commissioned service

**AFS**
Active Federal Service

**AGR**
Active Guard Reserve

**AMEDD**
Army Medical Department

**APFT**
Army Physical Fitness Test

**ARBA**
Army Review Boards Agency

**ARNG**
Army National Guard

**ARNGUS**
Army National Guard of the United States

**ASA(M&RA)**
Assistant Secretary of the Army (Manpower and Reserve Affairs)

**AWOL**
absent without leave

**BAS**
basic allowance for subsistence

**CAR**
Chief, Army Reserve

**CDR**
commander

**CG**
commanding general

**CID**
Criminal Investigation Division

**CONUS**
continental United States

**CW**
Chief Warrant

**CW2**
Chief Warrant Officer, W–1

**CW3**
Chief Warrant Officer, W–3

**CW4**
Chief Warrant Officer, W–4

**CW5**
Chief Warrant Officer, W–5

**DA**
Department of the Army

**DAADB**
Department of the Army Active Duty Board

**DACH**
Department of the Army Chief of Chaplains

**DARNG**
Director, Army National Guard

**DASA-RB**
Deputy Assistant Secretary of the Army-Reviews Boards

**DCS, G-1**
Deputy Chief of Staff, G–1

**DD**
Department of Defense

**DMG**
distinguished military graduate

**DOD**
Department of Defense

**DODPM**
Department of Defense Military Pay and Allowances Entitlements Manual

**DOPMA**
Defense Officer Personnel Management Act

**DSN**
Defense Switched Network

**FAX**
facsimile

**FBI**
Federal Bureau of Investigation

**FLEP**
Funded Legal Education Program

**GCM**
general court-martial

**GCMCA**
General courts-martial convening authority

**GOSCA**
general officer show cause authority

**HIV**
Human Immunodeficiency Virus

**HQDA**
Headquarters, Department of the Army

**HRC**
Human Resources Command

**JAGC**
Judge Advocate General's Corps

**JFTR**
Joint Federal Travel Regulation, Volume 1

**MACOM**
major Army command

**M&RA**
Manpower and Reserve Affairs

**MOI**
Memorandum of Instruction

**MOS**
military occupational specialty

**MPD**
Military Personnel Division

**MPF**
military personnel file

**MSO**
military service obligation

**MTF**
medical treatment facility

**MTOE**
modification table of organization and equipment

**NGB**
National Guard Bureau

**NGR**
National Guard regulation

**OBV**
obligated volunteer

**OCAR**
Office of the Chief, Army Reserve

**OCONUS**
outside continental United States

**OER**
Officer Evaluation Report

**OMPF**
official military personnel file

**ORB**
Officer Record Brief

**OTRA**
other than Regular Army

**PA**
physician assistant

**PCS**
permanent change of station

**PEB**
Physical Evaluation Board

**POC**
point of contact

**PPAA**
personnel plans and actions

**PRP**
Personnel Reliability Program

**PS**
personnel support

**PSC**
Personnel Service Company

**PSST**
personnel services support team

**RA**
Regular Army

**RC**
Reserve Component

**REFRAD**
release from active duty

**RFGOS**
resignation for the good of the service

**ROTC**
Reserve Officers' Training Corps

**S2**
intelligence officer (U.S. Army)

**SAA**
separation approval authority

**SACT**
Soldier action

**SLDR**
Soldier

**SPD**
separation program designator

**SSN**
Social Security number

**TDA**
table of distribution and allowances

**TDRL**
Temporary Disability Retired List

**TJAG**
The Judge Advocate General

**TOE**
table of organization and equipment

**TP/TA**
transition point/transition activity

**TRCT**
transition center

**TTAD**
temporary tours of active duty

**TWOS**
Total Warrant Officer System

**UCMJ**
Uniform Code of Military Justice

**USAR**
U.S. Army Reserve

**USAREUR**
U.S. Army, Europe

**USC**
United States Code

**USMA**
United States Military Academy

**WO**
warrant officer

**WOBC**
Warrant Officer Basic Course

**Section II**
**Terms**

**active duty for training**
Full-time duty in the active military service of the United States For training purposes.

**active Federal commissioned service**
Full-time duty in the active military service of the United States. It includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the secretary of the military department concerned (10 USC 101).

**Active Guard Reserve**
Army National Guard of the United States and U.S. Army Reserve personnel serving on active duty under section 12301, title 10, United States Code and Army National Guard personnel serving on full-time National Guard duty under section 502(f), title 32,United States Code. These personnel are on full-time National Guard duty or AD (other than for training on AD in the Active Army) for 180 days or more for the purpose of organizing, administering, recruiting, instructing, or training the Reserve Components and are paid from National Guard Personnel, Army, appropriations or Reserve Personnel Army, appropriations. Exceptions are personnel ordered to AD as—
   *a.* General officers.
   *b.* United States property and fiscal officers under 32 USC 708.
   *c.* Members assigned or detailed to the Selective Service System serving under the Military Selective Service Act (50 USC, app 460(b)(2)).
   *d.* Members of the Reserve Forces Policy Board serving under 10 USC 10301.
   *e.* Members of Reserve Components on active duty to pursue special work (10 USC 10541 and 10 USC 641(i)(D)).

**Army retired list (For Official Use Only)**
   *a.* United States Army Retired List consists of the names of all retired commissioned and warrant officer of the Active Army.
   *b.* Army of the United States Retired List consists of the names of all retired commissioned officers of the Army, other than Active Army, and the names of all retired Active Army and other than Active Army warrant officers and advanced to commissioned grades.

**Assignment alert**
The official notification of an impending assignment sent by writing, voice, e-mail, or other medium from DA or HRC assignment officials to an officer. An assignment is considered "firm" when an officer has been selected to fill a valid requisition (that is, when and where the officer will be assigned).

**bisexual**
A person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual and heterosexual acts.

**Boards of Inquiry**
Boards of officers convened to give fair and impartial hearing to evidence concerning the fitness of an officer who has been required to show cause for retention and make findings and recommendation whether he or she will be retained or eliminated.

**Boards of Review**
Boards of officers convened to review cases of officers recommended for elimination by Boards of Inquiry to determine whether elimination or retention is warranted.

**Continuation Boards**
Boards of officers convened at NGB, OCAR, and State level to review records of AGR officers for continuation in the

program.Individuals selected for continuation by the boards will be offered a subsequent tour in the AGR program, providing an appropriate assignment is available.

**Commissioned Service**

A period beginning from the date of commission and continuing, without regard to periods of active duty, until military status is terminated.

**Credible information**

Credible information exists when the information, considering its source and the surrounding circumstances, supports a reasonable belief that a service member has engaged in homosexual conduct. It requires a determination based on articulable facts, not just a belief or suspicion.

**Current tour**

The tour of duty that commenced on the date last entered on active duty, regardless of current service commitment or extension.

**Date of retirement**

The date the officer's name is placed on the appropriate retired list. For all officers retired under provisions of chapter 6, the date of retirement is the first day of a month (5 USC 8301) and with the exception of the provisions of paragraph 6–13c(1) for a USAR officer, is the day following the date the officer is released from active duty.

**discharge**

The discharge of an officer is a form of administrative elimination that terminates all military status. Discharge is distinct from a release from active duty (REFRAD), which is a form of administrative separation that terminates a period of active duty.

**Dismissal**

Release of an officer/warrant officer from the service without honor upon sentence of dismissal by a court-martial.

**Dual status officer**

A commissioned officer of a Reserve Component, serving on active duty, who holds a Regular Army warrant officer appointment.

**Elimination**

Removal from commissioned or warrant officer status in the Army and removal from active duty and the active duty list.

**Factual allegation**

A brief description of a specific incident which supports a reason for elimination.

**General officer show cause authority (GOSCA)**

Commanders exercising general court)martial authority and all general or flag rank officers in command who have a judge advocate or legal advisor available. Any GOSCA by assignment or attachment may initiate or process an elimination. In cases of two or more GOSCAs, HRC may designate a specific GOSCA to act on the officer's case. An officer may have more than one GOSCA. For example, a USAREUR officer of a 5th Signal Command Unit temporarily attached to a TRADOC tenant on a FORSCOM installation may have four GOSCAs as follows:
 *a.* The officer's USAREUR unit of assignment's GOSCA (chain of command).
 *b.* That unit's area GCM authority under USAREUR area of jurisdiction (chain of command).
 *c.* The TRADOC chain's GOSCA (chain of command).
 *d.* The FORSCOM chain's GOSCA (chain unit of attachment's).

**Home (or "home of record")**

 *a.* For officers ordered to active duty from civilian status, the place recorded as the home of record when ordered to active duty.
 *b.* For officers discharged from an active duty enlisted status for the convenience of the Government to accept duty as an officer, the place recorded as the home of record at the time he or she entered the Service in an enlisted status in the relevant tour of active duty.

**Homosexual**

A person, regardless of sex, who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts as further described by the definition of homosexual conduct.

**Homosexual act**

Any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires and any bodily contact (for example, hand-holding, slow dancing, or kissing) that a reasonable person would understand to demonstrate a propensity or intent to engage in such bodily contact.

**Homosexual conduct**

A homosexual act, a statement by a Soldier that demonstrates a propensity or intent to engage in homosexual acts, the solicitation of another to engage in homosexual act or acts, or a homosexual marriage or attempted marriage.

**Homosexual marriage**

A homosexual marriage or attempted marriage is when a person has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the person involved).

**Major commanders**

Commanders of Eighth U.S. Army, Korea; Military Surface Deployment and Distribution Command (SDDC), VA, United States U.S. Army Corps of Engineers (USACE), DC, United States U.S. Army Criminal Investigation Command, VA, United States U.S. Army Europe (USAREUR), Germany U.S. Army Forces Command (FORSCOM), GA, United States U.S. Army Intelligence and Security Command, VA, United States U.S. Army Materiel Command (AMC), VA, United States U.S. Army Medical Command (MEDCOM), TX, United States U.S. Army Military District of Washington, DC, United States U.S. Army Pacific Command (USARPAC), HI, United States U.S. Army South (USARSO), TX, United States U.S. Army Space and Missile Defense Command (SMDC), VA, United States U.S. Army Special Operations Command (USASOC), NC, United States U.S. Army Training and Doctrine Command (TRADOC), VA, United States.

**Mandatory retirement**

A retirement that is required by law, subject to certain contingencies as outlined in the law, and must be effected regardless of the desire of the officer or HQDA unless otherwise specifically provided by the law (applies only to RA).

**Misconduct, moral or professional dereliction**

(See para 4–2.) Conduct within the control of the officer concerned, which includes but is not limited to drug abuse, alcohol abuse, criminal conduct, and civil confinement and results in either of the following:

*a.* Tends to bring the officer or the Army into disrepute; or

*b.* Results in the loss or abandonment of or suspension from professional status when lack of status adversely affects the member's ability to perform the duties; or

*c.* Includes but is not limited to drug abuse, alcohol abuse,criminal conduct, and civil confinement.

**National security**

See definition contained in AR 380–67.

**Nonprobationary officer**

*a.* Regular Army commissioned officers and USAR commissioned officers with more than 5 years commissioned service.

*b.* Warrant officers with more than 3 years service since original appointment in their present component.

**Officer**

Male or female commissioned officers and warrant officers unless otherwise indicated.

**Probationary officer**

*a.* Regular Army commissioned officers and officers in the USAR (OTRA) with less than 5 years commissioned service (10 USC 630).

*b.* Warrant officers who have less than 3 years service since original appointment in their present component (10 USC (b) (10)).

**Propensity**

Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it indicates a likelihood that a person engages or will engage in homosexual acts.

**Qualifying service**

Service creditable for retired pay under AR 135–180.

**Reason for elimination**

A short generic statement of the types of conduct that may serve as the basis for eliminating an officer (para 4–2).

**reasonably available**

Those officers assigned to local installations or within the GCMCA area are considered reasonably available to serve as members of boards of inquiry.

**Recommended for promotion**

*a.* Officers in the ARNGUS who have been selected for promotion to the next higher Reserve grade by action of a promotion selection board. These officers are considered to be recommended for promotion in the meaning of U.S. Code title 10, subsections 3848b and 385b, on the date the promotion selection board adjourns.

*b.* Officers in the ARNGUS who have been appointed in a general officer grade in the ARNG. These officers are considered to be recommended for promotion in the meaning of the statutes cited above on the date the General Officer Federal Recognition Board adjourns.

**Recoupment**

Officers who participate in certain advanced education programs sometimes fail to complete their educational requirements, or active duty or Reserve Component obligations. These officers are subject to the recoupment provisions of AR 37–104–3. Recoupment must be accomplished prior to the separation of an officer who has not fulfilled the service obligation incurred as a result of participation in that advanced education program (10 USC 2123 and 10 USC 2005).

**Reserve Components**

The Army National Guard of the United States and the U.S. Army Reserve.

**Sexual orientation**

An abstract sexual preference for persons of a particular sex, as distinct from a propensity or intent to engage in sexual acts.

**Statement**

A statement that an officer is a homosexual or bisexual or words to that effect. Language or behavior that a reasonable person would believe was intended to convey the statement that a person engages in, attempts to engage in, or has a propensity or intent to engage in homosexual acts.

**Substandard performance of duty**

Performance of duty that has fallen below standards prescribed by the Secretary of the Army, based on regulations of the Secretary of Defense (10 USC 1181). (Para 4–2 lists some deficiencies that indicate an officer does not meet required standards.)

**Transfer**

Release from assignment in one component, branch category, or administrative entity of the Army or a component thereof, with concurrent assignment to another component, branch category, or administrative entity.

**Voluntary retirement**

Any type of retirement in a commissioned or warrant officer status that is optional with the officer.

## Section III
## Special Abbreviations and Terms

This section contains no entries.

**UNCLASSIFIED**



ELECTRONIC PUBLISHING SYSTEM
OneCol FORMATTER WIN32 Version 232

PIN:            073106–000
DATE:          04-12-06
TIME:          09:22:03
PAGES SET:    133

DATA FILE:    C:\wincomp\r600-8-24.fil
DOCUMENT:    AR 600–8–24

SECURITY:    UNCLASSIFIED
DOC STATUS:  NEW PUBLICATION